## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BEVERLY B. MANN,                          )
                                          )
        Plaintiff,        )
                                          )
    v.                            )
                                          )
MICHAEL J. LEECH, et al.,                 )
                                          )
        Defendants.       )

**00 C 2150**

No.

**JUDGE MORAN**

**MAGISTRATE JUDGE KEYS**

FILED

00 APR -7 PM 4:03

CLERK, U.S. DISTRICT COURT

**DOCKETED**

APR 11 2000

TO:   Anthony S. DiVincenzo
      Campbell & DiVincenzo
      55 West Monroe St.
      Suite 3460
      Chicago, IL 60603

      Ms. Bevery Mann
      72 61 N. Campbell
      Chicago, IL 60645

Ms. Maureen Lennon Zeeb
Hinshaw & Culbertson
4343 Commerce Ct.
Suite 414
Lisle, IL 60532

The Honorable David R. Donnersberger
Circuit Court of Cook County
2600 Richard J. Daley Center
50 W. Washington St.
Chicago, IL 60602

### NOTICE OF MOTION

    Please take notice that on Friday, April 7, 2000, we will file with the Clerk of the United States District Court for the Northern District of Illinois at 219 South Dearborn, Chicago, Illinois a Notice of Removal by Defendants City of Chicago, Nancy Van Allen, Tracey Ladner, Mardell Nereim and Brian Crowe.

*Michael W. Coffield*

One of Defendants' Attorneys

Michael W. Coffield
Michael W. Coffield & Associates
77 West Wacker Drive, Suite 4800
Chicago, Illinois 60601-1604
312/444-9696

## CERTIFICATE OF SERVICE

I, Susan A. Finnegan, an attorney, state that a copy of the Notice of Removal by Defendants City of Chicago, Nancy Van Allen, Tracey Ladner, Mardell Nereim and Brian Crowe was served upon the parties listed below by the means listed below on April 7, 2000.

Ms. Beverly Mann
72 61 N. Campbell
Chicago, IL  60645
By Mail

Clerk of the Circuit Court of Cook County
2600 Richard J. Daley Center
50 W. Washington St.
Chicago, IL  60602
By Filing

Ms. Maureen Lennon Zeeb
Hinshaw & Culbertson
4343 Commerce Ct.
Suite 414
Lisle, IL  60532
By Mail

The Honorable David R. Donnersberger
Circuit Court of Cook County
2600 Richard J. Daley Center
50 W. Washington St.
Chicago, IL  60602
By Messenger

Anthony S. DiVincenzo
Campbell & DiVincenzo
55 West Monroe St.
Suite 3460
Chicago, IL  60603
By Mail

Susan A. Finnegan
Susan A. Finnegan

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BEVERLY B. MANN, )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL J. LEECH, *et al.* )<br>and )<br><br>THE CITY OF CHICAGO, a municipal )<br>Corporation, NANCY VAN ALLEN, )<br>individually, and as Assistant City of )<br>Chicago Corporation Counsel, TRACEY )<br>LADNER, individually, as Assistant )<br>City of Chicago Corporation Counsel, )<br>MARDELL NEREIM, individually, and as )<br>Assistant City of Chicago Corporation )<br>Counsel, and BRIAN CROWE, individually, )<br>and as City of Chicago Corporation Counsel, )<br>and )<br><br>JAMES B. MORAN, individually, )<br><br>Defendants. ) | 00C 2150<br><br>No.<br><br>JUDGE MORAN<br><br>MAGISTRATE JUDGE KEYS |

## NOTICE OF REMOVAL BY DEFENDANTS CITY OF CHICAGO, NANCY VAN ALLEN, TRACEY LADNER, MARDELL NEREIM AND BRIAN CROWE

Defendants The City of Chicago, Nancy Van Allen, Tracey Ladner, Mardell Nereim, and Brian Crowe ("City Defendants") through their counsel, Michael W. Coffield and Christopher C. Kendall, file this notice of removal pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1441(c) and in support thereof state as follows:

1

## FACTS

1. On April 12, 1999 Plaintiff filed the present suit against a number of her former attorneys and their law firms based on the legal representation that Plaintiff received from them in a prior lawsuit. (See original Complaint attached as Exhibit A). Plaintiff filed the prior federal lawsuit in 1984, against her employer (the City of Chicago) and others for claims relating to the termination of her employment as assistant corporation counsel. That lawsuit lasted more than fourteen years. (See Amendment to Complaint attached as Exhibit B, para. 3). A copy of the docket entries in the prior lawsuit (as recorded by the District Court Clerk's office) is attached as Exhibit C. The court can take judicial notice of the two Seventh Circuit decisions, *Mann v. City of Chicago*, 74 F.3d 1242 (7th Cir. 1996) and *Mann v. City of Chicago*, 182 F.3d 922 (7th Cir. 1999), in the underlying lawsuit attached as Exhibits D and E.

2. On March 9, 2000, Plaintiff filed an Amendment to Complaint in the present lawsuit adding claims against the *opposing* counsel in the underlying federal litigation.[1] Those defendants are the City of Chicago and its attorneys from the Corporation Counsel's office, Nancy Van Allen, Tracy Ladner, Mardell Nereim and Brian Crowe. ("City Defendants").

3. With the Amendment to Complaint the Plaintiff also added as a defendant the Honorable James B. Moran, who was one of the federal judges presiding over a portion of the underlying litigation.

4. The Amendment to Complaint added counts X, XI and XII against the City Defendants, and count XIII against the Honorable James B. Moran.

5. Under Count X, Plaintiff asserts claims based on an alleged denial of due process of law and equal protection of the law under the Illinois Constitution. (Ex. B, pp. 1-5)

6. Under Count XI, Plaintiff asserts claims based on alleged tortious interference with prospective economic advantage. (Ex. B, p. 6)

7. Under Count XII, Plaintiff asserts claims based on alleged fraud and deliberate deception (of the federal court). (Ex. B, pp. 6-7)

8. Under Count XIII, Plaintiff asserts claims solely against Judge Moran based on alleged denial of due process of law and equal protection of the law, and tortious interference with prospective economic advantage. (Ex. B, pp. 7-12)

9. Though all of the new claims purport to be state law claims, the claims are all based on alleged violations of federal laws in the context of litigation in federal court. For instance, in Count X Plaintiff alleges that Van Allen, Ladner, and Crowe filed a motion for summary judgment where they improperly sought to relitigate issues "notwithstanding extensive and unequivocal *law of the Seventh Circuit* that prohibits the relitigation of issues already determined on appeal . . ., a.k.a., the doctrine of law of the case." (Ex. B, para. 11(a)) (emphasis added). Plaintiff continued in paragraph 11(b):

---

[1] Although Plaintiff filed the Amendment to Complaint on March 9, 2000, Plaintiff has yet to effect service on any of the newly-added defendants.

> [t]hey filed a motion for summary judgment on the two counts remanded in January, 1996, for retrial, in which they purposefully and improperly asserted new defenses . . ., notwithstanding extensive and unequivocal *law of the Seventh Circuit* that prohibits the initial assertion of defenses after an appeal in which those could have been litigated, a.k.a., the doctrine of waiver.

(Ex. B, para. 11(b)) (emphasis added).

10. Similarly, Plaintiff alleges that Defendant Nereim drafted and signed briefs with misrepresentations to the federal court about "the procedural history of the case, the issues already argued and resolved in the initial sets of appeals, [and] *the state of the law within the Seventh Circuit . . .*" (Ex. B, para. 15) (emphasis added). Plaintiff alleges that the City Defendants made additional misrepresentations of law and fact to the federal court as well. (Ex. B, para. 11(c)-(e)).

11. Plaintiff reasserts the same factual allegations to support her claims under Counts XI and XII.

12. Finally, Plaintiff's claims under Count XIII are based on alleged violations of federal law (28 U.S.C. § 372(c)(3)(A)), by a federal judge, in a federal trial. Those claims are removable pursuant to 28 U.S.C. § 1442. The record does not indicate that Judge Moran has been served.

## BASIS FOR REMOVAL

I. **Pursuant to 28 U.S.C. 1441(c) Defendants have the right to remove this matter to the federal District Court for the Northern District of Illinois.**

13. The removal provision under 28 U.S.C. § 1441(c) states:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

14. Removal to the federal court is appropriate where (a) there is a "separate and independent" cause of action from any non-removable causes of action in the Complaint, and (b) the causes of action must arise under federal law as defined by 28 U.S.C. § 1331. The present case contains claims that satisfy both requirements.

A. **The claims against the moving Defendants are "Separate and Independent" of the claims against the originally named defendants**

15. All claims against the City Defendants are "separate and independent" of the state claims against the originally-named defendants ("Original Defendants") in the original Complaint.[2] In *Ford Motor Credit Co. v. Aaron-Lincoln Mercury Inc.*, 563 F. Supp. 1108 (N. D. Ill. 1983), the court noted that "[w]here recovery in the allegedly removable claim is dependent on the result in the non-removable claim, the claims are not 'separate and independent. . .'" *Id.* at 1111 (citing *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S. Ct. 534 (1951) among others). The *Aaron-Lincoln* court found that where

---

[2] The typical requirement that all defendants join in a request for removal is inapplicable to a request pursuant to § 1441(c). *Thomas v. Shelton*, 740 F.2d 478, 483 (7th Cir. 1984) (citation omitted).

5

the two claims before it were based on entirely separate contractual relationships, with different courses of allegedly wrongful conduct, and that liability on the removable claim was in no way dependent on the result in the action on the non-removable claim, the claims were "separate and independent" under § 1441(c). *Id.*

16. In the present case, the counts against the City Defendants do not overlap with the counts asserted against the Original Defendants. Plaintiff's claims against the City Defendants arise from alleged violations of federal court rules by the City Defendants in their capacity as opposing counsel. All of the counts against the Original Defendants deal with the fiduciary and contractual relationship between the Plaintiff and her attorneys. On the other hand, the counts against the City Defendants all address the relationship between opposing counsel and the federal court with consequent effect on the Plaintiff. In the case of Defendant Judge Moran, the count addresses the duties of a presiding federal judge.

17. As in *Aaron-Lincoln*, the amended claims in the present case are based on entirely separate relationships with different courses of allegedly wrongful conduct, and the claims against the City Defendants are in no way dependent on the result in the action on the claims against the Original Defendants.

18. Furthermore, the claims against the Original Defendants do not overlap in time with those against the City Defendants. Defendant Leech withdrew from representation in 1990 (Exhibit A, para. 70) and Defendant DiVincenzo withdrew in 1992. (Exhibit A, para. 98). In contrast, Plaintiff's claims against the City Defendants

relate to their representation of the City in litigation after the Seventh Circuit remanded

the case back to the District Court in 1997.  (Exhibit B, para. 5).

19. Finally, Plaintiff admits in her Emergency Motion for Leave to File

Amendments to the Complaint at Law Adding Defendants that, ". . . the nature of the

claims against those additional parties is significantly different than [the] claims against

the current defendants in this lawsuit, . . ."  (See Emergency Motion attached as Exhibit

F, p. 1).

B. **The claims against the City Defendants are within the "federal question"**
**jurisdiction conferred by 28 U.S.C. § 1331**

20. All of the claims filed against the City Defendants are within the jurisdiction

conferred by 28 U.S.C. § 1331.  Section 1331 states, "[t]he district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States."  The United States Supreme Court interpreted section 1331 in the

context of removal in *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S. Ct. 96

(1936).  The Court explained that for a case to 'arise under the Constitution or laws of

the United States' a right or immunity created by the Constitution or laws of the United

States must be an essential element of the plaintiff's cause of action, such that if it is

given one construction or effect, the right will be supported, and defeated if they

receive another.  *Gully* 299 U.S. at 112.

21. More recently, the United States Supreme Court addressed a removal action

on federal-question grounds in *City of Chicago v. International College of Surgeons,* 522

U.S. 156, 162, 118 S. Ct. 523, 528 (1997).  In *International College,* the Court reviewed a

notice of removal where the plaintiff filed claims under the United States Constitution as well as under the Illinois Constitution and the Illinois Administrative Review Act. *Id.* at 160, 164. In support of remand to state court, the plaintiff asserted that the federal constitutional claims were raised by way of a cause of action created by state law, namely, the Illinois Administrative Review Law. *Id.* The Supreme Court rejected this argument. In so doing, the Court stated, " [a]s we have explained, however, even though state law creates a party's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Id.* (internal quotes and citation omitted). The Court found that although the plaintiff had filed claims by way of a cause of action created by state law, the case still 'arose under' the laws of the United States. *Id.* The substantial question of federal law was the alleged violation of the United States Constitution. This alleged violation was the basis for the state claims. Similarly, in the present case Plaintiff has filed against the City Defendants claims purporting to be under state law. However, just as in *International College*, these state claims depend upon alleged violations of federal law. As in *International College*, the Plaintiff's right to relief in the present case against the City Defendants depends on the resolution of federal questions. Therefore, these claims 'arise under' the laws of the United States.

8

22. The determination of the Plaintiff's separate and independent claims against the City Defendants will depend on the application of federal law and therefore this matter is properly removed.

Respectfully submitted,

By: _____

Counsel for City of Chicago, et al.

Michael W. Coffield (469718)
Michael W. Coffield & Associates
77 West Wacker Drive, Suite 4800
Chicago, Illinois 60601-1604
312/444-9696

Christopher C. Kendall (6209003)
The Law Office of Christopher C. Kendall
77 West Wacker Drive, Suite 4800
Chicago, Illinois 60601-1604
312/444-9505

# EXHIBIT A

STATE OF ILLINOIS)

SS:

COUNTY OF COOK)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

BEVERLY B. MANN,                              )
    Plaintiff,                            )
                                   )   No.
    vs.                                   )
                                     )
MICHAEL J. LEECH, individually,              )
WILLIAM J. HOLLOWAY, individually,           )
DONALD L. MROZEK, individually,              )
and                                          )
                                   )
HINSHAW & CULBERTSON, a professional         )
partnership including professional           )
corporations, and                            )
                                   )
DAN L. BOHO, RICHARD S. BORLAND,             )
THOMAS L. BROWNE, KEVIN JOSEPH               )
BURKE, THOMAS M. BURNHAM, JULIAN             )
C. CAMPBELL JR., DIANE CERNIVIVO, O.         )
KIRBY COLSON III, DAVID CREAGH,              )
THOMAS M. CRISHAM, THOMAS M. CRISHAM )
LTD., STANLEY J. DAVIDSON, DEBRA S.          )
DAVY, KATHERINE S. DEDRICK, JOHN W.          )
DUBBS III, LYNN M. EGAN, CARLTON D.          )
FISHER, JEROME A. FRAZEL JR., PERRY          )
L. FULLER, PERRY L. FULLER PC,               )
THOMAS F. GING, WILLIAM GLEESON,             )
MAXWELL GRIFFIN JR., D. KENDALL              )
GRIFFITH, D. KENDALL GRIFFITH PC,            )
EDMOND GRONKIEWICZ, THOMAS M.                )
HAMILTON, JAMES D. HARBERT, WILLIAM          )
J. HOLLOWAY, WILLIAM J. HOLLOWAY PC,         )
CHARLES A. HORNEWER, STEPHEN D.              )
HURST, FRITZ K. HUSZAGH, JAROSLAWA           )
Z. JOHNSON, E. MICHAEL KELLY,                )
MICHAEL B. KILGALLON, JOHN L.                )
KIRKLAND, JOHN L. KIRKLAND PC, KARL          )
N. KLOCKARS, JEFFREY T. KUBES, JOHN          )

99L 004034
CALENDAR C
LEGAL MALPRACTIC

JURY DEMAND

G. LANGHENRY JR., JOHN G. LANGHENRY )
JR. PC, MICHAEL J. LEECH, DAVID H. )
LEVITT, NANCY G. LISCHER, JENNIFER )
A. LOWIS, TOM H. LUETKEMEYER, )
STEPHEN A. MALATO, THOMAS S. )
MALCIAUSKAS, PAUL C. MARENGO, )
THOMAS P. McGARRY, DANIEL W. )
McGRATH, JAMES E. McPARLAND, )
LAWRENCE R. MOELMANN, DOUGLAS H. )
MOMEYER, PETER C. MORSE, DONALD L. )
MROZEK, ROBERT E. NORD, JOSEPH J. )
O'CONNELL, JOSEPH J. O'CONNELL PC, )
MARL R. OLANDER, DONALD J. O'MEARA, )
DONALD J. O'MEARA PC, DEAN E. )
PARKER, PAUL L.PAWLOWSKI, PAUL L. )
PAWLOWSKI PC, WILLIAM B. PHILLIPS, )
PATRICIA J. PRANGE, CAROL PROCTOR, )
EDWARD G. PROCTOR, STEVEN M. )
PUISZIS, MICHAEL J. REGAN, KEVIN R. )
SIDO, LAWRIE A. SIWEK, ROBERT H. )
SMITH, GEORGE W. SPELLMIRE JR, )
PETER D. SULLIVAN, ALAN H. SWANSON, )
WILLIAM G. SWINDAL, STEPHEN R. )
SWOFFORD, KARL M. TIPPET, KARL M. )
TIPPET LTD., MARY B. TOBIN, JOSHUA )
G. VINCENT, PETER A. WALSH, BRUCE A. )
OLSON, JOHN D. BAUMAN, MARK D. )
BAUMAN, JEFFREY R. GLASS, WILLIAM F. )
KOPIS, BRIAN P. THIELEN, CORY D. )
LUND, PETER G. PANNO, THOMAS A. )
BRABEC, RICHARD C. ERNST, RICHARD C. )
ERNST LTD., ALICE K. KUSH, DANIEL M. )
PURDOM, RICHARD M. SANDROCK, )
RICHARD M. SANDROK LTD., )
J. RICHARD STABLES, J. RICHARD )
STABLES LTD., WILLIAM J. ULRICH JR., )
RONALD L. KAMMER, ARTHUR J. )
LaPLANTE, RANDAL N. ARNOLD, CHARLES )
E. BURROWS, NED J. CZAJKOWSKI, )
JEFFREY S. FERTL, JAMES G. HOWARD, )
G. GEORGE LAWRENCE, MICHAEL P. )
MALONE, STEVEN W. MARTIN, MICHAEL J. )
PFAU, FRANK A. SCHERKENBACH, THOMAS )
R. SCHRIMPF, PAUL C. ESTES, DAVIS E. )
JONES, DOUGLAS A. MARSHALL, CHARLES )
F. HELSTEN, JAMES W. KEELING, )
STEPHEN T. MOORE, GEORGE J. PICHA, )

2

|  |  |
|---|---|
| JAMES R. PIRAGES, JOHN A. SANDBERG, | ) |
| CHARLES F. THOMAS, JEFFREY R. GLASS, | ) |
| JOHN C. MOHAN, JOHN C. MOHAN PC, | ) |
| D. BRADLEY BLODGETT, PATRICK J. | ) |
| CADIGAN, GEORGE GILLESPIE, ROBERT E. | ) |
| GILLESPIE, SUSAN M. HICKMAN, MARK W. | ) |
| CONRAD, MICHAEL F. HENRICK, | ) |
|  | ) |
| d/b/a | ) |
|  | ) |
| HINSHAW & CULBERTSON, a partnership | ) |
| including professional corporations, | ) |
|  | ) |
| and | ) |
|  | ) |
| ANTHONY S. DiVINCENZO, individually, | ) |
| and | ) |
|  | ) |
| CAMPBELL & DiVINCENZO, a professional | ) |
| partnership, | ) |
| Defendants. | ) |

## COMPLAINT AT LAW

## STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of all the defendants named above asserts the following facts, definitions and rules of law:

1. This lawsuit stems from the legal representation of Beverly B. Mann ("Mann"), the plaintiff named above, by attorneys Michael J. Leech ("Leech") and Anthony S. DiVincenzo ("DiVincenzo"), respectively, two of the defendants named above, in litigation ("the underlying lawsuit") filed in her behalf. The title of the underlying lawsuit is *Beverly B. Mann v. The City of Chicago, James Montgomery, Jayne Barnard and Timothy O'Hara*. It was filed in the United States District Court for the Northern District of Illinois on December 31, 1984 and was given the case number 84 C 11020. Portions of that lawsuit remain pending.

2. The contention of the motion court assigned to this matter notwithstanding, Mann is entitled to sue, by name, all persons who were partners at the defendant law firms during the time period relevant to this lawsuit, irrespective of the number of those partners, if the facts pertinent to this matter create potential liability against those defendants. Any limitation

3

upon the number of partners who can be so named would serve improperly to serve the interests in legal malpractice matters of partners in large, as opposed to small or mid-sized, law firms.

3. *Black's Law Dictionary* describes the term "fiduciary" as follows:

The term is derived from the Roman law, and means (as a noun) a person holding the character of a trustee, or a character analogous to that of a trustee, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires. [Emphasis added.] A person having duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking. [Emphasis added.] As an adjective it means of the nature of a trust; having the characteristics of a trust; analogous to a trust; relating to or founded upon a trust or confidence.

A term to refer to a person having duties involving good faith, trust, special confidence, and candor towards another. [Emphasis added.] A fiduciary "includes such relationships as executor, administrator, trustee, and guardian." *ABA Code of Judicial Conduct, Canon 3C(3)(b)*. A lawyer is also in a fiduciary relationship with the client....

4. *Black's Law Dictionary* describes the term "fiduciary duty" as follows:

A duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law (e.g., trustee, guardian). [Emphasis added.]

5. *Black's Law Dictionary* defines the term "contract" as:

An agreement between two or more persons which creates an obligation to do or not to do a particular thing.

6. Lawyers, by operation of law in the State of Illinois, are fiduciaries (as that term is defined in *Black's Law Dictionary*) to their clients. Lawyers, by operation of law in the State of Illinois, have a fiduciary duty to their clients as that term is defined in *Black's Law Dictionary*, irrespective of whether those fiduciary obligations are expressly contained in any particular attorney/ client contract.

7. The underlying lawsuit is a complicated multi-count, multi-issue lawsuit that stemmed from Mann's employment as an assistant corporation counsel for the City of Chicago. All issues in the lawsuit concerned aspects of state or federal employment or employment-related law.

8. The contention of the motion court assigned to this matter notwithstanding, no rule of law, statutory or otherwise, exists in the state of Illinois that prohibits the attachment of

4

documents to the body of a civil complaint at law as a means to incorporate the contents of the documents into that complaint. Once attached and thus incorporated into the complaint, the contents of the documents need not be repeated in the body of the complaint. This method of incorporation is a relatively common practice in business litigation (particularly in federal court), and serves as competent incorporation of the contents of those documents for technical pleading purposes. Sixteen documents, in fact, were attached to, and thus incorporated into, the operative complaint in Mann's underlying lawsuit.

9. The motion court's contention as described in paragraph 8, immediately above, arose not as a ruling on an issue presented to the court by any of the defendants but instead as a *sua sponte* ruling. Yet in the complaint filed in *Joan Esposito v. Joseph Colburn, et al.*, No. 93 L 11482, a defamation lawsuit filed in the Circuit Court of Cook County, Illinois, Law Division, by attorney Dan K. Webb, a senior litigation partner at the law firm of Winston & Strawn, this technique of incorporation was used. The specific motion court assigned to this matter also was assigned to that matter and, in its Memorandum Opinion on Defendants' 2-615 Motion to Dismiss, it found no objection to the use of that pleading technique in that case.

10. Pleading rules do not vary depending upon the social and economic status of the plaintiff and the plaintiff's counsel.

11. Unlike lawsuits or other legal proceedings that never advance beyond an early stage and that become the subject of legal malpractice actions, Mann's lawsuit has an extensive record of discovery and of court proceedings and court filings that are a matter of public record.

12. To date, there exist on file in the office of the Clerk of the United States District Court for the Northern District of Illinois some 585 documents in that lawsuit. The docket sheet in the case is 37 pages long.

13. The lawsuit currently is in its second appeal before the United States Court of Appeals for the Seventh Circuit. One of those documents is Mann's Opening Brief. She incorporates into this complaint as Exhibit 1 a copy of the sections in her appellant's opening brief titled "Statement of the Case" and "Statement of Facts", which, as required by federal rule, annotate each of the assertions of fact with specific citation to the record in the case.

14. Exhibit 1, described in paragraph 13, above, establishes that, by a preponderance

of the evidence, Mann would have been compensated in the underlying lawsuit for the injuries the are the subject of that lawsuit, but for the improper conduct of the defendants as described below.

15. Defendant Leech represented Mann in the underlying lawsuit for more than three years and was well aware of the nature of her claims in that lawsuit and well familiar with the evidence available to her to prove those claims, and in fact himself gathered substantial amounts of that evidence. He also filed numerous documents, including, in January, 1988, one titled "Statement of Contested Issues" and a proposed witness list.

16. Defendant DiVincenzo represented Mann in the underlying lawsuit for approximately 14 months. During that time, he drafted and submitted to the court a response to the defendants' motion for summary judgment and drafted and filed the Pretrial Order. That Pretrial Order was filed pursuant to Federal Rule of Civil Procedure 16 (e) and the pertinent local rule of the Northern District of Illinois. The Pretrial Order that he submitted contained a detailed summary of the case and a witness list that included more than 40 witnesses. He also represented Mann in the three-week trial of several of the counts in the lawsuit. He therefore was well aware of the nature of her claims in that lawsuit and was well familiar with the evidence available to her to prove those claims.

17. The documents described in the immediately preceding paragraphs are a matter of public record.

18. Mann herself has ten large banker's-size boxes of documents in the more than eleven-year-long underlying lawsuit. The defendants' counsel recently told Mann's counsel in that lawsuit that they, also, have ten large boxes of documents in the case.

19. Included in the boxes of files are transcripts of more than 20 depositions, including some depositions that lasted more than one day. Defendant Leech was the attorney who took many of those depositions, and he therefore was familiar with the contents of those depositions. Defendant DiVincenzo was counsel who submitted the Pretrial Order on Mann's behalf and who represented her at trial, and he therefore was obligated to be familiar with those depositions.

20. Unlike (perhaps) in legal malpractice lawsuits in which the evidence in the underlying legal action is not well developed, Mann need not recite in excruciating detail in her complaint the specifics of the evidence that was available to her but that was not presented

6

at trial either through the negligence of her trial counsel or because summary judgments were entered before trial. Otherwise, this complaint necessarily would be volumes long. That evidence once was in the possession of these defendants and so they were aware, or at least were obligated to be aware, of it.

21. The *Illinois Code of Civil Procedure*, 735 ILCS 5/2-612(b) (West 1992) provides explicitly as follows:

> No pleading is bad in substance which contains such information as <u>reasonably informs the opposite party</u> of the <u>nature</u> of the claim or defense which he or she is called upon to meet. [Emphasis added.]

22. *The Illinois Code of Civil Procedure*, 735 ILCS 5/2-612(b) applies in lawsuits brought against lawyers and law firms for legal malpractice, fraud, breach of fiduciary duty, or breach of contract in no different a manner than it does in any other type of lawsuit.

23. The contention of the motion court assigned to this matter notwithstanding, plaintiffs in lawsuits filed in the State of Illinois stemming from an attorney/client relationship need not prove their case in their complaint; they need only reasonably inform the defendant or defendants of the nature of the claim which he or she is called upon to meet.

24. The discovery process in this lawsuit, not the pleadings process, is the appropriate method by which the defendants are to become apprised of the details of Mann's claim regarding both liability and damages, <u>just as it would be in any other type of lawsuit.</u>

25. Defendant Leech is, and at all times relevant to this complaint was, an attorney engaged significantly in the practice of employment-related law, and even before Mann retained him as her counsel had represented both plaintiffs and defendants on numerous occasions in employment-related matters.

26. Before Mann retained Leech as her attorney in the underlying lawsuit, he and defendant Holloway already had authored a comprehensive general full-length hardcover book published by the Bureau of National Affairs (BNA) on employment law. Before and during the time when Leech was Mann's counsel, he on numerous occasions spoke on various employment-law issues as a speaker at seminars sponsored by various bar groups including the American Bar Association's Labor and employment Law section, Illinois Institute of Continuing Legal Education (IICLE), and the National Employment Lawyers' Association (NELA), and co-edited a general employment-law handbook for IICLE. Leech therefore was an expert in employment-related law at all times relevant to this lawsuit.

7

27. At the time she retained defendants Leech and DiVincenzo, respectively, Mann provided each of them with an extensive and detailed formal and informal record in the underlying lawsuit. The formal record included the 48-page Third Amended Complaint with numerous exhibits attached to it, containing detailed facts and evidence in support of Mann's' allegations in that lawsuit. The informal record included a lengthy and detailed chronology of events relevant to that lawsuit, which Mann had drafted. Mann gave that written chronology to Leech at her initial meeting with him and he read it before agreeing to represent her in the case.

28. At all times relevant to this lawsuit, Leech was highly competent to assess the merits of Mann's underlying lawsuit. At the time he agreed to represent her, he represented to Mann that he considered her claims legally and factually strong.

29. In filing his appearance as counsel for Mann in that lawsuit, Leech in accordance with Federal Rule of Civil Procedure 11 represented to the court that he believed that Mann's claims were meritorious and provable. At the time he filed his appearance in the lawsuit more than two years after the lawsuit was filed, Leech did believe that the claims in that lawsuit were meritorious and provable.

30. In January, 1988, Leech filed a Statement of Contested Issues on Mann's behalf in the underlying lawsuit, in which he set forth in detail the nature of the case and some of the supporting evidence that Mann already possessed or expected to obtain during further discovery.

31. Leech believed, in accordance with Federal Rule of Civil Procedure 11, that the statements he made in that Statement of Contested Issues were accurate.

32. At no time during his representation of Mann, or at any time since then, did Leech come to believe other than that Mann's claims in that lawsuit were meritorious and could be proved in accordance with the applicable standard of proof.

33. Leech's eventual withdrawal as Mann's counsel was utterly unrelated to the merits of that lawsuit.

34. At the time Mann retained Leech and DiVincenzo, respectively, each was aware that Mann already had paid several tens of thousands of dollars in attorneys' fees to her preceding counsel in the case.

8

35. At all times relevant to the respective allegations against Leech and DiVincenzo, each of these attorneys was aware of the extent of the monetary damages she was claiming in the underlying lawsuit and was aware of the tangible bases for those damages. Leech and DiVincenzo each was aware that the monetary damages Mann legitimately claimed in that lawsuit far exceeded the sum of the attorneys' fees she had paid and that she expected to pay to litigate the case.

36. Leech's withdrawal as Mann's counsel foreseeably and significantly raised the total amount of attorneys' fees Mann had to expend to litigate the case, because substitute counsel necessarily expended many hours to become familiar with the case. Leech was aware of this, yet he charged Mann for his own time in discussing the case with potential and retained substitute counsel. As a result, Mann paid double attorneys' fees to enable potential and retained substitute counsel to learn what Mann earlier had paid Leech to learn about the case.

37. *The Illinois Supreme Court Rules, Article VIII, Illinois Rules of Professional Conduct*, are and at all times relevant to this lawsuit were laws that govern the conduct of attorneys in the State of Illinois.

38. Rule 1.16 of *The Illinois Rules of Professional Conduct* is titled "Declining or Terminating Representation" and states in total:

> (a) A lawyer representing a client before a tribunal shall withdraw from employment (with permission of the tribunal if such permission is required), and a lawyer representing a client in other matters shall withdraw from employment, if [Emphasis added]:
>
> > (1) the lawyer knows or reasonably should know that the client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person;
> >
> > (2) the lawyer knows or reasonably should know that such continued employment will result in violation of these Rules;
> >
> > (3) the lawyer's mental or physical condition renders it unreasonably difficult for the lawyer to carry out the employment effectively; or
> >
> > (4) the lawyer is discharged by the client.

9

(b) Except as required in Rule 1.16(a), <u>a lawyer shall not request permission to withdraw in matters pending before a tribunal,</u> and shall not withdraw in other matters, unless such request or withdrawal is because:

(1) the client:

(A) insists upon presenting a claim or defense that is unwarranted under existing law and cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law;

(B) seeks to pursue an illegal course of conduct;

(C) insists that the lawyer pursue a course of conduct that is illegal or that is prohibited by these Rules;

(D) by other conduct renders it unreasonably difficult for the lawyer to carry out the employment effectively;

(E) insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer although not prohibited by these Rules; or

(F) substantially fails to fulfill an agreement or obligation to the lawyer as to expenses or fees;

(2) the lawyer's inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal;

(3) the client consents to termination of the lawyer's employment <u>after disclosure</u> {Emphasis added]; or

(4) the lawyer reasonably believes that a tribunal will, in a proceeding pending before the tribunal, find the existence of other good cause for withdrawal.

(c) <u>If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.</u> [Emphasis added.]

(d) In any event, a lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

(e) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

10

39. The court in which the underlying lawsuit was pending at all times relevant to this lawsuit requires, and at all times relevant to this lawsuit required, that attorneys of record in matters pending before it obtain leave of court before they are entitled to withdraw as counsel of record. Implicit within that requirement is the further requirement that the attorney asking leave of court to withdraw not misrepresent to the court or to the client the true reason for his or her request to withdraw.

40. Illinois law provides that, although a violation of the Illinois Rules of Professional Conduct does not necessarily constitute legal malpractice, it does necessarily constitute evidence of legal malpractice if the violation adversely affects the client's interests. Contrary to the assertions of the motion court to which this case is assigned, a complaint for legal malpractice therefore cannot be dismissed for failure to allege evidence of legal malpractice if the facts alleged in the complaint, accepted as true, constitute a violation of the Illinois Rules of Professional Conduct.

41. *Black's Law Dictionary* defines the word "fraud" as:

> An intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression of the truth, or suggestion of what is false, whether it be by direct falsehood or innuendo or by speech or silence, word of mouth, or look or gesture.

42. *Merriam-Webster's Collegiate Dictionary, Tenth Edition*, defines the word "scheduled" as, "to appoint, assign or designate for a fixed time". The contention of the motion court assigned to this matter notwithstanding, the phrase "scheduled trial date," which appears in this complaint and earlier versions of it, therefore is distinct from the phrase "the date of trial" or any similar phrase.

43. The word "scheduled" is a common English-language word, and Mann is entitled to use it in this complaint to assert a true and verifiable fact -- that the underlying lawsuit had a scheduled trial date of June 4, 1990 -- free of any accusation by the court that she deliberately mislead it by her use of the phrase. This is particularly so inasmuch as this complaint and its predecessors explicitly distinguish between the original scheduled trial date

and the date that the trial actually began, and in fact allege damages as a result of precisely that difference in time.

44. Mann is entitled to have this lawsuit litigated by the parties and their counsel, rather than by the court in what amounts to *sua sponte* motions and rulings. Mann further is entitled to equal treatment under the law, notwithstanding her status as a *pro se* plaintiff.

45. Section 5/2-1115 of *The Illinois Code of Civil Procedure* states:

> In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages should be allowed.

46. Section 5/2-1115 of *The Illinois Code of Civil Procedure* was passed into law as part of a comprehensive body of law that, with the single exception of the word "legal" in the one sentence quoted in the paragraph immediately above, addressed only issues concerning medical and other healing arts malpractice lawsuits.

47. The purpose of that body of legislation, as stated in the legislative hearings considering it just prior to its enactment, was to address the issues of a claimed crisis of financial costs and public access relating to the healing arts.

48. No legislative hearings occurred to establish any such crisis concerning financial costs and public access relating to lawyers or legal services, and, in fact, the recorded legislative history of the legislation includes no such allegation or debate concerning lawyers, legal representation and any such alleged crisis.

49. No legislation exists in the State of Illinois that bars the award of punitive or exemplary damages for professional malpractice, other than for legal malpractice, for which no crisis of financial costs or public access was both asserted and minimally supported in legislative hearings addressing the matter. The bar to the award of punitive or exemplary damages in legal malpractice lawsuits was simply piggy-backed onto the bar against such awards in healing arts lawsuits.

50. As such, the inclusion of the bar against punitive or exemplary damages, as quoted above, violates several provisions of the Illinois State Constitution, including the guarantees of due process of law, of equal protection of the law and the requirement that each statute pertain to only a single subject.

51. The statements contained in paragraphs 1 through 50, above, are not intended as an exclusive list of facts, definitions and rules of law pertinent to this lawsuit.

12

## PART I - THE HINSHAW DEFENDANTS
## COUNT I - NEGLIGENCE

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count I.

52. At all times mentioned in this Third Amended Complaint, the Defendants Leech, Holloway and Mrozek were attorneys duly licensed by the State of Illinois and were engaged in the practice of law as partners in the Chicago, Illinois office of the law firm now known as Hinshaw & Culbertson, formerly known as Hinshaw, Culbertson, Moelmann, Hoban & Fuller ("Hinshaw").

53. At all times relevant to the allegations in this lawsuit against him and Hinshaw, defendant William J. Holloway ("Holloway") was a shareholder in Hinshaw and headed the department in which Leech practiced within that law firm.

54. At all times relevant to the allegations in this lawsuit against him and Hinshaw, defendant Donald L. Mrozek ("Mrozek") was a shareholder in Hinshaw and was the managing partner and head of the executive committee at that law firm.

55. During at least some of the time period relevant to the allegations in this lawsuit against Hinshaw, each of the other persons named as defendants in this lawsuit, with the exception of Anthony S. DiVincenzo (and the law firm of Campbell & DiVincenzo), were partners at Hinshaw.

56. In February, 1987, Mann formally retained Leech and Hinshaw to represent her as her counsel in the underlying lawsuit identified above. On or about February 27, 1987, Leech, in accordance with the general and local Federal Rules of Civil Procedure pertinent to counsel retained to represent litigants in federal court through trial of the matter, filed an attorney's general appearance and an appearance as trial counsel on behalf of Mann.

57. In federal court where the underlying lawsuit was pending, attorneys' appearance forms distinguish between an attorney's general appearance and an attorney's appearance as

trial counsel. In filing his appearances with the court, Leech represented to the court that he was Mann's general counsel and trial counsel in that lawsuit.

58. The appearances that Leech filed in that lawsuit accurately reflected Leech's agreement with Mann at the time the appearances were filed with respect to Leech's obligations as Mann's counsel in that lawsuit.

59. Those appearances remained on file in that lawsuit and remained active and unamended and not superseded and not withdrawn in whole or in part, and remained the only attorney's general appearance and trial attorney's appearance in force in that lawsuit on behalf of Mann, until May 17, 1990.

60. Before Leech agreed to represent Mann in that lawsuit, Leech obtained the formal authorization of the Hinshaw partnership to represent her in the matter.

61. On occasion, members of Hinshaw other than Leech performed work on Mann's behalf on that lawsuit.

62. Mann's agreement with Leech and Hinshaw required Mann to pay Hinshaw an hourly fee for the work performed by Leech and other members and employees of Hinshaw. During the entire period of Leech's and Hinshaw's representation of Mann, Hinshaw (rather than Leech) submitted the bills for attorneys' fees to Mann.

63. During the entire period of Leech's and Hinshaw's representation of Mann, Mann paid directly to Hinshaw the fees and costs billed to her for the work performed on her behalf by Leech and other members and employees of Hinshaw.

64. During the entire period of Leech's and Hinshaw's representation of Mann, Mann paid promptly and in full all fees and costs billed to her for the work performed on her behalf by Leech and other members and employees of Hinshaw.

65. The original agreement between Mann, on the one hand, and Leech and Hinshaw, on the other, contemplated that the attorneys' fees she would pay would include compensation for Leech's time in learning the intricacies of her lawsuit in sufficient detail to enable him to competently represent her at trial of the matter.

66. The fees that Mann paid to Hinshaw did include compensation for Leech's time in learning the intricacies of that lawsuit in sufficient detail to enable him to competently represent her at trial of the lawsuit.

67. In all, Mann paid Hinshaw approximately $80,000 in fees and costs relating to Leech's and Hinshaw's representation of her in that lawsuit, through the time of Leech's formal withdrawal as attorney of record on Mann's behalf in that lawsuit in October, 1990;

68. Neither Leech individually nor Hinshaw ever offered or ever gave Mann any consideration, in any monetary amount or of any other sort, to amend the original agreement between them;

69. At all times mentioned in this Count, Leech, as Mann's attorney in the underlying lawsuit owed her a duty to conduct himself in accord with the standards of conduct that the laws of the State of Illinois and the Rules of the Illinois Supreme Court place upon all attorneys and other fiduciaries who are subject to the laws of the State of Illinois;

70. On or about April 3, 1990, he notified Mann by letter that he wished to withdraw as her counsel before the scheduled trial date of June 4, 1990. The letter stated no reason for his desire to withdraw as Mann's counsel;

71. At a hearing in open court before Federal District Judge Paul E. Plunkett on September 15, 1989, Leech requested a firm and final date for the filing of the Pretrial Order and, in response, a date for the filing of the Pretrial Order was set for November 15, 1989.

72. At a hearing in open court before Federal District Judge George Lindberg on December 27, 1989, Leech requested that a trial date be set in the matter, and in response to Leech's request the trial was scheduled to begin on June 4, 1990.

73. In April, 1990, shortly after Mann received Leech's letter of April 3, 1990, Leech told Mann that he needed to withdraw as her counsel because he was having personal problems stemming from his recently initiated marital separation and impending divorce.

74. On May 2, 1990, at a conference in chambers convened at his request, Leech asked Judge Lindberg that he needed to withdraw as Mann's counsel because he was having personal problems and asked the judge to allow him to withdraw as Mann's counsel and to continue the trial date to enable Mann to retain substitute counsel.

75. On or about July 27, 1990, at a hearing in open court, Leech told the judge that his need to withdraw as Mann's counsel, and the reason for that need as he had told the judge at the May 2, 1990 conference, remained unchanged.

76. Leech did not withdraw as counsel at his own request from representation of any other client in 1990 as a result of his personal problems and purported resulting mental state.

15

77. Leech misrepresented to Mann his reason for wishing to withdraw as her counsel, and his misrepresentation induced Mann to waive her right to contest Leech's motion for leave of court to withdraw as her attorney.

78. Leech misrepresented to Judge Lindberg his reason for wishing to withdraw as Mann's counsel, and his misrepresentation induced the judge to grant Leech leave to withdraw as Mann's counsel.

79. None of the reasons provided in Rule 1.16(a) of the Illinois Rules of Professional Conduct existed at the time Leech requested to withdraw, or at the time he did withdraw, as Mann's counsel in the underlying lawsuit.

80. None of the reasons provided in Rule 1.16(b) of the Illinois Rules of Professional Conduct existed at the time Leech requested to withdraw, or at the time he did withdraw, as Mann's counsel in the underlying lawsuit.

81. In exchange for leave of court to withdraw as Mann's counsel, Leech at the May 2, 1990 conference in chambers agreed to have the judge allow the defendants two and one-half months in which to file a comprehensive motion for summary judgment, leave of court for which had been expressly and firmly denied earlier. Leech did so without the express or implied authorization of Mann.

82. On May 1, 1990, one day before Leech acted as described in the paragraph immediately above, the defendants presented two motions to the court. One moved for a continuance of the trial date in order to enable all three defendants to be present at the trial. The other was for leave of court to file a motion for summary judgment on or before May 30, 1990, notwithstanding the court's earlier order ruling that they already had waived that right. Leech received due notice of the hearing on those motions, but he did not appear at the hearing, leaving Mann unrepresented at the hearing.

83. At the hearing on May 1, 1990, the judge denied the defendants' motion for a continuance of the trial date and reaffirmed that the trial would begin on June 4, 1990. The judge also initially, and in firm language, denied the motion for leave to file the summary judgment motion, reversing himself only after the defendants' counsel stated that Leech agreed that summary judgment in the case would be appropriate. The judge then allowed the defendants ten days, until May 11, 1990, to file their summary judgment motion, and restated that the trial would begin on June 4, 1990.

16

84. Judge Lindberg reversed his rulings of one day earlier solely because Leech asked him to continue the trial date and because Leech agreed, in exchange, to have the judge allow the defendants to file their summary judgment motion.

85. At the May 2, 1990 conference in chambers, Leech was granted leave to withdraw as Mann's attorney. The trial date was continued for three months, until September 10, 1990.

86. Shortly after the May 2, 1990 conference, Leech misrepresented to Mann, orally and then in writing, that the judge had ordered Mann to retain substitute counsel by May 17, 1990 or he would reinstate the trial date of June 4, 1990 and Mann would be forced to represent herself at trial. As a result, Mann retained counsel on May 16, 1990 and paid him a $15,000 retainer fee. Mann asked that counsel to withdraw from the case when a day before the Pretrial Order was due that counsel had read none of the depositions in the case and knew little about the case. No portion of the $15,000 retainer fee was refunded.

87. Subsequently, the trial date was continued several more times, but always for relatively short periods. Leech formally withdrew as Mann's counsel in October, 1990.

88. Leech's intricate knowledge of the case, obtained at significant financial expense to Mann during the preceding three-plus years, foreseeably made his representation of her at trial irreplaceable. He withdrew his representation of Mann without making any provisions for her to recover from the loss of his representation and with knowledge that the brief initial continuance of the trial date would make it difficult for her to retain competent counsel who could expend the time necessary to try the case competently.

89. Leech and Hinshaw charged Mann attorneys' fees in the amount of approximately $4,000 for Leech's time relating to his withdrawal as Mann's counsel, including fees for his time at the May 2, 1990 conference in chambers and fees for his time in telling Mann that he did not appear on her behalf at the May 1, 1990 hearing.

90. As Mann's fiduciary, Leech was entitled neither to serve his own interest in contravention of Mann's interest nor to charge her attorney's fees for his time in doing so.

91. The defendants filed their summary judgment motion on July 16, 1990. The motion was granted in significant part, without the statement of justification required by the published rules of the Court of Appeals for the Seventh Circuit, in August, 1991. On appeal, the court remanded the case for explanation by the trial judge. The explanation, filed in July, 1994, cited to nothing argued by the defendants in their motion, and constituted *sua sponte*

17

summary judgments. The summary judgments were based upon inaccurate statements of the record in the case, a finding of fact (established nowhere in the record of Mann's lawsuit and contrary to fact) by an Illinois appellate court in an unrelated lawsuit against the City of Chicago to which Mann was not a party, and a ruling by an appellate panel in another federal circuit in which the determining facts were contrary to stipulated facts in Mann's lawsuit.

92. At a hearing in open court in the underlying lawsuit on September 15, 1989, at which Leech appeared on behalf of Mann, Judge Paul Plunkett, then assigned to the case, stated that the case was an inappropriate one for summary judgment and that there numerous "factual controversies" that made summary judgment inappropriate. It was at that hearing that Judge Plunkett ordered the Pretrial Order submitted on November 15, 1989. At the hearing on November 15, 1989, Judge Plunkett notified counsel that the case had been reassigned to Judge Lindberg.

93. Several of the counts remaining in Mann's operative complaint in the underlying lawsuit on June 4, 1990, the initial scheduled trial date, alleged violations of Mann's civil rights and, by federal statute, would have entitled Mann to reimbursement for attorneys' fees had she won any of them. The summary judgments eliminated all such counts that provided for a jury trial.

94. To date, Mann has paid more than $150,000 in attorneys' fees in the underlying lawsuit, much of those fees to Hinshaw.

95. The United States Court of Appeals for the Seventh Circuit has reversed district court rulings and judgments at a rate of approximately 16% in civil cases in recent years. In November, 1994, Judge Joel Flaum of that court told a bar group seminar that the judges on that bench desire to affirm district court rulings and judgments and rarely reverse those rulings and judgments; the appellant is at an automatic and distinct disadvantage. At a bar group luncheon in May, 1995 and at a seminar in the fall of 1995, Judge Richard Posner, chief judge of that court, stated that there had been some "slippage" in recent years among the federal district and circuit judges with respect to compliance with Federal Rule of Civil Procedure 56, the rule pursuant to which the motions in Mann's underlying lawsuit were brought. Summary judgments, or judgments as a matter of law, as they are now called in federal court, are granted and affirmed, Judge Posner said, although issues of material fact exist, notwithstanding that Rule 56 expressly bars this. Judge Posner's comments were

18

quoted in two local lawyers' trade journals. Mann was present in the audience at al three events and heard the comments on all three occasions.

96. The portions of the lawsuit that remained after the summary judgments were entered were tried in the fall of 1991. Mann was represented at trial by attorneys Anthony DiVincenzo and Ronald S. Adelman, the latter having joined the case approximately one month before trial. Both counsel were largely unfamiliar with the evidence available to Mann, much of it gathered by Leech, and with Mann's theories of liability. That counsel, specifically DiVincenzo, misstated in opening statement Mann's theories and the evidence she would present, failed to present several important witnesses available to her, failed to establish critical portions of her case via proper and thorough direct of examination of her, failed to introduce key deposition admissions by the defendants, failed to argue several key liability issues and failed to establish and argue most of her damages. Neither counsel was an expert in the area of employment law.

97. The jury returned verdicts in favor of the defendants and against Mann on the defamation claims against defendants Barnard and O'Hara and entered verdicts in favor of Mann and against defendant Montgomery on the tortious interference count in the amount of approximately $68,000, on the breach of contact count in the amount of approximately $73,000. The judge entered a verdict in favor of the defendants on the single count tried to the bench, a count alleging violation of what is known as "the *Shakman* decree." The parties filed cross-appeals.

98. On January 19, 1996, the United States Court of Appeals for the Seventh Circuit affirmed without comment the summary judgments entered before trial in 1991 and the bench verdict but, upon cross appeals, reversed the jury verdicts on the defamation and tortious interference counts and remanded them for retrial.

99. In July, 1997, before retrial, the defendants filed a motion for summary judgment claiming that an Illinois Supreme Court opinion released in February, 1997, in a case titled *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), amended or clarified an interpretation of a particular section of the Illinois Governmental and Governmental Employees Tort Immunity Act, specifically 745 ILCS 10/2-201, so that that statute confers immunity to the defendants in the counts remanded for retrial. The defendants had never before asserted any section of the Tort Immunity Act as a defense in that lawsuit.

19

100. On March 13, 1999, federal District Judge Wayne R. Andersen granted that summary judgment motion with respect to both remanded counts. In his Memorandum Opinion and order granting the motion, the stated unequivocally that his ruling was based entirely upon what the Illinois Supreme Court opinion in *In re Chicago Flood Litigation*. A copy of that Memorandum Opinion and Order is made a part of this complaint as Exhibit 2. The matter currently is on appeal and is scheduled for oral argument on April 23, 1999.

101. As Mann's attorney, Leech owed her a duty to act on her behalf with due care and at a level of professional competence that comports with the standard generally practiced by litigation attorneys in the Northern District of Illinois, where the underlying lawsuit was pending.

102. Leech's conduct as described in this count failed to meet the standard of care and professional conduct described in the paragraph immediately above, and his failure to do so constituted attorney negligence and legal malpractice.

103. In all respects relevant to this lawsuit, Leech, Holloway and Mrozek were acting as agents of Hinshaw.

104. Holloway, as the head of the department at Hinshaw in which Leech worked, owed Mann a duty to properly supervise Leech's conduct with respect to Mann's lawsuit and to act with the due care and the level of professional competence generally practiced by attorneys in similar roles at law firms in the Northern District of Illinois.

105. Mrozek, as the managing partner and head of the executive committee at Hinshaw, owed Mann a duty to properly supervise Leech's conduct with respect to Mann's lawsuit and to act with the due care and the level of professional competence generally practiced by attorneys in similar roles at law firms in the Northern District of Illinois.

106. These defendants' negligent conduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

107. These defendants' negligent conduct directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

    (a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

108. The injuries described immediately above would not have occurred but for the negligent conduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## COUNT II - FRAUD

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count II.

2. Mann reasserts paragraphs 52 through 108 in Count I above as paragraphs 52 through 108 of this Count II.

109. Leech deliberately misrepresented to Mann his reason for wishing to withdraw as her counsel in order to induce her to waive her right to contest Leech's motion for leave of court to withdraw as her attorney. As a direct and proximate result of that misrepresentation, Leech did induce Mann to waive her right to contest Leech's motion for leave of court to withdraw as her attorney.

110. Leech misrepresented to Judge Lindberg his reason for wishing to withdraw as Mann's counsel in order to obtain the judge's permission to withdraw as Mann's counsel. As a direct and proximate result of that misrepresentation, Leech did obtain the judge's permission to withdraw as Mann's attorney.

21

111. The true reason that Leech wanted to withdraw as Mann's counsel was so that Hinshaw could begin performing legal work for the City of Chicago, a defendant in Mann's lawsuit, and local government entities connected formally or informally with the City of Chicago and its mayoral administration. Leech's withdrawal as Mann's attorney eliminated a legal obstruction to Hinshaw's performing legal work for the City of Chicago.

112. Shortly after Leech withdrew as Mann's counsel, Hinshaw began performing substantial amounts of government bond legal work for the City of Chicago and related local government entities controlled or influenced formally or informally by the City of Chicago's mayoral administration. Before 1990, Hinshaw had never performed government bond work of any sort and had never before performed legal work for the City of Chicago or any of its related local government entities. Yet, beginning in 1990, for example, Hinshaw served as the lead bond law firm for the imminent project to rehab and restore Chicago's Navy Pier and to expand the McCormick Place Convention Center. At the time Leech told Mann and the judge he needed to withdraw as Mann's counsel, Hinshaw expected even more legal work from these entities than actually materialized.

113. The government bond work that Hinshaw has performed beginning in 1990 has proved significantly lucrative for that law firm, so much so that by 1996 that law firm employed seven attorneys to perform that work. Before 1990, Hinshaw employed no attorneys experienced in government bond work.

114. Mrozek and Holloway were aware that Leech was asking permission to withdraw as Mann's counsel in order to enable Hinshaw to accept the government bond work, and in fact encouraged Leech to do so.

115. The conduct of these defendants as described in the paragraphs immediately above constituted fraud as *Black's Law Dictionary* describes that term.

116. These defendants' intentional misconduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

117. These defendants' intentional misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

22

(b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

118. The injuries described immediately above would not have occurred but for the deliberate misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages and punitive or exemplary damages in the amount of $500,000.

## COUNT III - CONFLICT OF INTEREST

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count III.

2. Mann reasserts paragraphs 52 through 118 in Count II above as paragraphs 52 through 118 of this Count III.

119. *Black's Law Dictionary* describes the term "conflict of interest" as a "[t]erm used in connection with public officials and fiduciaries and their relationship to matters of private interest or gain to them." *Merriam-Webster's Collegiate Dictionary, Tenth Edition,* defines the term "conflict of interest" as "a conflict between the private interests and the official responsibilities of a person in a position of trust."

120. The conduct of these defendants as described in paragraphs 106 through 109 of this count constituted a conflict of interest, as described in paragraph 113 immediately above, between Mann and the Hinshaw defendants.

23

121. Illinois law provides that such conflict of interest entitles the client to a full refund of all attorneys' fees paid to the attorney and his law firm for all work performed on the matter for which they were retained.

122. These defendants' intentional or reckless misconduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

123. These defendants' intentional or reckless misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

    (a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

    (b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

    (c) the delay of several years in the final resolution of that lawsuit;

    (d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

    (e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

    (f) damage to her professional reputation.

124. The injuries described immediately above would not have occurred but for the deliberate or reckless misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages and punitive or exemplary damages in the amount of $500,000.

## COUNT IV - WILLFUL OR RECKLESS BREACH OF FIDUCIARY DUTY

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count VI.

24

2. Mann reasserts paragraphs 52 through 124 in Count III above as paragraphs 52 through 124 of this Count IV.

125. The conduct of these defendants as described in paragraphs 106 through 109 of this count constituted a willful or reckless breach of their fiduciary duty to Mann as described above.

126. These defendants' intentional or reckless misconduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

127. These defendants' intentional or reckless misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

128. The injuries described immediately above would not have occurred but for the deliberate or reckless misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages and punitive or exemplary damages in the amount of $500,000.

## COUNT V - BREACH OF CONTRACT

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count V.

2. Mann reasserts paragraphs 52 through 115 in Count IV above as paragraphs 52 through 128 of this Count V.

129. The above paragraphs in this count establish that Mann had a contract with Leech and with the other Hinshaw defendants the terms of which provided that Leech would represent Mann through trial in the underlying lawsuit and, in exchange, Mann would pay Hinshaw an hourly fee for those services. Mann always performed her part of the contract and in no way breached the contract between her and these defendants.

130. Neither Leech nor any of the other Hinshaw defendants ever offered or proffered any consideration to Mann to amend the terms of that contract.

131. The conduct of these defendants as described in this count constituted a breach of Mann's contract with these defendants.

132. These defendants' misconduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

133. These defendants' breach of their contract with Mann as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

    (a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

    (b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

    (c) the delay of several years in the final resolution of that lawsuit;

    (d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

    (e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

    (f) damage to her professional reputation.

134. The injuries described immediately above would not have occurred but for these defendants' breach of their contract with Mann as described in this count.

26

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## PART II - THE DIVINCENZO DEFENDANTS

## COUNT VI - NEGLIGENCE

NOW COMES the Plaintiff, BEVERLY B. MANN, *pro se*, and complaining of Defendants ANTHONY S. DiVINCENZO and CAMPBELL & DiVINCENZO, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count VI.

52. At all times relevant to the allegations against him in this lawsuit, Defendant Anthony S. DiVincenzo was an attorney duly licensed by the State of Illinois and was engaged in the practice of law as a partner and principal in the law firm known as Campbell & DiVincenzo, located in Chicago, Illinois.

53. Mann first met with DiVincenzo in late September or early October, 1990 to discuss the possibility of DiVincenzo and Campbell & DiVincenzo assuming the representation of her as her counsel in the underlying lawsuit.

54. During that first conversation between DiVincenzo and Mann, and in subsequent conversations between them that occurred before Mann retained DiVincenzo and Campbell & DiVincenzo as her counsel in the underlying lawsuit, Mann described in detail the nature of that lawsuit, the basis for it, the complexity of it, and the nature and extent of the evidence she had available to her for presentation at trial.

55. During that first meeting between DiVincenzo and Mann, and afterward but before Mann retained DiVincenzo and Campbell & DiVincenzo as her counsel in that lawsuit, Mann provided to DiVincenzo copies of documents that described in detail the nature, extent and complexity of the lawsuit, and the number and nature of the various counts in the Third Amended (or operative) Complaint.

56. Among those documents were the Third Amended Complaint (including approximately sixteen evidentiary documents that were included as part of that Complaint), a document titled Statement of Contested Issues filed on her behalf in 1988, a detailed witness

27

filed on her behalf along with the Statement of Contested Issues in 1988, and a lengthy and detailed Chronology of Events she had drafted for her earlier attorneys.

57. Before Mann retained DiVincenzo and Campbell & DiVincenzo as her counsel in that lawsuit, DiVincenzo represented to her that he understood the basis for each of the counts in the Third Amended Complaint and that he would try on her behalf every count in that Complaint that the court would allow her to try.

58. At the time he made the representations described immediately above, DiVincenzo was aware that the Third Amended Complaint contained numerous active counts alleging defamation and numerous counts alleging tortious interference by the defendants.

59. DiVincenzo was aware that Mann would be relying upon his representations to her as described above in this count in determining whether to retain him and his law firm, and was aware from his conversations with Mann that she would retain him and his law firm only if he agreed to try each of those counts on her behalf.

60. Mann formally retained DiVincenzo and Campbell & DiVincenzo as her counsel in the underlying lawsuit on or about October 8, 1990, and did so in reliance upon DiVincenzo's representations to her as described in this count above.

61. DiVincenzo filed his general and trial attorney's appearances on Mann's behalf in the underlying lawsuit on or about October 9, 1990, after Mann paid to Campbell & DiVincenzo a retainer fee of $5,000.

62. DiVincenzo represented Mann as her lead trial counsel during the trial of the underlying lawsuit in September and October, 1990.

63. During the months preceding trial, DiVincenzo responded on Mann's behalf to the motion for summary judgment filed on behalf of the defendants in July, 1990.

64. Shortly before trial, DiVincenzo filed a Pretrial Order on behalf of Mann pursuant to the general and local Federal Rules of Civil Procedure.

65. DiVincenzo negligently misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he never intended to present at trial any or much of the evidence available to her concerning her defamation and tortious interference counts against defendants O'Hara and Barnard;

28

66. DiVincenzo negligently misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he always intended to present at trial only evidence concerning Mann's count alleging breach of severance agreement, on which Mann early in the litigation had obtained an admission by the defendants;

67. At trial, DiVincenzo negligently failed to present much of the evidence available to the plaintiff supporting each of her remaining state-law counts other than the count alleging breach of severance agreement, and negligently failed to present important evidence available to Mann supporting her only remaining federal-law count;

68. At trial, DiVincenzo negligently failed to argue to the jury any of Mann's state-law claims other than the one alleging breach of severance agreement;

69. At Mann's request, DiVincenzo formally withdrew his appearance as Mann's counsel in early January, 1992;

70. DiVincenzo when representing Mann as her counsel in the underlying lawsuit was guilty of numerous wrongful acts or omissions, including but not limited to the following:

a. He negligently failed to submit relevant and important evidence available to Mann and in DiVincenzo's possession as part of his response on her behalf to the defendants' motion for summary judgment;

b. He negligently failed to include very substantial and important evidence in his possession, including transcripts of vast and important portions of the defendants' respective deposition testimony, as part of the pretrial order that he submitted on Mann's behalf;

c. He negligently failed to prepare properly and sufficiently for trial, among other omissions failing to read the transcripts of the defendants and of certain independent witnesses as part of his trial preparation;

d. He negligently or intentionally failed before trial to contact any or most of Mann's independent potential trial witnesses;

e. He negligently failed to submit any questions for venire *voir dire* examination;

29

f. He negligently failed during his opening statement to discuss the defamation counts and tortious interference counts against defendants O'Hara and Barnard;

g. He negligently advanced a theory of liability in his opening statement that was never a part of that lawsuit and that required specific affirmative evidence that he knew Mann did not have, and failed to advance in his opening statement Mann's actual theory of liability on that count as stated in the complaint in that lawsuit and in all other pertinent documents filed on her behalf;

h. He negligently failed to introduce into evidence numerous significant admissions contained in the deposition testimony of each of the three human defendants, including but not limited to statements directly or generally contradicting specific trial testimony given by those defendants;

i. He negligently failed to introduce into evidence for critical purposes certain documentary evidence, or to establish that the contents of a particular important document were accurate;

j. he negligently failed to present any non-party witnesses at trial to help establish liability concerning any but the count alleging breach of severance agreement, and failed even to mention the names of, and the evidence relevant to, any of the independent witnesses from whom the plaintiff had obtained relevant deposition testimony;

k. He negligently failed to present at trial most of the relevant documentary evidence that Mann had obtained the right to have access to, including a failure to present any documentary evidence of Mann's job performance or that of her former co-workers;

l. He negligently failed to present testimony and documentary evidence available to Mann to impeach the credibility of a non-party witness presented by the defendants;

m. He negligently failed to engage in any conversation with Mann regarding her own direct trial testimony before her trial testimony began;

n. He negligently failed to present any evidence, either during Mann's direct testimony at trial or during trial examination of defendant O'Hara, concerning most of the incidents relevant to the issue of Mann's relationship with O'Hara;

30

o. He negligently failed to ask Mann during his direct examination of her at trial any specific questions about most of the issues concerning her job performance, among the omissions failing to ask Mann how many cases she tried to verdict;

p. He negligently failed to during his direct examination of her at trial to lead Mann through the specifics of a critical two-hour conversation she had had with defendant O'Hara;

q. He negligently failed to present any evidence at trial to establish any damages, financial or otherwise, other than the specific amount of Mann's lost salary;

r. he negligently failed to present most of Mann's evidence concerning her efforts to obtain subsequent employment, and failed to present most of the large amount of available circumstantial evidence that the defendants were "blacklisting" Mann from employment in her profession;

s. He negligently failed to ask Mann obvious and important "follow-up" questions during his direct examination of her at trial;

t. He negligently failed to present any rebuttal witnesses or other rebuttal evidence;

u. He negligently failed in his closing argument to discuss, among other omissions, the defamation counts, failing to mention the defamatory statements and the trial admissions by those defendants indicating liability, and failed to explain the difference between the legal term "actual malice" and the non-legal term "malice";

v. He negligently failed to tell the jury in his closing argument that it could award Mann damages for injury such as consequential and emotional harm, or for anything other than lost salary until the time of trial;

w. He negligently failed to preserve the record with a motion for directed verdict on any count other than the one alleging breach of severance agreement;

x. He negligently failed in closing argument to suggest or ask the jury for any specific monetary award;

y. He negligently failed to submit jury verdict forms that itemized the monetary amounts awarded for the various elements of injury.

71. The portions of the lawsuit that remained after the summary judgments were

31

entered were tried in the fall of 1991. Mann was represented at trial by attorneys Anthony DiVincenzo and Ronald S. Adelman, the latter having joined the case approximately one month before trial. Both counsel were largely unfamiliar with the evidence available to Mann, much of it gathered by Leech, and with Mann's theories of liability. That counsel, specifically DiVincenzo, misstated in opening statement Mann's theories and the evidence she would present, failed to present several important witnesses available to her, failed to establish critical portions of her case via proper and thorough direct of examination of her, failed to introduce key deposition admissions by the defendants, failed to argue several key liability issues and failed to establish and argue most of her damages. Neither counsel was an expert in the area of employment law.

72. The jury returned verdicts in favor of the defendants and against Mann on the defamation claims against defendants Barnard and O'Hara and entered verdicts in favor of Mann and against defendant Montgomery on the tortious interference count in the amount of approximately $68,000, on the breach of contact count in the amount of approximately $73,000. The judge entered a verdict in favor of the defendants on the single count tried to the bench, a count alleging violation of what is known as "the Shakman decree." The parties filed cross-appeals.

73. On January 19, 1996, the United States Court of Appeals for the Seventh Circuit affirmed without comment the summary judgments entered before trial in 1991 and the bench verdict but, upon cross appeals, reversed the jury verdicts on the defamation and tortious interference counts and remanded them for retrial.

74. In July, 1997, before retrial, the defendants filed a motion for summary judgment claiming that an Illinois Supreme Court opinion released in February, 1997, in a case titled *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), amended or clarified an interpretation of a particular section of the Illinois Governmental and Governmental Employees Tort Immunity Act, specifically 745 ILCS 10/2-201, so that that statute confers immunity to the defendants in the counts remanded for retrial. The defendants had never before asserted any section of the Tort Immunity Act as a defense in that lawsuit.

75. On March 13, 1999, federal District Judge Wayne R. Andersen granted that

summary judgment motion with respect to both remanded counts. In his Memorandum Opinion and order granting the motion, the stated unequivocally that his ruling was based entirely upon what the Illinois Supreme Court opinion in *In re Chicago Flood Litigation*. A copy of that Memorandum Opinion and Order is made a part of this complaint as Exhibit 2. The matter current is on appeal and is scheduled for oral argument on April 23, 1999.

76. These defendants' negligent misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid DiVincenzo, Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

77. The injuries described immediately above would not have occurred but for the negligent misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## COUNT VII - WILLFUL OR RECKLESS BREACH OF FIDUCIARY DUTY

NOW COMES the Plaintiff, BEVERLY B. MANN, *pro se*, and complaining of Defendants ANTHONY S. DiVINCENZO and CAMPBELL & DiVINCENZO, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count VII.

52. Mann reasserts paragraphs 52 through 77 of Count VI above as paragraphs 52 through 77 of this Count VII.

33

78. DiVincenzo willfully or recklessly misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he never intended to present at trial any or much of the evidence available to her concerning her defamation and tortious interference counts against defendants O'Hara and Barnard.

79. DiVincenzo willfully or recklessly misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he always intended to present at trial only evidence concerning Mann's count alleging breach of severance agreement, on which Mann early in the litigation had obtained an admission by the defendants.

80. At trial, DiVincenzo willfully or recklessly failed to present much of the evidence available to the plaintiff supporting each of her remaining state-law counts other than the count alleging breach of severance agreement, and deliberately or recklessly failed to present important evidence available to Mann supporting her only remaining federal-law count.

81. At trial, DiVincenzo willfully or recklessly failed to argue to the jury any of Mann's state-law claims other than the one alleging breach of severance agreement.

82. At Mann's request, DiVincenzo formally withdrew his appearance as Mann's counsel in early January, 1992.

83. DiVincenzo when representing Mann as her counsel in the underlying lawsuit was guilty of numerous wrongful acts or omissions, including but not limited to the following:

a. He willfully or recklessly failed to submit relevant and important evidence available to Mann and in DiVincenzo's possession as part of his response on her behalf to the defendants' motion for summary judgment;

b. He willfully or recklessly failed to include very substantial and important evidence in his possession, including transcripts of vast and important portions of the defendants' respective deposition testimony, as part of the pretrial order that he submitted on Mann's behalf;

34

c. He willfully or recklessly failed to prepare properly and sufficiently for trial, among other omissions failing to read the transcripts of the defendants and of certain independent witnesses as part of his trial preparation;

d. He willfully or recklessly or intentionally failed before trial to contact any or most of Mann's independent potential trial witnesses;

e. He willfully or recklessly failed to submit any questions for venire *voir dire* examination;

f. He willfully or recklessly failed during his opening statement to discuss the defamation counts and tortious interference counts against defendants O'Hara and Barnard;

g. He willfully or recklessly advanced a theory of liability in his opening statement that was never a part of that lawsuit and that required specific affirmative evidence that he knew Mann did not have, and failed to advance in his opening statement Mann's actual theory of liability on that count as stated in the complaint in that lawsuit and in all other pertinent documents filed on her behalf;

h. He willfully or recklessly failed to introduce into evidence numerous significant admissions contained in the deposition testimony of each of the three human defendants, including but not limited to statements directly or generally contradicting specific trial testimony given by those defendants;

i. He willfully or recklessly failed to introduce into evidence for critical purposes certain documentary evidence, or to establish that the contents of a particular important document were accurate;

j. he willfully or recklessly failed to present any non-party witnesses at trial to help establish liability concerning any but the count alleging breach of severance agreement, and failed even to mention the names of, and the evidence relevant to, any of the independent witnesses from whom the plaintiff had obtained relevant deposition testimony;

k. He willfully or recklessly failed to present at trial most of the relevant documentary evidence that Mann had obtained the right to have access to, including a failure to present any documentary evidence of Mann's job performance or that of her former co-workers;

35

l. He willfully or recklessly failed to present testimony and documentary evidence available to Mann to impeach the credibility of a non-party witness presented by the defendants;

m. He willfully or recklessly failed to engage in any conversation with Mann regarding her own direct trial testimony before her trial testimony began;

n. He willfully or recklessly failed to present any evidence, either during Mann's direct testimony at trial or during trial examination of defendant O'Hara, concerning most of the incidents relevant to the issue of Mann's relationship with O'Hara;

o. He willfully or recklessly failed to ask Mann during his direct examination of her at trial any specific questions about most of the issues concerning her job performance, among the omissions failing to ask Mann how many cases she tried to verdict;

p. He willfully or recklessly failed to during his direct examination of her at trial to lead Mann through the specifics of a critical two-hour conversation she had had with defendant O'Hara;

q. He willfully or recklessly failed to present any evidence at trial to establish any damages, financial or otherwise, other than the specific amount of Mann's lost salary;

r. he willfully or recklessly failed to present most of Mann's evidence concerning her efforts to obtain subsequent employment, and failed to present most of the large amount of available circumstantial evidence that the defendants were "blacklisting" Mann from employment in her profession;

s. He willfully or recklessly failed to ask Mann obvious and important "follow-up" questions during his direct examination of her at trial;

t. He willfully or recklessly failed to present any rebuttal witnesses or other rebuttal evidence;

u. He willfully or recklessly failed in his closing argument to discuss, among other omissions, the defamation counts, failing to mention the defamatory statements and the trial admissions by those defendants indicating liability, and failed to explain the difference between the legal term "actual malice" and the non-legal term "malice";

36

v. He willfully or recklessly failed to tell the jury in his closing argument that it could award Mann damages for injury such as consequential and emotional harm, or for anything other than lost salary until the time of trial;

w. He willfully or recklessly failed to preserve the record with a motion for directed verdict on any count other than the one alleging breach of severance agreement;

x. He willfully or recklessly failed in closing argument to suggest or ask the jury for any specific monetary award;

y. He willfully or recklessly failed to submit jury verdict forms that itemized the monetary amounts awarded for the various elements of injury;

84. These defendants' willful or reckless misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid DiVincenzo, Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

85. The injuries described immediately above would not have occurred but for the willful or reckless misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages and punitive or exemplary damages in the amount of $500,000.

## COUNT VIII - FRAUD

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count VIII.

52. Mann reasserts paragraphs 52 through 85 of Count VII above as paragraphs 52 through 85 of this Count VIII.

86. DiVincenzo deliberately misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he never intended to present at trial any or much of the evidence available to her concerning her defamation and tortious interference counts against defendants O'Hara and Barnard.

87. DiVincenzo deliberately misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he always intended to present at trial only evidence concerning Mann's count alleging breach of severance agreement, on which Mann early in the litigation had obtained an admission by the defendants.

88. At trial, DiVincenzo deliberately failed to present much of the evidence available to the plaintiff supporting each of her remaining state-law counts other than the count alleging breach of severance agreement, and deliberately failed to present important evidence available to Mann supporting her only remaining federal-law count.

89. At trial, DiVincenzo deliberately failed to argue to the jury any of Mann's state-law claims other than the one alleging breach of severance agreement.

90. That at the time of his representations to Mann as described above in this count, DiVincenzo knew that he would not act in accordance with those promises.

91. The conduct described in this count constitutes fraud as defined in *Black's Law Dictionary*.

92. These defendants' fraudulent conduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid DiVincenzo, Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

93. The injuries described immediately above would not have occurred but for the deliberate misconduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages and punitive or exemplary damages in the amount of $500,000.

## COUNT IX - BREACH OF CONTRACT

NOW COMES the Plaintiff, BEVERLY B. MANN, *pro se*, and complaining of Defendants ANTHONY S. DiVINCENZO and CAMPBELL & DiVINCENZO, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count IX.

52. Mann reasserts paragraphs 52 through 93 of Count VIII above as paragraphs 52 through 93 of this Count IX.

94. DiVincenzo misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her behalf each and every count that the court allowed her to try, although he never intended to present at trial any or much of the evidence available to her concerning her defamation and tortious interference counts against defendants O'Hara and Barnard.

95. DiVincenzo misrepresented to Mann on numerous occasions before and after she retained him and his law firm as her counsel in the underlying lawsuit that he would try on her

behalf each and every count that the court allowed her to try, although he always intended to present at trial only evidence concerning Mann's count alleging breach of severance agreement, on which Mann early in the litigation had obtained an admission by the defendants.

96. At trial, DiVincenzo failed to present much of the evidence available to the plaintiff supporting each of her remaining state-law counts other than the count alleging breach of severance agreement, and deliberately or recklessly failed to present important evidence available to Mann supporting her only remaining federal-law count.

97. At trial, DiVincenzo failed to argue to the jury any of Mann's state-law claims other than the one alleging breach of severance agreement.

98. At Mann's request, DiVincenzo formally withdrew his appearance as Mann's counsel in early January, 1992.

99. DiVincenzo when representing Mann as her counsel in the underlying lawsuit was guilty of numerous wrongful acts or omissions, including but not limited to the following:

 a. He failed to submit relevant and important evidence available to Mann and in DiVincenzo's possession as part of his response on her behalf to the defendants' motion for summary judgment;

 b. He failed to include very substantial and important evidence in his possession, including transcripts of vast and important portions of the defendants' respective deposition testimony, as part of the pretrial order that he submitted on Mann's behalf;

 c. He failed to prepare properly and sufficiently for trial, among other omissions failing to read the transcripts of the defendants and of certain independent witnesses as part of his trial preparation;

 d. He willfully or recklessly or intentionally failed before trial to contact any or most of Mann's independent potential trial witnesses;

 e. He failed to submit any questions for venire *voir dire* examination;

 f. He failed during his opening statement to discuss the defamation counts and tortious interference counts against defendants O'Hara and Barnard;

 g. He willfully or recklessly advanced a theory of liability in his opening statement that was never a part of that lawsuit and that required specific affirmative

40

evidence that he knew Mann did not have, and failed to advance in his opening statement Mann's actual theory of liability on that count as stated in the complaint in that lawsuit and in all other pertinent documents filed on her behalf;

h. He failed to introduce into evidence numerous significant admissions contained in the deposition testimony of each of the three human defendants, including but not limited to statements directly or generally contradicting specific trial testimony given by those defendants;

i. He failed to introduce into evidence for critical purposes certain documentary evidence, or to establish that the contents of a particular important document were accurate;

j. he failed to present any non-party witnesses at trial to help establish liability concerning any but the count alleging breach of severance agreement, and failed even to mention the names of, and the evidence relevant to, any of the independent witnesses from whom the plaintiff had obtained relevant deposition testimony;

k. He failed to present at trial most of the relevant documentary evidence that Mann had obtained the right to have access to, including a failure to present any documentary evidence of Mann's job performance or that of her former co-workers;

l. He failed to present testimony and documentary evidence available to Mann to impeach the credibility of a non-party witness presented by the defendants;

m. He failed to engage in any conversation with Mann regarding her own direct trial testimony before her trial testimony began;

n. He failed to present any evidence, either during Mann's direct testimony at trial or during trial examination of defendant O'Hara, concerning most of the incidents relevant to the issue of Mann's relationship with O'Hara;

o. He failed to ask Mann during his direct examination of her at trial any specific questions about most of the issues concerning her job performance, among the omissions failing to ask Mann how many cases she tried to verdict;

p. He failed to during his direct examination of her at trial to lead Mann through the specifics of a critical two-hour conversation she had had with defendant O'Hara;

41

q. He failed to present any evidence at trial to establish any damages, financial or otherwise, other than the specific amount of Mann's lost salary;

r. he failed to present most of Mann's evidence concerning her efforts to obtain subsequent employment, and failed to present most of the large amount of available circumstantial evidence that the defendants were "blacklisting" Mann from employment in her profession;

s. He failed to ask Mann obvious and important "follow-up" questions during his direct examination of her at trial;

t. He failed to present any rebuttal witnesses or other rebuttal evidence;

u. He failed in his closing argument to discuss, among other omissions, the defamation counts, failing to mention the defamatory statements and the trial admissions by those defendants indicating liability, and failed to explain the difference between the legal term "actual malice" and the non-legal term "malice";

v. He failed to tell the jury in his closing argument that it could award Mann damages for injury such as consequential and emotional harm, or for anything other than lost salary until the time of trial;

w. He failed to preserve the record with a motion for directed verdict on any count other than the one alleging breach of severance agreement;

x. He failed in closing argument to suggest or ask the jury for any specific monetary award;

y. He failed to submit jury verdict forms that itemized the monetary amounts awarded for the various elements of injury;

100. Mann performed all of her contractual obligations to these defendants and in no way breached the contract between them.

101. The conduct of these defendants as described above in this count constitutes a breach of their contract with Mann.

102. These defendants' breach of contract as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

(b) the loss of reimbursement to her for the attorneys' fees she paid DiVincenzo, Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) (e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

103. The injuries described immediately above would not have occurred but for the breach of contract by these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

Respectfully submitted,

Beverly B. Mann
Plaintiff *pro se*
7261 North Campbell Avenue
Chicago, Illinois 60645
(312) 465-4587

## STATEMENT OF THE CASE

This lawsuit dates back well more than a decade and arises largely from the political infighting among factions of the City of Chicago Democratic Party that began *en force* during the City's mayoral primary election campaign in early 1983.

Beverly Mann is an attorney who in August, 1979, was hired at the behest of the City's mayor at the time, Jayne Byrne, as an assistant corporation counsel in the City's Law Department. In February, 1983, Mayor Byrne was defeated by Harold Washington for renomination as the Democratic Party's mayoral candidate. In September, 1984, City Corporation Counsel James Montgomery, appointed by Mayor Washington upon the latter's inauguration in April, 1983, discharged Mann from her City employment.

Mann filed this lawsuit in December, 1984. At its heart are allegations that Montgomery and his chief assistant, defendant Jayne Barnard, used what they acknowledged were untrue statements about Mann by O'Hara to force Mann's discharge in order to further their own personal agenda: the political patronage interests of the City administration of Harold Washington.

Mann alleges that O'Hara's motives were two-fold: they were gender-based and based upon his desire to show politically fidelity to the Washington administration in order to keep his own job.

She alleges also that the defendants, particularly Barnard, acted to blacklist her from obtaining legitimate and paid employment as an attorney, an effort that proved fully successful during the nearly two-year period after her discharge in which she sought continuously and unsuccessfully in both the private and public sectors for such employment, interviewing with 44 prospective employers and receiving offers of employment that quickly were withdrawn.

Mann's final complaint, the Third Amended Complaint, was filed on October 31, 1985. The counts at issue in these appeals are identified above. They allege:

1. violation of her First Amendment right to free political association (Count II);
2. defamation (Count VIII);
3. violation of Fourteenth Amendment substantive due process guarantees (Counts III, IV, V and VI);
4. tortious interference with advantageous economic relationships (Count XI);

*EX XII.  1*

5. denial (by virtue of gender-based discrimination) of the Fourteenth Amendment equal protection guarantee (Count VII);

6. violation of 42 USC § 2000e *et seq*. (Count XIII, filed supplementally on June 3, 1986).

These appeals come after summary judgment was entered upon remand in 1996 for retrial of the defamation and tortious interference counts. The trial occurred in 1991.

## STATEMENT OF FACTS

Beverly Mann was hired in August, 1979, by the City of Chicago as an assistant corporation counsel at the behest of Jane Byrne, the City's mayor at the time, with whom she had a personal association; Mann's father was a longtime friend and colleague of Jay McMullen, Jane Byrne's husband. (Tr. 683-86.) She was assigned to the Law Department's Torts Division, where she worked until October 1, 1984, when she was discharged from employment with the City. (Tr. 684; 687.)

Mann's only immediate supervisor was Timothy O'Hara, chief of the Torts Division. (Tr. 251.) O'Hara was a Law Department employee of long standing, hired during the early years of the administration of the late Mayor Richard J. Daley. (Tr. 251.)

The Torts Division represented the City and its employees as defendants in tort and civil rights lawsuits pending in Illinois state court. (Tr. 53.)

Mann was assigned a caseload consisting of 500 to 600 cases pending in the Law Division of the Circuit Court of Cook County. (Tr. 255-56; 690.)

The Torts Division throughout Mann's employment there was severely understaffed in attorneys and support staff. Eventually, the caseload per attorney decreased because the number of attorneys in the Division increased, but, as the defendants testified, the office remained severely understaffed. (Tr. 59, 64; 258.)

Its attorneys were assigned their respective caseloads based solely upon the last one or two digits of the court file number of the case. (Tr. 690-91.) As a result of this lottery-like system, and of the huge number of cases each attorney was assigned, each attorney's caseload consisted of a range of Law Division cases that varied broadly in complexity and in seriousness of the injury claimed. (Tr. 256.)

Each attorney handled, for instance, some cases that sought compensation for minor injury and some that sought compensation for death or catastrophic physical

2

injury. O'Hara testified that the cases were "sometimes worth nothing, sometimes worth millions." (Tr. 256.)

Each attorney alone was responsible for all but one aspect of the litigation. (Tr. 257; 271-74.) The single exception was that he, not the attorney assigned the case, handled most of the settlement conferences; only O'Hara had the authority to settle cases for more than $1,000. (Tr. 252; 257; 274-77.)

During the Byrne administration (and prior), there was no formal job performance evaluation system in place in the Law Department. (Tr. 69-70; 693.) In September, 1983, however, the Law Department initiated a formal written job performance evaluation process. (Tr. 305; 357; 492.)

. . .

In his testimony, O'Hara was complimentary of Mann's ability as an attorney and of her competence in her job, to wit:

1. When he first met Mann in 1979, he thought she was articulate and intelligent, and that his opinion of her never changed during Mann's career in the Law Department; (Tr. 254.)

2. He thought Mann had "a good legal mind" and "analyzed facts pretty well."; (Tr. 369.)

3. Her litigation strategy was "excellent"; (Tr. 369.)

4. Her assigned cases always were properly prepared for trial; (Tr. 318.)

5. She always had the necessary investigations completed in the cases assigned to her; (Tr. 470.)

6. Default judgments were entered on cases assigned to other Torts Division attorneys but that he could not recall any entered in cases assigned to Mann; (Tr. 323.)

7. He thought Mann was "a pretty good writer" (Tr. 369) and termed her ability in legal writing as a "strength"; (Tr. 447.)

8. She "did fairly well" on dispositive pretrial motions. (Tr. 447.)

9. That he knew she "had good results" at trial, "better than average" results at trial. (Tr. 287.)

10. Judging from her results at trial she "didn't do badly" in picking juries. (Tr.

3

286-87.)

11. All Mann's trials saved the City money because Mann either obtained "not
    guilty" verdicts for the City or verdicts for less than the plaintiff's final
pretrial
    settlement demand. (Tr. 316-17.)  (He did not challenge Mann's own
    representations of her trial record, which described favorable results for the
City.
    (Tr. 704.)

12. Every case assigned to Mann that was not tried or disposed on pretrial motion
    was settled for a monetary amount that he, O'Hara, regarded as fair and
    reasonable compensation in light of the facts in the case. (Tr. 288-89.)

13. That he told Mann on at least one occasion that she had done a "masterful"
    job
    in her handling of a case. (Tr. 361.)

14. That he had praised Mann's ability as an attorney and her competence in her
    job
    to a number of other Torts Division employees. (Tr. 363-64.)

15. That in response to a Request to Admit Facts in this lawsuit he gratuitously
    added a comment that in his opinion Mann had some ability as an attorney
and
    was competent in her job. (Tr. 368-369.)

16. He dissuaded her on several occasions from transferring to another division
    within the Law Department, and dissuaded her from resigning from the Law
    Department.  (Doc. # 321 at p. 9, O'H. dep. at 10.)  (When asked about this
    under cross-examination at trial, his counsel objected, asserting that it was
    irrelevant, and the objection was sustained.) (Tr. 360-61.) His deposition
    testimony reads:

    Q. Did you on occasions when [Mann] requested transfer [to another
       division
       within the Law Department], did you advocate to any of your superiors
       that she not be transferred or that she —

4

A. No. I counseled her against transferring.

Q. Do you recall when you did that?

A. It was on a number of occasions when she threatened to quit. She discussed transferring when she discussed all sorts of other things.

(Doc.
   # 321 at p. 9, O'H. dep. at 10.)

He did not criticize Mann's handling of any of the many hundreds of cases assigned to her during her five-year employment there, and did not criticize the result in any of those cases. Shown entries of some of Mann's jury verdicts as they were described in the Cook County Jury Verdict Reporter (Plf. Ex. 43), O'Hara did not dispute the printed results and stated that the results were excellent. (Tr. 332-38.) He also described Mann's opposing counsel in those trials as having reputations as excellent trial attorneys. (Tr. 332-38.)

The defendants as a group acknowledged in their responses to Mann's Requests to Admit Facts (Doc. # 321):

1. that no case assigned to Mann was disposed for more than $88,000; only two cases assigned to Mann were disposed for more than $50,000, one for a broken hip injury and the other for a broken neck injury; no more than seven or eight cases assigned to Mann were disposed for more than $25,000;

2. that Mann tried five cases to jury verdict, obtaining three "not guilty" verdicts and two verdicts below the final pretrial demand as listed in the Cook County Jury Verdict Reporter;

3. that in all cases assigned to Mann that were settled, the settlement amount was within the value of the case as determined by her supervisors;

4. that O'Hara believed that Mann was bright and had a good legal mind;

5. that O'Hara had commented to five other Torts Division employees identified by name that Mann had ability and competence as an attorney;

6. that O'Hara thought Mann's performance in a particular case, the *Jackson* case, was "great."

5

O'Hara testified that during the years he and Mann worked together, he "liked" Mann. (Tr. 371.)

One incident, discussed at trial, concerned Mann's submission of her resignation from the Law Department in January, 1983, shortly before the mayoral primary election, when, upon O'Hara's recommendation, she was given an annual salary raise of only 5% instead of the 10% pay raise that every other Torts Division attorney received. (Tr. 359.) Mann testified that, in response to the submission of her resignation, O'Hara requested from the corporation counsel, Stanley Garber, a 15% annual pay raise for Mann in exchange for her promised withdrawal of her resignation at his request, and that O'Hara phoned her at home on a Saturday morning to tell her so. (Tr. 696.)

O'Hara acknowledged at trial that when Mann submitted her resignation, he counseled her not to resign, and, as quoted above, that he had done so on other occasions as well. (Tr. 360.) This notwithstanding, O'Hara testified that he told Garber:

You know, Stanley, I think she's earning more than what she produces, but if you want to if you're getting pressure, if you want to give her a pay raise, you have to live with it, not me. (Tr. 359.)

Both Mann and O'Hara testified that during one of their meetings in January, 1983, about the pay raise matter, he said he had recommended only the 5% pay raise for her because he thought she had "no humility." (Doc. # 321 at p. 2; Tr. 696; 1056.) O'Hara testified that he indeed had singled out Mann as the only Torts Division attorney to receive a lower-percentage annual pay raise than the others and that he did so because he thought she lacked humility.

Asked whether he had used the precise word "humility" in conversation with Mann about the pay raise matter, he said:

It was my word that I used. She should learn to be a little humble. (Doc. # 321 at p. 2.)

Among the attorneys for whom O'Hara did recommend annual 10% pay raise in January, 1983, was an attorney named John Dugan, whom O'Hara described approvingly in a written job performance evaluation of him in September, 1983, as "pridefully

6

boastful". (Plf. Ex. 15.)

Mann also testified that at that January, 1983, meeting, with O'Hara, he told her he had denied her a merit pay raise also because she didn't "need the additional money." (Tr. 696; 1056.) Mann, in fact, was paid less than the male attorneys in the Torts Division with similar tenure and similar length of practice experience, including Dugan, who was hired as an assistant corporation counsel a few months after Mann shortly after he received his law license. (Doc. # 321, Plf. Ex. 6.)

Mann withdrew her resignation after O'Hara phoned her and told her he had obtained an additional 10% pay raise for her.[1] (Tr. 697.)

• • •

Montgomery was a long-time acquaintance of Harold Washington and had served as Washington's attorney in pre-election litigation. (Tr. 48.) Almost immediately upon his appointment as acting corporation counsel in April, 1983, he said, he decided to hire Jayne Barnard to serve as the personnel director for the Law Department, with the formal title of deputy Corporation counsel. (Tr. 47, 49.) Barnard's husband, John Tucker, a partner at the law firm of Jenner & Block, was his long-time friend and that he interviewed and hired Barnard in response to a recommendation to him in a letter he received from Tucker on Montgomery's first day as acting corporation counsel. (Tr. 47-50.)

Montgomery neither interviewed nor considered anyone but Barnard for the job before hiring her. (Tr. 47-50.) When he interviewed her for the job, he did not ask her any questions about her work experience (at Jenner & Block), and that when he hired her he knew little about the nature of her law practice or the extent, if any, of her experience in personnel management. (Tr. 240-41.)

Barnard's appointment became effective on August 1, 1983. (Tr. 49.)

Barnard during her eight years as an associate and partner at that firm was a

---

[1] The district judge in his Findings of Fact and Conclusions of Law filed in November, 1991, advanced a version of this incident that does not comport with the testimony of *anyone*, plaintiff or defendant. (Garber himself did not testify.) The judge "found", inexplicably, that it was Mann's *father* who requested the pay raise from Garber, a misstatement.

litigation attorney who tried one jury case to verdict. (Tr. 485; 604.) She had little experience in personnel management. (Tr. 483-84.)

Shortly after he became acting corporation counsel, Montgomery began retaining the firm of Jenner & Block to represent the City in a substantial amount of legal work, and that the City paid that law firm hundreds of thousand of dollars in legal fees during Montgomery's less than three-year tenure as head of the Law Department. (Tr. 52.) During his tenure as corporation counsel and when that law firm was serving as outside counsel to the City, he spoke with Jerold Solovy, then managing partner at Jenner & Block, about a possible future job for himself at that law firm. (Tr. 52-53.)

· · ·

Montgomery throughout his tenure as corporation counsel advised and assisted Mayor Washington and his cabinet on political issues. He spent much time addressing problems created by "Council Wars," the news media's (and Montgomery's) term for the hostilities between the Washington administration and its vocal political opponents. (Tr. 42.)

As corporation counsel, he supervised some members of Washington's political staff and the City's outside counsel in the negotiation of the second of two consent decrees in what is known as the *Shakman* litigation (Tr. 185-87). The decrees circumscribe the right of City of Chicago administrations to hire and discharge employees based upon the employees' formal or informal political affiliations.

Asked whether Mann's job was among those to which the Decree expressly afforded protection, Montgomery answered, "Absolutely." (Tr. 187.)

He also said that Mann's job was not dependant for its competence upon political concerns or affiliations. (Doc. # 321 at p. 13.)

Montgomery in October, 1984 planned to present a speech titled "Patronage and Political Dismissals" at an out town meeting of the National Association of Municipal Lawyers. (Tr. 191; Plf. Ex. 8.) The final draft of this speech listed Montgomery as its author (Plf. Ex. 8) but, he said, he did not actually author the speech; he said he ordered it ghostwritten by a lawyer assigned to either the Law Department's Labor Division (charged with defending the City and its officials in employment related litigation) or the Appeals Division. (Tr. 190-91.)

8

The speech advises, in a section titled, "Strategy for a Public Employer Where an Employee Alleges His or Her Discharge Infringed First Amendment Freedom of Association and Speech":

> As a practical matter, a public employer should never admit to discharging an employee solely for his or her political beliefs and should advise supervisors to keep quiet. (Plft's Ex. 8 at p. 22.)

Montgomery said he never actually gave the speech. He said he planned to present it at the meeting but he became ill and did not make the out-of-town trip. (Tr. 199-200.) Instead he had one of his deputies who would be attending the meeting to present it in his stead. (Tr. 200.) He said he never read the speech until after the meeting at which it was to be given and that he had planned to read the speech for the first time on his flight to the meeting. (Tr. 201.)

Several months later, in an interview with *Chicago Tribune* reporter Douglas Franz published in May, 1985, Montgomery was asked about the issue of political patronage. He conceded in his testimony having said during that interview, as reported in the article:

> You engage people who are known to you, whose confidence is known to you. I don't know that it would really be a wise thing for any politician to hire people who are not in any way aligned politically to him. That would be suicide. (Tr. 204, Plf. Ex. 9; Doc. # 321 at p. 13, Plf. Ex. 8.)

He also admitted that he never discouraged political referrals for the hiring of employees during his tenure corporation counsel, provided that the prospective employee met the standards for hiring in the Law Department. (Tr. 46.)

He said he knew that every Law Department employee hired during previous City administrations was hired at the recommendation of a political "sponsor" connected with the administration that hired the employee. (Tr. 247.) He said that as corporation counsel he had access to information that would identify the political sponsor of each Law Department employee; the information was contained in the personnel file of each Law Department employee and the personnel files were kept in a drawer in his office, he said.

(Tr. 210-11.)

He said he knew there was a "sponsorship" letter from Jay McMullen in Mann's personnel file, and he said he would review an attorney's personnel file when the attorney came to his attention for any reason. (Tr. 210-11.)

During the ten months before Mann was discharged, Montgomery and Barnard hired several attorneys for the Torts Division when no openings existed in that Division. (Tr. 210.) Montgomery said that he and Barnard considered the Torts Division one of the most desirable in the Law Department for ambitious people because it offered valuable litigation experience that would be very marketable elsewhere. (Tr. 210.)

The newly hired attorneys were promised transfer to the Torts Division when a vacancy occurred. Meanwhile, they bided their time in less desirable divisions such as traffic court and municipal prosecutions court. (Tr. 209; Plf. Ex. 6.)

. . .

Immediately upon Barnard's employment in August, 1983, Montgomery directed her and another subordinate, First Deputy Corporation Counsel Robert Retke, to develop a system of written attorney performance evaluations. The system was in place by August 31, 1983. (Tr. 69-70.)

The new attorney evaluation procedure was to entail three steps. (Tr. 496.)

First, each division chief was to complete a printed attorney evaluation form, which Barnard provided to them, concerning each subordinate attorney in the respective division chief's division. (Tr. 495-96.) The printed form, which was the same for all attorneys in all divisions, listed ten categories of job performance under the heading "Duties." The categories were, in the following order: legal research; writing; litigation strategy and tactics; pretrial preparation; brief writing; oral argument; commercial drafting; ordinance drafting; and negotiations. (Jt. Ex. 1 at p. 2.)

The form then listed 14 categories under the heading "personal characteristics." (Jt. Ex. 1 at p. 3.)

The evaluation form defined the rating scale as:

> 1. Inadequate - Performance consistently falls short of basic professional standards.

10

2. Must be monitored - Performance sometimes falls short of basic professional standards. Requires close supervision.

3. Satisfactory - Performs competently under routine circumstances.

4. Good - Always performs competently. Occasionally does exceptional work.

5. Excellent - Performance consistently is of the highest possible quality.

N/A - Not applicable to attorney's current job duties.

N/O - Not observed.

(Jt. Ex. 1 at p. 1.)

The division chiefs were instructed to rate their subordinate attorneys in each of the categories listed on the form unless the category was not applicable to the attorney's job, or unless the division chief had not observed the attorney's performance in the category. (Tr. 494-95.)

The evaluation form also included a brief series of questions and a section for narrative comments by the division chief about the attorney being evaluated. (Tr. 309-10.)

Second, the individual attorney being evaluated was to complete a printed self evaluation form given to the attorney. (Tr. 496.)

Third, the division chief and the individual attorney were to meet and exchange their respective evaluation forms and discuss the evaluations. At the end of the meeting, the division chief was to write an evaluation "checklist". (Tr. 406; 496.)

After these steps were completed, the division chiefs were to submit all these evaluation documents to Barnard, who would review them and then submit them to Montgomery. (Tr. 498.)

In the 1983 evaluations, O'Hara did not rate the attorneys in all the "Duties" categories that were applicable to their job, but he evaluated each attorney in the same categories as the other attorneys. (Tr. 276-79; 301; Jt. Ex. 1.)

Among the categories in which he did not rate the attorneys in 1983, and instead checked the "Not Applicable" option on the form, were "Legal Research." "Writing," and

11

"Brief Writing." (Tr. 299; Jt. Ex. 1.) Neither did he rate the attorneys on "Oral Argument," a significant part of Law Division motion practice, and instead checked the "Not Observed" option. (Tr. 278; Jt. Ex. 1.)

O'Hara rated Mann and the other attorneys in only three "Duties" categories: "Litigation Strategy and Tactics;" "Pretrial Preparation;" "Trial." He did evaluate all the attorneys in all but one of the "Personal Characteristics" categories.

In the "Duties" section, in the "Litigation Strategy and Tactics" and "Pretrial Preparation" categories, O'Hara rated Mann a "3". In the "Trial" category, he rated her a "2".

In the "Personal Characteristics" section, he rated her: "1" in "ability to handle pressure;" "2" in "self-confidence;" "2" in "dependability/responsibility;" "2" in "willingness to accept supervision;" "2" in attendance and promptness;" "3" in "practicability/common sense;" "3" in "willingness to take on additional work"; "3" in "initiative/self starter;" "3" in "ability to deal effectively with others;" "3" in "productivity;" "4" in "creativity and ingenuity;" "4" in "attention to detail;" "Not Observed" in "timeliness". (Jt. Ex. 1 at p. 3.)

In the space provided on the last page of the form for narrative comments, O'Hara wrote:

> Attractive, very intelligent attorney. Seems to have missed out on one step (Can't put my finger on what it is). Wants to succeed but won't take the hard risks? Should be able to effectively help our office. Takes good depositions. (Jt. Ex. 1 at p. 4.)

Mann testified that in her conference with O'Hara about the evaluations, she strenuously objected to O'Hara's evaluations of her and told him that they contradicted her tangible and verifiable record as well as the comments about her job performance that O'Hara had made to her and to others. (Tr. 702-03.) She testified that during the conference, O'Hara told her repeatedly that he had been assured that the evaluations were "not going to be used for anything." Mann responded, "Tim, you are handing people an evaluation of me that says I'm an incompetent lawyer," and that O'Hara replied, "Beverly, you do make mountains out of molehills." (Tr. 709.)

Mann testified in her deposition in April, 1985, that at the conference, O'Hara handed her a copy of the evaluation and watched her read it. When she read the narrative portion, which began with the comment "Attractive," O'Hara said he thought she was very attractive. She testified in her deposition that during the course of that conference, which lasted approximately two hours, O'Hara made that statement to her three times.

O'Hara submitted a written evaluation of every Torts Division attorney, but addressed the physical appearance only of Mann in the narrative section of those evaluations. (Plf. Ex. 15.)

O'Hara asked Mann to sign the evaluation form, telling her she was required to do so in order to acknowledge that they had had the required evaluation conference. (Tr. 708.) He submitted his written evaluations of the Torts Division attorneys, including Mann, to Barnard. His ratings of Mann were among the lowest he submitted for Torts Division attorneys. (Tr. 409.)

. . .

O'Hara admitted that the categories, "Legal Research." "Writing," and "Brief Writing", were a part of litigation practice in the Law Division courts and indeed were a part of Torts Division practice. (Tr. 278.) Asked why, then, he did not rate Mann in those categories, particularly inasmuch as he had conceded that she excelled at them, he responded that, had he rated Mann in "Legal Research" or "Writing," he would have had to rate the other attorneys in those categories as well.

He did not want to do so, he said, because it would have made the other attorneys look like "dunces". (Tr. 299.)

He said he rated Mann a "2" in the trial category because he had had complaints about her from judges. (Tr. 291.) One judge who O'Hara said had complained to him about Mann was Judge Nathan Englestein, who was not a trial judge but an assignment judge in the Law Division (Tr. 296.) Judge Englestein's complaint, according to O'Hara: that Mann was "pushy" and "aggressive". (Tr. 296; Doc. # 321 at p. 10, O'H. dep. at 64-65.)

O'Hara also said, however, that he thought trial attorneys should be pushy and aggressive (Doc. # 321 at p. 10, O'H. dep. at 64-65), and he acknowledged that he was aware that other Torts Division attorneys had problems with judges. (Tr. 295; 297-98;

13

Plf. Ex. 14.) He even described an incident in which one of the other attorneys was bodily removed from a courtroom upon a judge's order. (Tr. 295; 297-98; Plf. Ex. 14.)

Torts Division attorney John Dugan testified that he had had extensive problems with judges during those years and that O'Hara was made aware of those problems. He said O'Hara was aware that a judge had threatened Dugan twice with contempt. He also said that O'Hara and O'Hara's supervisor appeared in court when another judge threatened to jail Dugan. Dugan said he had problems with other judges, as well, and that O'Hara knew that. (Doc. 320, Dugan Dep. at 32-36.)

O'Hara nonetheless rated Dugan in his 1983 evaluation higher than Mann in all the "Duties" categories in 1983, and repeatedly recommended him for annual merit pay raises. (Doc. 320; Plf. Ex. 15.)

O'Hara and Montgomery said they were aware that other Torts Division attorneys had problems with judges. Both said that those attorneys received no criticism from O'Hara and were not discharged from employment with the City. (Doc. # 321 at p. 10, O'H. Dep. at 64-65; Montg. Dep. at 40-44.)

Further regarding his rating of Mann as a "2" in trial, O'Hara said he didn't have the time to watch Mann at trial. (Tr. 302-03.) He said his complaint about Mann's trial performance was not in the verdicts or settlements she obtained at trial, but that she was "very emotional" at trial and had some difficulty with her courtroom demeanor. (Tr. 282-3.) He said his observation of Mann at trial consisted of watching her cross-examine two witnesses in a case in which Mann obtained a "not guilty" verdict and watching her conduct voir dire. (Tr. 303; 691-92.) He said he couldn't name specific individuals of whom he had inquired about Mann's trial abilities in lieu of his own observations of her at trial. (Tr. 304-5.)

• • •

The evaluation process included no formal mechanism to challenge the accuracy of any evaluation in the Law Department. Nevertheless, shortly after O'Hara submitted the Torts Division evaluations to Barnard, Mann met with Barnard to complain about O'Hara's evaluations. (Tr. 710.)

Mann told Barnard there were stark inconsistencies between her verifiable job performance and O'Hara's evaluation representations of that job performance, among

14

them an obvious inconsistency between her verifiable trial record and O'Hara's rating of her as a "2" in the "Trial" category. (Tr. 712-13.) She told Barnard that there were serious inaccuracies throughout the evaluations that O'Hara had submitted on the Torts Division attorneys, and that there was another attorney in the Division who also had an excellent trial record but was rated a "1" or a "2" in the "Trial" category. (Tr. 712.)

Mann believed at the end of their meeting that Barnard would ask O'Hara to justify his evaluations of Mann and the other attorney Mann had mentioned. (Tr. 713.) Barnard, however, testified that nothing was said at their meeting that led her to believe she should speak with O'Hara about the matter, and that she did not so. (Tr. 515.)

Three weeks later, when Mann realized that Barnard would not be conducting a review of the accuracy of O'Hara's evaluations, she wrote a letter to Barnard reiterating much of what she had said at their meeting. Mann delivered the letter to Barnard, and Barnard acknowledged that she read it. (Jt. Ex. 2; Tr. 541.)

The two-page letter, which referenced Mann's meeting with Barnard, stated that a significant chasm existed between O'Hara's oral comments to Mann about her job performance and O'Hara's written evaluation of her job performance. (Jt. Ex. 2.) Mann referred in the letter to Barnard's own oral admission to Mann at their meeting that O'Hara in fact had praised Mann to Barnard. The letter opened:

> Recently, I spoke with you regarding the performance evaluation of me written by Torts Division chief Timothy O'Hara. In that conversation, I stated that I considered the evaluation unfair and inaccurate because it is unsupported by facts and bears little similarity to oral statements of evaluation made to me and apparently to you by Mr. O'Hara.

It then repeated and elaborated upon Mann's allegation that there existed no correlation between the tangible and verifiable performance records of the respective attorneys in the Torts Division and O'Hara's evaluations of them. (Jt. Ex. 2.) Mann requested at the end of the letter that Barnard place the letter in Mann's personnel file. (Jt. Ex. 2.) Barnard obliged. (Tr. 542.) Mann never again communicated with Barnard about the matter. (Tr. 715).

Barnard testified that she never spoke with O'Hara about his 1983 evaluation of

Mann. (Tr. 508-9.)

In September, 1983, Barnard prepared what she termed a "quick and dirty" summary of the 1983 performance evaluations of the attorneys in all the various Law Department divisions and submitted it to Montgomery along with the evaluations themselves. (Tr. 498-99; 506.)

Barnard's summary on Mann included the comment, "Intelligence is not a problem," which she said she derived from O'Hara's written evaluation of Mann and also from other information that she had gathered about Mann; she said she had come to understand that Mann was very bright. (Tr. 503.)

All of Barnard's knowledge about Mann's actual job performance was second-hand, with one exception: She said that at some point before Mann was discharged, she read some of the motions Mann had drafted and thought they were competent and well written. (Tr. 528; 536-537.; Tr. 528.)

In January, 1984, the Law Department attorneys again received their annual pay raises. This time, O'Hara recommended pay raises for only a few Torts Division attorneys, far fewer than the number recommended in other divisions. (Tr. 746.) Mann asked him why he had recommended pay raises for so few attorneys and why he had not recommended a pay raise for her. (Tr. 747.)

He answered, "Beverly, you know I think you're a bright attorney, but you insult me. I can't believe how much you insult me." Mann responded that she never even talked to him, except about her assigned cases. "I know," O'Hara replied, "That's what I mean. Sometimes that can be insulting." (Tr. 747.)

In February, 1984, Mann tried a case to jury verdict. The case was not one assigned to her, but she offered to try it for a colleague who was about to begin his vacation when the case was unexpectedly assigned to trial. Mann obtained a "not guilty" verdict for the City. (Tr. 741-42).

Shortly after that, Mann was assigned to a new job in the Torts Division, a job in which she no longer would be responsible for a regular caseload and no longer would try cases, or even appear in court. (Jt. Ex. 5; Tr. 105; 110.) She was informed of the new assignment in a memo, dated April 10, 1984, written by Barnard, bearing Montgomery's name and initialed by him. (Tr. 105-110, 543-45; Jt. Ex. 5.)

16

The memo stated that Mann in her new assignment was to review the cases assigned to other attorneys on a quarterly basis (all several thousand of them, apparently) and instruct the respective attorneys on dispositive motions. Mann herself was to draft the complex motions. The memo stated that Mann also was to supervise the third-year law students working in the office who could appear in court pursuant to Illinois Supreme Court Rule 711. The memo also instructed Mann to write a newsletter about legal issues of pertinence to the Torts Division. (Tr. 110; 726-27; Jt. Ex. 5.)

The final sentence in the memo instructed Mann to view this new assignment as a "promotion" and not as "a punishment". (Jt. Ex. 5.) Barnard testified that, the instruction in the memo notwithstanding, Mann's new assignment was not a promotion; it was a reassignment, she said. (Tr. 543-45.)

The memo said the new assignment was to begin on May 1, 1984. (Jt. Ex. 5.) Because of delays concerning the lengthy illness of another Torts Division attorney and the move of the Torts Division to another office suite, however, Mann retained assignment of her regular caseload until June 25, 1984, when her new assignment officially began. (Tr. 724.)

Once Mann's new assignment began, she started to perform all the tasks set forth in the April 10, 1984 memo, except the one concerning the newsletter. (Jt. Ex. 5). In the early summer, 1984, Montgomery ordered all Torts Division attorneys assigned a regular caseload to conduct a thorough audit of all cases assigned to them and to complete a detailed questionnaire on each case. O'Hara asked Mann to conduct the audit on the caseload formerly assigned to her, rather than write the general newsletter, as the attorney assigned the caseload in her place was insufficiently familiar with it to conduct the audit it on it. (Tr. 725).

He also asked Mann to draft a summary of civil rights theory and case law pertinent to the civil rights cases that the Torts Division handled on occasion, and Mann researched and drafted the memorandum. (Tr. 726).

Also, for about a year before this period, Mann had handled certain administrative duties for the Torts Division at O'Hara's request. She had served, for example, as the Torts Division's liaison to certain other City departments to ease the difficulties the Torts Division had had in getting records it needed from those departments. O'Hara asked Mann

17

to continue to serve in that capacity, and she did so. (Tr. 727-28.) Mann also continued to take depositions on the cases formerly assigned to her. (Tr. 725.)

In June, 1984, Montgomery and Barnard instructed the division chiefs to conduct another job performance evaluation of their subordinate attorneys. The process and the rating scale were to be the same as in 1983. (Jt. Ex. 6 at p. 1.) Barnard testified that the primary purpose of this set of evaluations was to determine attorney salaries for 1985. (Tr. 566.)

O'Hara testified that, this time, he did not abide by the procedure set out. He completed the evaluation forms "hurriedly," he said, and submitted them to Barnard without first discussing them with the subordinate attorneys and without even informing the attorneys that he had completed the forms. (Tr. 264; 267-68; 271; 356.) He submitted them to Barnard also without first reviewing the attorneys' completed self-evaluation forms. (Tr. 356.)

Barnard admitted that she and Montgomery were aware when O'Hara submitted and discussed those evaluations that he had not yet shown them to the respective attorneys and had not reviewed the attorneys' self-evaluation forms. (Tr. 556.)

O'Hara wrote his evaluation of Mann on July 23, 1984, twenty-eight days after she began her new job assignment. (Tr. 328.) He testified that, in his opinion Mann, had been serving in her new job assignment for an insufficient length of time at that point to enable him to evaluate her on her performance in that job. (Tr. 329.) He said he therefore evaluated her on her job performance in her earlier assignment as well as in her new assignment. (Tr. 329.)

Unlike in 1983, O'Hara this time did not evaluate each attorney in the same "Duties" categories as each of the others. (Jt. Ex. 6.) He evaluated Mann only in the categories of "Legal Research," "Litigation Strategy and Tactics" and "Pretrial Preparation." He evaluated other attorneys in other categories, but not in "Legal Research". (Jt. Ex. 6.)

He rated Mann a "4" in each of the three "Duties" categories in which he rated her at all; As in 1983, a "4" was defined as "Good - Always performs competently. Occasionally does exceptional work." (Tr. 329-30; Jt. Ex. 6 at p. 2.) He checked "Not

quoted in two local lawyers' trade journals. Mann was present in the audience at al three events and heard the comments on all three occasions.

96. The portions of the lawsuit that remained after the summary judgments were entered were tried in the fall of 1991. Mann was represented at trial by attorneys Anthony DiVincenzo and Ronald S. Adelman, the latter having joined the case approximately one month before trial. Both counsel were largely unfamiliar with the evidence available to Mann, much of it gathered by Leech, and with Mann's theories of liability. That counsel, specifically DiVincenzo, misstated in opening statement Mann's theories and the evidence she would present, failed to present several important witnesses available to her, failed to establish critical portions of her case via proper and thorough direct of examination of her, failed to introduce key deposition admissions by the defendants, failed to argue several key liability issues and failed to establish and argue most of her damages. Neither counsel was an expert in the area of employment law.

97. The jury returned verdicts in favor of the defendants and against Mann on the defamation claims against defendants Barnard and O'Hara and entered verdicts in favor of Mann and against defendant Montgomery on the tortious interference count in the amount of approximately $68,000, on the breach of contact count in the amount of approximately $73,000. The judge entered a verdict in favor of the defendants on the single count tried to the bench, a count alleging violation of what is known as "the *Shakman* decree." The parties filed cross-appeals.

98. On January 19, 1996, the United States Court of Appeals for the Seventh Circuit affirmed without comment the summary judgments entered before trial in 1991 and the bench verdict but, upon cross appeals, reversed the jury verdicts on the defamation and tortious interference counts and remanded them for retrial.

99. In July, 1997, before retrial, the defendants filed a motion for summary judgment claiming that an Illinois Supreme Court opinion released in February, 1997, in a case titled *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), amended or clarified an interpretation of a particular section of the Illinois Governmental and Governmental Employees Tort Immunity Act, specifically 745 ILCS 10/2-201, so that that statute confers immunity to the defendants in the counts remanded for retrial. The defendants had never before asserted any section of the Tort Immunity Act as a defense in that lawsuit.

19

As in 1983, the final page of the 1984 evaluation form consisted of a series of five questions, and then a space for narrative comments. O'Hara wrote, in answer to a question, that Mann was not ready to be assigned more difficult and challenging matters, and stated as the reasons that she "is too hung up on defending herself." (Jt. Ex. 6 at p. 4.) In the space made available for narrative comments, O'Hara wrote:

> Attorney is bright. A good legal mind. Unfortunately she spends more time on her accomplishments to the detriment of her assigned work.

When O'Hara submitted his performance evaluation of Mann, he orally recommended that Mann not receive a pay raise for 1985. (Tr. 115.) (Jt. Ex. 6 at p. 4.)

O'Hara, Barnard, Montgomery and Retke met on August 3, 1984, to discuss O'Hara's evaluation of Mann. (Tr. 556-57.) It was at this meeting that Montgomery decided to discharge her. He wrote on the front of the evaluation form, "To terminate - 8/3/84." (Tr. 559-60; Jt. Ex. 6 at 1.)

Barnard testified that at the meeting, O'Hara complained about Mann's performance in her new job assignment, including what she termed a "major" attendance problem. (Tr. 560.) O'Hara testified that he did not recall saying anything at all about Mann's performance in her new job assignment. (Tr. 352.) Barnard said that she herself had no personal knowledge of whether Mann had any such attendance problem, and said she never tried to verify whether Mann, in fact, had an attendance problem. (Tr. 561-62; 568-69.)

Montgomery said he was not independently aware that she had any such attendance problem. (Tr. 117.) He also said that no attorney other than O'Hara and Barnard ever expressed to him any negative indications about Mann's competence in her job. (Tr. 157-158.)

Retke testified that he "may have" warned Montgomery that he believed that O'Hara tended to form opinions about attorneys and then hold on to those opinions in the face of contrary experience. (Tr. 1252.)

Mann learned indirectly on August 3rd that O'Hara had submitted his performance evaluation of her and that it would be used to discharge her. In response, she asked to meet with Montgomery, and on August 10th they met. (Tr. 1057-58.)

(b) the loss of reimbursement to her for the attorneys' fees she paid Leech and Hinshaw, and others, to litigate that lawsuit;

(c) the delay of several years in the final resolution of that lawsuit;

(d) the expenditure by her of several additional tens of thousands of dollars in attorneys' fees and other costs to litigate that lawsuit;

(e) the loss of her remanded counts or, alternatively, the need for a second trial;

(f) damage to her professional reputation.

108. The injuries described immediately above would not have occurred but for the negligent conduct of these defendants as described in this count.

Wherefore, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## COUNT II - FRAUD

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of Defendants MICHAEL J. LEECH, WILLIAM J. HOLLOWAY, DONALD L. MROZEK, ALL OTHER HINSHAW PARTNERS NAMED ABOVE, and HINSHAW & CULBERTSON, states the following:

1. Mann reasserts paragraphs 1 through 51 in the above STATEMENT OF FACTS, DEFINITIONS AND APPLICABLE RULES OF LAW as paragraphs 1 through 51 of this Count II.

2. Mann reasserts paragraphs 52 through 108 in Count I above as paragraphs 52 through 108 of this Count II.

109. Leech deliberately misrepresented to Mann his reason for wishing to withdraw as her counsel in order to induce her to waive her right to contest Leech's motion for leave of court to withdraw as her attorney. As a direct and proximate result of that misrepresentation, Leech did induce Mann to waive her right to contest Leech's motion for leave of court to withdraw as her attorney.

110. Leech misrepresented to Judge Lindberg his reason for wishing to withdraw as Mann's counsel in order to obtain the judge's permission to withdraw as Mann's counsel. As a direct and proximate result of that misrepresentation, Leech did obtain the judge's permission to withdraw as Mann's attorney.

21

111. The true reason that Leech wanted to withdraw as Mann's counsel was so that Hinshaw could begin performing legal work for the City of Chicago, a defendant in Mann's lawsuit, and local government entities connected formally or informally with the City of Chicago and its mayoral administration. Leech's withdrawal as Mann's attorney eliminated a legal obstruction to Hinshaw's performing legal work for the City of Chicago.

112. Shortly after Leech withdrew as Mann's counsel, Hinshaw began performing substantial amounts of government bond legal work for the City of Chicago and related local government entities controlled or influenced formally or informally by the City of Chicago's mayoral administration. Before 1990, Hinshaw had never performed government bond work of any sort and had never before performed legal work for the City of Chicago or any of its related local government entities. Yet, beginning in 1990, for example, Hinshaw served as the lead bond law firm for the imminent project to rehab and restore Chicago's Navy Pier and to expand the McCormick Place Convention Center. At the time Leech told Mann and the judge he needed to withdraw as Mann's counsel, Hinshaw expected even more legal work from these entities than actually materialized.

113. The government bond work that Hinshaw has performed beginning in 1990 has proved significantly lucrative for that law firm, so much so that by 1996 that law firm employed seven attorneys to perform that work. Before 1990, Hinshaw employed no attorneys experienced in government bond work.

114. Mrozek and Holloway were aware that Leech was asking permission to withdraw as Mann's counsel in order to enable Hinshaw to accept the government bond work, and in fact encouraged Leech to do so.

115. The conduct of these defendants as described in the paragraphs immediately above constituted fraud as *Black's Law Dictionary* describes that term.

116. These defendants' intentional misconduct as described above proximately resulted in the conduct described in Part II, Counts VI through IX, below.

117. These defendants' intentional misconduct as described above directly and proximately and significantly harmed Mann's interests in the underlying lawsuit in numerous respects and caused her other damages including but not limited to the following:

(a) the loss of very substantial compensation for the injuries that gave rise to that lawsuit;

22

reason to bitch about her treatment" by O'Hara, he said he "was aware" that Mann "had good reason" to complain about O'Hara's "treatment of her" and that he "was aware" that O'Hara's evaluations were "not as candid as they could have been." (Tr. 96-98.)

When confronted at trial with that deposition testimony, he said he had meant that O'Hara's evaluations lacked candor in that some of them were too high, ultimately retracting that position and conceding that he knew Mann was complaining not that her evaluations were too high but that they were too low. (Tr. 96-98.) The following exchange ensued:

> Q. Would you explain to me, Mr. Montgomery, why your view that some of the
> evaluations were too high would give Beverly Mann good reason to bitch, as you
> put it, about her treatment?

> A. I can't explain -- I can't answer that question. (Tr. 99-100.)

Although unconcerned that Mann's evaluation was too low, he nonetheless acknowledged substantial concern about evaluations he thought were too high, once ordering a division chief to rewrite an evaluation of a particular attorney so that it would be lower than the original one submitted. If the division chief refused, Montgomery testified that he warned him, he would be fired. "It's either you or him," he said he told that division chief. (Doc. 321 at p. 14, Montg. Dep. at 183, Def. 12(l) Statement, Doc. 296 at #42.)

He testified that he discharged Mann also because a judge, Edwin Berman, several months earlier had complained to him about O'Hara's policy regarding automatic changes of venue from him, and had told him that the policy was all Mann's fault. Mann, he quoted Berman as saying, had "misbehaved in his courtroom." (Tr. 102.)

He admitted, however, that he was aware that Judge Berman was widely considered emotionally unstable; he had read newspaper accounts suggesting that Berman was "sometimes volatile" and had a reputation for "going off the deep end." (Tr. 104-05.)

He said, also, that O'Hara had told him that Berman "had a problem." (Tr. 105-05.)

Asked at trial whether he, Montgomery, during his lengthy career as a litigator, had ever "misbehaved badly in a courtroom," he responded, "Well, that's a matter of opinion."

23

Asked whether he as a litigator ever had had "any trouble with a judge in a courtroom," Montgomery replied, "Regularly." (Tr. 103.)

He also acknowledged that Berman's complaint to him primarily was about O'Hara and O'Hara's "change of venue" policy; Mann's involvement was "incidental," he said. (Tr. 103.) He said that although Berman asked him to order O'Hara to begin allowing the trial of City cases before him, Montgomery did not so order O'Hara. (Tr. 103.)

O'Hara testified that many other attorneys also had had serious problems with Berman, so much so, in fact, that O'Hara eventually instructed all Torts Division attorneys to automatically request a change of venue from him whenever a case was assigned to him for trial. (Tr. 294-95.) He said he first obtained the authority to do so from the corporation counsel at the time, and said it was for "good reason". (Tr. 295.)

Mann had obtained a "not guilty" jury verdict in her trial before Judge Berman. (Tr. 335.)

. . .

Before the effective date of her discharge, Mann retained counsel. Shortly afterward, Barnard, without consulting Montgomery, had an office clerk complete a form called an "Exit Interview Report" that stated that Mann's departure was "Involuntary" and that the reason for the involuntary departure was "Inadequate performance of duties." (Tr. 590; Plf. Ex. 2.)

At trial, Barnard testified that the statement, "Inadequate performance of duties", was inaccurate, but that she nonetheless ordered it written on the form as the reason for Mann's departure. (Tr. 590, 592-93.) She placed the form in Mann's personnel file and forwarded a copy of it to the City's Personnel Department. (Plf. Ex. 2.)

Mann and Montgomery reached, and signed, a severance agreement. (Tr. 173; 757-58; Jt. Ex. 13.) The agreement, dated October 25, 1984, required that O'Hara's two performance evaluations of Mann be superseded by a letter of recommendation of Mann that Montgomery would sign. The agreement further required that all queries about Mann to the Law Department by prospective employers would be referred directly to Montgomery and that Montgomery himself would respond to them. It also required that Montgomery confine the information he disseminated about Mann to what was contained in the letter of recommendation. (Tr. 967; Jt. Ex. 13.)

24

Mann, in return, agreed to sign a letter of resignation backdated to September 28, 1984. (Tr. 757; Jt. Ex. 13).

The letter, which Barnard authored, is complimentary of Mann's job performance in the Law Department. (Jt. Exhs. 10, 11.) Asked whether the letter's statements about Mann's job performance were accurate, Barnard testified, "Factually, yes."

The agreement notwithstanding, Barnard ordered the City's personnel office to submit to the State of Illinois Bureau of Employment Security in response to Mann's application for State unemployment compensation benefits a form that stated:

On September 30, 1984, the claimant was discharged from the employer listed above due to poor work performance." (Plf. Ex. 3; Tr. 762-63.)

Mann complained to Barnard, who only then replaced the first "Exit Interview Report" in Mann's personnel file with one that listed Mann's departure as "voluntary" and the reason as "resignation." It bore a telltale notation, however, that it was "revised." (Jt. Ex. 4.) Barnard submitted it to the State, and Mann was awarded State unemployment compensation benefits.

. . .

At trial, Montgomery admitted that, once the agreement was signed, he delegated to Barnard the responsibility of responding to queries from prospective employers about Mann. He didn't have time, he said, to respond personally to the inquiries. (Tr. 179-81.)

Barnard admitted defaming Mann to a prospective employer, the local Office of the United States Trustee in Bankruptcy, from which Mann had had a firm job offer, and failed to respond to inquiries from other prospective employers, including anther one that had made Mann a firm offer. (Tr. 594-98; 802-03; 915-16; 980; 1063-64; 1275-76; 1279-80; 1351-52; 1354; 1363-65; 1373; 1405-07.)

In September, 1984, Mann began what would become a 20-month search for employment as an attorney. (Tr. 779.) During those 20 months, she submitted approximately 200 resumes to law firms, government offices, corporations, and insurance carriers. (Plf. Exhs. 31, 32.) She was interviewed by 44 prospective employers during that 20-month period. (Doc. # 551, Ex. 3.) She received tentative job offers in addition to the

25

two mentioned above, but, as with the earlier ones, each of the offers was rescinded. (Tr. 777.)

She also received a large volume of rejection letters. (Plf. Ex. 33.) One, from a company with whom she had interviewed for several hours, said the company's decision not to offer her a position was made "after much soul searching." (Plf. Ex. 33.)

In the spring of 1985, Mann was hired by an attorney as an independent contractor to take depositions and draft pretrial documents on a case scheduled for trial shortly afterward. (Tr. 773-74.) That attorney testified that Mann's resume presented solid credentials and that he hired her on the strength of it without seeking a reference from the City. (Tr. 1311.)

In the summer of 1985, Mann was hired as an independent contractor by a lawyer who never paid her for her seven weeks of work for him. (Tr. 774.) That attorney testified that he hired Mann solely on the strength of her resume, which he said was excellent, and that he never contacted the City for a reference on her. (Tr. 1322-23.)

In October, 1985, Mann was hired by an attorney who claimed to have a law practice but instead actually had a real-estate syndication firm. (Tr. 775-76.) Three months later, after she learned the syndication "firm" actually was a "ponzi"-type syndication scam, she quit and then reported the situation to the United States Treasury Department, which, in turn, reported it to the FBI. (Tr. 1074, 1104.) That attorney, James Blazina, was disbarred in Illinois several years ago because of conduct of the type of Mann described, conduct also described in bankruptcy proceedings pertaining to that lawyer.

At trial, Mann called as an expert witness David White, an employment recruiter for attorneys, who during the period of Mann's 20-month job search conducted the research for, and published, an annual survey of salaries of attorneys at various career stages and in various types of job settings. (Tr. 1091-93; 1095; 1103-04.)

White testified that during the years when Mann was searching for employment as an attorney, the economy was expanding and the job market was very favorable to job seekers. He also testified that, in his experience, employers seeking to hire attorneys are meticulous in requiring references on employment candidates. (Tr. 1101-02.) He also

testified that throughout the decade of the 1980's, salaries for attorneys increased at rates above the rate of inflation. (Tr. 1099.)

In 1988, Mann attempted to establish a solo law practice. (Tr. 776.) Otherwise, she never again practiced law. She received her greatest annual income as an attorney in 1983, when she was paid $27,000 by the City. (Tr. 808.)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY B. MANN,                    )
                                    )
            Plaintiff,              )
                                    )        No. 84 C 11020
        v.                          )
                                    )        Honorable Wayne R. Andersen
JAMES MONTGOMERY, JAYNE             )
BARNARD, and TIMOTHY O'HARA,        )
                                    )
            Defendants.             )

## MEMORANDUM ORDER AND OPINION

After the Court of Appeals remanded this action for retrial on two counts of Plaintiff's Third

Amended Complaint, the parties brought a variety of motions which are decided below. The facts

of this case have been previously discussed in numerous opinions issued by courts at the trial and

appellate level. For this reason, we will recite only the facts relevant to the instant motions.

## BACKGROUND

Plaintiff, Beverly Mann, is a former Assistant Corporation Counsel in the City of Chicago's

Law Department. Plaintiff's employment ended on September 30, 1984. On October 31, 1985,

Plaintiff filed her Third Amended Complaint against the City of Chicago, James Montgomery, then

the Corporation Counsel, Jayne Barnard, then a Deputy Corporation Counsel and Administrator of

Personnel, and Timothy O'Hara, then Chief Assistant Corporation Counsel of the Torts Division.

Plaintiff claimed that Defendants had a policy of discharging employees for political reasons. She

further asserted that political considerations motivated Defendants to base her performance reviews

on allegedly inaccurate and misleading evaluations and to terminate her employment. Plaintiff

specifically brought claims for: violation of the Shakman decree prohibiting political and patronage

EXH. 2

dismissals (Count I), infringement of her First Amendment rights to free association and expression under 42 U.S.C. § 1983 (Count II), deprivation of liberty without due process of law under 42 U.S.C. § 1983 (Counts III, IV, V, and VI), denial of equal protection under 42 U.S.C. § 1983 (Count VII), defamation (Count VIII), breach of contract (Counts IX and X), tortious interference with contract and tortious interference with prospective economic advantage (Count XI), and violation of the Illinois Personnel Records Act (Count XII).

In 1986, Judge Moran dismissed Counts IV, V, VI, and IX with prejudice and dismissed Count XI against the City of Chicago. In August 1991, Judge Lindberg granted Defendants' motion for summary judgment on Counts II, III, VII, and XII. On Count X, Judge Lindberg granted summary judgment in favor of O'Hara and Barnard but denied the motion for Montgomery and the City of Chicago. On Count XI, Judge Lindberg granted summary judgment for Defendants on Plaintiff's tortious interference with contract claim, but not on the tortious interference with prospective economic advantage cause of action.

The remaining counts were tried in October 1991. Count I was tried to the judge and Counts VIII, X, and XI were tried to a jury. Judge Lindberg held that Plaintiff failed to present evidence to support her claim that politics motivated her discharge (Count I). The jury found in Defendants' favor on Count VIII and in Plaintiff's favor on Counts X and XI and awarded her $68,285 on Count X. Both parties appealed.

In an unpublished order issued on January 19, 1996, the Seventh Circuit held that the trial judge erroneously instructed the jury as to the defamation claim (Count VIII) and the tortious interference with prospective economic advantage claim (Count XI). Accordingly, the court vacated

2

the verdicts on those counts, remanded those claims for a new trial, and affirmed the judgment in all other respects.

The remaining defendants, Montgomery, Barnard and O'Hara, now move for summary judgment on Counts VIII and XI citing a recent change in Illinois law. Alternatively, they argue that their conduct was privileged and that Plaintiff cannot demonstrate the requisite malice needed to overcome the privilege.

Defendants also move to strike Plaintiff's response to their motion for summary judgment. Plaintiff moves to strike Defendants' motion for summary judgment, for reconsideration of this Court's order entered on February 17, 1998, and for appointment of counsel. Plaintiff's attorney of record moves to withdraw.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment

The doctrine of the law of the case precludes reconsideration of a matter already decided unless an exceptional circumstance exists, such as a change in controlling authority during the pendency of the lawsuit. Law v. Medco Research, Inc., 113 F.3d 781, 783 (7th Cir. 1997); Nemmers v. United States, 870 F.2d 426, 429 (7th Cir. 1989); Barrington Press, Inc. v. Morey, 816 F.2d 341, 342 n. 2 (7th Cir. 1987), cert. denied, 484 U.S. 906 (1987). Furthermore, while the matter is *sub judice*, a federal court must apply state law "in accordance with the then controlling decision of the highest state court." Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543 (1941). Plaintiff's defamation and tortious interference with prospective business advantage claims are still under judicial consideration. Thus, we are obligated to give effect to any change in state law made during the course of the proceeding.

3

Defendants argue that, based on a recent Illinois Supreme Court ruling, the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq., bars Plaintiff's remaining claims. Section 10/2-201 states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

The language of the statute has not been changed. At the time the pre-trial motions and appeal were decided, however, the Illinois courts were split on the question of whether § 10/2-201 applied to willful and wanton conduct. After the appeals court remanded the instant matter, the Illinois Supreme Court held that "the legislature . . . intended to immunize liability for both negligence and willful and wanton conduct." In re Chicago Flood Litigation, 176 Ill.2d 179, 680 N.E.2d 265, 273 (1997). This case is controlling.

Under § 10/2-201, a public employee is not liable for discretionary acts. Id. "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." Snyder v. Curran Township, 167 Ill.2d 466, 657 N.E.2d 988, 992 (1995). If Defendants' acts are discretionary, they are absolutely immune from liability.

Here, Plaintiff claims that O'Hara and Barnard prepared defamatory performance evaluations and that Montgomery's decision to discharge her amounted to tortious interference with prospective economic advantage, i.e., Plaintiff's continued employment with the City of Chicago. Defendants' acts, which included hiring, firing, and evaluation of subordinates, are discretionary acts. See

4

Anderson v. Grayslake School Dist. No. 46, No. 94 C 5133, 1997 WL 639032, *1 (October 3, 1997) (applying Illinois law); Johnson v. Mers, 279 Ill. App. 3d 372, 664 N.E.2d 668, 675 (1996). Thus, as a matter of law under In re Chicago Flood Litigation and 745 ILCS 10/2-201, Defendants are immune from liability. Summary judgement must now be granted for Defendants on Counts VIII and XI of Plaintiff's Third Amended Complaint.

## II. Plaintiff's Motion to Strike Defendants' Motion for Entry of Judgment as a Matter of Law

Plaintiff also moves the Court to strike Defendants' motion for summary judgment. Plaintiff claims that Defendants are barred from reasserting on remand "claims or defenses already litigated on appeal, absent new factual information or an alteration in the pertinent substantive law." (Pl. Motion to Strike, pp. 1-2).

Plaintiff is correct that the evidence cited by Defendants on remand is not substantially different from the facts already decided in this case. Nemmers, 870 F.2d at 428. Nevertheless, we have already granted Defendants' motion for summary judgment based on the recent change in the relevant Illinois law. Accordingly, Plaintiff's Motion to Strike Defendants' Motion for Entry of Judgment as a Matter of Law is denied.

## III. Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment and Plaintiff's Motion for Reconsideration of this Court's Order Entered on February 17, 1998

Because we have granted the motion for summary judgment due to the change in Illinois law, Plaintiff need not submit a 12(n) statement. Thus, Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment is denied and Plaintiff's Motion for Reconsideration is granted.

### IV.   Plaintiff's Motion for Appointment of Counsel

In considering a motion to appoint counsel, we begin with the fundamental premise that there is no constitutional or statutory right to counsel in federal civil cases. Jackson v. County of McLean, 953 F.2d 1070, 1071 (7th Cir. 1992).   Nonetheless, the district court may in its discretion request counsel to represent indigent litigants. 28 U.S.C. § 1915(e)(1).  As a threshold matter, the court must determine whether the litigant is indigent and whether she has made reasonable attempts to retain counsel. Jackson, 953 F.2d at 1072-1073; Boubonis v. Chater, 957 F. Supp. 1071, 1073 (E.D. Wisc. 1997).

Plaintiff has made the requisite reasonable attempt to obtain counsel and has been represented by counsel at points in this litigation.  Although Plaintiff states that she has spent approximately $175,000 on attorneys' fees and costs to date, she now claims her financial resources are exhausted.  Plaintiff, however, presents no evidence establishing that she meets the financial criteria necessary to qualify as an indigent litigant.  Moreover, Plaintiff is an attorney and capable of presenting her case.   Indeed, Plaintiff has represented herself on appeal. Furthermore, we do not believe that the factual and legal issues at this stage of the litigation are unusually complex.  Therefore, appointment of counsel will not serve the interests of justice. Farmer v. Haas, 990 F.2d 319, 322 (7th Cir. 1993), cert. denied, 510 U.S. 963 (1993); see also Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir. 1995).

Plaintiff's motion for appointment of counsel is hereby denied.

6

## V. Motion for Withdrawal of Plaintiff's Counsel

Plaintiff's attorney of record, Gregory Stayart, moves to withdraw as counsel for Plaintiff. This motion is hereby granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. Plaintiff's Motion to Strike Defendants' Motion for Entry of Judgment as a Matter of Law is denied. Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment is denied. Plaintiff's Motion for Reconsideration of this Court's Order Entered on February 17, 1998 is granted. Plaintiff's Motion for Appointment of Counsel is denied. Attorney Greg Stayart's Motion to Withdraw is granted.

All other pending motions are moot. This is a final appealable order.

It is so ordered.

_Wayne C. Andersen_
_____
Wayne R. Andersen
United States District Judge

Dated: 3-13-98

7

# EXHIBIT B

State of Illinois)

        ss:

County of Cook)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| BEVERLY B. MANN,<br>    Plaintiff, | )<br>)<br>) |
|     vs. | ) No. 99 L 4034<br>) |
| MICHAEL J. LEECH, *et al*. | )<br>) |
|     and | )<br>) |
| THE CITY OF CHICAGO, a municipal<br>Corporation, NANCY VAN ALLEN,<br>individually, and as Assistant City of<br>Chicago Corporation Counsel, TRACEY<br>LARDNER, individually, and as Assistant<br>City of Chicago Corporation Counsel,<br>MARDELL NEREIM, individually, and as<br>Assistant City of Chicago Corporation<br>Counsel, and BRIAN CROWE, individually,<br>and as City of Chicago Corporation Counsel, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|     and | )<br>) |
| JAMES B. MORAN, individually, | )<br>) |
|     Defendants. | )<br>) |

*JURY DEMANDED*

## AMENDMENTS TO COMPLAINT AT LAW

### PART III – Defendants City of Chicago, Nancy Van Allen, Tracey Lardner, Mardell Nereim and Brian Crowe

### COUNT X – Denial of Due Process of Law and Equal Protection of the Law

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of defendants The City of Chicago, Nancy Van Allen, Tracey Lardner, Mardell Nereim and Brian Crowe, states the following:

1. The City of Chicago is, and at all times relevant to this Count was, a municipal entity incorporated within the laws of the State of Illinois.

2. At all times relevant, the City of Chicago had within its municipal structure an internal Department of Law, also known as the City's Office of Corporation Counsel, which served as attorneys for the City of Chicago in litigation in which the City was named as a defendant, and served as attorneys for officials and employees of the City of Chicago in litigation in which those officials or employees were named as defendants in litigation arising from their status as City officials or employees.

3. Beverly B. Mann, the plaintiff in this lawsuit, also was the plaintiff in a multi-count and multi-issue lawsuit pending in federal district and appellate court in northern Illinois for more than 14 years beginning on December 31, 1984, the date that the lawsuit was filed in the United States District Court for the Northern District of Illinois, No. 84 C 11020 ("*Mann v. City of Chicago, et al.*"), in which the City of Chicago and three former City officials, James D. Montgomery, Jayne W. Barnard and Timothy D. O'Hara, were named as defendants.

4. The Third Amended Complaint in that lawsuit (i.e., the operative complaint from October, 1985, until resolution of the lawsuit on July 14, 1999, upon appellate affirmance of summary judgments) contained several counts brought pursuant to federal civil rights law and also several counts brought pursuant to the common law of Illinois.

5. Defendants Nancy Van Allen, Tracey Lardner, Mardell Nereim and Brian Crowe are, and at all times relevant to this Count were, attorneys licensed to practice law in the State of Illinois, and at all times relevant to this Count were employed by the City of Chicago as attorneys in the City's Law Department during the period beginning July 1, 1997, and ending April 24, 1999.

6. Defendant Nancy Van Allen appeared as a trial attorney of record on behalf of the defendants in *Mann v. City of Chicago, et al.*, beginning in approximately August, 1991, shortly before the lawsuit was tried in the fall of 1991, and throughout the remainder of its pendency in the district court, and was the defendants' lead trial counsel in the case beginning on January 19, 1996, the date that the Court of Appeals for the Seventh Circuit, upon cross-appeals, remanded the case for retrial on two state common law counts.

2

7. Defendant Tracey Lardner appeared as a trial counsel on behalf of the defendants in *Mann v. City of Chicago, et al.*, throughout 1997 and throughout the remainder of the pendency of the lawsuit in the district court.

8. Defendant Mardell Nereim appeared as appellate counsel on behalf of the defendants in *Mann v. City of Chicago, et al.*, in the first set of appeals in that lawsuit, Nos. 92-3761 and 92-3797, and also in the second set of appeals in that lawsuit, Nos. 98-1936, 98-2413 and 98-2797.

9. Defendant Brian Crowe, during the period of July, 1997, through April, 1999, appeared as a counsel of record on behalf of the defendants in *Mann v. City of Chicago, et al.*, in the district court and then in the appellate court.

10. Defendant Brian Crowe, during the period of July, 1997, through April, 1999, held the position of Corporation Counsel for the City of Chicago, a position created and defined by City of Chicago municipal ordinance, and in that capacity was a final policymaker on behalf of the City of Chicago in all matters pertaining to the legal representation of the City of Chicago and its officials and employees in litigation arising from their positions as City officials or employees.

11. During the course of their representation of the defendants in *Mann v. City of Chicago, et al.*, the defendants Van Allen, Lardner and Crowe knowingly and deliberately engaged in wrongful conduct that included but was not limited to some or all of the following:

   a. They filed a motion for summary judgment on the two counts remanded in January, 1996, for retrial, in which they purposefully and improperly sought to relitigate virtually every issue determined against them and in favor of Mann on appeal, and failed to notify the court that those issues indeed were litigated during the appeal that resulted in the remand for retrial, notwithstanding extensive and unequivocal law of the Seventh Circuit that prohibits the relitigation of issues already determined on appeal in the case absent a clear alteration in pertinent circumstances or in the pertinent law, a.k.a., the doctrine of law of the case.

   b. They filed a motion for summary judgment on the two counts remanded in January, 1996, for retrial, in which they purposefully and improperly asserted

3

new defenses that were available, if at all, well before the resolution of the
cross-appeals in January, 1996, notwithstanding extensive and unequivocal
law of the Seventh Circuit that prohibits the initial assertion of defenses after
an appeal in which those could have been litigated, a.k.a., the doctrine of
waiver.

c.  In the summary judgment motion, they expressly misrepresented the nature of
the allegations in the counts in Mann's operative complaint, falsely stating
that the allegations were of willful and wanton misconduct rather than of
deliberate misconduct, a critical point upon which they based their successful
defense of statutory immunity.

d.  In the summary judgment motion, they deliberately misrepresented the state
of Illinois appellate authority that interpreted the governmental immunity
statutory subsection upon which they, after more than 12 years of litigation,
suddenly were asserting the affirmative defense of statutory immunity,
particularly by deliberately failing to mention a key appellate opinion in a case
in which the City of Chicago was a defendant.

e.  They deliberately failed to notify the court when, three weeks after they filed
the summary judgment motion, the *only* Illinois appellate opinion directly on
point clarified that the statutory subsection at issue was inapplicable to
Mann's lawsuit, yet three months later moved for a ruling on their summary
judgment motion and still did not notify the court of the new appellate
opinion.  Later, they acknowledged that they knew of the new appellate
opinion almost throughout the seven-month pendency of their summary
judgment motion.

12. They did so while aware (and because they were aware) that Mann had no means to
learn of the new appellate authority, and while aware (and because they were aware)
that the district judge was pressuring Mann intensely to settle the case and would use
the motion to try to force her to accept a meager settlement award.

13. The district judge did use the motion to try to pressure Mann to accept a small
settlement award and, when she refused, granted the summary judgment motion upon

4

the stated grounds asserted in the summary judgment motion; grounds that the
defendants Van Allen, Lardner and Crowe knew were legally inappropriate.

14. The summary judgment motion was granted on March 13, 1998.

15. Defendant Nereim, who drafted and signed the briefs filed on behalf of the
defendants in *Mann v. City of Chicago, et al.*, in both sets of appeals, knowingly,
by overt statement and by omission, made numerous misrepresentations to the
court about the procedural history of the case, the issues already argued and
resolved in the initial sets of appeals, the state of the law within the Seventh
Circuit concerning the doctrine of waiver, *and even about the actual contents of a
subsection of the Illinois Governmental and Governmental Employees Tort
Immunity Act which Nereim falsely said defined "deliberate misconduct" as
"willful and wanton misconduct."*

16. These defendants acted as they did because they predicted (accurately) that the
judicial panel assigned to hear the appeal would not read Mann's briefs, given her
status as a *pro se* appellant in a civil lawsuit.

17. The conduct of defendants Van Allen, Lardner, Crowe and Nereim, as described
above, were intended to, and did, deprive Mann of due process of the law and of
equal protection of the law as guaranteed to her by Article I, Section 2, of the
Constitution of the State of Illinois. Article I, Section 2, states:

> No person shall be deprived of life, liberty or property without due process of
> law nor be denied the equal protection of the laws.

18. The defendants Van Allen, Lardner, Crowe and Nereim engaged in the wrongful
conduct described above while acting as policymakers for the City of Chicago.

19. At least in part as a proximate result of the above-described misconduct of
defendants Van Allen, Lardner, Crowe and Nereim, acting individually and as
policymakers for the City of Chicago those defendants, Mann sustained significant
monetary injury and significant non-monetary injury, including damage to reputation
and severe emotional distress.

WHEREFORE, the Plaintiff, BEVERLY B. MANN, prays for judgment against these
defendants in a sum in excess of $30,000 in compensatory damages.

5

## COUNT XI – Tortious Interference with Prospective Economic Advantage

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of defendants The City of Chicago, Nancy Van Allen, Tracey Lardner, Mardell Nereim and Brian Crowe, states the following:

1. Mann reasserts paragraphs 1 through 13 of Count X as paragraphs 1 through 14 of Count XI.

15. The conduct of defendants Van Allen, Lardner, Crowe and Nereim, as described above, were intended to, and did, tortiously interfere with Mann's prospective economic advantage in trying the remanded counts in *Mann v. City of Chicago, et al.*

16. At least in part as a proximate result of the above-described misconduct of defendants Van Allen, Lardner, Crowe and Nereim, acting individually and as employees and officials of the City of Chicago, Mann sustained significant monetary injury and significant non-monetary injury, including damage to reputation and severe emotional distress.

WHEREFORE, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## COUNT XII – Fraud and Deliberate Deception

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of defendants The City of Chicago, Nancy Van Allen, Tracey Lardner, Mardell Nereim and Brian Crowe, states the following:

1. Mann reasserts paragraphs 1 through 14 of Count X as paragraphs 1 through 13 of Count XI.

15. The conduct of defendants Van Allen, Lardner, Crowe and Nereim, as described above, were intended to, and did, fraudulently deceive the court and thus defraud Mann.

16. At least in part as a proximate result of the above-described misconduct of defendants Van Allen, Lardner, Crowe and Nereim, acting individually and as employees and officials of the City of Chicago, Mann sustained significant monetary injury and significant non-monetary injury, including damage to

reputation and severe emotional distress.

WHEREFORE, the Plaintiff, BEVERLY B. MANN, prays for judgment against these defendants in a sum in excess of $30,000 in compensatory damages.

## PART IV – Defendant James B. Moran

### COUNT XIII – Denial of Due Process of Law and Equal Protection of the Law, Tortious Interference with prospective Economic advantage

NOW COMES the Plaintiff, Beverly B. Mann, *pro se*, and complaining of defendant James B. Moran, states the following:

1. The City of Chicago is, and at all times relevant to this Count was, a municipal entity incorporated within the laws of the State of Illinois.

2. At all times relevant, the City of Chicago had within its municipal structure an internal Department of Law, also known as the City's Office of Corporation Counsel, which served as attorneys for the City of Chicago in litigation in which the City was named as a defendant, and served as attorneys for officials and employees of the City of Chicago in litigation in which those officials or employees were named as defendants in litigation arising from their status as City officials or employees.

3. Beverly B. Mann, the plaintiff in this lawsuit, also was the plaintiff in a multi-count and multi-issue lawsuit pending in federal district and appellate court in northern Illinois for more than 14 years beginning on December 31, 1984, the date that the lawsuit was filed in the United States District Court for the Northern District of Illinois, No. 84 C 11020 ("*Mann v. City of Chicago, et al.*"), in which the City of Chicago and three former City officials, James D. Montgomery, Jayne W. Barnard and Timothy D. O'Hara, were named as defendants.

4. The Third Amended Complaint in that lawsuit (i.e., the operative complaint from October, 1985, until resolution of the lawsuit on July 14, 1999, upon appellate affirmance of summary judgments) contained several counts brought pursuant to federal civil rights law and also several counts brought pursuant to the common law of Illinois.

7

5. James B. Moran is, and at all times relevant to this count, was a federal district judge in the Northern District of Illinois.

6. On the day it was filed, *Mann v. The City of Chicago, et al.*, was assigned by lot to defendant Moran.

7. The following two paragraphs, taken from the petition for writ of certiorari that Mann filed with the United States Supreme Court in that lawsuit on December 30, 1999, accurately summarize the family and personal relationships between defendant James Moran and Jayne W. Barnard, a defendant in *Mann v. The City of Chicago, et al.*, and Moran's extensive involvement in that lawsuit notwithstanding his relationship to Barnard:

> The case was assigned to District Judge James B. Moran, who repeatedly, including twice in Mann's presence, instructed the defendants' counsel to file a dispositive motion. Mann each time responded by filing a more detailed amended complaint, ultimately a 48-page one with 16 exhibits. The judge then issued the series of 1986 memorandum orders identified above. (See Apps. K, J and I.) Those orders, which dismissed several counts but not the entire complaint, state that employment blacklisting by government officials does not constitute a violation of the Fourteenth Amendment and that Mann's detailed complaint and exhibits failed to establish pretext or defamatory inaccuracy by the defendants.
>
> Two years later, that judge recused himself when Mann learned that he and defendant Barnard, through a series of marriages and divorces, shared four stepchildren who lived with the judge and his wife, and that Barnard and the judge saw each other regularly at family social events. (Barnard's husband and the judge had been neighbors a decade earlier and had swapped spouses. Each of the original couples had four children. Barnard married her husband in 1983 after he and the judge's first wife divorced.)

8. The following paragraphs, taken from a judicial misconduct complaint that Mann filed against Moran pursuant to 28 U.S.C. § 372(c)(3)(A), accurately describe the relationship between Moran and Barnard and accurately describe the motive and the intended, and the ultimate, consequences of Moran's failure to recuse himself from the case and his defamatory written statements and rulings in the case, made under the guise of judicial impartiality and detachment yet made purely to serve his own and his wife's and step-children's interests involving their complicated family situation:

8

This complaint concerns Judge Moran's decision to retain assignment of my lawsuit for nearly four years, issuing three memorandum opinions dismissing counts in the complaint and issuing other significant orders in the case, notwithstanding his close family relationship with one of the defendants, Jayne W. Barnard. I believe that 28 U.S.C. § 455 required that judge's recusal from the case. These events occurred more than a decade ago but ultimately determined the outcome of the case on July 14, 1999, in an unpublished order issued by your court.

I enclose the "Ciations to Unpublished Orders: and the arguemtn sections of my curretn draft of a certitoari petiton that I will file with the Suprem Court next week. The argumetn section states the relationship between Judge Moran and Barnard and the jdue's inapaportiate conduct in the case, and illustrates the effect that condcut had upon the outcome of the litigation. An excerpt, which details the first two of these, reads:

> Mann filed this lawsuit in the wake of the "silence speaks a mouthful" incident.[involving defendant Barnard]. The case was assigned to District Judge James B. Moran, who repeatedly, including twice in Mann's presence, instructed the defendants' counsel to file a dispositive motion. Mann each time responded but filing a more detailed amended complaint, ultimately a 48-page one with 16 exhibits. The judge then issued an order stating that he would treat the defendants' pending Fed. R. Civ. P. 12(b)(6) motion as a Rule 65 motion. Mann promptly discharged her contingent-fee counsel and retained hourly-fee counsel who had recently won a case before the Supreme Court. The judge rescinded his order and issued the series of 1986 orders identified above. (App. at A - ).

> The orders state that employment blacklisting by government officials does not constitute a violation of the Fourteenth Amendment and that Mann's detailed complaint and exhibit failed to establish pretext or defamatory inaccuracy by the defendants.

> Two years later, that judge recused himself when Mann learned that he and defendant Barnard, through series of marriages and divorces, shared four stepchildren who had lived with the judge and his wife, and that Barnard and the judge saw each other regularly at family social events.

> The case then was assigned to a judge who stated that it was an inappropriate case for summary judgment because it was replete with factual controversies. Shortly afterward, it was reassigned again, to a newly confirmed judge. The procedural history thereafter is summarized above, in the section titled "Citations to Unpublished Orders."

9

Barnard's current husband and the judge were neighbors in the mid-1970s, and swapped spouses. One of the marriages dissolved after a few years, and Barnard and the double-ex-husband married.

This complaint should not be considered time-barred. As the argument section of my certiorari petition details, the defendants were allowed by both the district court and your court to prevail upon affirmative defenses asserted for the first time more than twelve years after the lawsuit was filed, defenses available, if at all, all along.

9. During the nearly four years in which he presided as judge in that lawsuit, he met with Barnard on several occasions at small family gatherings, *including some at Moran's home.*

10. 28 U.S.C. § 455 required Moran to recuse himself from assignment to that lawsuit. 28 U.S.C. § 455 states in relevant part:

### 28 U.S.C. § 455. Disqualification of Justice, Judge, or Magistrate

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

10

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

11

11. One of Moran's goals was to run Mann out of money for legal fees before the case reached appeal, so that she would appear *pro se* on appeal and thus receive scant consideration from the appellate court. His success in achieving that result is described accurately and in detail in Mann's petition for writ of certiorari and in the two briefs she filed in support of that petition. Her petition and the two supporting briefs are incorporated into these amendments as Exhibits 1, 2 and 3, respectively.

12. The conduct of defendant James Moran, as described above, was intended to, and did, tortiously interfere with Mann's prospective economic advantage in trying the remanded counts in *Mann v. City of Chicago, et al.*

13. The conduct of defendant James Moran, as described above, was intended to, and did, deny Mann due process of law and equal protection of the law as guaranteed to her by Article I, Section 2, of the Constitution of the State of Illinois. Article I, Section 2, states:

> No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

14. At least in part as a proximate result of the above-described misconduct of defendant James Moran, acting individually, Mann sustained significant monetary injury and significant non-monetary injury, including damage to reputation and severe emotional distress.

WHEREFORE, the Plaintiff, BEVERLY B. MANN, prays for judgment against this defendant in a sum in excess of $30,000 in compensatory damages.

Respectfully submitted,


Beverly B. Mann
Plaintiff *pro se*
7261 North Campbell Avenue
Chicago, Illinois 60645
(773) 465-4587

12

## CITATIONS TO UNPUBLISHED ORDERS

This lawsuit, which was filed on December 31, 1984, in the Federal District Court for the Northern District of Illinois, Eastern Division, has twice been before the United States Court of Appeals for the Seventh Circuit. Both sets of appeals were resolved by unpublished order, the first on January 19, 1996, the second on July 14, 1999. The January 19, 1996, order, which appears in this Petition at App. D, is recorded at 1996 U.S. App. LEXIS 1669 (Nos. 92-3761, 92-3797). The July 14, 1999, order, which appears at App. C, is recorded at 1999 U.S. App. LEXIS 16219 (Nos. 98-1936, 98-2413 and 98-2797). A Petition for Rehearing with Suggestion for Rehearing *En Banc* filed on July 21, 1999, was denied in an order issued on September 3, 1999, and appears at App. B. It is recorded at 1999 U.S. App. LEXIS 21411.

District court memorandum opinions are recorded at No. 84 C 11020 (May 5, 1998), appearing at App. F; 1998 U.S. Dist. LEXIS 3195 (Mar. 13, 1998, No. 84 C 11020), appearing at App. E; 1994 U.S. Dist. LEXIS 9893 (Jul. 18, 1994, 84 C 11020 N.D. Ill.), appearing at App. H; 1986 U.S. Dist. LEXIS 22829 (Jul. 14, 1986), appearing at App. K; 1986 U.S. Dist. LEXIS 20968 (Aug. 29, 1986), appearing at App. J; 1986 U.S. Dist. LEXIS 16517 (Dec. 12, 1986), appearing at App. I. A three-paragraph minute order issued on June 8, 1998, is recorded at 84 C 11020 and appears at App. G.

An earlier Petition for Writ of Certiorari to the United States Court of Appeals for the Seventh Circuit was filed immediately following the resolution of the first set of appeals, and was denied in an order issued on October 7, 1996 (96-260).

## JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1). On July 14, 1999, the Court of Appeals affirmed various District Court orders that entered summary judgment

,2

in favor of _____ndents and against Petitioner on several counts pursuant to Federal Rule of Civil Procedure 56, and affirmed an order that dismissed another count pursuant to Federal Rule of Civil Procedure 12(b). (See App. C; App. G; App. L.) Petitioner timely filed a Petition for Rehearing with Suggestion for Rehearing *en Banc*, which was denied in an order entered on September 3, 1999. (See App. B). This Court on November 23, 1999, granted Petitioner's application for an extension of time, to and including January 1, 2000, in which to file this Petition. (See App. A.)

## STATEMENT OF THE CASE

This lawsuit, as indicated above, dates back to 1984. It arises from the political infighting among factions of the City of Chicago Democratic Party that began during the City's mayoral primary election campaign in early 1983.

Beverly Mann is an attorney who in 1979, shortly after receiving her law license, was hired at the behest of the City's mayor at the time, Jayne Byrne, as an assistant City corporation counsel. Mann was not a political activist, nor was any member of her family, but her father, a Chicago journalist, was a longtime colleague and friend of Byrne's husband, veteran Chicago Daily News City Hall reporter Jay McMullen.

Mann was assigned to the Law Department Torts Division. Her immediate supervisor was defendant Timothy O'Hara, who headed the Torts Division. As O'Hara testified, he had on several occasions before the spring of 1983 dissuaded Mann from resigning from the Law Department and, also on several occasions, had persuaded her to withdraw requests she had submitted to transfer to another division within the Law Department. One such incident occurred in January, 1983, in which he obtained a pay raise for her in exchange for her withdrawal of her resignation.

O'Hara in his testimony described Mann's job performance in each category and in various specific instances as "excellent," "better than average," and "great." He also testi-

fied that, by ___ standards, Mann had never lost a trial; she always had obtained either a "Not Guilty" verdict or a judgment in an amount less than the plaintiff's final pretrial demand. He admitted that he on numerous occasions in conversations with others in the office had praised Mann's competence and ability as an attorney. He added in his testimony that, in his opinion, Mann indeed was an able attorney and was competent in her job.

In February, 1983, Byrne was defeated for re-nomination by Harold Washington in the primary election after a particularly nasty three-candidate campaign. Mayor Washington was inaugurated in April, 1983. He immediately appointed defendant James Montgomery as City Corporation Counsel. Montgomery, in turn, hired defendant Jayne Barnard, the wife of a friend of his, as his chief deputy in charge of personnel matters.

Barnard began her job in August, 1983. That month, she devised a written job-performance evaluation system by which the Law Department division heads were to evaluate the job performance of their subordinate attorneys. O'Hara rated Mann as incompetent or barely competent in the "job duties" categories and also defamed her in the "personal characteristics" categories. In the space provided on the last page of the form for narrative comments, O'Hara began, "Attractive, very intelligent attorney."

When Mann strongly protested his numerical ratings of her, O'Hara laughed and told her they did not matter; Barnard, he said, had told the Division heads that this evaluation go-around was only a practice run and that "they won't be used for anything." The Division heads were to perform *real* evaluations six months later, he said Barnard had told them. Then, he said, Mann's evaluations would be "better." He also said, three times during their conference about the evaluations, "Beverly, I think you're very attractive." In another instance, he told her that she insulted him by talking with him only about her cases. He repeatedly told her that she had "no humility" and, in acknowledging this in his trial and deposition testimony, he said he thought Mann "should

•4

be more humane.

There was no formal mechanism by which to protest the accuracy of the 1983 evaluations, but, at Mann's request, she met with Barnard and did protest the accuracy of O'Hara's evaluations of her. Barnard promised to speak with O'Hara about them and to apprise Mann of the result of the meeting. When three weeks later Mann had heard nothing further, she drafted a two-page letter of complaint and delivered it to Barnard's office.

Barnard testified that she never followed up on Mann's complaint and that she simply forwarded the evaluation to Montgomery for placement in Mann's personnel file. Barnard also acknowledged that she had received and read Mann's letter. She said she simply placed the letter into Mann's personnel file and did not show it to Montgomery.

In the fall of 1983, the City Counsel placed a hiring freeze upon the Law Department, yet Barnard was interviewing attorneys for prospective job openings. In early 1984, she began hiring attorneys and placing them in various Law Department divisions such as Traffic Court and Municipal Ordinance enforcement, considered undesirable, with the stated promise that their initial Division placement would be temporary; they would be transferred into the Torts Division or the Civil Rights Litigation Division as soon as openings were available so that they could get the trial experience they sought.

In February, 1984, Mann agreed to substitute for an office friend as trial counsel in a trial to begin that morning; the friend had arranged to take vacation time that week in order to address a personal matter, and the office had failed to inform the court. Mann read the plaintiff's deposition that morning for the first time while an assistant, also utterly unfamiliar with the case, participated in jury selection. Then the two of them, with Mann as lead counsel, won the trial against an attorney who had tried many cases against the City over a period of many years and had never before lost.

5

The second round of job performance evaluation occurred in July, 1984. This time, O'Hara defamed Mann only in the "Personal Characteristics" categories, rating her highly in the "job duties" categories. His narrative began, "Attorney is bright. A good legal mind."

At Mann's request, she met with Montgomery. She told him what she had earlier told Barnard orally and in writing, and provided further detail. She also told him about her October, 1983, meeting with, and letter to, Barnard. He said he was unaware of any of it. Mann handed him a five-page document she had drafted detailing her record of case results and summarizing her arguments in a sampling of them. He said he would read the document after the meeting.

Montgomery arranged a meeting with O'Hara and Mann. After only a few minutes, the meeting was interrupted by some emergency and ended abruptly. They scheduled another meeting for a few days later, but that meeting was cancelled and not rescheduled. Three weeks later, on September 4, 1984, Barnard told Mann she had been fired; Barnard did not know the reason, she said. But without Montgomery's knowledge, Barnard placed an "Exit Interview Report" form in Mann's personnel file stating that Mann was "involuntary terminated" for "inadequate performance of duties."

Montgomery testified that he discharged Mann because of the two sets of performance evaluations. He described Mann as "intelligent" and "articulate" but characterized her statements to him about O'Hara as "bitching." Asked whether he had inquired into whether Mann "had good reason to bitch," he said he had not; he "already knew she had good reason to bitch," he said, because he knew O'Hara's evaluations were not accurate. He also testified that he had read the five-page document Mann had handed him when they met, and that he thought it reflected excellent results.

Montgomery also testified that he pressured at least one Law Department division head to provide a poor job performance evaluation for a particular attorney in order to

provide a b      pon which to discharge the attorney. Both h
and Barnard admitted that they needed openings in the Torts
Division. And Montgomery acknowledged that he was quoted
accurately as follows in an article published in the Chicago
Tribune in early 1986 shortly after he resigned as corporation
counsel:

> You engage people who are known to you, whose
> confidence is known to you. I don't know that it would
> really be a wise thing for any politician to hire people
> who are not in any way aligned politically to him.
> That would be suicide.

After Mann was told she was discharged, she
immediately retained counsel, who, upon threat of a lawsuit,
negotiated a settlement. Mann did not request and did not
receive any financial payment; she received only an agree-
ment that Montgomery himself would respond to all inquiries
about Mann from prospective employers and would limit his
comments to statements contained in a draft reference letter to
be signed by him. The agreement called for Mann to draft the
letter, but when she did not produce the letter by the following
week, Barnard drafted one and had it delivered to her
attorneys' office. The letter praised Mann highly. Barnard
testified that its contents were "factually" accurate.

Mann, for her part, agreed *only* that she would not
file a lawsuit as long as the defendants complied with the
agreement's terms; the contract included no waiver of tort
damages if the defendants breached the agreement and
defamed her or tortiously interfered with her prospective
economic advantage. Mann paid her lawyers more than
$3,500 to negotiate the non-financial agreement.

Montgomery testified that he never complied with the
agreement; he simply had the phone inquiries referred to
Barnard. In response to an inquiry from an attorney at the
office United States Trustee in Bankruptcy in Chicago, where
Mann had been offered a job pending a reference check and
FBI background check, Barnard said there was an agreement
between Mann and the City that prohibited Barnard from

discussing Mann with him but that "sometimes silence speaks a mouthful." The job offer was rescinded. Barnard in her testimony characterized the statement as "indiscreet." The attorney to whom she made the comment testified that the comment shocked him. The head of the Justice Department's Bankruptcy Division testified that the comment cost Mann the job.

Mann resumed her job search, eventually mailing more than 200 resumes and interviewing with 44 prospective employers. She was tentatively offered several jobs, but each time the offer was rescinded in a perfunctory phone call or letter. After 20 months, she ended her search. For a year beginning in January, 1988, she practiced law solo, working from her home. She has not practiced law since then.

Mann filed this lawsuit in the wake of the "silence speaks a mouthful" incident. The lawsuit, brought largely by virtue of 42 U.S.C. § 1983, alleged violation of the First Amendment right to free association, violation of the Fourteenth Amendment's right to substantive due process of law, violation of the Fourteenth Amendments' right to equal protection of the law, violation of 42 U.S.C. § 2000e *et seq.*, common law defamation, common law tortious interference with prospective economic advantage, and breach of severance agreement.

The case was assigned to District Judge James B. Moran, who repeatedly, including twice in Mann's presence, instructed the defendants' counsel to file a dispositive motion. Mann each time responded by filing a more detailed amended complaint, ultimately a 48-page one with 16 exhibits. The judge then issued the series of 1986 memorandum orders identified above. (See Apps. K, J and I.) Those orders, which dismissed several counts but not the entire complaint, state that employment blacklisting by government officials does not constitute a violation of the Fourteenth Amendment and that Mann's detailed complaint and exhibits failed to establish pretext or defamatory inaccuracy by the defendants.

8

Two years later, that judge recused himself when Mann learned that he and defendant Barnard, through a series of marriages and divorces, shared four stepchildren who lived with the judge and his wife, and that Barnard and the judge saw each other regularly at family social events. (Barnard's husband and the judge had been neighbors a decade earlier and had swapped spouses. Each of the original couples had four children. Barnard married her husband in 1983 after he and the judge's first wife divorced.)

The case then was assigned to a judge who stated that the case was an inappropriate one for summary judgment because it was replete with factual controversies. (See App. O.) Shortly afterward, it was reassigned again, to a newly confirmed judge.

The procedural history thereafter is reflected in the unpublished orders cited above. In essence, though, summary judgments were entered on August 13, 1991, on all civil rights counts triable to a jury that were not dismissed in the 1986 memorandum orders. (See App. H.)[1] Of particular significance to the issues presented in this Petition's section pertaining to the Fourteen Amendment (pp. 27-29), summary judgment also was entered in favor of the City of Chicago on the defamation count by virtue of immunity conferred by 745 ILCS 10/2-107, quoted above. That statutory subsection reads, "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous."

The common-law defamation, tortious interference and breach of severance agreement counts against defendants O'Hara, Barnard and Montgomery were tried to a jury in the fall of 1991. The jury awarded Mann approximately $72,000 on her tortious interference count and approximately $68,000 on her breach of severance agreement count. They resolved the defamation count in favor of the defendants.

---

[1] The August 13, 1991, order provided no explanation for the summary judgments. Before briefing in the first set of appeals, a motions panel remanded the case for explanation, the result of which appears at App. H.

On cross-appeal, the summary judgments and the Rule 12(b)(6) dismissal of the due process count were affirmed without comment. The defamation and tortious interference counts were remanded for retrial upon a finding of inappropriate instruction to the jury concerning the definition of the term "actual malice" as Illinois law defines it for the respective torts. The breach of severance agreement verdict was affirmed. (See App. D.)

The defendants had argued, extensively, in the cross-appeals that there was insufficient evidence to support a jury finding of actual malice as the Illinois Supreme Court has defined the term for the respective torts. The appellate court in remanding the counts for retrial rejected the argument with respect to both of the counts.

Nonetheless, in July, 1997, twelve and one-half years after the case was filed and 18 months after remand for retrial on the defamation and tortious interference counts, the defendants filed another summary judgment motion. *The motion reasserted virtually every argument in their pre-appeal summary judgment motion and in their briefs on appeal,* including a claim that the jury award on the breach-of-severance-agreement claim is duplicative of recovery in tort. It also for the first time asserted additional affirmative defenses that were available, if at all, all along. The defendants had not obtained leave, as per Fed. R. Civ. P. 8(c), to assert the defenses. See *Harris v. Secretary, U.S. Dept. of Veterans Affairs,* 126 F.3d 339 (D.C. Cir. 1997).

The summary judgment motion nevertheless was granted on both remanded counts. Mann moved for reconsideration, not only of those summary judgments but also of the ones entered in 1992 in light of newly issued authority of this Court and in light of a reversal of a key position of fact by the defendants: In written argument in support of their recent summary judgment motion, they admitted that their conduct indeed occurred in determining governmental policy – an admission necessary to their claim of statutory tort immunity but also an admission that reversed their earlier assertion of fact upon which they had obtained the summary judgments

entered on civil rights counts in August, 1991. The district court on May 5, 1998, issued a memorandum opinion and order denying Mann's motion.

The July 14, 1999, unpublished order of the appellate court affirmed all of the summary judgments, most of them without comment. That order also affirmed without comment a minute order entered on June 8, 1998, that denied a motion brought by Mann pursuant to Federal Rule of Civil Procedure 60(b) for reconsideration of the 1986 dismissal of her substantive Due Process count. She had filed the motion on May 28, 1998, in light of *County of Sacramento v. Lewis*, 118 S. Ct. 1708 (1998), issued two days earlier, and in light of the district court's March 13, 1998, finding in this case that Illinois' Local Governmental and Governmental Employees Tort Immunity Act accords the defendants absolute immunity for the state-law torts alleged. The June 8, 1998, minute order stated only that the Rule 60(b) motion was untimely filed; it did not address the merits of the Due Process claim. (See App. K.)

The July 14, 1999, order also *directly* reaffirmed, without explanation, the 1986 dismissal of the Due Process count; on May 28, 1998, less than 30 days after the district court denied her motion for reconsideration of the March 13, 1998, summary judgments, Mann had filed an additional notice of appeal to enable her to again appeal *directly* from the 1986 dismissal of that count in light of *County of Sacramento* and the new circumstance in her case. (See App. L.)

## REASONS WHY THE WRIT SHOULD BE GRANTED

### I. FIFTH AMENDMENT DUE PROCESS (AND EQUAL PROTECTION), AND THE SEVENTH AMENDMENT RIGHT TO JURY DETERMINATION OF FACT IN COMMON LAW CLAIMS

This Petition asks this Court to elevate the recognized legal significance of conflicts between a single circuit's published and unpublished law to the status accorded conflicts

in the publish law among the various circuits, particularly when the device of unpublished order has enabled the deliberate failure by the court to apply settled published law in a particular case. Certainly as a practical matter, the importance of the former is no less than that of the latter, and, in a significant respect, it actually is greater. In Mann's case, she *relied upon* the published law of her circuit and of her state, and upon the supposed constitutional guarantees of due process and equal protection of that published law, and has paid dearly for it.

Phrased differently, the seminal issue is whether due process and equal protection of the law are, after all, guarantees or are instead mere suggestions to be accepted or rejected by appellate courts as they please. The issue concerns the very meaning of law itself. A divergence between the published and unpublished law of a single circuit is as much a denial of due process of law and its equal protection component as is a conflict of law among the circuits.

Mann asks this Court to state a rule of law that is simple in both concept and application: If the particular appeal would have been resolved differently had the court been required to publish the result and the pertinent substantive facts or procedural history, that resolution of the appeal unconstitutionally denies due process and equal protection of the law. Absent such a rule of law, the appellate rules permitting the secret, private court resolution of appeals create a legal loophole that breaches the promise of due process and equal protection, a loophole for the courts that, unlike others, cannot even be discerned from reading the published law.

This Court has said so often, e.g., in *Albright v. Oliver*, 114 S. Ct. 807 (1994); *County of Sacramento v. Lewis, supra.,* that the essence of the constitutional guarantee of due process of law is the circumscription of the arbitrary exercise of the powers of government against the individual. This Petition presents the civil-law equivalent of the issues this Court is hearing this term in *Fiore v. White*, No. 98-942 (intermediate opinion issued Nov. 30, 1999). See, also, *Teague v. Lane*, 489 U.S. 288 (1989).

The decision by an appellate panel to resolve a particular appeal by unpublished order is, as this case demonstrates, utterly arbitrary, notwithstanding the guidelines stated in the circuit rule permitting unpublished appellate resolution, thus the failure to apply settled law to a particular case by virtue of that device is, in turn, utterly arbitrary.

The order issued in Mann's appeals, although short, is replete with neon signs advertising the court's unabashed ignorance of the specifics of this lawsuit and the arguments presented in the appeal. One sign is the order's erroneous characterization of the operative complaint as alleging willful and wanton misconduct rather than deliberate misconduct. Another is the erroneous statement that that court's order resolving the initial set of appeals had discussed the evidentiary record in the case. Another is the order's *two* references to key defendant Jayne Barnard as "he." And another is the order's erroneous statement that Mann did not allege the publication of statements not found in her personnel file; the sentence, "Sometimes silence speaks a mouthful," appeared nowhere in Mann's personnel file.

Most startling, the order suggests that the court did not even know *the chronology of the earlier set of appeals in relation to the trial in the case and the filing and resolution of the earlier summary judgment motion* – the one filed and resolved *before* the first set of appeals.

Two of the panel members passed through *two* appeals in her case so utterly disengaged from the facts and allegations in it that they did not even know the gender of a key defendant. The contents of the order, other than its bottom line, didn't concern them. Had the order referred to Mann as a monkey, they would have signed onto that, too.

Mann was entitled to genuine appellate review but, courtesy of that court's Rule 53(c), received instead a sort of parody of it. Worse, the reason for the *faux* appellate review in her appeals appears to have been more an invidious one than a purely arbitrary one: She appeared before that court as a civil appellant *pro se*. The secret, anonymous nature of unpublished *per curium* orders removed any consequence to the

reputations of the panel members from the contents of the order and any consequence to *stare decisis*; no one important would know of it and *stare decisis* would not change, thus the panel was free to engage in a wholesale disregard of settled law, and that is what it did.

The effect is dramatic. In Mann's case, the list of pertinent settled law — federal and state, procedural and substantive — that the court so easily ignored is remarkably extensive. It is recited below.

A. **THE DISTINCTION BETWEEN THE LAW OF EMPLOYMENT-RELATED DEFAMATION AND TORTIOUS INTERFERENCE, ON THE ONE HAND, AND THE LAW OF WRONGFUL DISCHARGE, ON THE OTHER.**

In its January 19, 1996, remand order, the appellate court had relied largely upon two Illinois Supreme Court opinions, *Mittelman v. Witous*, 552 N.E.2d 973, 135 Ill. 2d 220 (1989), and *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 142 Ill. 2d 495 (1991), as had the district court in denying summary judgment on the defamation and tortious interference counts. *Mittelman* and *Fellhauer* define the term "actual malice" as it pertains respectively to defamation and tortious interference counts brought under Illinois law. For defamation, it is knowledge that the statement is false or a reckless disregard for its truth. For tortious interference, it is intent to harm or knowledge that the conduct is wrongful. It is, then, wrongful *intent*.

The defendants in Mann's case had argued both in their response to Mann's appeal on the defamation count and in support of their own appeal on the tortious inference count — as had the defendants in *Mittelman* and *Fellhauer* — that employment defamation and tortious interference allegations really were at-will employment wrongful discharge allegations and should be analyzed as such. The Illinois Supreme Court and, in turn, the appellate court earlier in Mann's case, *rejected* that argument. *Mittelman* states:

is certainly not in the best interest of the corporation to receive false information regarding one of its employees, even if that employee is ultimately responsible for a major corporate loss; nor is it in the best interest of the corporation for one who is responsible for such a loss to vindicate himself by unjustly imputing fault to another.[2] If Witous failed to act in the corporate interest, he cannot reasonably claim that he acted on behalf of the corporation. *Thus, he and the corporation are not one and the same for purposes of tortious interference analysis.* [Emphasis added.]

Moreover, given the allegations of Mittelman's complaint, Witous employed "wrongful means" in dealing with the corporation and Mittelman. The defamation and tortious interference counts are analytically intertwined in our view. *Defamatory statements may, in themselves, give rise to a cause of action for libel or slander and, at the same time, become the means by which the tortious interference with contractual relationships or prospective economic advantage is committed....* If Witous slandered Mittelman, and ultimately cost Mittelman his job, as Mittelman alleges in his per quod count, that independent wrong constituted "wrongful means" within the meaning of the Restatement and, if Witous is found to have possessed the requisite intent... he improperly interfered with Mittelman's prospective business relationship. [Emphasis added.]

---

[2] The portion of this sentence that appears before the comma originated *verbatim* with Mann. Mann was aware in the fall of 1988 that the Illinois Supreme Court had agreed to hear the case and that the resulting opinion would profoundly effect the law pertinent to her own lawsuit. She contacted Robert Mittelman, an attorney handling the appeal *pro se*, and offered her assistance in developing the arguments for his brief.

It was Mann who devised the argument summed up by the last sentence of that paragraph, the sentence that reads, "Thus, [the defendant supervisor] and the corporation are not one and the same for purposes of tortious interference analysis," and it was she who wrote the sentence, "It is certainly not in the best interest of the corporation to receive false information regarding one of its employees," adopted by the court *verbatim* from the brief.

This Court in *Haddle v. Garrison*, 119 S. Ct. 48 (1998), noted the distinction between the law of employment-related defamation and tortious interference, on the one hand, and the law of wrongful discharge, on the other. Illinois' law provides no exception to that rule of law.

### B. THE LAUNDRY LIST

One newly raised defense was a section of Illinois' Local Government and Government Employees Tort Immunity Act, 745 ILCS § 10/2-201. That statutory subsection, enacted decades earlier, had not been amended since the inception of this lawsuit, but the defendants argued that an Illinois Supreme Court opinion issued in February, 1997, *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), interpreted § 10/2-201 as barring recovery in tort for willful and wanton misconduct.

*The district judge in granting the summary judgments upon that defense acknowledged that the defense was available earlier* but said he was allowing it anyway because the Illinois Supreme Court had only just found the statutory subsection applicable to willful and wanton misconduct. (See App. E.) The memorandum opinion also said:

> *Plaintiff is correct that the evidence cited by Defendants on remand is not substantially different from the facts already decided in this case. Nemmers, 870 F.2d at 428....* Because we have granted the motion for summary judgment *due to the change in Illinois law*, Plaintiff need not submit a [Local Rule 12(n) statement submitting fact evidence in response to the summary judgment motion].

When in her motion for reconsideration, Mann noted that her allegations were not of willful and wanton misconduct but of deliberate injury, the judge ruled, notwithstanding the absence of any Illinois opinion so holding, that the statute applied to deliberately injurious conduct, as well.

Wh__ that motion, Mann quoted from Illinois Supreme Court authority issued three weeks before the entry of the summary judgments in Mann's case (of which the judge had been immediately apprised), stating expressly that a prerequisite to immunity under the statutory subsection was a finding that the injury at issue had occurred from "an act or omission in determining policy," and that the defendants earlier had obtained summary judgment and appellate affirmance on civil rights counts upon their assertion that their conduct did *not* arise from government policy, the judge, without explanation or reference to the evidentiary record, suddenly found that the defendants *had decided to "objectively evaluate Mann's performance"* and that the defendants were employees whose positions involved either making policy or making discretionary decisions, thus statutory subsection conferred immunity upon their conduct.

The judge found no factual inquiry necessary and certainly did not conduct one; the issues of fact, he found, were to be determined instead by operation of 745 ILCS § 10/2-201. No need, he found, for consideration of the evidentiary record developed during years of discovery conducted in the litigation, which by then had cost Mann more than $180,000 – much of it in borrowed money, much of it the proceeds of sales of blue-chip securities that had been in her family for three generations until they were sold in the late 1980s to pay her several-thousand-dollar-a-month legal fees at the time.

No, it was the Tort Immunity Act that, after all, determined what had been the seminal issue of fact in the case since it was filed in 1984; i.e., the defendants' motive(s) for their conduct, the court said. The defendants had decided to objectively evaluate Mann's job performance; the immunity statute *required* this finding of fact, the district judge said and so did the appellate court, which parroted the district judge's statement *verbatim* without elaboration.

On appeal, Mann asserted the implausibility of, and utter lack of foundation for, an interpretation of the statute as creating an irrebuttable presumption of *fact* concerning the

motive of the defendants, and argued that such an interpretation in any event renders the application constitutionally impermissible. But the appellate court found these arguments items on "a laundry list unworthy of any discussion" and, without prefatory explanation, stated as its final paragraph that it was affirming the summary judgments "[s]ince the defendants' decisions to objectively evaluate Mann's performance were made by employees whose positions involved either making policy or making discretionary decisions; and the acts or omissions by the defendants were both discretionary and involved in policy making decisions ..."

"In her most recent appeal," the court's order reads, "Mann raises a laundry list of issues; however, the only one worthy of any discussion is whether the defendants actions are shielded from liability under the Illinois Tort Immunity Act." This patronization, intended to imply that the lawsuit itself was frivolous and that Mann had quite some nerve in bothering the court with it a second time, failed to note that the earlier appeals were not just Mann's but also were the defendants, and that the defendants *lost* on *their* arguments that Mann's defamation and tortious interference counts failed to state a claim and that, in any event, her claim was not supported by the evidentiary record. The panel used this expedient to falsely imply its knowledge of the contents of the briefs.

The appellees in Mann's case had waited twelve and one-half years to raise a statutory immunity defense that one of them, the City of Chicago, routinely asserts as a defense in tort cases and had asserted from the beginning more than five years earlier in the *In re Chicago Flood Litigation* case. *No Illinois opinion had ever held the statute applicable to the types of torts Mann was alleging*, and the only opinion to even address the issue, *Stratman v. Brent*, 683 N.E.2d 951 (Ill. Ct. App. 1997), had held that it did not (discussed below). The defendants were basing their motion on a reversal of a position upon which they had obtained earlier summary judgments. Yet Mann shouldn't have bothered the appellate court with her appeal. Not as a *pro se*, anyway.

On November 16, 1999, Mann filed a motion to recall the mandate and for clarification of the court's enigmatic order. On November 29, 1999, the day that Mann's motion to recall the mandate was denied, the court certified a question to the Illinois Supreme Court pertaining to interpretation of a section of the Illinois Tort Immunity Act. See *Yang v. City of Chicago*, Nos. 98-4238 and 98-4330 (7th Cir. 1999). Mann had requested in her petition for rehearing that the court do that in her case. Judge William Bauer, a panel member in Mann's appeals, authored *Yang*, in which Judge Frank Easterbrook, the presiding panel member in Mann's appeals, concurred. That opinion quotes Circuit Rule 52 and Illinois Supreme Court Rule 20(a), each quoted above.

In her petition for rehearing, Mann also had argued to the district court that the defendants earlier had obtained summary judgments and appellate affirmance of those summary judgments in Mann's civil rights counts partly upon their assertion that the conduct at issue did *not* constitute government policy and was committed in the determination of government policy. The defendants were bound by their statement or, alternatively, the summary judgments entered upon the basis of that statement must be reversed.

But the district judge found that the "standard," as he called it, for determining government policy under state law differs from that under federal civil rights law. He did not address *St. Louis v. Praprotnick*, 485 U.S. 112 (1988), and *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), although Mann referenced those opinions extensively.

On appeal, Mann emphasized the issue. The title of a section of her opening appellate brief read, "Parties are Not Entitled to Make *Sequential* Assertions of Fact and Law that *Directly Contradict* One Another, When the Earlier Assertions Supported Earlier Rulings or Findings of Fact that Resolved Substantive Issues." [Emphasis in original.]

But the court found this another item on the laundry list unworthy of its discussion, this although 16 days earlier, Judges Easterbrook and Bauer had specifically *disallowed* inconsistent positions argued sequentially in successive

appeals. Then Judge Easterbrook, writing for the court, said, *"Too late. Petitioners could choose one side of the required/forbidden line, and they might have been entitled to argue inconsistent positions simultaneously, but they can't present them in sequence."* [Emphasis added.] See *DeSilva v. DiLeonardi*, No. 99-1754 (7th Cir. Jun. 28, 1999). See, also, *People Who Care v. Rockford Board of Education*, 171 F.3d 1083 (7th Cir. 1999), in which Judge Bauer, a panel member in *both* sets of appeals in Mann's case, concurred.

Two days after the mandate was issued in Mann's appeals, Judge Easterbrook, writing in *Neal v. Honeywell, Inc.*, Nos. 98-1728 and 98-3162 (7th Cir. Sept. 15, 1999), for a panel that included Judge Kenneth Ripple, the third panel member in Mann's appeals, said:

> [Appellant] *Honeywell's current position contradicts the premise of its interlocutory appeal in 1994 and would make that interlocutory review superfluous. This is something in which the judicial system is vitally interested even if [appellee] Neal no longer cares. Her failure to stand on a procedural objection therefore is not dispositive. Sometimes the judiciary must act in self-defense. ... By seeking permission to appeal under sec. 1292(b), therefore, Honeywell was representing that these conditions were satisfied... After receiving permission to take such an appeal and losing, a party cannot contend that the answer is irrelevant.* If Honeywell is right now, then it was wrong to appeal in 1994..... *To persuade us to hear the interlocutory appeal, Honeywell told us that the case turned on the difference between the five- and six-year periods. We picked six, which resolves the limitations dispute.* [Emphasis added.]

*Neal* was argued on May 17, 1999, three weeks after Mann's appeals were argued. In Mann's case, though, the court relegated the first set of appeals to the status of a mere practice run regarding the defendants' (but not Mann's) arguments.

Oth___ms on the laundry list that the court deeme___ unworthy of its discussion: the application of the doctrines of the law of the case and waiver to this fourteen-year-long lawsuit after first trial, after earlier summary judgments, after earlier appeal; the propriety of mutually exclusive summary judgments entered at different times upon respectively conflicting assertions of fact; the substantive due process claim as per *County of Sacramento, supra.*; the propriety under Illinois law of treating employment defamation and tortious interference as at-will employment wrongful discharge counts; the inapplicability of 745 ILCS § 10/2-201 to deliberately injurious (or bad faith) conduct; the inapplic-ability of 745 ILCS § 10/2-201 to activities not unique to government entities, as per extensive Illinois common law.

The district judge repeatedly and insistently had pressured Mann to accept a small settlement offer because of the age of the litigation and because, he said, she was spending too much time on it; she should be using her "talent" as a "bright, capable person" to practice law on behalf of clients who would pay her, he said. See Apps. M and N; e.g.:

> This is dogging your life. You know, I could see maybe suing the City, but you have a life besides that. I mean, come on. We spent some time together. Why are you letting your talent sit aside? You know, really somebody -- at some point someone has got to say this to you." (See transcript at App. M.)

At another hearing, he said he thinks about Mann's case when he is driving in his car. His conclusion: She should accept whatever was offered in settlement so that she could spend her time doing other things. And at a hearing shortly after he entered the summary judgments but before he ruled on Mann's motion for reconsideration, he again pressured her to accept whatever settlement offer was made. (See App. N.)

That judge predicted accurately that as a *pro se* appellant in a civil lawsuit, Mann would receive only rubber-stamp appellate review of his rulings, so he did what suited his convenience. There is an inverse correlation between the likelihood of genuine appellate review and the need for it.

## C. THE DOCTRINES OF LAW OF THE CASE AND WAIVER

Mann's research has disclosed nearly 60 opinions of that court published with the last five years that recite with unremitting consistency the doctrines of law of the case and waiver. See, e.g.; *Vidimos, Inc. v. Wysong Laser Co., Inc.,* No. 99-1159 (7th Cir. Jun. 14, 1999); *Benson v. S.I. Handling Systems, et al.,* 99-2700 (7th Cir. Aug. 12, 1999); *Avitia v. Metropolitan Club,* 49 F.3d 1219 (7th Cir. 1995); *People Who Care v. Rockford Board of Education,* 171 F.3d 1083 (7th Cir. 1999); *Neal v. Honeywell, Inc., supra.; Britton v. Swift Transportation Co.,* 98-2492 (7th Cir. Aug. 8, 1999); *Carr v. O'Leary,* 167 F.3d 1124 (7th Cir. 1999); *Leavell v. Keiffer,* No. 98-4089 (7th Cir. Aug. 19, 1999).

And that court did not only just five years ago adopt these doctrines as the law of the circuit. See, e.g.; *Nemmers v. USA,* 870 F.2d 426 (7th Cir. 1989); *Evans v. City of Chicago,* 873 F.2d 1007 (7th Cir. 1989); *Barrington Press, Inc. v. Morey,* 816 F.2d 341 (7th Cir. 1987); *Soderbeck v. Burnett County, Wis.,* 821 F.2d 446 (7th Cir. 1987).

As *Nemmers* phrased the doctrine of law of the case, every holding in an appellate remand opinion or order becomes the law of the case, and the court will not reconsider the holding "without a showing that either the evidence considered on remand was substantially different, or controlling authority has since changed ..., or the previous decision was 'clearly erroneous, and would work a substantial injustice' [citations omitted]." This Court phrased it similarly in *Agostini v. Felton,* 521 U.S. 203, 236 (1997), an opinion cited often by the Seventh Circuit court of appeals.

A month before it issued its order in Mann's appeals, that court wrote, in *Vidimos, Inc. v. Wysong Laser, supra.*:

This appeal is founded on a misunderstanding of the doctrine of law of the case.... Wysong has appealed, represented by new counsel who challenge two rulings in our previous opinion that proved decisive in the award of damages and prejudgment interest to the plaintiff on remand.... *But that is the*

sort of argument that the law of the case doctrine bars-
-namely, an argument for reconsideration that is based
not on intervening authority, new (and heretofore
undiscoverable) evidence, or other changed
circumstances that justify waiver of the doctrine, e.g.,
[citations omitted], *but on considerations of fact or
law that were available when the previous appeal was
argued.... The remedy of a losing party who believes
that through oversight or impulsiveness the court has
erred is to seek rehearing – which Wysong did not do
– rather than to lie in wait and then, years later (two
and a half years, to be precise), having lost on
remand, to present its argument for reconsideration in
a second appeal.* [Citations omitted.] [S]uch a
litigating strategy ... *will not be allowed to succeed.*
[Emphasis added.]

There is no *published opinion* of that court that defies
the doctrines of law of the case and waiver, at least not in a
manner sufficiently obvious to effectuate an alteration of the
law by virtue of the publication of the opinion.

A staple of that court's opinions is an acknowledge-
ment of the reliance that plaintiffs and contingent-fee counsel
place upon the application of the doctrines of law of the case
and waiver to their own case in calculating the value of
pursuing the litigation; e.g., *Carr v. O'Leary, supra.; Vidimos.*
The order in Mann's case, on the other hand, ordered her to
pay the appellees' costs in the successive appeal that
relitigated *de novo* the issues determined in her favor in the
initial cross-appeals. (She did not pay the costs, but only
because the appellees did not submit a bill of costs.)

Every single member of the *en banc* court, and the
senior judge who was a member of the panel in *both sets* of
appeals in her case, has during the last five years authored or
concurred in a published opinion that enunciates the doctrines
of law of the case and waiver of claims and defenses. Yet,
although the petition was pending for six weeks, *no* judge

voted to hear the case *en banc*.[3] Not even Chief Judge
Richard Posner, who authored *Vidimos, supra., Avitia, supra.,
People Who Care, supra., Carr v. O'Leary, supra.,* and
several of the other similar ones, and who also had authored
*Speakers of Sport, Inc. v. ProServ, Inc.,* 98-3113 (7th Cir. May
13, 1999), and *J.D. Edwards & Co. v. Podany,* 168 F.3d 1020
(7th Cir. 1999), both cited below.

Contrast this with the following statement authored by
Judge Posner for the *en banc* court in *Newman-Green Inc. v.
Alfonzo-Larrain R.,* 854 F.2d 916 (7th Cir. 1987), in which the
court vacated a published opinion:

> We vacated the panel decision, and took the case en
> banc to decide whether a court of appeals is
> empowered to dismiss a party in order to retain federal
> jurisdiction. Previous decisions by this court had
> answered the question "no," but the panel disagreed
> and held that we may do this, 832 F.2d 417, 419-20
> (7th Cir. 1987), and it went on to reverse the district
> court on the merits. The full court adheres to our
> previous decisions.

Mann's research has found no *en banc* review by that
court of an order issued by virtue of (if not in actual
compliance with the rule's own stated prerequisites) that
court's Circuit Rule 53, and it appears that there exists an
internal court policy that prohibits it from hearing, *en banc,*
any appeal that was resolved by unpublished order – a policy
premised upon a belief that unpublished resolution of appeals
that deviate from universally established law do not actually
alter the law and therefore are of no large importance.

It is, in other words, not the law's reality but its facade
that matters to the *en banc* court – and the panel in Mann's
appeals knew that. The public's ignorance is bliss, not for the
public but for the members of the judiciary whose whim or

---

[3] That court's internal operating procedure as published in its handbook and on its
Web site allows the judges only 10 days after such a petition is distributed *en banc*
in which to request a vote on it. Mann's petition remained pending for six weeks
even though no judge requested a vote on it.

convenience be served by the license that Circuit Rule 53 provides them. The panel, in other words, could and did create its own exemption from any possible *en banc* oversight of its ruling and therefore from application of that circuit's law.

Such a policy *itself* fundamentally alters the law by effectively (albeit quietly) dismantling the Equal Protection component of the Fifth Amendment's Due Process Clause and perhaps the Due Process Clause itself. It licenses (and in Mann's case licensed) a brazen failure by the assigned appellate panel to apply the law whenever it is inconvenient for it to do so in a particular case.

Also, during the six-week pendency of her petition for rehearing with suggestion for rehearing *en banc*, Mann submitted several submissions pursuant to F.R.A.P. 28(j). Judge Easterbrook disallowed their filing, issuing orders stating that Rule 28(j) does not apply to such petitions. (See App. P.) But that court did allow three such filings during the pendency of a petition for rehearing with suggestion for rehearing en banc last spring, in *LaGuerre v. Reno* (7th Cir. No. 98-1954), an interpretation of Rule 28(j) that gives effect to its purpose: consistency in application of the law.[4]

## D. THE DISTINCTION BETWEEN DAMAGES FOR TORT AND FOR BREACH OF CONTRACT UNDER ILLINOIS LAW

Also in the earlier set of appeals in Mann's case, the defendants had argued that Mann's tort damages were duplicative of the small award she had won on her breach of contract count, an award thoroughly circumscribed by the limits of contract law and by various rulings during the trial, including one that barred her from providing expert testimony about prospective financial injury, rulings that Mann had challenged in that appeal. In remanding the two counts for

---

[4] The panel, or at least its presiding judge, also denied an instanter motion that Mann filed 12 days after the issuance of the July 14, 1999, order for leave to supplement the appendix to her petition with a transcript of oral argument. Mann had filed the petition itself seven days early. See motion, transcript and order at App. Q.

retrial, the court had ruled *against* the defendants on this issue and had reopened the damages issue for the second trial before a different judge.

No matter. Unlike in the other cases, the court's earlier *rejection* of the cross-appellants' earlier assertions was – well, not *quite* short-lived, but three and one-half years long.

The court's amorphous order does not even explain the basis for its single-sentence finding that tort damages for the defamation would be duplicative of the damages for breach of contract, a finding not contained in the district court's orders; it does not even say whether this was intended as a statement of law or, rather, as a finding of fact, either on the basis of a waiver provision it believed was in the contract or upon a calculation by the court of Mann's damages.

The award actually amounted to about one-third of her out-of-pocket expenses to litigate the case.

The court's legal premise, if that is what it is, is patently ridiculous in light of actual Illinois law. See, e.g., *Speakers of Sport, Inc. v. ProServ, Inc.*, No. 98-3113 (7th Cir. May 5, 1999), citing to *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370-71 (Ill. 1998); *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020 (7th Cir. 1999). But Mann is not certain that that is what it is – that is, that the court intended it as a premise of *law*. In *Neal, supra.*, Judge Easterbrook explained elaborately that Illinois law indeed allows for monetary compensation for "special" – i.e., *non-monetary* – injury resulting from the commission of a tort.

Perhaps the court was finding that it is not Illinois tort law, generally, but only Illinois *defamation law* that allows monetary recovery only for specifically proved dollar-for-dollar monetary loss. If so, the finding marks an epiphany for Judge Bauer. He had authored a lengthy opinion affirming a jury's $2 million judgment against the CBS network and a Chicago newscast anchor because, he explained, Illinois law allows substantial monetary tort damages for injury to business reputation *even absent tangible monetary loss*, as was the situation in that case. See *Brown & Williamson v. Jacobson*, 827 F.2d 1119 (7th Cir. 1987).

### E.　PARAMETERS OF FIRST AMENDMENT PROTECTION FOR DEFAMATION

Nor does the court's order explain its finding that Barnard's "silence speaks a mouthful" comment, which cost Mann the job she was offered as an assistant United States trustee in bankruptcy, was "obviously" capable of innocent construction and therefore is not actionable in tort, a ruling not contained in the district court's orders. The order does not even state the obviously innocent construction. It may be obvious, but not to Mann, nor to Barnard, nor to the attorney to whom the statement was made, nor to anyone to whom it was reported.

Nor does it explain why, if the defense was so obviously available, *it was not raised until after remand for retrial twelve and one-half years after the lawsuit was filed.*

Nor does the order attempt to reconcile its statement of defamation law with that of *Milkovich v. Lorain Journal,* 497 U.S. 1 (1990). The order does not mention *Milkovich,* and ostensibly relies for its premise of law entirely upon an Illinois Supreme Court opinion, *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill. 2d 1, 607 N.E.2d 201 (Ill. 1992). But *Kolegas* expressly based *its* ruling for the *plaintiff* upon *Milkovich.* *Milkovich* states the breadth of First Amendment protection as "whether a reasonable factfinder could conclude that the statements ... imply [a defamatory assertion]," not whether the statements are *capable* of an innocent construction. *Kolegas* was issued more than three years before the *first* set of appeals was resolved in Mann's case, and *she* cited it and *Milkovich* back then.

### II.　FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION, AND THE SEVENTH AMENDMENT RIGHT TO JURY DETERMINATION OF FACT

Last, but certainly as it effects her personally, not least, Mann also asks this Court to consider whether a state statute found to mandate a judicial finding of *fact* in specific cases

violates the Fourteenth Amendment's due process clause and the Seventh Amendment's guarantee of *jury* determination of facts in lawsuits brought under the common law. Particularly, she asks this Court to consider the constitutionality of a statutorily imposed imprimatur by the court upon the accuracy or good faith of defamatory statements that have the inherent potential to destroy their victim's livelihood.

The appellate court, torturing the Illinois Supreme Court's opinion in *Harinek v. 161 North Clark St. Ltd. Partnership*, 181 Ill. 2d 335, 692 N.E.2d 1177 (Ill. 1998), found such a statutory mandate in Illinois' Tort Immunity Act, but it did not consider *the constitutionality* of that mandate. The mandated findings of fact, however, have profound implications for Mann. Because issues of state of mind, e.g., objectivity, motive, are virtually always considered issues for the trier of fact – a concept of law that even most lay adults know – any reader of the appellate court's order surely will interpret it as stating substantive findings of fact about Mann discerned from the evidentiary record. A day before Mann's Petition for Rehearing with Suggestion for Rehearing *en banc* was denied, that court, in *Wollin v. Gondert*, No. 98-1857 (7th Cir. Sep. 2, 1999), said "an objective immunity analysis at the summary judgment stage prior to discovery does not include an evaluation of intent. *This is because evaluating intent would be a factual analysis….*" [Emphasis added.] See, also, Judge Easterbrook opinion, Judge Ripple concurring, in *Walker v. Nat'l Recovery, Inc.*, 99-2119 (7th Cir. Dec. 21, 1999), finding question of mental state an issue of fact, "not of law or logic."

The credibility of defenses to wrongful-discharge allegations and the accuracy of defamatory statements and the good faith, or lack of it, of the publishers of defamation in, every state in this county and in federal law (e.g., whistleblower statutes; Title VII of 42 U.S.C. 2000e *et seq.*,) considered issues of fact, thus any reader of conclusory statements of fact by a court will presume that the court's determination was based upon a review of the evidentiary record. Yet in this case, the appellate court found not only a statutory

bar to legal redress for what can be a deliberate and deliberately devastating injury but also a statutory *invitation to commit the injury* if it is personally advantageous to do so. The statute *requires the court to resolve issues of fact in favor of defendants*, the court said.

This is (suffice it to say) a remarkable reach for a governmental immunity statute. It also constitutes a stark denial of the Fourteen Amendment's guarantee of due process of law at its most fundamental, particularly when those findings of fact read as *ad homonym* attacks upon the plaintiff. See *Albright v Oliver, supra.* And it operates as a denial of the Seventh Amendment's right to jury determination of facts in lawsuits brought under the common law.

Mann has never heard of a presumption of *fact* by operation of liability-immunity statute, and she doubts that anyone else but the members of that court has either. Certainly this is a novel construct of *Illinois* law; there is no published opinion of any Illinois court that finds such a presumption of *fact* by operation of that statute, or by operation of any other statute, best as Mann can tell.

Mann had argued extensively on appeal that the defendants' conduct constituted a denial of the type of substantive due process rights described by this Court in *County of Sacramento, supra.*, particularly given the suddenly recognized statutory immunity that eliminated consideration of *Parratt v. Taylor*, 451 U.S. 527 (1981); the first several sections of her opening appellate brief addressed this issue. Yet the court declined even to mention it. But seven months earlier, in *Payne v. Churchich*, 161 F.3d 1030 (7th Cir. 1998), Judge Ripple, in an opinion reversing the dismissal of a federal civil rights count that was granted "on the ground that [the defendants] enjoyed absolute immunity as a matter of state law under the Illinois Tort Immunity Act," wrote:

> Immunity on the federal claims, those brought pursuant to 42 U.S.C. sec. 1983 in this case, is a matter of federal law…. In the case before us … the district court failed to consider whether the governmental defendants were liable or immune under federal law

for their alleged federal constitutional violations. Therefore we cannot accept the district court's rationale for dismissing the claims....

The panel in Mann's appeals, by its default of discussion, did *exactly* what seven months earlier one of its members and two colleagues had reversed a district judge for doing: resolving a *federal* civil-rights substantive due process count by applying *state* statutory tort immunity. Elsewhere in *Churchich*, the panel had discussed the significant alteration in due process analysis mandated by *County of Sacramento*.

This issue is particularly significant given the court's idiosyncratic interpretation of *Stratman v. Brent, supra.* In contriving a distinction between *Stratman* and Mann's case, the court found *Stratman* to hold the immunity statute inapplicable only to the publication of defamatory statements *not contained in the plaintiff's personnel file*; to trigger the statutory immunity, the court's order suggests, the defendant in *Stratman* need only have first reduced the defamatory statements to writing and placed the writing into Stratman's employment record – a potently dangerous construct of law.

In December, 1999, Mann filed respective complaints pursuant to 28 U.S.C. § 372(c) against Judges Moran, Andersen and Easterbrook for their conduct as described above (and, against Judge Easterbrook for additional conduct). (App. Q.) Seventh Circuit Chief Judge Posner, on December 22, dismissed all of them as "directly related to the merits of a decision or procedural ruling," and stating that judicial misconduct, including conflict of interest, is mere "error" and thus is beyond the scope of that statute. (App. R.)

## CONCLUSION

Judge Easterbrook, in reiterating a circuit rule that requires district judges to state their reasons whenever the judge "resolves any claim or counterclaim on the merits [or] terminates the litigation in its court," wrote, in *U.S. v. Mobley*, No. 99-1621 (7th Cir. Sept. 30, 1999), "Reasons are essential

to intelligc____ppellate review .... Giving reasons also contributes to intellectual discipline...." He illustrated:

> The decision concerning para. 23 was an easily preventable gaffe.... Because the district judge did not explain his decision, we can't tell whether he meant to delete a portion of a count, a step appealable under [citation omitted], or instead to foreclose mention of overt acts that occurred before 1993."

The judge's exemption of himself and his immediate colleagues from compliance with this dictate of logic seems to Mann the ultimate conceit – and the ultimate acknowledgment that Mann indeed was denied procedural and perhaps substantive due process of law in her appeals. Had these judges exercised the intellectual discipline that they enforce upon district judges within their circuit, they might have recognized issues on Mann's laundry list that indeed were worthy of their discussion. There is a lot of dirty laundry in this litigation.

Mann spoke recently with this Court's chief deputy clerk, Francis Lorson, about the application of the Court's Rule 10(a) in actual practice, specifically whether the Court ever actually does grant certiorari petitions in civil cases upon the basis that "a United States court of appeals has ... so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power." He said it does, but declined to offer ballpark statistics.

But if not in this case, then in what case? Mann asks this court to grant this Petition.

Respectfully submitted,


Beverly Mann
Petitioner *Pro se*

1

## CITATION TO, AND DISCUSSION OF, NEW AUTHORITY OF THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

I. **THE AVAILABILITY OF CIRCUIT RULE 53 AS A MECHANISM BY WHICH THE COURT MAY QUIETLY, ARBITRARILY AND WITHOUT EXPLANATION DEPART FROM THE COMMON LAW WITHOUT CHANGING THE COMMON LAW IS MORE SUBVERSIVE OF THE RULE OF LAW THAN THE PROPOSITION THAT JUDGE EASTERBROOK IN HIS DISSENT IN *GRAY-BEY V. USA* REJECTS AS DOING EXACTLY THAT, AND HAS NO APPROPRIATE PLACE IN THE AMERICAN SYSTEM OF JUSTICE.**

On January 7, 2000, the United States Court of Appeals for the Seventh Circuit issued an unpublished order pursuant to its Circuit Rule 53 (which permits the unpublished and summary resolution of appeals) in *Gray-Bey v. USA*, 99-4131, a habeas-petition case concerning an application for a certificate of appealability for an order authorizing the district court to entertain a second and successive petition for collateral review. The threshold subject of the unpublished order was the nature of 28 U.S.C. sec. 2244(b)(3) – specifically whether appellate courts can depart from that statutory subsection's stated requirement that the court rule upon the merits of the application within 30 days of its filing, which in that case was the date of issuance of the unpublished order.

The threshold issue pertaining to the merits of the application in that case was whether the applicant had waived – or as the dissent in that case termed it, forfeited – the grounds upon which he based his application because he had not asserted them in his initial collateral appeal.

The dissenting judge, apparently at whose behest the initially unpublished order was published as an opinion on January 24, 2000, stated his belief that the 30-day-time-limit

language——the statutory subsection is mandatory. He also expressed his belief both that the court lacks the legal authority to depart from mandatory language of a statute (presumably, absent unconstitutionality of the mandate language) and that the applicant in that case indeed had forfeited his substantive grounds for collateral review by failing to assert them in his initial habeas petition.

That judge in arguing the former point said, "In the end, the majority's approach rests on the proposition that federal judges have discretion to depart from federal statutes for good reasons – and that judges, rather than the political branches, define which reasons are 'good.' Few propositions could be more subversive of the rule of law." The judge in arguing the latter point, the one concerning the forfeiture of defenses, engaged in extensive analysis concerning the time limitations included in the statute at issue.

The petition for writ of certiorari that this supplemental brief supports concerns a purely civil lawsuit; the statute at issue in *Gray-Bey* is not at issue in this case. Yet the dissent in *Gray-Bey*, because of the specifics of its language and the identity of its author, Judge Frank Easterbrook (who, as the petition for writ of certiorari in this case discusses, headed the panel that issued the unpublished order that resolved the second set of appeals in the case), is relevant to the issues addressed in the section of the petition that appears at pp. 10-27.

The pertinent portions of Judge Easterbrook's dissent in *Gray-Bey* read:

[Gray-Bey's] initial problem – one that does not make my colleagues' list of four issues to be briefed – is time....

Only subsection (3) might authorize Gray-Bey's application in December 1999, more than six years after his conviction was affirmed (and more than three years after Congress added the one-year period of limitations to the law of collateral attack). *But the "right" that Gray-Bey wants to assert "was initially recognized by the Supreme Court" on December 6,*

3

1995, in *Bailey v. United States*, 516 U.S. 137 (1995), more than four years before *Gray-Bey filed his application. Far from being unavailable to Gray-Bey until now, Bailey came in time for Gray-Bey to present it on his first collateral attack. Gray-Bey lost not because Bailey is prospective only, but because he neglected to make the argument in the district court even though certiorari had been granted in Bailey on April 17, 1995, and the issue had been percolating for years.* 156 F.3d at 742-43. [Emphasis added.]

Gray-Bey now points to *Bousley v. United States*, 523 U.S. 614 (1998), which held that implementation of 18 U.S.C. sec. 924(c)(1) (the statute construed in *Bailey*) can lead to constitutional problems cognizable on collateral attack. Improper advice to a defendant pleading guilty could make the plea unintelligent, *Bousley* held; similarly, a trial record that lacks evidence adequate to establish all elements of the offense (as *Bailey* defines them) could support collateral relief to avoid imprisoning an innocent person. But these are not new principles of constitutional law. *Davis v. United States*, 417 U.S. 333 (1974), establishes that actual innocence justifies collateral relief under sec. 2255, cf. *Jackson v. Virginia*, 443 U.S. 307 (1979), and the rule that involuntary guilty pleas may be set aside is even older. More than a year before *Bousley*, we applied these principles in collateral attacks based on *Bailey*. E.g., *Stanback v. United States*, 113 F.3d 651 (7th Cir. 1997).

Gray-Bey's first collateral attack failed solely because he should have raised the issue sooner; that conclusion is incompatible with his current submission that 1997 or 1998 was too soon to invoke *Bailey*. Nothing that happened in 1998 restarts the time for a collateral attack. *The initial principle of Bailey, which is the crucial time under sec. 2255 para. 6, dates from*

4

*1993, and the retroactivity rules predate Bousley....* [Emphasis added.]

*In re Davenport,* 147 F.3d 605, 609 (7th Cir. 1998), *requires us to ask whether Gray-Bey's initial sec. 2255 motion gave him "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence."* In *Davenport* this court held that when the basis of the claim has not been legally established at the time of the first petition, the prisoner has not received a reasonable opportunity. The first petition filed by Sherman Nichols (one of two petitioners in *Davenport*) was resolved before the Supreme Court issued *Bailey,* and the law in this circuit was contrary to the way *Bailey* interpreted the word "use" in sec. 924(c)(1). Nichols therefore could not have obtained relief by a sec. 2255 petition. Gray-Bey, however, is differently situated. [Emphasis added.]

*Gray-Bey filed his first sec. 2255 petition before Bailey, but final decision came later. Had Gray-Bey properly preserved an argument about the meaning of "use" in sec. 924 (c)(1), it would have been decided by this court, under correct principles of law, on his first sec. 2255 petition.* Had we erred, the Supreme Court could have corrected us by certiorari. The reason Gray-Bey did not receive a decision was his own default. *It is impossible to say that "the remedy by motion [under sec. 2255] is inadequate or ineffective to test the legality of his detention" when the only shortcoming is the petitioner's omission of an issue. That omission is not a problem in the remedy; it is a problem in litigation strategy.* It is, indeed, a fatal problem, for when *Bousley* held that *Bailey* can support collateral review, the Justices stressed that the legal arguments must have been presented to the district court--and they added that the weight of existing precedent against a position does not justify

omission. *Bousley*, 523 U.S. at 622-23.... [Emphasis added.]

Next in logical sequence, if Gray-Bey's application were timely, would be the question whether a successive petition may be justified under sec. 2255 para. 8(2) on the ground that *Bailey* is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

*Bousley*, which was decided while Gray-Bey's prior appeal was pending, holds that Bailey claims may be raised on collateral review, and that *Bailey* may be applied retroactively to at least some cases (though perhaps *Bousley* himself was not a beneficiary, having forfeited his claim). There is a nice question about the scope of sec. 2255 para. 8(2):

Does the successive petition have to assert reliance on a "new rule," or is an old rule newly made retroactive enough?

From Gray-Bey's perspective, however, *Bailey* is not a "new rule", as I have already observed; he argued it in 1997 when briefing his appeal.

Had we rejected that claim on the ground that *Bailey* does not apply retroactively, then it would be tempting to say that *Bousley* reopens the door. But because Gray-Bey lost on forfeiture rather than the merits, one would think that the kind of new rule adequate to start a new period must be one that retroactively changes the law of forfeiture, rather than a decision making explicit that Bailey "applies."

We need not wrestle this one to the ground, however, because *Bousley* does not make retroactive a new rule "of constitutional law".

*Bailey* resolved an issue of statutory interpretation, and *Bousley* observed that the proper understanding of sec. 924(c)(1) may lead to collateral relief to the extent that a statutory error gives rise to a constitutional flaw. In *Bousley* itself the potential flaw was an involuntary

gu\_\_\_\_ea (made involuntary by the fact that the defendant did not know the elements of the offense to which he was pleading). This is related to the approach our court earlier adopted for *Bailey* issues in *Stanback*. Similarly a statutory problem could give rise to a constitutional one if the record did not contain enough evidence to permit a rational trier of fact to find guilt beyond a reasonable doubt. As *Bousley* observed, however, defendants trying to take advantage of that possibility have a heavy burden, for they must show not only that the record fails to establish "use" but also that they did not "carry" the weapon, the other way to commit the crime.....

Does *Bousley* make retroactive a "new rule of constitutional law" that the evidence must be sufficient to support the charge? Not at all; that rule has been around since *Davis* and *Jackson*. Gray-Bey's second principal contention, that the jury instructions in his case did not anticipate *Bailey*, is not even a constitutional argument, for the reasons given in *Young v. United States*, 124 F.3d 794, 798-99 (7th Cir. 1997).... I therefore conclude that a successive petition cannot be authorized under sec. 2255 para. 8. *Gray-Bey must live with the forfeiture in his prior petition*, just as our published opinion concludes. [Emphasis added.]

Those statements, when coupled with the unpublished order in the appeals in this petitioner's case, suggest a belief, at least by Judge Easterbrook, that common law, however unremittingly consistent, is not a part of the rule of law but is instead, at best, a rule of thumb. In this petitioner's case, Judge Easterbrook and his colleagues ostensibly found the issue of waiver (or forfeiture) of defenses among those unworthy even of their discussion, although the common law of their circuit certainly and unfailingly *appears* to have established it as a rule of law when (as in *Gray-Bey* and in the

petitioner's case) the defenses were available, if at all, at the time of the initial appeal in the case.

It may be that, as Judge Easterbrook said in his dissent in *Gray-Bey*, the approach of the majority in that case "rests on the proposition that federal judges have discretion to depart from federal statutes for good reasons – and that judges, rather than the political branches, define which reasons are 'good.'" It may be also that, as the judge said, few propositions could be more subversive of the rule of law; it is not the purpose of this brief to address the merits of that statement. But at least the reasons for the departure in *Gray-Bey* were "good." And even if not good, at least they were defined.

The petition in this case asserts that federal appellate judges – who do have discretion to amend or repeal federal common law in a manner not inconsistent with the Constitution or with the holdings of this Court – nonetheless lack the discretion to quietly depart in arbitrarily selected cases from the pertinent law, whatever the manner in which that law was promulgated. The petition asserts, in other words, that federal appellate judges lack the discretion to depart from the law without changing that law, and that their quiet assumption of the power to do so in this case (and presumably in others) violates the Constitution's Fifth Amendment.

The availability of Circuit Rule 53 as a mechanism by which the court may quietly, arbitrarily and without explanation *depart from the common law without changing the common law*, as occurred in this case, is, this petitioner submits, more subversive of the rule of law than the proposition that Judge Easterbrook in his dissent in *Gray-Bey* rejects. It has no appropriate place in the American system of justice.

Judge Easterbrook's lament about the subversion of the rule of law presumes, of course, that such a thing as the rule of law still exists. The petition in this case argues that the Seventh Circuit's Rule 53 and its counterparts in the other circuits have rendered appellate-court application of the law merely optional and thus have subverted the very concept of the rule of law. If so, Judge Easterbrook need not worry about

8

his colleagues subversion in *Gray-Bey* of the rule of law, as it is logically impossible to subvert what does not, in any event, exist.

That judge, who in *Gray-Bey* so meticulously juxtaposed the procedural chronology of that case with the chronological development of the case authority he cited in support of his dissenting finding that Gray-Bey had forfeited his defenses, nonetheless in *this* case was content to both rely upon and to conveniently ignore case authority issued years before the resolution of the initial appeals in the case, in *reversing, without explanation*, the rulings in those initial appeals. No timeliness inquiry here; only a finding that timeliness was an issue unworthy of the court's discussion.

"The issue had been percolating for years," the judge said in his dissent in *Gray-Bey*. But in this case, no such analysis; in fact, no analysis at all. In this case, a gimmicky word-game approach sufficed.

Judge Easterbrook should have worried about the subversion of the rule of law when he himself could have closed the barn door before the horses escaped.

II.     IT IS, PERHAPS MOST OF ALL, THE EASY ENABLING OF CONVENIENT FICTIONS (OF THE SORT ILLUSTRATED BY CONTRASTING *BELLAVER V. QUANEX CORP.* WITH THE COURT'S HANDLING OF THE IDENTICAL ISSUE IN THIS CASE) THAT RENDERS THE SUPPOSEDLY PROCEDURAL CIRCUIT RULE 53 AND ITS COUNTERPARTS LEGAL ABOMINATIONS.

Virtually throughout the very lengthy pendency of this litigation, this petitioner has seen the issuance of one after another appellate or Supreme Court opinion that appeared to favorably (for her) determine one or another issue in this litigation, only to later see the appellate panel in her case fail, courtesy of Circuit Rule 53, even to acknowledge the existence of those *issues*. On January 18, 2000, a panel of the court of appeals for the Seventh Circuit issued an opinion, in *Bellaver v. Quanex Corp.*, 98-3708, that, when compared with

that court's handling of the identical issue in this lawsuit yet again illustrates the substantive effect upon the law that the ostensibly procedural Circuit Rule 53 has had.

The issue is gender stereotyping as this Court addressed it in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The district court in this petitioner's case said that *Price Waterhouse* applies only to accountants and requires expert testimony to establish gender stereotyping. The district court also said the petitioner could not prevail because she had not established that defendant James Montgomery, the City of Chicago's corporation counsel, was aware of the discriminatory motive and therefore had no reason to disbelieve the accuracy of defendant Timothy O'Hara's submitted evaluations of the petitioner's job performance.

The petitioner had addressed the gender discrimination issue extensively in her opening brief in the first set of appeals in this litigation, arguing that the district court's memorandum opinion, 1994 U.S. Dist. LEXIS 9893 (Jul. 18, 1994, 84 C 11020 N.D. Ill.), which stated the reasons for his summary judgments entered three years earlier in the case, contained statements of purported law that conflicted directly with this Court's rulings in *Price Waterhouse*. The issue, in fact, occupied the first nine pages of the "Argument" section of that brief. (See this brief's Appendix A). Yet the unpublished order that resolved that set of appeals did not even acknowledge the existence of the issue.

In the recent set of appeals, the petitioner again argued the issue, citing *Oncale v. Sundowner Offshore Servs., Inc.*, 118 S.Ct. 998 (1998), and *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257 (1998), both of which, she asserted, directly contradict statements of law contained in that 1994 memorandum opinion. But the issue was among those on the laundry list that the appellate panel said was unworthy of its discussion.

The petitioner does not claim here that *Bellaver* constitutes new law of the Seventh Circuit and that it must be applied retroactively to her case. She asserts the contrary; she argues that *Bellaver* merely applied the law as delineated in

10

1989 in *Price Waterhouse*, and in 1998 in *Ellerth* and *Oncale* – law that she was entitled to have the appellate court consider in her own appeals, law that was not considered in her appeals because Circuit Rule 53 invited the convenient fiction that this and other significant issues in the case *did not even exist*.

It is, perhaps most of all, this encouraging of convenient fictions that renders these supposedly procedural circuit rules legal abominations. Subversion of the rule of law? Which law, exactly – the published law or the secretly decreed law? They are not the same.

Respectfully submitted,


Beverly Mann
Petitioner *Pro Se*

1

I.  CITATION TO FEBRUARY 11, 2000, JUDI-
CIAL MISCONDUCT COMPLAINT RULINGS
OF THE JUDICIAL COUNCIL OF THE
SEVENTH CIRCUIT

Two of the questions presented in this petitioner's
petition for writ of certiorari filed on December 30, 1999,
concerned the dismissal by the Seventh Circuit's chief
judge on December 22, 1999, of judicial misconduct
complaints the petitioner had filed against three judges
assigned to her lawsuit at various stages of it. Those
questions presented in her petition ask:

21. Whether judicial misconduct, including brazen
undisclosed conflict of interest, is beyond the scope
of 28 U.S.C. § 372(c) as mere "error," or whether,
instead, the interpretation of that statutory
subsection as precluding consideration of judicial
misconduct complaints on the basis that such
misconduct constitutes "error" effectively nullifies
the statutory subsection; and whether the
availability of appeal to the United States Supreme
Court via a petition for writ of certiorari eviscerates
the obligations of a circuit's chief judge (and the
circuit's judicial conference) as delineated in the
statute.

22. Whether judicial misconduct, including brazen
conflict of interest, is mere "error" and thus is
beyond the scope of 28 U.S.C. § 372(c)(3)(A), or
whether, instead, the preclusion of consideration of
judicial misconduct complaints on the basis that
such misconduct constitutes "error" effectively
nullifies that statutory subsection, and whether the
availability of appeal to the United States Supreme
Court via a petition for writ of certiorari eviscerates

the obligations of a circuit's chief judge (and judicial conference) as delineated in the statute.

At the time she filed her petition, the petitioner was about to file appeals of those dismissals with the Judicial Council of the Seventh Circuit. A copy of the first draft of her letter of appeal, dated December 27, 1999, appears in the Appendix to her certiorari petition at App. R. She filed a slightly amended draft of it with the Judicial Council on January 4, 2000.

On February 11, 2000, the Judicial Council issued three orders, copies of which appear in this brief at Appendix A. The orders affirm the dismissals of the three judicial misconduct complaints and provide no explanation for the affirmances – even the affirmative of the dismissal of the complaint against District Judge James Moran, who during the nearly four years in which he retained assignment of the case was seeing defendant Jayne Barnard at family gatherings, including some at his own home, and who after repeatedly insisting that the defendants file a dispositive motion issued an order indicating that he intended to treat the defendants' F.R.C.P. 12(b) motion as a F.R.C.P. 56 motion.

In response to that order, the petitioner discharged her contingent-fee counsel and retained an hourly-fee attorney who then-recently had successfully represented the American Civil Liberties Union before this Court. His whose representation of the petitioner resulted in the three memorandum opinions issued by Judge Moran in 1986, cited in the petitioner's certiorari petition. The petitioner paid him nearly $30,000 during the six-month period in which that dispositive motion, brought at the insistence of Judge Moran, was being litigated, almost all of the fees paid solely to litigate the motion.

## II. CONFLICTS OF INTEREST HAVE PLAGUED THIS LITIGANT THROUGHOUT THE PENDENCY OF THIS LITIGATION

One of the three judges against whom the petitioner initially filed a complaint was Circuit Judge Frank Easterbrook, who substituted (apparently on the literal eve of oral argument) for Circuit Judge Ilana Rovner, a panel member in the earlier set of appeals in the case. Judge Rovner had recused herself because, the petitioner very recently learned, her son Maxwell, an attorney, works as an assistant to the current mayor of the defendant City of Chicago; Maxwell Rovner's office is one floor below the mayor's at City Hall and his official title is "assistant to the mayor."

He has held that position since at least the fall of 1997, yet Judge Rovner in March, 1998, participated along with Judges Kenneth Ripple and William Bauer, her two panel colleagues in the initial set of appeals in the case, in denying an emergency petition to that court for writ of mandamus or prohibition brought by this petitioner in this lawsuit on March 13, 1998, five hours before District Judge Wayne Andersen granted the defendants' summary judgment motion.

That mandamus petition, appellate number 98-1628, was denied on March 18, 1998.

Judge Rovner also participated, in February, 1999, in the (accurate) determination that the then-pending appeals were successive to the appeals resolved in January, 1996. But instead of recusing herself then, she apparently waited until only a day or two before oral argument on April 23, 1999, to do so. Judge Easterbrook, who has a reputation for precision knowledge of the cases assigned to him, appeared at oral argument in this case to be unaware even that there had been an earlier set of appeals in the case, and, at least by appearances, never bothered after oral

argument to review the briefs in the case, or at least didn't read the petitioner's briefs.

The appellate order, which is merely a composite of a few unexplained conclusory sentences from Judge Andersen's two memorandum opinions and two or three unexplained conclusory sentences from the appellees' brief, appears to have been drafted entirely by a law clerk who received no more specific instructions than to draft an order of affirmance; only the bottom line mattered; the specifics, such as they were, did not.

The petitioner believes, and has believed since the moment she first read the July 14, 1999, order, that the only part of her briefs that any judge read was the covers — specifically the part of the covers that said "appellant *pro se*." These judges, who routinely find sufficient time to draft detailed, multi-subsectioned opinions even in ordinary business-breach-of-contract cases (e.g., opinion authored by Judge Bauer in *Outsource International, Inc. v. Barton, et al.*, No. 98-2808 (7th Cir. Sept. 17, 1999), did not, at least by appearances, find the time to read even the Table of Contents to this petitioner's opening brief.

(In the initial set of appeals, Judge Joel Flaum was assigned to the panel hearing the case. But Judge Flaum's son Jonathan, an attorney, by then was working as an assistant City of Chicago corporation counsel – in the Torts Division, the division where the petitioner had worked. So Judge Flaum recused himself from the case and was replaced by Judge Bauer.)

Nor have conflicts of interest been limited to judges; they have involved lawyers, as well.

In April, 1990, six weeks before the scheduled trial date of June 4, the petitioner's attorney at the time, Michael J. Leech, a partner at Chicago-based Hinshaw & Culbertson, suddenly told her that he needed to withdraw as her counsel. He and his wife had separated a few months earlier, he told her, and he was suffering from such debilitating depression as a result that he simply could not

try the case competently.

He had represented her in the case since January, 1987, and the petitioner by then had paid his firm nearly $75,000 in fees.

The case had been reassigned a few months earlier from Judge Paul Plunkett to newly-sworn Judge George Lindberg, who, unlike Judge Plunkett, agreed to allow the defendants to file a summary judgment motion. He had, however, in early April, after allowing them a fourth extension of time, said he would not allow another one. When on May 1, several days after the last deadline had passed, their counsel presented a motion for leave to file their motion by May 30, the judge (as reflected in the transcript of the hearing that is a part of the court record) initially denied the motion. The petitioner, however, was unrepresented at the hearing; Mr. Leech simply failed to appear, telling her later that day that he had overslept because of his depression. The defendants' counsel then pleaded with the judge and suggested that Mr. Leech agreed that a summary judgment would dispose of at least most of the case. The judge then agreed to a 10-day extension of time on the summary judgment motion. The transcript of the May 1, 1990, hearing appears in this brief at Appendix B.

The next day, Leech told the petitioner that he planned to request an in-chambers meeting for that afternoon in order to advise the judge and opposing counsel of his need to withdraw from the case. He said he also would request a trial-date continuance to enable her to retain new counsel. Late that day, he reported to her the results of the in-chambers meeting (at which there was no court reporter present): The judge had agreed to allow Leech to withdraw from the case and to a three-month continuance of the trial date — in exchange for an agreement allowing the defendants an additional two and one-half months in which to file their summary judgment motion. The petitioner then sent Leech a detailed letter demanding

that he move to rescind that agreement, which she had not authorized. He responded in a letter dated May 14, 1990, in which he refused to file the motion, but said he "would bet money" that the defendants would not file the summary judgment motion. A copy of that letter appears in this brief at Appendix C.

He had a lot of money to bet – the petitioner's money; he retained more than $4,000 from her $5,000 retainer fee (in addition to the earlier-paid $75,000 she had paid his firm) for his time associated with his withdrawal from the case, fees that included his time at the in-chambers conference on May 2, his time in speaking with her prospective new attorney (whom she also was paying hourly for the conversations), his time in drafting and presenting his withdrawal motion, and his time in sorting the large file in preparation for his withdrawal.

Three years later, the petitioner learned (from an article published in the St. Louis Post-Dispatch, which she had read by happenstance, and shortly afterward in a series of articles published in the Chicago Tribune) that Leech's law firm had been performing extensive municipal bond work for a local governmental agency called the Metropolitan Pier and Exposition Authority, control of which was (and is) shared equally by the City of Chicago and the State of Illinois. The bond work concerned the expansion of Chicago's McCormick Place convention center and the renovation of Chicago's Navy Pier, the preliminaries for the bond work began late 1990. Hinshaw & Culbertson had never before performed municipal work, and had to hire attorneys experienced in government bond work to perform the work for the Authority.

Leech had told the petitioner in January, 1989, a month before Richard M. Daley's first successfully mayoral primary campaign, that he, Leech, had given a sizable monetary contribution to Daley's campaign because, he told her, his "arm was twisted" (his phrase) by his law partners to do so. Virtually every Hinshaw partner

had contributed to the Daley campaign, the petitioner was told, and she later verified that by searching campaign disclosure records.

Meanwhile, in the petitioner's lawsuit, the defends' counsel did file the summary judgment motion, on July 16, 1990, after obtaining a three-day extension; their computer had broken at just the most inopportune time. Thirteen months later, the motion was granted on every one of her civil rights counts except the *Shakman*-decree bench count. Judge Lindberg offered no explanation for the summary judgments until July, 1994, when ordered by the appellate court to do so.

Michael Leech, incidentally, represented the plaintiff in *Neal v. Honeywell, Inc.*, 191 F.3d 827 (7th Cir. Sept. 15, 1999), which the petitioner discusses extensively in her certiorari petition. As she noted, Judges Easterbrook and Ripple found Leech's arguments in *Neal* well worthy of their discussion and were familiar with every nuanced detail in the case, and even added their own argument on behalf of Leech's client.

One and one-half years after the remand for retrial of the two state-law counts at issue in the second set of summary judgments, the petitioner flat-out could not pay her sole-practitioner counsel another cent, so she began searching for contingent-fee counsel. Ultimately, on March 4, 1998, she presented a motion for appointment of counsel. A paragraph of her explanatory attachment to that motion, or petition, read:

> To date, I have paid approximately $175,000 in attorneys' fees and costs, most of it in money borrowed from family members and friends, to litigate this lawsuit. I have no further sources of funds to pay attorneys' fees.
>
> I have attempted unsuccessfully to obtain counsel upon a contingency fee basis. In one instance, attorney Donald Jenkins, a partner in the Chicago office of Vedder, Price, Kaufman &

Kammꞏꞏꞏ and member of that firm's contingent-fee committee expressed interest in representing me in this lawsuit. His firm rejected the case, however, because for reasons of conflict of interest; the firm represents certain Chicago governmental entities headed by persons directly or indirectly appointed by Chicago's mayor.

During the course of this litigation, numerous attorneys have declined to represent me because of similar conflicts of interest.

Her petition for assignment of council was denied in the same memorandum opinion in which the summary judgments were granted.

Conflicts of interest have absolutely plagued the petitioner throughout the pendency of this litigation.

## CONCLUSION

The petitioner files this supplemental brief, her second one, after informal discussion with a few appellate attorneys who have told her that the appellate court indeed, as she has suspected, handled her recent set of appeals in an unusual manner.

She no more wishes to assault this Court with a barrage of supplemental briefs than she wishes to add to her already very substantial expenditures of money and time in litigating this case during the seven months since the July 14, 1999, resolution of her appeals. She has not tallied the number of hours she has spent on it, but her monetary expenditures, beginning with the photocopying and binding of the required 30-plus copies of her Petition for Rehearing with Suggestion for Rehearing *en Banc*, and including her several F.R.A.P. 28(j) submissions during the pendency of that petition (none of which the clerk's office distributed to the *en banc* court, although she submitted 30 copies of each), and including her 37-page motion to recall the

mandate, along with the expenditures associated with her petition to this Court, already totaled well more than $1,000.

Yet neither is she willing (or psychologically able) to come away from this without having presented to this Court, as best she can, what has transpired in this litigation. District Judge Andersen repeatedly chided her for what he termed her obsession with this lawsuit, and perhaps, with her decision to file this second supplemental brief, she is proving him correct.

But she also believes that the appellate court treated her case as a joke, that it used the vehicle of unpublished appellate resolution to do so, and that it would not have done so had she not, of financial necessity, come to that court *pro se*. That itself has become an obsession.

Respectfully presented,


Beverly Mann
Petitioner *Pro Se*

# EXHIBIT C

TERMED APPEAL
GUZMAN CONV

U.S. District Court
Northern District of Illinois (Chicago)

CIVIL DOCKET FOR CASE #: 84-CV-11020

Mann v. City Of Chicago, et al                          Filed: 12/31/84
Assigned to: Hon. Wayne R. Andersen          Jury demand: Plaintiff
Demand: $0,000                                             Nature of Suit: 440
Lead Docket: None                                         Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 42:1983 Civil Rights Act


BEVERLY MANN                          Richard P. Campbell
    plaintiff                              [term  07/09/92]
                                       [COR]
                                       Anthony S. DiVincenzo
                                          [term  07/09/92]
                                       [COR LD]
                                       Campbell & DiVincenzo
                                       55 West Monroe Street
                                       Suite 3460
                                       Chicago, IL 60603
                                       (312) 443-1915

                                       Ronald S. Adelman
                                          [term  07/09/92]
                                       [COR]
                                       Law Offices of Ronald S.
                                       Adelman
                                       Xerox Centre
                                       55 West Monroe Street
                                       Suite 630
                                       Chicago, IL 60603
                                       (312) 629-1080

                                       Beverly Mann
                                       [NTC] [PRO SE]
                                       7261 North Campbell Avenue
                                       Chicago, IL 60645
                                       (312) 465-4503

                                       Gregory Alan Stayart
                                          [term  03/13/98]
                                       [COR LD NTC A]
                                       Attorney at Law
                                       445 North Crooked Lake Lane
                                       Linderhurst, IL 60046-6434
                                       (847) 356-6742

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK
By Laura Spunge
U. S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE: July 30 1998

**All circled items are included.
All crossed out items are not included
S/C Items sent under seperate cover
N/A Items not available in case file
For previous items see case#**

**For all other pleadings see #98-1936,
98-2249 & 98-2413**

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al

TERMED APPEA
GUZMA
CONV

   v.

CITY OF CHICAGO, ILLINOIS
   defendant

Kelly Raymond Welsh
[COR]
City of Chicago, Law Department
Corporation Counsel
121 North LaSalle Street
Room 511
Chicago, IL 60602
(312)744-0220

Maria C. Campo
[COR]
City of Chicago, Law Department
Corporation Counsel
180 North LaSalle Street
Suite 704
Chicago, IL 60601
(312) 744-0451

Jennifer Anne Naber
[COR]
Laner, Muchin, Dombrow, Becker,
Levin & Tominberg, Ltd.
515 North State Street
Suite 2800
Chicago, IL 60610-4798
(312) 467-9800

Terence J. Moran
[COR LD NTC]
Gessler, Flynn, Fleischmann,
Hughes & Socol, Ltd.
70 West Madison Street
Suite 2200
Chicago, IL 60602
(312)580-0100

Jonathan P. Siner
[COR]
Attorney Registration &
Disciplinary Commission
One Prudential Plaza
130 East Randolph Drive
Suite 1500
Chicago, IL 60601
(312) 565-2600

Nancy L. Van Allen
[COR]
Tracey Renee Ladner
[COR]
City of Chicago, Law Department

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al

TERMED APPEA
                                                                   GUZMAI
                                                                   CONV

                                        Corporation Counsel
                                        30, North LaSalle Street
                                        Suite 1020
                                        Chicago, IL 60602
                                        (312) 744-0220

                                        Susan S. Sher
                                        [COR LD NTC]
                                        Corporation Counsel
                                        City of Chicago
                                        121 North LaSalle Street
                                        Room 511
                                        Chicago, IL 60602
                                        744-6901

HAROLD WASHINGTON                       Kelly Raymond Welsh
    defendant                           (See above)
                                        [COR]

                                        Maria C. Campo
                                        (See above)
                                        [COR]

                                        Terence J. Moran
                                        (See above)
                                        [COR LD NTC]

                                        Jonathan P. Siner
                                        (See above)
                                        [COR]

                                        Nancy L. Van Allen
                                        (See above)
                                        [COR]

JAMES MONTGOMERY                        Kelly Raymond Welsh
    defendant                           (See above)
                                        [COR]

                                        Maria C. Campo
                                        (See above)
                                        [COR]

                                        Jennifer Anne Naber
                                        (See above)
                                        [COR]

                                        Terence J. Moran
                                        (See above)
                                        [COR LD NTC]

                                        Jonathan P. Siner

Docket as of July 29, 1998 3:52 pm                     Page 3

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al

TERMED APPEAL
GUZMAN
CONV

                                    (See above)
                                    [COR]

                                    Nancy L. Van Allen
                                    (See above)
                                    [COR]
                                    Tracey Renee Ladner
                                    (See above)
                                    [COR]

                                    Susan S. Sher
                                    (See above)
                                    [COR LD NTC]

TIMOTHY O'HARA                      Kelly Raymond Welsh
     defendant                      (See above)
                                    [COR]

                                    Maria C. Campo
                                    (See above)
                                    [COR]

                                    Jennifer Anne Naber
                                    (See above)
                                    [COR]

                                    Terence J. Moran
                                    (See above)
                                    [COR LD NTC]

                                    Jonathan P. Siner
                                    (See above)
                                    [COR]

                                    Nancy L. Van Allen
                                    (See above)
                                    [COR]
                                    Tracey Renee Ladner
                                    (See above)
                                    [COR]

                                    Susan S. Sher
                                    (See above)
                                    [COR LD NTC]

JAYNE BARNARD                       Kelly Raymond Welsh
     defendant                      (See above)
                                    [COR]

                                    Maria C. Campo
                                    (See above)
                                    [COR]

Docket as of July 29, 1998 3:52 pm                    Page 4

Proceedings include a[...]vents.                                                  TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                                               GUZMA
                                                                                            CONV

                              Jennifer Anne Naber
                              (See above)
                              [COR]

                              Terence J. Moran
                              (See above)
                              [COR LD NTC]

                              Jonathan P. Siner
                              (See above)
                              [COR]

                              Nancy L. Van Allen
                              (See above)
                              [COR]
                              Tracey Renee Ladner
                              (See above)
                              [COR]

                              Susan S. Sher
                              (See above)
                              [COR LD NTC]

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al

TERMED APPEA
GUZMA
CONV

BEVERLY MANN

                    plaintiff

    v.

CITY OF CHICAGO, ILLINOIS; HAROLD WASHINGTON; JAMES
MONTGOMERY; TIMOTHY O'HARA; JAYNE BARNARD

            defendant



| DIST. | OFF. | YR. | NUMBER | MO. | DA. | YEAR |  |  |  |  |  | DEM. | YR. | NUMBER |
|-------|------|-----|--------|-----|-----|------|--|--|--|--|--|------|-----|--------|
| 0752 | 1 | 84 | 11020 | 12 | 31 | 84 | 3 | 440 | 1 | $1,000 | 374 M | 17031 | P | 84 | 11020 |

| PLAINTIFFS | DEFENDANTS | 52BG |
|---|---|---|

PLAINTIFFS

(P-1) MANN, BEVERLY B.

IN RE: SHAKMAN

DEFENDANTS                         52BG

(D-1) CITY OF CHICAGO, An
      Illinois Municipal
      Corporation
(D-2) WASHINGTON, HAROLD and
(D-3) MONTGOMERY, JAMES D.

(D-4) Timothy O'Hara
      per Second Amended Complaint
      5/30/85

(D-5) BARNARD, JAYNE
      (Amendment to 2nd Amended Complaint)
      (7-31-85)

~~JUDGE PLUNKETT (Reassigned 09/20/88)~~
JUDGE LINDBERG (Reassigned 11/21/89)
~~MAGISTRATE BABOG (Referred 02/05/88)~~
MAGISTRATE GUZMAN (Referral Reassigned 07/25/90)

CAUSE

(CITE THE U.S. CIVIL STATUTE UNDER WHICH THE CASE
IS FILED AND WRITE A BRIEF STATEMENT OF CAUSE)

42 USC Section 1391, 1st and 14th Amendments - SHAKMAN PETITION

rm

ATTORNEYS

(P-1)

~~A David M. Mattenson~~ (Withdrawn 08/01/90)
~~William J. Arendt~~
~~Stuart E. Palmer~~
~~KANTER & MATTENSON, LTD.~~
~~25 E. Washington St. #1400~~
~~Chgo. 60602 368-1400~~

(P-1)
A - Anthony S. DiVincenzo
    Richard P. Cambell
    Ronald S. Adelman
    Xerox Ctr S. 3460
    55 W Monroe St
    Chicago, Il 60603
    443-1915  (Order 11/20/90)

(LAW BULLETIN PUBLISHING COMPANY
NON-PARTY MEMBERS)
(A) WM. CARLISLE HERBERT
    JOSEPH F. GRIFFIN
    HOPKINS & SUTTER
    3 FIRST NAT'L PLAZA, S-4200
    60602/558-6600

(D-1,3 & 4).  (A) Arthur Christie
      & 5)      Judson H. Miner

A ~~Michael J. Leech~~ (Withdrawn 09/13/90)
~~HINSHAW CULBERTSON~~
~~MOELMANN, HOBAN & FULLER~~ ~~GN, LTD.~~
~~222 North LaSalle St., Suite 300~~ ~~F400~~
~~Chgo. 60601-1081  630-4400~~

(D-1 and D-3)

A - Terence J. Moran
    Maria C. Campo
    Kelly R. Welsh
    Nancy van Allen
    City of Chicago, Law Dept.
    180 N. LaSalle St., Room 1408
    Chgo. 60601 744-7772, 0775,
                              0465

DuP

(D-1,3 & 4).  (A) Arthur Christie
      & 5)      Judson H. Miner
               CITY OF CHICAGO
               ~~ACTING CORPORATON COUNSEL~~
               180 N. LaSalle St., Room 704
               Chgo. 60601 744-0586

               Jonathan P. Siner
               Maria C. Campo

| | FILING FEES PAID | | | STATISTICAL CARDS |
|---|---|---|---|---|
| HERE IF CASE WAS FILED IN FORMA PAUPERIS | DATE | RECEIPT NUMBER | PD | 84 CV 11020 |
| | 12-31-84 | 12/27/87 | 60.00 | |

UNITED STATES DISTRICT COURT DOCKET

| DATE | NR. | JUDG⋅ ⋅AN | PROCEEDINGS | 84 C 11020 |
|------|-----|-----------|-------------|-------------|

| | | | |
|------|-----|-----------|---|
| 1/3/85 | 1 | FILED 12/31/84: Complaint | |
| 1/3/85 | 2 | FILED 12/31/84: Civil Cover Sheet | |
| 1/3/85 | 3 | FILED 12/31/84: APPEARANCE of James Malloy as counsel for plaintiff (Mailed letter re⋅ rule 39) | |
| 1/3/85 | | ISSUED 12/31/84: Summons and three copies    rm | |
| 1/9/85 | | FILED 1/9/85: Plaintiff's AMENDED COMPLAINT and one copy    rm | |
| 1.10.85 | 5 | Filed 01/09/85: Return of Service.of Summons and Complaint served upon Harold Washington, Mayor; c/o Corporation Counsel on 01/09/85. | D |
| 1.10.85 | 6 | Filed 01/09/85: Return of Service of Summons and complaint served upon City Clerk on 01/09/85. | D |
| 1.10/85 | 7 | Filed 01/09/85: Return of Service of Summons and Complaint served upon James D. Montgomery; c/o Corporation Counsel on 01/09/85: | D |
| 1.10.85 | 8 | Filed 01/9/85: Appearance of James W. Malloy and Beverly B. Mann as counsel for the plaintiff and affidavit re. rule 39. | D |
| XXXXXXXX | | XXXXXXXXXXXXXXXX/85XXX XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX. ENTERED IN ERROR | X |
| 1.10.85 | | Filed 01/09/85: Contingency Fee Agreement. | D |
| 1/29/85 | 10 | FILED 1/28/85: APPEARANCE of John K. Hughes, Terence E. Flynn as counsel for defendants; rule 39 (two) | |
| 1/29/85 | 11 | FILED 1/28/85: Defendant's motion to extend time    rm | |
| 1/30/85 | 12 | FILED 1/29/85: APPEARANCE of Philip L. Comella as counsel for defendants; rule 39 | |
| 1/30/85 | 13 | ENTER ORDER DATED 1/29/85: Defendants' motion to extend time to answer or otherwise plead to the complaint to and including February 1985 is granted.---Moran, J No ntoices required    rm | |
| 2/4/85 | 14 | ENTER ORDER DATED 2/1/85: Status hearing set for March 5, 1985 at a.m. pursuant to rule 16 of the F.R.C.P.--MORAN, J Mailed notices 2/4/85    rm | |
| 2-20-85 | 15 | Filed 2-19-85: Defendant Harold Washington's Motion to Dismiss. | |
| 2-20-85 | 16 | Filed 2-19-85: Defendants,City of Chicago's and James D. Montgomery's ANSWER to Amended Complaint.    wp | |
| 3/6/85 | 17 | Enter order dated 3/5/85: Status hearing held and continued to April 18, 1985 at 9:45 a.m.---Moran, J. No notices    TPH | |
| 3-11-85 | 18 | Filed 3-8-85: Plaintiff's Notice of Motion. | |
| 3-11-85 | 19 | Filed 3-8-85: Plaintiff's Motion for Preliminary Injunction. | |
| 3-11-85 | 20 | Filed 3-8-85: Plaintiff's Memorandum Supporting Motion for Preliminary Injunction | |
| 3-11-85 | 21 | Filed 3-8-85: Affidavit of Beverly B. Mann. | |
| 3-11-85 | 22 | Enter order dated 3-8-85: Plaintiff's motion for hearing on motion for preliminary injunction is entered and continued generally. Status hearing set for April 18, 1985, at 9:45 a.m. to stand. -- MORAN, J. Mailed notices 3-11-85.    wp | |
| 4/9/85 | 23 | Filed 4/8/85 Defendants' notice of motion;Motion for entry of an agreed protective order. | |
| 4/9/85 | 24 | Enter order dated 4/8/85: Enter Agreed Protective Order.---Moran, J (DRAFT) Mld. notices 4/9/85    CONTINUED | |

DC 111A
Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO. 84 C 11020 |
| | | PAGE 2 OF____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 4-19-85 | 25 | Enter order dated 4-18-85:  Status hearing held and continued to May 9, 1985, at 9:45 a.m. -- MORAN, J.    wp<br>No notices required. |
| 5/1/85 | 26 | Filed 4/30/85  Plaintiff's Notice of Motion; Motion for leave to file second amended complaint with jury demand; Memorandum supporting motion for leave to file second amended complaint with jury demand.    JJ |
| 5/1/85 | 27 | Filed 4/30/85  Defendants' objections to plaintiff's filing a second amended complaint.    JJ |
| 5/1/85 | 38 | Enter order dated 4/30/85:  Plaintiff's motion for leave to file second amended complaint is entered and continued to May 9, 1985 at 9:45 am. - MORAN, J    JJ<br>No notices required |
| 5/9/85 | 39 | ENTER ORDER DATED 5/9/85:  PLAINTIFF'S ORAL MOTION FOR LEAVE TO FILE THE APPEARANCE OF KENNETH K. DITKOWSKY ON HER BEHALF AS ADDITIONAL COUNSEL IS GRANTED.  STATUS HEARING HELD AND CONTINUED TO MAY 30, 1985 AT 9:45 A.M. --MORAN, J.    DMK<br>NO NOTICES REQUIRED. |
| 5/9/85 | 40 | FILED 5/9/85:  APPEARANCE OF KENNETH K. DITKOWSKY AS ADDITIONAL COUNSEL FOR THE PLAINTIFF.    DMK |
| 5/9/85 | | MAILED 5/9/85:  LETTER IN RE: AFFIDAVIT RULE 39, TO MR. DITKOWSKY AND ATTACHMENT OF SAID RULE.    DMK |
| 5/16/85 | 41 | Filed 5/15/85 Plaintiff's notice of motion; Motion for protective order and injunction; attachments. |
| 5/16/85 | 42 | Enter order dated 5/15/85:  Plaintiff's motion for protective order is denied pursuant to ruling in open court.  The matter respecting James Montgomery is continued generally.---Moran, J.<br>Mld. notices 5/16/85    TPH |
| 5-31-85 | 43 | Filed 5-30-85:  Plaintiff's Notice of Motion. |
| 5-31-85 | 44 | Filed 5-30-85:  Plaintiff's Supplemental Motion for Leave to File Second Amended Complaint with Jury Demand. |
| 5-31-85 | 45 | Filed 5-30-85:  Plaintiff's SECOND AMENDED COMPLAINT.    wp |
| 5-31-85 | 46 | Enter order dated 5-30-85:  Plaintiff's motion for leave to file second amended complaint with jury demand, and for summons to issue is granted subject to defendants' motion to extend time to reply to plaintiff's request to admit to and including July 31, 1985, is granted.  Status hearing held. -- MORAN, J.    wp<br>Mailed notices 5-31-85. |
| 6-18-85 | | Issued 6-18-85 Summons and one copy    wap |
| 6/24/85 | 47 | Filed 6/24/85 Defendant City of Chicago's notice of motion; Motion to extend time (rec'd 5/24/85, see note attached)    TPH |
| 7/10/85 | 48 | Filed 7/9/85  Appearance of John K. Hughes Terence E. Flynn as counsel for Timothy O'Hara along with affidavit under Rule 39 attached.    JJ |
| 7/25/85 | 49 | Filed 7/24/85 Return on service as to Timothy O'Hara, EXECUTED personally on 6/18/85.    TPH |

CONTINUED

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO 84 C 11020 |
| | | PAGE 3 OF____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 8-1-85 | 50 | Filed 7-31-85: Notice of Motion; Plaintiff's Motion to File Amendment to Second Amended Complaint and to Add Additional Party; AMEMDMENT TO SECOND AMENDED COMPLAINT. |
| 8-1-85 | 51 | Filed 7-31-85: Defendants' Notice of Motion. |
| 8-1-85 | 52 | Filed 7-31-85: Defendants' Motion to Strike Plaintiff's Prayer for Punitive Damages Brought Under a 42 USC §1983 Claim. |
| 8-1-85 | 53 | Filed 7-31-85: Defendants' Memorandum of Law in Support of Defendants' Motion to Strike Plaintiff's Prayer for Punitive Damages. |
| 8-1-85 | 54 | Filed 7-31-85: Defendants' Motion for Order to SEt Briefing Schedule. |
| 8-1-85 | 55 | Filed 7-31-85: Defendants' Motion to Strike and Dismiss Counts I, II, IX, X, and XI of Plantiff's Complaint for Failure to State Claims, or in the Alternativ Motion for Summary Judgment as to Said Counts, and to Strike and Dismsis Counts III through VIII Involving Pendent Claims. |
| 8-1-85 | 56 | Filed 7-31-85: Defendants' Motion to Extend Time to Reply to Request to Admit. |
| 8-1-85 | 57 | Enter order dated 7-31-85: Defendants' motion to strike prayer for punitive damages, motion to strike and dismiss, or alternatively, motion for entry of summary judgment, and motion for order to set briefing schedule. All motions are entered and continued generally. Defendants' motion to extend time to reply to requests to admit until 30 days after the Court rules on the motions to strike and dismiss is granted. Plaintiff's motion for leave to file her amendment to second amended complaint and to add additional party is granted. Status hearing set for August 7, 1985, at 4:30 p.m. -- MORAN, J.          wp Mailed notices 8-1-85. |
| 8/9/85 | 58 | Filed 8/7/85 Plaintiff's Notice of Motion; Consent to withdraw.          JJ |
| 8/9/85 | 59 | Enter order dated 8/7/85: Status hearing held. Status hearing continued to August 15, 1985 at 4:30 p.m. Petitioner James W. Mally's motion to withdraw as plaintiff's attorney is granted. - MORAN, J Mld. notices 8/9/85          JJ |
| 8/19/85 | 60 | ENTER ORDER DATED 8/15/85: STATUS HEARING RE-SET FOR SEPTEMBER 6, 1985 AT 4:30P.M. --MORAN, J.          DMK MAILED NOTICES 8/19/85 |
| 8-20-85 | | Issued 8-20-85, Summons and one copy as to Jayne Barnard          wp |
| 9-6-85 | 61 | ~~Filed 9-4-85: Joint Stipulation to Dismiss.~~ |
| 9-6-85 | 62 | ~~Enter order dated 9-4-85: It Is Hereby Ordered that the complaint of plaintiff against the defendants is hereby dismissed with prejudice, each party to bear its own costs and fees. Status hearing set for September 4, 1985, at 9:45 a.m. is stricken. (Draft)  MORAN, J.        J9-6~~ ~~Mailed notices 9-6-85.~~          ENTERED IN ERROR          wp |
| 9/10/85 | 63 | Enter order dated 9/6/85: Status hearing held. Status hearing continued to September 27, 1985 at 9:45 a.m. - MORAN, J Mld. notices 9/10/85          JJ |
| 9-24-85 | 64 | Filed 9-20-85: Appearance of John K. Hughes and Terence E. Flynn as counsel for Jayne W. Barnard with Affidavits re Gen. Rule 39.          wp |
| 9/30/85 | 65 | Enter order dated 9/27/85: Status hearing reset to October 4, 198 at 9:45 a.m.---Moran, J.   Mld. no notices          TPH |

CONTINUED

C 111A
rev. 1/75)

### CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO. 84 C 1102<br>PAGE 4 OF PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 10-7-85 | 66 | Enter order dated 10-4-85:  Status hearing reset for Oct. 10, 1985 at 9:45 a.m. -- Moran, J.<br>no notices required                                                                    dk |
| 10-11-85 | 67 | Enter order dated 10-10-85:  Plaintiff given leave to file her amended complaint by October 24, 1985.  Status hearing held and continued to November 12, 1985, at 9:45 a.m. -- MORAN, J.<br>No notices required.                                             wp |
| 10/31/85 | 68 | Filed 10/30/85 Plaintiff's THIRD AMENDED COMPLAINT and 1 copy.  TPH |
| 1/13/85 | 69 | Enter order dated 11/12/85:  Defendants' motion to dismiss with memorandum in support to be filed by November 26, 1985.  Answer to motion to be filed by December 11, 1985.  Reply to answer to be filed by December 20, 1985.  Status hearing held and ocntinued to December 13, 1985 at 9:45 a.m.--MORAN, J.<br>Mld notices 11/13/85.    MN |
| 1/27/85 | 70 | FILED 11/26/85:  DEFENDANT'S NOTICE OF FILING; MOTION FOR CLARIFICATION OF THE PROCEDURE FOR REFERENCE ON PLAINTIFF'S EMPLOYMENT AND TO BAR PLAINTIFF FROM CAUSING SPURIOUS INQUIRIES TO BE MADE OF DEFENDANT. |
| 11/27/85 | 71 | FILED 11/26/85:  APPEARANCE WM. CARLISLE HERBERT AND JOSEPH F. GRIFFIN AS COUNSEL FOR THE LAW BULLETIN PUBLISHING COMPANY A NON-PARTY; AFFIDAVIT IN RE: RULE 39.<br>DMK |
| 1/27/85 | 72 | FILED 11/26/85:  THE LAW BULLETIN PUBLISHING COMPANY, A NON-PARTY; NOTICE OF MOTION; MOTION TO QUASH SUBPOENA. (WITH EXHIBIT A-B)   DMK |
| 1/27/85 | 73 | FILED 11/26/85:  THE LAW BULLETIN PUBLISHING COMPANY'S OBJECTION TO PLAINTIFF'S SUBPOENA. (WITH EXHIBIT A-B)<br>DMK |
| 1/27/85 | 74 | ENTER ORDER DATED 11/26/85:  LAW BULLETIN PUBLISHING COMPANY'S MOTION TO QUASH SUBPOENA IS ENTERED AND CONTINUE GENERALLY PENDING THE RULING ON MOTION TO DISMISS. --MORAN, J.<br>MAILED NOTICES 11/27/85                                    DMK |
| 1/29/85 | 75 | Filed 11/26/85:  Defendants' Notice of Filing; Defendants' Motion to Strike and Dismiss Counts I Through VII or For Entry of Summary Judgment Order as to Said Counts and Motion to Strike and Dismiss Counts VII Through XII of Plaintiff's Third Amended Complaint; Attachments 1 - 7.<br>JC |
| 12/12/85 | 76 | Filed 12/11/85:  Plaintiff's notice of filing and response to motion to dismiss.    MN |
| 12/16/85 | 77 | Enter order dated 12/13/85:  Defendants' reply memorandum in support of its motion to dismiss to be filed by December 27, 1985.  Status hearing held.---Moran, J.<br>No notices required                              TPH |

CONTINUED

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO. 84 C 1102 PAGE 5 OF ___ PAGES |

| DATE | NR. | PROCEEDINGS | |
|---|---|---|---|
| 12/30/85 | 78 | Filed 12/27/85: Defendants' Notice of Motion. | JO |
| 12/30/85 | 79 | Filed 12/27/85: Defendants' Reply Memorandum in Support of Their Motion to Strike and Dismiss Counts I Through VII or for Entry of Summary Judgment Order as to Said Counts and Motion to Strike and Dismiss Counts VIII Through XII of Plaintiff's Third Amended Complaint. | JO |
| ~~1/31/86~~ | ~~80~~ | ~~Filed 1/30/86: Notice of motion and joint motion to extend discove~~ | |
| ~~1/31/86~~ | ~~81~~ | ~~Filed 1/30/86: STIPULATION.~~ | |
| ~~1/31/86~~ | ~~82~~ | ~~Enter order dated 1/30/86: Status hearing held. Joint motion to extend the discovery cut-off date to and including March 31, 1986 granted. Status hearing continued to March 31, 1986 at 9:45 a.m. MORAN, J.~~ | |
| MN | | ~~Mld notices 1/31/86. MN~~ ENTERED IN ERROR. | |
| 05/30/86 | 80 | Minute order of 05/29/86: The court wishes to advise the parties that it intends to treat defendants' motion to strike and dismiss counts I through VII or for entry of summary judgment order as to said counts and motion to strike and dismiss counts VII through XII of plaintiff's third amended as a motion for summary judgment. Any objections should be made within 21 days (June 18, 1986) of this order in the form of a motion properly presented to this court.-Moran, J | |
| rm | | Notices mailed 05/30/86 | |
| 06/19/86 | 81 | Minute order of 06/18/86: Plaintiff's motion for leave to add additional counsel and for an extension of time in which to submit objections to hearing on motions to dismiss as motions for summary judgment to and including June 30, 1986 is granted. Pretrial conference set for July 2, 1986 at 4:30 p.m. - MORAN, J No notices required. | |
| | 82 | Filed 06/18/86 Notice of motion; Plaintiff's motion. | |
| | 83 | Filed 06/18/86 Appearance of R. Peter Carey and Theodora M. Rand as attorneys for plaintiff. | |
| | 84 | Filed 06/18/86 R. Carey's affidavit re Rule 39. | |
| or | 85 | Filed 06/18/86 T. Rand's affidavit re Rule 39. | |
| 06/24/86 | 86 | Minute order of 06/23/86: Plaintiff's motion for leave to file supplemental complaint instanter is granted.--MORAN, J Mailed notices 06/24/86 | |
| amb | 87 | Filed 06/23/86: Notice of Motion; Motion; Supplemental Complaint | |
| 07/07/86 | 88 | Minute order of 07/02/86: Defendants' motion for sanction in amount of $100.00 is granted as of May 15, 1985 pursuant to discussion in chambers. Plaintiff to file a detailed rule 56(f) motion by July 16 1986 as to Count I and II. Answer to the rule 56(f) motion to be filed by July 23, 1986. Pretrial conference held and continued to July 29, 1986 at 4:30 p.m. -- Moran, J. | |
| hlf | | Mld notices 07/07/86. | |
| | | CONTINUED | |

DC 111A
(Rev. 1/75)

## CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO. 84C11020 |
| | | PAGE 6 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 07/07/86 | 89 | Filed 07/02/86: Notice of motion; Plaintiff's objections to treating defendant's motion to strike and dismiss plaintiff's third amended complaint as a motion for summary judgment; Attachment. |
| hlf | | |
| 15/86 | 90 | Minute order of 07/14/86: Enter Memorandum and Order. Defendants' motion to dismiss is granted in part and denied in part. Pretrial conference set for July 29, 1986 at 4:30 p.m. to stand. For further detail see order attached to the original minute order form.-Moran, J Notices and copies of order mailed 07/15/86 |
| rm | 91 | Enter order of 07/14/86: Memorandum and Order |
| 07/21/86 SJR | 92 | Filed 07/18/86: Notice of Filing; Plaintiff's Affidavit of R. Peter Carey |
| 07/25/86 SJR | 93 | Filed 07/24/86: Notice of Filing; Plaintiff's Rule 59(e) motion for reconsideration of the July 14, 1986 Memorandum Opinion and Order. |
| 07/25/86 SJR | 94 | Filed 07/24/86: Defendants' Response to "Affidavit of R. Peter Carey" |
| 07/31/86 | 95 | Minute order of 07/29/86: Beverly B. Mann's motion to withdraw pursuant to local 3.15 is granted. Defendants' answer to the complaint to be filed by August 12, 1986. Status hearing set for Sept. 11, 1986 at 9:45 a.m. Pretrial conference held.--MORAN, J Mailed notices 07/31/86 |
| am | 96 | Filed 07/29/86: Notice of Motion; Motion |
| 08/14/86 | 97 | Minute order of 08/12/86; Leave is granted Terence F. Flynn, John K, Hughes and Gessler, Wexler, Flynn, Laswell & Fleischmann, Ltd., to withdraw as attorneys of record for the defendants, City of Chicago, Jayne W. Barnard, Timothy O'Hara and James Montgomery. Further ordered that the Law Department of the City of Chicago has leave to substitute new counsel immediately. -------Williams, J. Mailed notices 08/14/86. |
| | 98 | Filed 08/12/86; Notice of Motion.; Motion by Defendants' Counsel. |
| jmf | 99 | Filed 08/12/86; Appearance of Arthur Christie and Judson H. Miner as attorneys for Defendants 1,3 & 4. |
| 09/02/86 | 100 | Minute order of 08/27/86: Plaintiff's rule 60(a) motion is taken under advisement. Defendants' oral motion for leave to file an additional appearance instanter is Granted. - Moran, J. No notices required. |
| | 101 | Filed 08/27/86: Appearance of Defendant City of Chicago with that of Maria C. Campo and Judson H. Miner as attorneys |
| SJR | 102 | Filed 08/27/86: Notice of Motion; Motion |

Continued

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | DOCKET NO 84C11020 |
|---|---|---|
| MANN, Beverly B. | THE CITY OF CHICAGO et al | PAGE 7 OF___ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 09/05/86 | 103 | Minute order of 08/29/86: (Received 09/04/86) Enter Memorandum and Order. Plaintiff's motion for reconsideration is denied in substantial part; Plaintiff's Rule 60(a) motion is Granted and Defendants' motion with regard to discovery is Granted in substantial part. Status hearing set for September 11, 1986 at 9:45am to stand. For further details see order attached to the original minute order form. - Moran, J. |
| | | Mld notices 09/05/86 |
| SJR | 104 | Enter order of 08/29/86: Memorandum and Order |
| 0912/86 | 105 | Minute order of 09/11/86: Defendants' answer to the 3rd amended complaint to be filed by September 26, 1986. The last two paragraphs and conclusion respecting discovery of the memorand and order dated August 29, 1986 is stricken without prejudice to the City reasserting any objections. Status hearing held; continu to Oct. 30, 1986 at 9:45 a.m.--MORAN, J |
| amb | | Mailed notices 09/12/86 |
| 09/22/86 | 106 | Minute order of 09/19/86; Plaintiff's rule 59 motion to alter or amend the memorandum and order entered September 5, 1986 is taken under advisement. Defendants' motion for extension of time to answer or otherwise plead to plaintiff's third amended complaint and supplemental complaint to and including October 27, 1986 is granted. Status hearing set for October 30, 1986 at 9:45 a to stand. |
| | | ----------Moran, J. |
| | | Mailed notices 09/22/86. |
| | 107 | Filed 09/19/86; Notice of Motion.: Plaintiffs' Motion . |
| | 108 | Filed 09/19/86; Notice of Motion.: Defendants' Motion for Extension of Time within which to Answer or otherwise plead to plaintiff;s Third Amended complain and Supplemental Complaint. |
| jmf | | |
| 10/27/86 | 109 | Minute order of 10/24/86: Defendants' motion for extension of time to answer o otherwise plead to the third amended complaint and supplemental complaint to an including November 10, 1986 is granted. Moran-J |
| | | Notices mld. 10/27/86 |
| jdh | 110 | Filed 10/24/86: Notice of.motion; Motion |
| 10/31/86 | 111 | Minute order of 10/30/86: Defendants' answer to plaintiff's third amended complaint to be filed by November 17, 1986. Status hearin held and continued to December 5, 1986 at 9:45 a.m. Moran, J. |
| IS | | No notices required. |
| 11/18/86 nlf | 112 | Filed 11/17/86: Defendants' notice of filing; ANSWER to supplemental complai (Title VII), |
| 12/08/86 | 113 | Minute order of 12/05/86: Petitioner Kenneth K. Ditkowsky's moti for leave to withdraw as counsel for plaintiff is granted. Agree protective order to be submitted to the court by December 12, 198 Plaintiff and defendants to comply with outstanding discovery to December 19, 1986. Defendants' motion to extend time to respond to plaintiff's request to admit to and including February 5, 1987 granted. Defendants' objections respecting the request to admit be filed by January 5, 1987. Status hearing held; continued to continued |

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | DOCKET NO. 84C11020 |
|---|---|---|---|
| MANN | | THE CITY OF CHGO., ET AL | PAGE 8 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 12/08/86 | 113 | Continued from page 7<br>Jan. 13, 1987 at 9:45 a.m.. - MORAN,J<br>Mld. notices 12/08/86 |
| | 114 | Filed 12/05/86:  Notice of motion; Motion. |
| jj | 115 | Filed 12/05/86:  Notice of motion; Defendants' motion to extend time to respond to plaintiff's requests to admit. |
| 12/15/86 | 116 | Minute order of 12/12/86: Enter Memorandum and Order.  Plaintiff's motion for reconsideration is granted as to the ruling dismissing James Montgomery and the City of Chicago as defendants from count VII. They are restored as parties to that Count. The Motion is otherwise denied.  (For Further Detail see order attached to the original minute order form). ---------Moran, J.<br>Mailed notices 12/15/86. |
| jmf | 117 | Enter order of 12/12/86:  MEMORANDUM AND ORDER. |
| 12/16/86 | 118 | Minute order of 12/15/86:  Enter Agreed Protective Order.<br>(For Further Detail see order attached to original minute order form).<br>---------Moran, J. <br>Mailed notices 12/16/86. |
| jmf | 119 | Enter order of 12/15/86:  PROTECTIVE ORDER. |
| 12/31/86 | 120 | Minute order of 12/29/86:  Plaintiff's motion for reconsideration of a portion of the Dec. 12, 1986 Order is denied pursuant to ruling in open court.-Moran, J<br>No notices required |
| | 121 | Filed 12/29/86:  Plaintiff's Notice of motion |
| rm | 122 | Filed 12/29/86:  Plaintiff's motion for reconsideration |
| 01/08/87 | 123 | Minute order of 01/07/87:  Defendants' motion for extension of time to file objections to plaintiff's request to admit to and including Jan. 12, 1987 is granted-Moran, J<br>No notices required |
| rm | 124 | Filed 01/07/87:  Notice of motion; Motion |
| 01/14/87 | 125 | Minute order of 01/13/87:  Status hearing held; continued to February 18, 1987 at 9:45 a.m. - Moran, J. |
| SJR | | No notices required. |
| 01/27/87<br>IS | 126 | Filed 01/26/87:  Notice of Filing; Defendants' James Montgomery and City of Chicago ANSWER to Count VII of the Third Amended Complaint. |
| 02/06/87 | 127 | Minute order of 02/05/87:  Defendants' motion to extend time to respond to Plaintiff's requests to admit to and including March 5, 1987 is granted.<br>---------Moran, J.<br>Mailed notices 02/06/87. |
| jmf | 128 | Filed 02/05/87:  Notice of Motion ;  Defendants' Motion. |

CONTINUED

DC 111A
(Rev. 1/75)

**CIVIL DOCKET CONTINUATION SHEET**

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | DOCKET NO. 84C11020 |
| | | PAGE 9 OF ___ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 02/19/87 | 129 | Minute order of 02/18/87: Status hearing re-set for March 12, 1987 at 9:45 a.m. -- Moran, J. |
| nlf | | Mld notices 02/19/87. |
| 02/26/87 | 130 | Filed 02/25/87: Appearance of Plaintiff with that of Michael J. Leech as attorney. |
| SJR | 131 | Filed 02/25/87: Affidavit re Rule 39 of Michael J. Leech. |
| 03/05/87 | 132 | Minute order of 03/04/87: Plaintiff's motion for leave to appear as additional counsel is granted. Defendants' motion to extend time to respond to plaintiff's requests to admit to and including April 6, 1987 is granted. Status hearing set for March 12, 1987 at 9:45 a.m. to st'd. MORAN, J. Mailed notices 03/05/87. |
| | 133 | Filed 03/04/87: Notice of motion; Motion; Receipt of protective order (attachments). |
| AMB | 134 | Filed 03/04/87: Notice of motion; Defendant's motion. |
| 03/13/87 | 135 | Minute order of 03/12/87: Status hearing held and continued to April 15, 1987 at 9:45 a.m. Moran, J. |
| IS | | No notices required. |
| 04/09/87 | 136 | Minute order of 04/08/87: Defendants' motion to extend time to respond to plaintiff's requests to admit to and including April 10, 1987 is granted. Status hearing reset to April 27, 1987 at 9:45 a.m. Moran, J. Mailed notice 04/09/87. |
| RM | 137 | Filed 04/08/87: Notice of motion; Motion. |
| 04/28/87 | 138 | Minute order of 04/27/87: Status hearing held and continued to May 13, 1987 at 4:45 p.m. Moran, J. |
| IS | | No notice mailed. |
| 05/05/87 | 139 | Filed 05/04/87: Appearance of Johnathan P. Siner and Maria C. Campo and Judson Miner as counsels for O'Hara, Barnard and Montgomery. Mailed 05/05/87 letters re Rule 39 and Rule 3.15 to Siner and Campo with forms. |
| TLM | | |
| 05/14/87 | 140 | Minute order of 05/13/87: Status hearing re-set for May 20, 1987, at 10:00 AM. Moran, J. Mailed notices 05/14/87. |
| NLN | | |
| 05/21/87 | 141 | Minute order of 05/20/87: Status hearing held and continued to Aug 20, 1987 at 9:45 AM. Moran, J. |
| GV | | No notice mailed. |
| 08/21/87 | 142 | Minute order of 08/20/87: Status hearing held; continued to Sept. 1, 1987 at 9:45 a.m. Moran, J. |
| SH | | No notices mailed. |

CONTINUED



111A
(. 1:75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | DOCKET NO. 84 C 11020 |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al. | PAGE 10 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 9/01/87 | 143 | Minute order of 09/01/87: Defendants' motion for leave to file response to requests to admit 20 and 25 instanter is granted. Status hearing held and continued to Oct. 14, 1987 at 9:45 am. Moran J No notice mailed. |
| JDH | 144 | Filed 09/01/87: Notice of motion; Motion; Defendants' response to plaintiff's request to admit 20 and 25. |
| 9/22/87 V | 145 | Filed 09/21/87: Transcript of proceedings before Judge Moran on 05/15/85. |
| 0/05/87 | 146 | Minute order of 10/02/87: Plaintiff's motion to compel defendant MOntgomery to appear for deposition is denied as moot pursuant to discussion in open court. Status hearing reset to November 9, 1987 at 9:45 a.m. Moran, J. Mailed notice 10/05/87 |
| KS | 147 | Filed 10/02/87: Plaintiff's notice of motion; motion. |
| 0/16/87 LG | 148 | Filed 10/15/87: Stipulation of counsel re: notice of deposition of James Montgomery on October 16, 26 and 27. |
| 11/06/87 | 149 | Minute order of 11/05/87: Status hearing reset for November 17, 1987 at 9:45 a.m. Moran, J |
| KS | | Mailed notice 11/06/87. |
| 11/17/87 GV | 150 | Filed 11/16/87: Plaintiff's response to defendant's motion to compel; Notice. |
| 11/18/87 | 151 | Minute order of 11/17/87: Defendants' motion to compel deposition testimony of plaintiff Beverly Mann. Plaintiff's motion under rule 26(f). Both motions are granted in part and denied in part pursuant to discussion in chambers. Defendants' potential witness list to be filed by December 1, 1987. Status hearing held; Continued to Dec. 15, 1987 at 9:45 AM. Moran, J. Mailed notice 11/18/87. |
| GV | 152 | Filed 11/17/87: Notice of motion; Defendants' motion to compel; (Attachments). |
| | 153 | Filed 11/17/87: Notice of filing; Plaintiff's motion under Rule 26. |
| 11/27/87 | 154 | Minute order of 11/25/87: Theodora M. Rand's motion for leave to withdraw as counsel for plaintiff is granted. Moran, J. Mailed notice 11/27/87. |
| NLN | 155 | Filed 11/25/87: Notice of motion; Theodora M. Rand's motion for leave to withdraw as counsel for plaintiff |
| 2/10/87 | 156 | Minute order of 12/04/87: Enter AGreed Order. It is ordered that defendants shall have until Dec. 16, 1987 to submit their list of tentative trial witnesses to plaintiff. It is further ordered that the status hearing is reset to Dec. 22, 1987 at 9:45 a.m. (For further detail see order attached to the original minute order form.) Moran, J. Mailed notice 12/09/87. |

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| Beverly B. MANN | CITY OF CHICAGO, et al | DOCKET NO. 84C110 |
| | | PAGE 11 OF____ PAGE |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 12/23/87 | 158 | Minute order of 12/22/87: Plaintiff's potential witness list to submitted by January 6, 1988. Status hearing held; continued to Jan. 15, 1988 at 9:45AM. Moran, J. |
| CMW | | No notice mailed. |
| 01/08/87 | 159 | Minute order of 01/07/88: Status hearing reset for Jan. 20, 1988 at 9:45 a.m. Moran, J. |
| RM | | Mailed notice 01/08/88. |
| 01/15/88 | 160 | Filed 01/14/88: Notice of filing; Plaintiff's statement of contested issues. |
| EAV | 161 | Filed 01/14/88: Notice of filing; Plaintiff's witness list. |
| 01/19/88 LG | 162 | Filed 01/15/88: Plaintiff's notice of filing; Proposed Discovery (Attachment) |
| 01/21/88 | 163 | Minute order of 01/20/88: All discovery is being referred to a Magistrate. Status hearing held. Moran, J. |
| LG | | No notice mailed. |
| 01/28/88 | 164 | Filed 01/27/88: Notice of change of address of the firm Hinshaw, Culbertson, |
| NLN | | Hoelmann, Hoban & Fuller. |
| 02/03/88 | 165 | Minute order of 01/29/88: It is hereby ordered that James Blazina on behalf of himself and the clients of his office or his counsel shall respond to said motion in writing on or before February 3, 1988 and that the motion shall then be taken under advisement and shall be decided by this court and not by the magistrate appointed to hear the discovery issues in this matter. (For further detail, see order attached to the original minute order form.) Moran, J. Mailed notice 02/03/88. |
| EAV | 166 | Entered 01/29/88: Order. |
| 02/03/88 | 167 | Minute order Of 02/02/88: This case has been referred to a magistrate for all further pretrial matters. A termination dispu has spawned a sprawling lawsuit, with discovery complicated by plaintiff's changes of attorneys, and those changes have been advanced as one justification for continued and expanded discover Plaintiff now wants a great deal of additional discovery with the reasons being given having some plausibility. This court suggest that the magistrate review the history of this case and then perm such additional discovery which the proper trial of this action requires, but with due regard for the history of this litigation, the clearly unreasonable scope of discovery now requested by plaintiff and the great burdens upon defendants that the requeste discovery would entail. Moran, J. |
| EAV | | Mailed notice 02/03/88. |

(continued)

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| BEVERLY B. MANN | CITY OF CHICAGO, et al | DOCKET NO. 84C11020 |
| | | PAGE 12 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 02/04/88 EAV | 168 | Filed 02/03/88:  James A. Blazina's response to motion to compel deposition testimony of plaintiff Beverly B. Mann. |
| 02/05/88 | 169 | Enter order of 02/02/88:  The above-captioned cause is currently pending on my calendar.  I recommend to the Executive Committee that this case be referred to a Magistrate of this Court.  The reasons for my recommendation are hear and enter order(s) on discovery motion(s) and conduct pretrial conferences and related proceedings.  Moran, J. Enter order of 02/03/88:  It is hereby ordered that the above-captioned case be referred by lot to a magistrate of this court in accordance with the rules. Grady, CJ. |
| EAV | | REFERRED TO MAGISTRATE BALOG. Mailed notice 02/05/88. |
| 02/29/88 LG | 170 | Minute order of 02/26/88:  Status hearing set for 3-8-88 at 10 A.M.  Balog, M. Mailed notice 02/29/88. |
| 02/29/88 | 171 | Minute order of 02/26/88:  Plaintiff Robert Reske's motion for review of Montgomery transcripts is granted.  Moran, J. Mailed notice 02/29/88. |
| LG | 172 | Filed 02/26/88:  Plaintiff Robert Reske's notice of motion; Motion (Attachments). |
| 03/07/88 NLN | 173 | Filed 03/04/88:  Defendants' notice of filing; Notice of change of address of the Assistant Corporation Counsel. |
| 03/10/88 | 174 | Minute order of 03/08/88:  Status hearing held; continued to 3-21-88 at 10:15 a.m.  Balog, M. |
| NLN | | No notice mailed. |
| 03/22/88 | 175 | Minute order of 03/21/88:  Plaintiffs' motion to modify reference order is denied pursuant to ruling in open court.  Moran, J. No notice mailed. |
| LG | 176 | Filed 03/21/88:  Plaintiffs' notice of motion; Motion (Attachments). |
| 03/22/88 | 177 | Minute order of 03/21/88:  Plaintiff to submit list of 15 deponants most necessary to prove its case on or before 04/05/88.  If plaintiff does not prevail on the merits, then all costs and expenses of defendants for those depositions over the 15 named are to be assessed against plaintiff - Defendants given until 04/12/88 to respond to issued - Oral argument set for 04/14/88 at 2:30 PM. Status hearing held.  Balog, M. |
| LG | | No notice mailed. |
| 03/22/88 LG | 178 | Filed 03/21/88:  Defendants' notice of filing; Summary of plaintiff's written discovery. |
| 04/08/88 EAV | 179 | Filed 04/06/88:  Plaintiff's designation of 15 opposition witnesses. |

--CONTINUED--

DC 111A
(Rev. 1/75)

**CIVIL DOCKET CONTINUATION SHEET**

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MANN, BEVERLY B. | THE CITY OF CHICAGO et al | DOCKET NO. 84C11020 |
| | | PAGE 13 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 04/14/88 LG | 180 | Filed 04/12/88: Defendants' notice of filing; Response to plaintiff's statement of contested factual issues (Attachments). |
| 04/19/88 MF | 181 | Minute order of 04/14/88: Discovery conference held - discovery conference continued to May 3, 1988 at 10:30 a.m. Balog, M. No notice mailed. |
| 04/27/88 EAV | 182 | Filed 04/26/88: Notice of filing; Defendants' list of reasons plaintiff was asked to resign from the City of Chicago Department of Law. |
| 05/04/88 LG | 183 | Minute order of 05/03/88: Discovery conference reset to 05/12/88 at 10:30 A.M. Balog, M. Mailed notice 05/04/88. |
| 05/13/88 NLN | 184 | Minute order of 05/12/88: Discovery conference held. Discovery conference continued to 5-19-88 at 10:30 a.m. Balog, M. No notice mailed. |
| | 185 | Filed 05/12/88: Plaintiff's revised written discovery proposal. |
| 05/23/88 LG | 186 | Minute order of 05/19/88: Discovery conference held (Parties to prepare and submit draft order). Balog, M. No notice mailed. |
| 06/09/88 MF | 187 | FIled 06/08/88: Transcript of proceedings held befor Judge Moran on 8/27/86, 6/18/86 and 12/29/86 (Three volumes 187-1, 187-2 and 187-3). |
| 06/30/88 NLN | 188 | Minute order of 06/29/88: Status hearing set for 8-3-88 at 10 AM. Balog, M. Mailed notice 06/30/88. |
| 08/04/88 MF | 189 | Minute order of 08/03/88: Enter rule on pltf to show cause why this cause should not be dismissed for failure to comply with this Court's order of 5/19/88, rule returnable 8/11/88 at 10:00 a.m. Status hearing held. Balog, M |
| | | Mailed notice 08/04/88. |
| 08/09/88 MF | 190 | Filed 08/05/88: Plaintiff's notice of motion; Motion for entry of discovery order (Attachments). |
| 08/11/88 EAV | 191 | Minute order of 08/09/88: Rule to show cause order is discharged and 08/11/88. Return date is stricken. Case continued to 08/17/8 at 10:15 a.m. for entry of discovery order. Moran, J. No notice mailed. |
| 08/19/88 LC | 192 | Minute order of 08/17/88: Status hearing held; continued to 10/21/88 at 10:15 Balog, M. No notice mailed. |

--CONTINUED--

JC 111A
Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | DOCKET NO. 84C11020 |
|---|---|---|
| MANN, BEVERLY B. | CITY OF CHICAGO et al | PAGE 14 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 08/19/88 LG | 193 | Filed 08/18/88:  Transcript of proceedings held before the Honorable James T. Balog on March 21, 1988 and May 19, 1988 (3 vols.: 193-1, 193-2, 193-3). |
| 08/29/88 | 194 | Minute order of 08/24/88:  Enter discovery order.  (For further detail see order attached to the original minute order form.)  Balog, M. Mailed notice 08/29/88. |
| MF | 195 | Entered 08/24/88:  Discovery order. |
| 08/31/88 | 196 | Filed 08/31/88:  Plaintiff's notice of filing;  Objection to and appeal of Magistrate Balog's discovery order.  ($5.00 filing fee paid.) |
| MF | -- | Forwarded 08/31/88:  Copy to Judge Moran. |
| | -- | Mailed 08/31/88:  Copy to all attorneys of record. |
| 09/12/88 | 197 | Minute order of 09/12/88:  R. Peter Carey's motion for leave to withdraw as counsel on behalf of plaintiff is granted.  Moran, J. Mailed notice 09/12/88. |
| | 198 | Filed 09/09/88:  Plaintiff's notice of motion (Attachments). |
| LG | 199 | Filed 09/09/88:  Plaintiff's motion. |
| 09/12/88 | 200 | Minute order of 09/09/88:  Defendants' motion for extension of time to respond to plaintiff's objections to and appeal of Magistrate Balog's discovery order to and including October 3, 1988 is granted.  Moran, J. Mailed notice 09/12/88. |
| LG | 201 | Filed 09/09/88:  Defendants' notice of motion; Motion. |
| 09/16/88 LG | 202 | Minute order of 09/16/88:  Defendants seed to compel plaintiff to answer de-position questions relating to her prior employment by attorney.  She raises concerns that the information may be privileged, a privilege she cannot waive, although some of it may be within the "crime or Fraud" exception and there may have been waive by her employer's disclosures to others or a destruction of confidentiality by a prior permissible disclosure by plaintiff to others.  Further deposition testimony respecting the subject matter should be before the magistrate, with plaintiff's former employer present in order that the issues can be resolved when and if any privilege is asserted.  Moran, J. Mailed notice 09/16/88. |
| 09/20/88 NLN | 203 | Entered 09/15/88:  The above-captioned cause is currently pending on my calendar. I recommend to the Executive Committee that this case be reassigned to the calendar of Judge Plunkett.  The reasons for my recommendation are: This case should be reassigned as a replacement for case number 86 C 9161 in which a recusal was permitted.  Moran, J. Entered 09/16/88:  It is hereby ordered that the above-captioned cause be and the same is reassigned to the calendar of Judge Plunkett. Grady, CJ. REASSIGNED TO JUDGE PLUNKETT Mailed notice 09/20/88. |

CONTINUED

DC 111A
(Rev. 1/75)

## CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | |
|---|---|---|---|
| MANN | | CITY OF CHICAGO et al | DOCKET NO. 84 C 110 |
| | | | PAGE 15 OF ___ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 10/05/88<br>JS | 204 | Filed 10/04/88: Notice of filing; Defendants' response to palintiff's objection to and appeal of Magistrate Balog's discovery order; (Exhibits A to F) |
| 10/18/88<br>JMP | 205 | Filed 10/17/88: Plaintiff's reply memorandun in support of appeal of magistrate Balog's discovery order (Attachments). |
| 10/31/88<br><br>NLF | 206 | Minute order of 10/27/88: Deposition to be taken in open court on 12-13-88 at 10:00 a.m. Status hearing held; continued to 11/28/88 at 10:00 a.m. Balog, M. No notice mailed. |
| 11/17/88<br><br>TLM | 207 | Minute order of 11/16/88: Status hearing set for November 28, 1988 at 9:15 a.m. Plunkett, J. Mailed notice 11/17/88. |
| 11/29/88<br><br><br>NLF | 208 | Minute order of 11/28/88: Ruling on motion to reconsider set for Jan. 6, 1989 at 9:15 a.m. Status hearing held; continued to Jan. 6, 1989 at 9:15 a.m. Plunkett, J. Mailed notice 11/29/88. |
| 11/30/88<br><br><br>SJR | 209 | Minute order of 11/28/88: Plaintiff to submit letter to defendant and the court for in camera inspection on or before December 13, 1988. Status hearing held. Balog, M. Mailed notice 11/30/88. |
| 12/02/88<br>TLM | 210 | Minute order of 12/01/88: Status hearing and ruling date of January 6, 1989 is stricken and reset to January 24, 1989 at 9:15 a.m. Plunkett, J. Mailed notice 12/02/88. |
| 12/14/88<br><br>SJR | 211<br><br>212 | Filed 12/12/88: Defendants' notice of motion; Motion for protective order (Exhibits).<br>Filed 12/12/88: Defendants' notice of filing; Exhibits (one volume). |
| 12/16/88<br><br>NLF | 213<br><br>214 | Minute order of 12/13/88: Defts motion for Portective Order continued to 12-21-88 at 10 a.m. Balgo, M. No notice mailed.<br>Filed 12/13/88: James A. Blazina and Beverly Mann's notice of motion: |
| 12/22/88<br><br><br><br>TLM | 215 | Minute order of 12/21/88: 1) Defendants' motion for protective order deferred--2) Plaintiffs' deposition to be taken on 02/16/89 at 9:30 a.m. in magistrate witness room. Status hearing set for 01/24/89 at 10 am. Balog, M. No notice mailed. |
| 01/04/89<br>NLN | 216<br><br>217 | Filed 12/30/88: Plaintiff's notice of motion; Motion for reconsideration.<br>Filed 12/30/88: Plaintiff's amended notice of motion; Motion for reconsideratio |
| 01/06/89<br><br>TLM | 218 | Filed 01/04/89: Notice of filing; defendants' notice of depositions of James A. Blazina, Stephen C. Sadin and Peter E. Ross on Feb. 21 22 and 22nd respectively. |

CONTINUED

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | | |
|---|---|---|---|---|
| MANN | | CITY OF CHICAGO ET AL. | DOCKET NO. | 84C11020 |
| | | | PAGE 16 OF ____ PAGES | |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 01/10/89<br><br>NLN | 219 | Minute order of 01/06/89: Plaintiffs motion for reconsideration (re submission of inspection of in-camera materials) is granted. Balog, M. No notice mailed. |
| 01/25/89 | 220 | Minute order of 01/24/89: Defendants' motion to file supplemental authority to support defendants' response to plaintiff's objection to and appeal of Magistrate Balog's discovery order, granted. Plunkett, J. No notice mailed. |
| TLM | 221 | Filed 01/24/89: Notice of motion; Defendants' motion (Attachment). |
| 01/25/89<br><br>TLM | 222 | Minute order of 01/24/89: Status hearing held; continued to March 23, 1989 at 9:15 a.m. Plunkett, J. No notice mailed. |
| 01/26/89<br><br>---<br><br>TLM | 223 | Minute order of 01/24/89: Enter order: The court overrules the objections and approves the Magistrate's recommended order. (For further detail, see order attached to the original minute order form.) Plunkett, J. Mailed notice 01/24/89. |
| | 224 | Entered 01/24/89: Order. |
| 01/26/89<br>TLM | 225 | Minute order of 01/24/89: Status hearing held. Balog, M. No notice mailed. |
| 02/07/89<br><br><br>NLN | 226 | Minute order of 02/03/89: Enter order (re: expungements of 9-15-86 letter to ARDC). (For further detail see order attached to the original minute order form.) Balog, M. Mailed notice 02/07/89. |
| | 227 | Entered 02/03/89: Order. |
| 02/17/89 | 228 | Filed 02/13/89: Defendants' notice of motion; Motion to compel attendance of attorney James Blazina at his deposition (Attachment). |
| SJR | 229 | Filed 02/13/89: Defendants' notice of motion; Motion to compel parties to produce the unexpunged letter to the ARCD and to reschedule deposition of Beverly B. Mann (Attachment). |
| 02/17/89<br><br><br>SJR | 230 | Minute order of 02/16/89: Plaintiffs to turnover copy of letter at issue by 2-21-89. Deposition of Beverly Mann reset to 3-21-89 at 9:30 a.m. in courtroom of Magistrate James T. Balog. Status hearing held. Balog, M. Mailed notice 02/17/89. |
| 02/17/89<br><br>SJR | 231 | Minute order of 02/16/89: Defendants' motion to compel attendance of attorney James Blazina at his deposition is granted and deposition to be taken on 3-22-89 at 9:30 a.m. in the courtroom of Magistrate James T. Balog. Balog, M. Mailed notice 02/17/89. |
| 03/15/89<br>TLM | 232 | Filed 03/14/89: Notice of motion; Motion of defendants to reset depositions of Beverly Mann and James Blazina. |

-CONTINUED-

DC 111A
(Rev. 1/75)

| PLAINTIFF | CIVIL DOCKET CONTINUATION SHEET | |
|---|---|---|
| MANN | DEFENDANT CITY OF CHICAGO, et al | DOCKET NO. 84C11020 PAGE 17 OF PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 03/21/89 | 233 | Minute order of 03/15/89: Defendants' motion to reset depositions of Beverly Mann and James Blazina is granted--deposition of Beberly Mann is reset to 04/21/89 at 10 a.m. in Courtroom of Magistrate James T. Balog--deposition of James Blazina is reset to 04/24/89 in courtroom of Magistrate James T. Balog. Balog, M. Mailed notice 03/20/89. |
| TLM | | |
| 03/24/89 | 234 | Minute order of 03/23/89: All discovery to be completed on or by July 21, 1989. Status hearing held; continued to July 21, 1989 at 9:15 a.m. Plunkett, J. No notice mailed. |
| NLN | | |
| 03/29/89 NLN | 235 | Filed 03/28/89: Defendants' notice of filing; Notice of order to James A. Blazina to appear at his deposition (Attachment). |
| 03/30/89 | 236 | Minute order of 03/30/89: ENTER SCHEDULING ORDER re: Discovery. Discovery to be completed on or before July 21, 1989. (For further detail see order attached to the original minute order form.) Plunkett, J. No notice mailed. |
| HD | 237 | Entered 03/30/89: Scheduling order. |
| 04/25/89 SRB | 238 | Minute order of 04/20/89: Deposition of Beverly Mann reset to June 21, 1989 at 10 a.m. Balog, M. Mailed notice 04/25/89. |
| 05/04/89 TLM | 238 | Filed 05/03/89: Clerk's file copy of transcript of proceedings before Judge Plunkett on January 24, 1989. |
| 05/15/89 | 239 | Minute order of 05/12/89: Plaintiff's motion to compel is stricken from call, no one appears. Plunkett, J. No notice mailed. |
| NLN | 240 | Filed 05/12/89: Notice of motion; Motion to compel defendants to answer interrogatories (Exhibits A through C). |
| 06/23/89 | 241 | Filed 06/23/89: Notice of deposition Joseph Mann by City of Chicago on July 18, 1989. |
| TLM | 242 | Filed 06/23/89: Plaintiff's notice of deposition of Victoris Sterling, Jerome Seigan and John Dugan on 06/26/89. |
| 06/28/89 | 243 | Minute order of 06/21/89: Case called. Attorney Brezini fails to appear or otherwise respond waiving any objections--Plaintiff Beverly Mann having filed this action, this Court finds has wiaved any attorney-client privilege and is directed to answer deposition questions. Balog, M. No notice mailed. |
| TLM | | |

CONTINUED

OC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MANN, Beverly | MONTGOMERY, James et al | DOCKET NO. 84C11020 |
| | | PAGE 13 OF PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 07/11/89 CMW | 244 | Filed 07/10/89:  Notice of motion; Defendants' motion to compel the appearance of plaintiff to complete her deposition and to compel deposition testimony (1 vol:attachments). |
| 07/11/89 CMW | 245 | Filed 07/10/89:  Plaintiff's notice of filing; Response to defendants' motion to compel appearance and testimony of plaintiff. |
| 07/19/89 NLN | 246 | Filed 07/14/89:  Defendants' notice of filing; Defendants' reply in support of motion to compel the appearance of plaintiff to complete her deposition and to compel deposition testimony; (Attachment). |
| 07/19/89 NLN | 247 | Minute order of 07/17/89:  Defts. motion to compel the appearance of pltf. to complete her deposition and to compel deposition testimony is granted. Balog, M. No notice mailed. |
| 07/21/89 SRB | 248 | Minute order of 07/20/89:  Pursuant to the court's general order of June 26, 1989 establishing a civil task force program, this case is transferred to Judge Bua.  A status hearing is set for 17 Aug 89 at 9:30 a.m. in courtroom 2503.  Bua, J. Mailed notice 07/21/89. |
| 07/21/89 SRB | 249 | Minute order of 07/20/89:  Joint and agreed motion to extend discovery cut-off to and including September 21, 1989 is granted.  No further extension of discovery for any reason whatsoever will be granted.  Status hearing set for July 21, 1989 is stricken and reset to September 22, 1989 at 9:15 a.m. Plunkett, J. Mailed notice 07/21/89. |
| | 250 | Filed 07/20/89:  Defendants' notice of motion; Joint and agreed motion. |
| 07/27/89 TLM | 251 | Filed 07/26/89:  Plaintiff's notice of filing;  Appeal of magistrate Balog's ruling of July 17, 1989. |
| 08/04/89 CMW | 252 | Filed 08/03/89:  Notice of filing; Defendants' memorandum in response to plaintiff's appeal of Magistrate Balog's ruling of July 17, 1989  (Exhibits 1-2). |
| 08/18/89 TLM | 253 | Minute order of 08/17/89:  Status hearing held. Pretrial conference set for 15 Nov 89 at 9:00 a.m.  Bua, J. No notice mailed. |
| 08/22/89 | 254 | Minute order of 08/21/89:  Defendants' motion for decision on plaintiff's appeal of Magistrate Balog's ruling of July 17, 1989, granted.  Ruling set for September 5, 1989 at 9:15 a.m.  Reply brief to be filed by August 24, 1989. Plunkett, J. No notice mailed. |
| TLM | 255 | Filed 08/21/89:  Notice of motion; Motion. |

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MANN, Beverly B. | CITY OF CHICAGO et al | 84C11020 |
| | | DOCKET NO. |
| | | PAGE 19 OF____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 08/25/89 CMW | 256 | Filed 08/24/89: Notice of filing; Plaintiff's reply memorandum in support of appeal from Magistrate's discovery ruling (Attachments). |
| 08/30/89 CMW | 257 | Minute order of 08/29/89: Status hearing and ruling date of September 5, 1989 is stricken and reset to September 8, 1989 at 9:15a.m. Plunkett, J. Mailed notice 08/30/89 |
| 09/01/89 CMW | 258 | Minute order of 08/31/89: Status hearing and ruling date of September 8, 1989 is stricken and reset to September 15, 1989 at 9:15AM. Plunkett, J. Mailed notice 09/01/89. |
| 09/18/89 DMK | 259 | Filed 09/15/89 Defendants' notice of deposition of James Blazina on September 20, 1989. (Attachment). |
| 09/20/89 DMK | 260 | Minute order of 09/15/89. Magistrate Balog's order is modified as stated on the record in open court. Deposition of Beverly Mann to be completed on or before September 29, 1989. Final pretrial order to be filed on or by November 14, 1989. Status hearing held; continued to November 14, 1989 at 9:15a.m. Plunkett, J. Mailed notice 09/19/89. |
| 09/28/89 ALR | 261 | Filed 09/27/89: Plaintiff's notice of deposition of Judge Robert Retke on 09/27/89. |
| 10/11/89 VMJ | 262 | Filed 10/10/89: Defendant's Amended notice of deposition pursuant to subpoena of James Blazina on 10/31/89. |
| 11/14/89 TLM | 263 | Minute order of 11/14/89: Status hearing held. Pretrial conference set for November 15, 1989 at 3:45 p.m. Plunkett, J. No notice mailed. |
| 11/16/89 TLM | 264 | Minute order of 11/15/89: Pretrial conference is stricken. Plunkett, J. Judge's staff notified counsel by telephone. |
| 11/20/89 ALR | 265 | Filed 11/17/89: Plaintiff's notice of filing; Petition to Executive Committee for withdrawal of case reassignment. |
| 11/21/89 ALR | 266 | Filed 11/20/89: Defendants' notice of filing; Response to plaintiff's petition to Executive Committee for withdrawal of case reassignment. |
| 11/22/89 NLF | -- | Pursuant to the Executive Committee order of 11/21/89 the case is reassigned to Judge Lindberg. |
| 12/06/89 | 267 | Minute order of 12/06/89: Enter order setting status report and conference on recently assigned cases. Joint status report may be submitted on or before December 14, 1989. Status hearing set for December 27, 1989 at 10:00 a.m. (For further detail see order attached to the original minute order form.) Lindberg, J. Mailed notice 12/06/89. |
| PG | 268 | Entered 12/06/89: Order. |

CONTINUED

DC 111A
(Rev. 1/75)

## CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF<br>MANN, BEVERLY B. | DEFENDANT<br>CITY OF CHICAGO, AND ET AL | DOCKET NO. 84C11020<br><br>PAGE 20 OF _____ PAGES |
|---|---|---|

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 12/13/89<br>CH | 269 | Minute order of 12/11/89: Plaintiff's petition to withdraw the reassignment of the case from Judge Plunkett to Judge Lindberg is denied. Grady, CJ.<br>No notice mailed. |
| 12/18/89<br>CH | 270 | Filed 12/14/89: Defendants' notice of filing; Status report. |
| 12/29/89<br>CH | 271 | Filed 12/27/89: Plaintiff's status report (Attachments). |
| 01/08/90<br><br><br><br>KS | 272 | Minute order of 01/27/90: All discovery is to be completed by February 28, 1990 including any substantive motions including motions in limine, along with supporting memoranda. A proposed pretrial order in full compliance with the Court's Standing Order is to be filed by April 13, 1990. Trial set for June 4, 1990. Status hearing held. Lindberg, J.<br>Mailed notice 01/08/90. |
| 02/14/90<br><br>LG | 273 | Minute order of 02/13/90: Pursuant to telephone conference pretrial conference is set before Honorable Paul Plunkett on February 15, 1990 at 4:15 p.m. Lindberg, J.<br>Judge's staff notified counsel by telephone. |
| 02/14/90<br>LG | 274 | Minute order of 02/16/90: A status hearing is set for February 27, 1990 at 9:30 a.m. Lindberg, J.<br>Mailed notice 02/14/90. |
| 02/28/90<br><br><br><br>KS | 275<br><br><br>276 | Minute order of 02/27/90: Defendant granted until April 13, 1990 in which to file their motion for summary judgment. Motions in limine also to be filed by April 13, 1990. Status hearing continued to 21 March 90 at 9:30 a.m. Lindberg, J.<br>No notice mailed.<br>Filed 02/27/90: Defendants' notice of motion; Motion for extension of time (Exhibit). |
| 03/06/90<br>CH | 277 | Filed 03/05/90: Plaintiff's notice of deposition of Edwin A. Gausselin on 03/07/90. |
| 03/21/90<br>PG | 278 | Minute order of 03/19/90: Pretrial conference held. Plunkett, J.<br>No notice mailed. |
| 03/22/90<br><br>PG | 279 | Minute order of 03/21/90: Status hearing held. Pretrial conference set for 17 May 90 at 3:30 p.m. Lindberg, J.<br>Mailed notice 03/22/90. |
| 04/09/90<br><br><br><br>LG | 280<br><br><br>281 | Minute order of 04/05/90: Defendants' motion for extension of time to file motion for summary judgment is granted to and including April 27, 1990. Pretrial order to be filed by April 27, 1990. Lindberg, J.<br>Mailed notice 04/09/90.<br>Filed 04/05/90: Notice of motion; Motion. |

CONTINUED

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MANN, Beverly B. | CITY OF CHICAGO & ET AL | DOCKET NO. 84C1102 |
| | | PAGE 21 OF ; PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 05/02/90 | 282 | Minute order of 05/01/90:  Defendants motion for extension of time to file defendants' motion for summary judgment is granted to and including May 11, 1990.  Pretrial order to be submitted by May 11, 1990.  All other dates to remain firm.  Lindberg, J. Mailed notice 05/02/90. |
| CH | 283 | Filed 05/01/90:  Notice of motion; Defendants' motion for an extension of time to file motion for summary judgment final pre-trial order and to reset trial date. |
| 06/01/90 | 284 | Minute order of 05/31/90:  David M. Mattenson, William J. Arendt, Stuart E. Palmer and Stuart Gordon are granted leave to file their appearance on behalf of plaintiff.  Lindberg, J. No notice mailed. |
| | 285 | Filed 05/31/90:  Appearance of David M. Mattenson, William J. Arendt, Stuart E. Palmer and Stuart Gordon as attorneys for plaintiff. |
| | 286 | Filed 05/31/90:  Rule 39 affidavit of D. M. Mattenson. |
| | 287 | Filed 05/31/90:  Rule 39 affidavit of W. J. Arendt. |
| | 288 | Filed 05/31/90:  Rule 39 affidavit of S. E. Palmer. |
| NLF | 289 | Filed 05/31/90:  Rule 39 affidavit of S. Gordon. |
| 06/04/90 | 290 | Minute order of 05/31/90:  For the reference of the parties please log the following discovery schedule.  All general discovery to be completed by no change.  Expert discovery to be completed by no change.  Any dispositive motions, including motions in limine, along with supporting memoranda to be filed by 13 July 90.  A proposed pretrial order in full compliance with the Court's Standing Order to be filed by 17 Aug. 90.  There will be no extensions of these dates by agreement or otherwise unless by order of this court.  Failure to comply with the provisions of this order will result in appropriate sanctions.  Motions filed beyond the cut-off date will be stricken.  Status hearing set for July 17, 1990 at 9:30 a.m.  Pretrial conference set for August 29, 1990 at 3:30 p.m.  Trial set for September 10, 1990 at 10:30 a.m.  Lindberg, J. |
| NLF | | Mailed notice 06/04/90. |
| 07/13/90 | 291 | Minute order of 07/12/90:  Plaintiff's motion for extension of time to file motions in limine is granted to July 16, 1990.  Response to be filed by August 20, 1990.  Reply to be filed by August 31, 1990.  Lindberg, J. Mailed notice 07/13/90. |
| | 292 | Filed 07/12/90:  Notice of motion. |
| PG | 293 | Filed 07/12/90:  Motion. |
| 07/16/89 | 294 | Filed 07/13/90:  Appearance of Terence J. Moran, Maria G. Gempo, Kelly R. Welsh and Nancy van Allen as attorneys for defendant s James D. Montgomery and City of Chicago. |
| KS | | |

(CONTINUED)

DC 111A
(Rev. 1/75)

## CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| MANN, Beverly B. | CITY OF CHICAGO, et al. | DOCKET NO. 84 C 11020 |
| | | PAGE 22 OF ___ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 07/17/90 | 295 | Filed 07/16/90: Defendants' notice of filing. |
| | 296 | Filed 07/16/90: Motion for summary judgment (Exhibits); Local rule 12(1) statement of material facts as to which there is no genuine issue; Memorandum in support of defendants' motion for summary judgment. |
| | 297 | Filed 07/16/90: Exhibits submi-ted in support of defendants' motion for summary judgment |
| KS | 298 | Filed 07/16/90: Deposition exhibits in support of defendants motion for summary judgment. |
| 7/16/90 | 299 | Minute order of 07/17/90: Status hearing held. Plaintiff's motion in limine to be filed by July 24, 1990. Defendants' motion for summary jdugment to be filed by July 16, 1990. Response to be filed by August 20, 1990. Reply to be filed by August 31, 1990. Status hearing held. Lindberg, J. |
| NLF | | Mailed notice 07/18/90. |
| 07/25/90 RM | 300 | Filed 07/24/90: Defendants' notice of filing; Motion in limine. |
| 08/02/90 | 301 | Minute order of 08/01/90: Trial date is hereby vacated per request of parties. Parties are hereby directed to be prepared to proceed to trial on a daily trailing trial calendar effective after September 10, 1990. Status hearing set for August 16, 1990 at 9:30 a.m. The firm of Kanter & Mattenson, Ltd. is granted leave to withdraw its appearance on behalf of plaintiff. Lindberg, J. Mailed notice 08/01/90. |
| LG | 302 | Filed 08/01/90: Plaintiff's motion to withdraw as counsel. |
| 08/06/90 | 303 | Minute order of 08/03/90: Defendants' motion in limine is denied because the motion does not "state with particularity the grounds therefore." FRCP 7(b)(1); U.S. Dist. Court, Northern District of Illinois, General Rule 12(c). Defendants are given leave to file an amended motion in limine stating with particularity the grounds for the motion on or before August 17, 1990. Lindberg, J. |
| AEW | | Mailed notice 08/06/90. |
| 08/13/90 AEW | -- | Pursuant to Executive Committee Order dated 07/25/90: Referral reassigned to Magistrate Guzman. |
| 08/20/90 PG | 304 | Filed 08/17/90: Defendants' notice of filing; Defendants' motion in limine (Exhibits). |
| 08/21/90 PG | 305 | Minute order of 08/16/90: Status hearing held; continued to 13 Sept. 90 at 9:30 a.m. Lindberg, J. No notice mailed. |
| 09/04/90 LG | 306 | Minute order of 08/29/90: Pretrial stricken. Lindberg, J. No notice mailed. |
| 09/14/90 | 307 | Minute order of 09/13/90: Filed motion of plaintiff to withdraw appearance. Motion granted. Status hearing held; continued to 27 Sept 90 at 9:00 A.M. Lindberg, J. No notice mailed. |
| AEW | 308 | Filed 09/13/90: Plaintiff's notice of motion; Motion. |

(Continued)

DC 111A
(Rev. 1/75)

CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | |
|---|---|---|---|
| MANN | | CITY OF CHICAGO N | DOCKET NO. 84 C 11020 |
| | | | PAGE 23 OF ____ PAGES |

| DATE | NR. | PROCEEDINGS |
|---|---|---|
| 10/02/90 | 309 | Minute order of 09/27/90: Status hearing held. All pending matters continued to October 11, 1990 at 9:30 a.m. Lindberg, J. |
| AC | | No notice mailed. |
| 10/05/90 | 310 | Minute order of 10/04/90: Pursuant to the court, the referral to the magistrate is hereby closed. This case is returned to the assigned judge for further proceedings. Guzman, M. |
| AC | | Mailed notice 10/05/90. |

ICm

NOV 1990

CLOSED

JUN 3 0 1993

FOR DISPOSITION

Proceedings include all events.                                          TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                            GUZMAN
                                                                        CONV

11/20/90 311    ATTORNEY APPEARANCE for plaintiff by Anthony S. Divincenzo,
                Richard P. Campbell, Ronald S. Adelman (ac)
                [Entry date 11/26/90]

11/20/90 312    RULE 39 Affidavit of Anthony S. Divincenzo (ac)
                [Entry date 11/26/90]

11/20/90 313    RULE 39 Affidavit of Richard P. Campbell (ac)
                [Entry date 11/26/90]

11/20/90 314    RULE 39 Affidavit of Ronald S. Adelman (ac)
                [Entry date 11/26/90]

11/20/90 315    ORDER (ac) [Entry date 11/26/90]

11/26/90 316    MINUTE ORDER of 11/26/90 before Honorable George W.
                Lindberg : Enter order: Michael J. Leech is granted leave
                to withdraw as counsel of record for plaintiff effective
                October 11, 1990. Attorneys Anthony S. DiVencenzo, Richard
                P. Cambell, and Ronald S. Adelman are granted leave to
                substitute as counsel for plaintiff, nunc pro tunc,
                effective October 11, 1990. Status hearing set for January
                10, 1991 at 9:30 a.m. (for further detail see order
                attached to the original minute order form) Status hearing
                set for January 10, 1991 at 9:30 a.m. Notice mailed. (ac)

1/10/91 317     MINUTE ORDER of 1/10/91 before Honorable George W. Lindberg
                Status hearing held and continued March 28, 1991. Response
                to the pending motion for summary judgment to be filed by
                February 08, 1991. Reply due March 08, 1991. Status hearing
                set for 9:30 a.m. Notice mailed. (ac) [Entry date 01/14/91]

2/8/91 318      TRANSCRIPT of proceedings for the following date(s):
                12/27/89, 07/25/90  Before Honorable George W. Lindberg
                (Two volumes: 318-1 and 318-2). (ksl) [Entry date 02/13/91]

2/19/91 319     Notice of motion; MOTION by plaintiff for leave to file a
                brief in excess of 15 pages instanter. (tlm)
                [Entry date 02/20/91]

2/19/91 320     RESPONSE by plaintiff to defendants' motion for summary
                judgment. (tlm) [Entry date 02/20/91]

2/19/91 321     RULE 12(m) Statement by plaintiff  (Attachments). (tlm)
                [Entry date 02/20/91]

2/19/91 322     MINUTE ORDER of 2/19/91 before Honorable George W. Lindberg
                : Plaintiff's motion for leave to file a brief in excess of
                fifteen (15) pages instanter is granted. [319-1] Notice
                mailed 02/20/91. (tlm) [Entry date 02/20/91]

3/11/91 323     TRANSCRIPT of proceedings for the following date(s): May 1,
                1990  Before Honorable Geroge W. Lindberg (tlm)
                [Entry date 03/12/91]

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                              GUZMAN
                                                                          CONV

3/11/91   324    TRANSCRIPT of proceedings for the following date(s):
                 08/07/91  Before Honorable George W. Lindberg (tlm)
                 [Entry date 03/12/91]

3/14/91   325    MOTION by defendants for an extension of time to file
                 defendants' reply memorandum in support of motion for
                 summary judgment ; notice of motion. (ksl)
                 [Entry date 03/15/91]

3/14/91   326    MINUTE ORDER of 3/14/91 before Honorable George W. Lindberg
                 : granting defendants' motion for an extension of time to
                 file defendants' reply memorandum in support of motion for
                 summary judgment to 03/22/91 [325-1]. Notice mailed
                 03/15/91. (ksl) [Entry date 03/15/91]

3/27/91   327    RESPONSE by plaintiff to defendants' motion for extension
                 of time and for leave to file an oversize brief; notice of
                 filing. (tlm) [Entry date 03/28/91]

3/28/91   328    MINUTE ORDER of 3/28/91 before Honorable George W. Lindberg
                 : To prepare the court for the pretrial conference set for
                 07 May 19 at 4:00 pm., the parties are requested to direct
                 letters marked "CONFIDENTIAL" directly to the Judge stating
                 the parties best offer for an immediate settlement of the
                 case. The letters are due 04/29/91 and should not argue the
                 case. Letters will be returned to the sender at the
                 conference.   All parties are ordered to appear for the
                 settlement conference in addition to counsel. Notice
                 mailed 03/29/91. (tlm) [Entry date 03/29/91]

4/2/91    329    TRANSCRIPT of proceedings for the following date(s):
                 05/17/90  Before Honorable George Lindberg (tlm)
                 [Entry date 04/03/91]

4/3/91    400    MOTION by plaintiffs for directed verdict. (tlm)
                 [Entry date 10/04/91]

4/4/91    330    MOTION by defendants to extend time to file reply in
                 support of motion for summary judgment, to exceed page
                 limitation ; notice of motion. (gv) [Entry date 04/05/91]

4/4/91    331    MINUTE ORDER of 4/4/91 before Honorable George W. Lindberg
                 : As stated in open court, granting  motion to extend time
                 to file reply in support of motion for summary judgment
                 [330-1] granting  motion to exceed page limitation [330-2]
                 Notice not mailed  (gv) [Entry date 04/05/91]

4/4/91    332    REPLY memorandum by defendants in support of defendants'
                 motion for summary judgment; Notice of filing
                 (Attachments). (aew) [Entry date 04/11/91]

4/11/91   333    EXHIBIT A to Meacham affidavit. (tlm) [Entry date 04/19/91]

Proceedings include a    ents.                      TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al            GUZMAN
                                                                 CONV

4/18/91   334    TRANSCRIPT of proceedings for the following date(s):
                  10/11/90  Before Honorable George Lindberg (tlm)
                  [Entry date 04/25/91]

5/7/91    335    MINUTE ORDER of 5/7/91  before Honorable George W. Lindberg
                  :  Pretrial conference stricken per request of parties due
                  to illness. No notice mailed. (tlm) [Entry date 05/15/91]

5/16/91   336    MOTION by plaintiff to strike affidavit of Clifford
                  Meacham or, in the alternative, to supplement the record
                  [336-2] (Exhibits); notice of motion. (tlm)
                  [Entry date 05/22/91]

5/16/91   337    ~~MINUTE ORDER of 5/16/91  before Honorable George W.~~
                  ~~Lindberg : Filed plaintiff's motion for leave to file a~~
                  ~~brief in excess of 15 pages, instanter.   Motion under~~
                  ~~advisement  Ruling by mail.   Pretrial conference set for~~
                  ~~05/21/91 at 9:00 a.m. Notice mailed 05/20/91. (tlm)~~
                  [Entry date 05/22/91]

5/30/91   338    MOTION by Beverly Mann to set date certain for trial. (tlm)
                  [Entry date 06/06/91]

5/30/91   339    ~~NOTICE OF MOTION by plaintiff regarding motion to set date~~
                  ~~certain for trial [338-1] (tlm) [Entry date 06/06/91]~~

5/30/91   340    MINUTE ORDER of 5/30/91  before Honorable George W.
                  Lindberg : Plaintiff's  motion to set date certain for
                  trial [338-1].  Motion Filing deadline 06/24/91 and
                  pretrial order deadline 06/24/91.  Trial set for 09/16/91.
                  Pretrial conference scheduled for 07/08/91 at 4:30 p.m.
                  stands. Notice mailed 06/04/91. (tlm) [Entry date 06/06/91]

7/11/91   341    ~~JOINT AND AGREED MOTION by Beverly Mann, City Of Chicago,~~
                  ~~James Montgomery, Jayne Barnard, Timothy O'Hara to extend~~
                  ~~time for filing the final pretrial order ; notice of~~
                  motion. (tlm) [Entry date 07/12/91]

7/11/91   342    ~~MINUTE ORDER of 7/11/91  before Honorable George W.~~
                  ~~Lindberg : Filed the joint and agreed motion to extend time~~
                  ~~for filing the final pretrial order.  [341-1]  Mogin~~
                  ~~granted to 07/15/91. Notice mailed 07/12/91. (tlm)~~
                  ~~[Entry date 07/12/91]~~

7/12/91   343    MINUTE ORDER of 7/12/91  before Honorable George W.
                  Lindberg : Pretrial conference set for 07/08/91 was
                  striken by the Court. Pretrial conference reset to 07/29/91
                  at 9:00 a.m. Pretrial order to be filed by 07/15/91.
                  Notice mailed 07/15/91. (tlm) [Entry date 07/15/91]

7/24/91   344    RESPONSE by Beverly Mann  to defendants' motion for
                  decision; notice of filing. (tlm) [Entry date 07/25/91]

Proceedings include all events.                                              TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                                 GUZMA
                                                                             CONV

7/25/91   345   MOTION by defendants for decision on defendants' motion
                for summary judgment ; notice of motion. (tlm)
                [Entry date 07/26/91]

7/25/91   346   MINUTE ORDER of 7/25/91 before Honorable George W. Lindberg
                : Ruling on pending motions by mail. Defendants' motion
                for a decision on its motion for summary judgment is
                granted. [345-1] Notice mailed 07/26/91. (tlm)
                [Entry date 07/26/91]

7/25/91   347   JOINT AND AGREED MOTION by plaintiff to extend time for
                filing the final pretrial order , and to reset pretrial
                conference ; notice of motion. (tlm) [Entry date 07/26/91]

7/25/91   348   MINUTE ORDER of 7/25/91 before Honorable George W.
                Lindberg : Pretrial conference reset to 08/20/91 at 9:00
                a.m. Joint and agreed motion to extend time for filing the
                final pretrial order is granted to and including 08/14/91.
                [347-1] Pretrial conference set for 07/29/91 is stricken.
                [347-2] Notice mailed 07/26/91. (tlm) [Entry date 07/26/91]

8/13/91   349   MINUTE ORDER of 8/13/91 before Honorable George W.
                Lindberg : Defendants' motion for summary judgment is
                granted in part and denied in part. (For further detail see
                order on the reverse of the original minute order form.)
                Notice mailed 08/14/91. (dk) [Entry date 08/14/91]

8/21/91   350   MOTION by defendants in limine to preclude plaintiff from
                recovering damages for backpay after 10/07/85. (tlm)
                [Entry date 08/22/91]

8/21/91   351   MOTION by defendants to dismiss remaining state law claims
                for lack of subject matter jurisdiction. (tlm)
                [Entry date 08/22/91]

8/21/91   352   MINUTE ORDER of 8/21/91 before Hon. George W. Lindberg :
                Filed defendants' motion to dismiss remaining state law
                claims for lack of subject matter jurisdiction [351-1] and
                motion in limine [350-1]. Any additional responses to
                defendant, City of Chicago, motion to dismiss are due
                08/30/91. Reply to answer brief due 9/6/91. Pretrial
                conference held. Trial of 09/16/91 to stand. No notice
                mailed. (tlm) [Entry date 08/22/91]

8/29/91   353   FINAL PRE-TRIAL ORDER (tlm) [Entry date 08/30/91]

8/29/91   354   MINUTE ORDER of 8/29/91 before Hon. George W. Lindberg :
                Enter Final Pretrial Order. Notice mailed 08/30/91. (tlm)
                [Entry date 08/30/91]

8/30/91   355   RESPONSE by plaintiff to motion to dismiss remaining state
                law claims for lack of subject matter jurisdiction [351-1]
                (tlm) [Entry date 09/03/91]

Proceedings include all ~~~~ents.
1:84cv11020   Mann v. City Of Chicago, et al                    TERMED APPEA
                                                                GUZMA
                                                                CONV

8/30/91   356   RESPONSE by plaintiff to motion in limine to preclude
                plaintiff from recovering damages for backpay after
                10/07/85 [350-1] (tlm) [Entry date 09/03/91]

8/30/91   357   RESPONSE by plaintiff to defendants' motion in limine
                regarding defendants' job performance. (tlm)
                [Entry date 09/03/91]

~~8/30/91   358   NOTICE OF FILING by plaintiff regarding motion response
                [357-1], regarding motion response [356-1], regarding
                motion [355-1]. (tlm) [Entry date 09/03/91]~~

~~9/6/91   359   REASSIGNMENT ORDER of 90/03/91: Case reassigned to Judge
                James L. Watson from the calendar of Judge George W.
                Lindberg for trial. Pretrial conference set for 09/09/91
                in Chambers #2246 at 1:30 p.m. notice Mailed. (tlm)~~
                [Entry date 09/10/91]

9/6/91   361   REPLY MEMORANDUM by plaintiff in support of defendants'
                motion in limine regarding defendants' job performance and
                the circumstances under which they left their employment by
                the City. (tlm) [Entry date 09/10/91]

9/6/91   360   REPLY MEMORANDUM by defendants' in support of motion to
                dismiss remaining state law claims for lack of subject
                matter jurisdiction (Exhibit) [351-1]. (tlm)
                [Entry date 09/10/91]

9/6/91   361   REPLY MEMORANDUM by defendants' motion in limine regarding
                defendants' job performance and the circumstances under
                which they left their employment by the City. (tlm)
                [Entry date 09/10/91]

9/6/91   362   REPLY MEMORANDUM by defendant in support of defendants' to
                motion in limine regarding damages [350-1]. (tlm)
                [Entry date 09/10/91]

9/10/91   363   MINUTE ORDER of 9/10/91 by Judge James L. Watson : All
                matters relating to the referral of this action having been
                resolved, the case is returned to the assigned judge for
                further proceedings. Case reassigned to Hon. George W.
                Lindberg No Notice (ksl) [Entry date 09/11/91]

9/12/91   364   MINUTE ORDER of 9/12/91 by Hon. George W. Lindberg :
                Defendants' denying motion to dismiss remaining state law
                claims for lack of subject matter jurisdiction [351-1]
                Mailed Notice (ll) [Entry date 09/16/91]

9/13/91   365   MINUTE ORDER of 9/13/91 by Hon. George W. Lindberg :
                Defendants' motion in limine regarding damages is denied
                without prejudice to their raising anew the issues raised
                in the motion at trial. Mailed Notice (ll)
                [Entry date 09/16/91]

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                        GUZMAN
                                                                    CONV

9/13/91   366    MINUTE ORDER of 9/13/91  by Hon. George W. Lindberg :
                 Defendants' motion in limine regarding defendants' job
                 performance is granted in part and denied in part. Evidence
                 regarding defendants' job performance will be admitted only
                 as it concerns their performance evaluations of plaintiff.
                 Other evidence of job performance and evidence regarding
                 the circustances under which defendants' ended their
                 employment with the city is excluded from trial.    Mailed
                 Notice (ll) [Entry date 09/16/91]

9/16/91   367    MOTION by defendants to exclude testimony of plaintiff's
                 proposed expert witnesses and all other of plaintiff's
                 proposed witnesses who were not disclosed during discovery
                 (Exhibits). (ksl) [Entry date 09/17/91]

9/16/91   368    MINUTE ORDER of 9/16/91  by Hon. George W. Lindberg :
                 motion to exclude testimony of plaintiff's proposed expert
                 witnesses and all other of plaintiff's proposed witnesses
                 who were not disclosed during discovery is entered and
                 continued to 09/19/91 [367-1].  Jury trial held and
                 continued to 09/17/91 at 10:00 a.m. No Notice (ksl)
                 [Entry date 09/17/91]

9/17/91   369    STIPULATION and ORDER (cmp) [Entry date 09/18/91]

9/17/91   370    MINUTE ORDER of 9/17/91 by Hon. George W. Lindberg : Enter
                 stipulation of parties.  Enter order:  In accordance with
                 the stipulation, the jury in this case shall consist of
                 nine jurors.  In the event of one or more jurors are
                 excused, so long as there remain at least six jurors, the
                 unanimous agreement of the remaining jurors shall be
                 sufficient to render a verdict.  No alternate jurors will
                 be chosen.  (For further detail see order attached to the
                 original minute order form).  No Notice (cmp)
                 [Entry date 09/18/91]

9/17/91   371    MINUTE ORDER of 9/17/91 by Hon. George W. Lindberg : The
                 Clerk of Court is directed to pay for coffee and rolls for
                 nine jurors.  The Clerk of Court is directed to pay for
                 juice and chips for nine jurors.   Jury trial held and
                 continued to 09/19/91 at 11:00 a.m.  No Notice (cmp)
                 [Entry date 09/18/91]

9/17/91   372    MEMORANDUM by plaintiff in opposition to motion to exclude
                 testimony of plaintiff's proposed expert witnesses and all
                 other of plaintiff's proposed witnesses who were not
                 disclosed during discovery [367-1] (Exhibits). (ksl)
                 [Entry date 09/19/91]

9/19/91   373    MOTION by unknown John C O'Malley to quash subpoena
                 (Exhibits) ; notice of motion. (dk) [Entry date 09/20/91]

Proceedings include a_____ents.
1:84cv11020   Mann v. City Of Chicago, et al                              TERMED APPEAI
                                                                          GUZMAI
                                                                          CONV

9/19/91   374   MINUTE ORDER of 9/19/91 by Hon. George W. Lindberg :
                Pursuant to representation of parties, A.R.D.C.'s motion to
                quash subpoena is withdrawn. [373-1] Mailed notice (dk)
                [Entry date 09/20/91]

9/19/91   375   MINUTE ORDER of 9/19/91 by Hon. George W. Lindberg : The
                clerk of court is directed to pay for coffee and rolls for
                nine jurors. The clerk of court is directed to pay for
                juice and chips for nine jurors. Jury trial held and
                continued to 09/20/91 at 9:30 AM. No notice (cmp)
                [Entry date 09/25/91]

9/20/91   376   MINUTE ORDER of 9/20/91 by Hon. George W. Lindberg :
                Jury trial held and continued to 09/23/91 at 9:30 AM. The
                clerk of court is directed to pay for coffee and rolls for
                nine jurors. No notice (cmp) [Entry date 09/25/91]

9/23/91   377   MINUTE ORDER of 9/23/91 by Hon. George W. Lindberg : The
                clerk of court is directed to pay for coffee and rolls for
                nine jurors. The clerk of court is directed to pay for
                juice and chips for nine jurors. Jury trial held and
                continued to 09/24/91 at 9:30 AM. No notice (cmp)
                [Entry date 09/25/91]

9/23/91   378   MINUTE ORDER of 9/23/91 by Hon. George W. Lindberg :
                Defendants' motion to exclude testimony of plaintiff's
                proposed expert witnesses and all other of plaintiff's
                proposed witnesses who were not disclosed during discovery
                [367-1] is granted in part and denied in part. (See
                reverse of minute order). No notice (cmp)
                [Entry date 09/25/91]

9/24/91   379   MINUTE ORDER of 9/24/91 by Hon. George W. Lindberg :
                Jury trial held and continued to 09/25/91 at 10:30AM. The
                clerk of court is directed to pay for coffee and rolls for
                nine jurors. The clerk of court is directed to pay for
                juice and chips for nine jurors. No notice (cmp)
                [Entry date 09/25/91]

9/25/91   380   MINUTE ORDER of 9/25/91 by Hon. George W. Lindberg :
                Jury trial held and continued to 09/26/91 at 10:30 AM.
                The clerk of court is directed to pay for coffee and rolls
                for nine jurors. The clerk of court is directed to pay for
                juice and chips for nine jurors. No notice (cmp)

9/25/91   381   MOTION by plaintiff to amend pretrial order. (tlm)
                [Entry date 09/30/91]

9/26/91   384   MEMORANDUM by defendants in opposition to plaintiff's
                motion to amend the pretrial order (Attachment). (tlm)
                [Entry date 10/01/91]

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMAN
                                                                   CONV

| 9/26/91 | 387 | MINUTE ORDER of 9/26/91 by Hon. George W. Lindberg : Jury trial held and continued to 09/30/91 at 9:30 a.m. The Clerk of the Court is directed to pay for coffee and rolls for nine jurors. No notice (tlm) [Entry date 10/02/91] |

9/27/91  382   MOTION by plaintiff for reconsideration of the Court's ruling denying the admission into evidence of plaintiff's exhibit No. 8. (Attachment). (tlm) [Entry date 09/30/91]

9/27/91  383   MINUTE ORDER of 9/27/91 by Hon. George W. Lindberg : Plaintiff's motion to amend pretrial order is granted. [381-1] (For further detail, see order.) Mailed notice. (tlm) [Entry date 09/30/91]

9/30/91  385   MEMORANDUM by defendants in opposition to motion for reconsideration of the Court's ruling denying the admission into evidence of plaintiff's exhibit No. 8. [382-1] (tlm) [Entry date 10/01/91]

9/30/91  388   MINUTE ORDER of 9/30/91 by Hon. George W. Lindberg : Jury trial held and continued to 10/01/91 at 9:30 a.m. The Clerk of Court is directed to pay for coffee and rolls for nine jurors. The Clerk of Court is directed to pay for juice and chips for nine jurors. No notice (tlm) [Entry date 10/02/91]

10/1/91  386   MINUTE ORDER of 10/1/91 by Hon. George W. Lindberg : The court having considered plaintiff's motion for reconsideration of the Court's ruling denying the admission into evidence of plaintiff's exhibit No. 8. [382-1] and the objection thereto, the court grants plaintiff's motion; the court finds that RFE 801(d)(2)(C) defines as not hearsay the statements by parties made by persons with authority; the court also finds that the exhibit is admissable under FRE 801(d)(2)(D). Further, the court finds that the exhibit is more probative than prejudicial. Mailed notice (tlm)

10/1/91  389   MEMORANDUM by plaintiff in support of recovery of attorneys' fees as damages for breach of the settlement agreement. (tlm) [Entry date 10/02/91]

10/1/91  390   MOTION by plaintiff to exclude deposition testimony of Benjamin S. Mackoff. (tlm) [Entry date 10/02/91]

10/1/91  391   MOTION by defendant for directed verdict and directed finding. (tlm) [Entry date 10/02/91]

10/1/91  392   MEMORANDUM by defendant in support of motion for directed directed finding on plaintiff's Shakman claim (Count I). [391-1] (tlm) [Entry date 10/02/91]

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMAN
                                                                   CONV

10/1/91   393   MEMORANDUM by defendants in support Montgomery's motion for
                directed directed on plaintiff's tortious interference
                claim (Attachment) [391-1]. (tlm) [Entry date 10/02/91]

10/1/91   394   MEMORANDUM by defendants in support of defendant Barnard's
                motion for directed verdict on plaintiff's defamation and
                tortious interference claims (Attachment). [391-1] (tlm)
                [Entry date 10/02/91]

10/1/91   395   MEMORANDUM by defendants in support of defendant O'Hara's
                motion for directed verdict on plaintiff's defamation and
                tortious interference claims (Attachment). [391-1] (tlm)
                [Entry date 10/02/91]

10/1/91   396   MEMORANDUM by defendants in support of City of Chicago's
                motion for directed verdict on plaintiff's defamation and
                tortious interference claims. [391-1] (tlm)
                [Entry date 10/02/91]

10/1/91   397   MEMORANDUM by defendants in support of City of Chicago's
                and Montgomery's motion for directed verdict on plaintiff's
                breach of contract claim [391-1]. (tlm)
                [Entry date 10/02/91]

10/1/91   398   MEMORANDUM by defendants in opposition to plaintiff's claim
                for attorneys' fees under her breach of contract claim. (tlm)
                [Entry date 10/02/91]

10/1/91   399   MINUTE ORDER of 10/1/91 by Hon. George W. Lindberg :
                Jury trial held and continued to 10/02/91 at 11:00 a.m.
                The Clerk of Court is directed to pay for coffee and rolls
                for nine jurors.  The Clerk of Court is directed to pay for
                juice and chips for nine jurors. No notice (tlm)
                [Entry date 10/02/91]

10/3/91   401   RESPONSE by plaintiff to defendants' motions for directed
                verdict and directed finding. [391-1] (tlm)
                [Entry date 10/04/91]

10/3/91   402   MINUTE ORDER of 10/3/91 by Hon. George W. Lindberg :
                Plaintiff's motion for attorney fees incurred in
                litigating the breach of contract claim is denied.
                Defendant's responsive brief, if any, is moot.  (See
                reverse of minute order.) Mailed notice (tlm)
                [Entry date 10/04/91]

10/3/91   403   STIPULATION to the court permitting the juror to be excused
                from the jury for the period from 12 noon to 2:00 p.m. on
                10/04/91.. (tlm) [Entry date 10/04/91]

Proceedings include all events.                              TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                GUZMAN
                                                            CONV

10/3/91  404  MINUTE ORDER of 10/3/91 by Hon. George W. Lindberg : Enter
              stipulation of parties that permits a juror with a
              longstanding speaking commitment to be excused from the
              jury, even though it has been charged, for the period from
              12 noon to 2:00 p.m. on Friday, 10/04/91, with the
              understanding that no deliberations will be held during
              that same period.  Jury instruction conference held.  No
              notice (tlm) [Entry date 10/04/91]

10/4/91  405  JURY INSTRUCTIONS submitted by plaintiff (tlm)
              [Entry date 10/08/91]

10/4/91  406  JURY INSTRUCTIONS given. (tlm) [Entry date 10/08/91]

10/4/91  407  MINUTE ORDER of 10/4/91 by Hon. George W. Lindberg : File
              jury instructions not given. Mailed notice (tlm)
              [Entry date 10/08/91]

10/4/91  408  MINUTE ORDER of 10/4/91 by Hon. George W. Lindberg :
              Jury trial held and continued to 10/07/91 at 9:00 a.m. The
              Clerk of Court is directed to pay for coffee and rolls for
              nine jurors.  The Clerk of Court is directed to pay for
              juice and chips for nine jurors. No notice (tlm)
              [Entry date 10/08/91]

10/8/91  409  Document Sealed (pursuant to Court Order). (tlm)
              [Entry date 10/09/91]

10/11/91 411  VERDICT for Jayne Barnard, Timothy O'Hara against plaintiff
              (tlm) [Entry date 10/16/91]

10/11/91 412  VERDICT for Jayne Barnard against plaintiff (tlm)
              [Entry date 10/16/91]

10/11/91 413  VERDICT for plaintiff Beverly Mann against James Montgomery
              and assessment plaintiff's damages in the sum of
              $74,700.00. (tlm) [Entry date 10/16/91]

10/11/91 414  VERDICT for defendant Jayne Barnard against plaintiff
              Beverly Mann (tlm) [Entry date 10/16/91]

10/11/91 415  VERDICT for plaintiff Beverly Mann against City Of Chicago,
              James Montgomery with assessment of plaintiff's damages in
              the sum of $68,285.00. (tlm) [Entry date 10/16/91]

10/11/91 416  VERDICT for defendant Jayne Barnard assessing no punitive
              damages as to this claim. (tlm) [Entry date 10/16/91]

10/15/91 417  EXERPT TRANSCRIPT of proceedings for the following date(s):
              09/17/91 & 09/20/91  Before Honorable George W. Lindberg
              and a jury (2 bound volums Nos. 417-I & 417-II). (tlm)
              [Entry date 10/16/91]

Proceedings include all events.                                    TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMA
                                                                   CONV

10/16/91  410   MINUTE ORDER of 10/16/91 by Hon. George W. Lindberg :
                September 27, 1991 order is vacated. (See reverse of minute
                order.)  [383-1] Mailed notice (tlm)

10/24/91  418   MINUTE ORDER of 10/24/91 by Hon. George W. Lindberg: Enter
                amended order nunc pro tunc to 10/11/91.  Enter jury
                verdict [416-1], [415-1], [414-1], [413-1], [412-1],
                [411-1]: Verdict in favor of defendants Barnard and O'Hara
                on plaintiff's claims that she was defamed during
                employment with the Law Dept., City of Chicago; verdict in
                favor of defendant Barnard on claims that plaintiff was
                defamed after leaving her employment with Law Dept., City
                of Chicago. Verdict in favor of defendant Barnard on
                plaintiff's claim for wrongful interference with
                prospective economic advantage with respect to plaintiff's
                expectancy of obtaining gainful employment after leaving
                Law Dept., City of Chicago. The jury finds that no punitive
                damages are assessed as to defendant Barnard. Enter verdict
                in favor of plaintiff and against defendants, City of
                Chicago and James Montgomery on claim for Breach of
                contract. Damages are assessed in the amount of $68,285.00.
                Verdict in favor of plaintiff and against defendant James
                Montgomery on plaintiff's claim for wrongful interference
                with prospective economic advantage with respect to
                plaintiff's expectancy of continued employment with the Law
                Dept., City of Chicago. Damages are assessed in the amount
                of $74,700.00. Mailed notice (mf) [Entry date 10/25/91]

11/8/91   419   FINDINGS of fact and conclusions of law (tlm)
                [Entry date 11/12/91]

11/8/91   420   MINUTE ORDER of 11/8/91  by Hon. George W. Lindberg :
                Enter Findings of Fact and Conclusions of Law.  The Court
                hereby enteres judgment in favor of defendants. Mailed
                notice (tlm) [Entry date 11/12/91]

1/8/92    421   NOTICE OF ATTORNEYS' LIENS; notice of filing. (tlm)
                [Entry date 01/09/92]

1/23/92   422   MOTION by plaintiff for leave to file appearance of
                substitute counsel ; notice of motion. (ksl)
                [Entry date 01/24/92]

1/23/92   423   MINUTE ORDER of 1/23/92  by Hon. George W. Lindberg :
                granting  motion for leave to file appearance of substitute
                counsel [422-1] Mailed notice (ksl) [Entry date 01/24/92]

1/23/92   424   MINUTE ORDER of 1/23/92  by Hon. George W. Lindberg :  The
                parties are requested to submit a joint proposed judgment
                order on or before 02/07/92.  (See reverse of minute
                order.)  Mailed notice (ksl) [Entry date 01/24/92]

1/31/92   425   ATTORNEY APPEARANCE for Beverly Mann  by Kenneth N. Flaxman
                as additional counsel. (tlm)

Docket as of July 29, 1998 3:52 pm                    Page 17

Proceedings include all events.                                    TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                        GUZMAI
                                                                    CONV

2/6/92   426 ✓   MINUTE ORDER of 2/6/92  by Hon. George W. Lindberg : The
                 parties are requested to prepare adn submit a joint
                 proposed judgment order in conformity with FRCP58 by
                 01/18/92. If after consultation and good faith efforts the
                 parties are unable to agree, they are requested to prepare
                 individual proposed judgment orders for the Court's review.
                 If the judgment/verdict is overturned pursuant to
                 post-trial motions, the parties' Rule 58 draft judgment
                 will be disregarded.   Mailed notice. (tlm)
                 [Entry date 02/10/92]

2/10/92  427 ✓   JUDGMENT (tlm) [Entry date 02/12/92]

2/10/92  428 ✓   MINUTE ORDER of 2/10/92  by Hon. George W. Lindberg : Enter
                 Judgment Order: The following rulings are as to the third
                 amended complaint.  Counts I, II, III, IV, V, VI, VII and
                 XII enter judgment in favor of defendants and against
                 plaintiff.  On Count VIII judgment in favor of certain
                 defendants and against plaintiff.  On Count X judgment is
                 entered in favor of plaintiff and against defendants.  On
                 Count XI judgment is entered in favor of both.  On
                 supplemental complaint judgment is entered in favor of
                 defendants.  Mailed notice (tlm) [Entry date 02/12/92]

2/24/92  429 ✓   TRANSCRIPT of proceedings for the following date(s):
                 September 16, 17 a.m. & p.m., 19 a.m. & p.m., 20, & 30,
                 1991 and October 1, 3, & 7, 1991 Before Honorable George W.
                 Lindberg (10 bound vols. #429-I thru X). (tlm)
                 [Entry date 02/25/92]

2/27/92  430 ✓   MOTION by plaintiff to amend findings, for a new trial,
                 to amend judgment ; notice of motion. (tlm)
                 [Entry date 03/02/92]

3/5/92   431     MOTION by City of Chicago & James Montgomery to exceed
                 page limitation ; notice of motion. (tlm)
                 [Entry date 03/12/92]

3/5/92   433     MINUTE ORDER of 3/5/92 by Hon. George W. Lindberg : Answer
                 brief to motion for judgment notwithstanding the verdict or
                 alternatively for a new trial or, alternatively, for
                 remittitur of the verdict is due 04/13/92. [432-1] Reply to
                 answer brief due 4/27/92.  Status hearing set for 06/04/92
                 at 9:30 a.m. Granting motion for leave to file brief in
                 excess of 15 pages. [431-1] No notice. (tlm)
                 [Entry date 03/12/92]

3/10/92  432 ✓   MOTION by City of Chicago, James Montgomery for judgment
                 notwithstanding the verdict or alternatively for a new
                 trial or, alternatively, for remittitur of the verdict
                 (will be briefed) ; notice of motion (Attachment). (tlm)
                 [Entry date 03/12/92]

Proceedings include all events.

TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                    GUZMA
                                                                CONV

3/11/92   434   MINUTE ORDER of 3/11/92  by Hon. George W. Lindberg :
                Plaintiff's brief in support of motion to amend findings
                [430-1] motion for a new trial [430-2] and, motion to amend
                judgment is due 03/23/92. [430-3] Answer brief due
                04/13/92. Reply to answer brief due 4/27/92. Status
                hearing set for 06/04/92 at 9:30 a.m. No notice (tlm)
                [Entry date 03/12/92]

4/2/92    435 ✔ AGREED MOTION by plaintiff to reset briefing schedule ;
                notice of agreed motion. (ksl) [Entry date 04/03/92]

4/2/92    436 / AFFIDAVIT of Kenneth N. Flaxman (ksl) [Entry date 04/03/92]

4/16/92   437 / AGREED MOTION by plaintiff to reset briefing schedule and
                , to permit withdrawal of attorney ; notice of agreed
                motion. (tlm) [Entry date 04/17/92]

4/16/92   438 ✔ MINUTE ORDER of 4/16/92  by Hon. George W. Lindberg :
                Plaintiff's agreed motion to reset briefing schedule taken
                under advisement. Ruling will be made by mail. [437-1]
                Granting motion to permit withdrawal of attorney [437-2]
                Kenneth N. Flaxman for Beverly Mann.  Mailed notice (tlm)
                [Entry date 04/17/92]

4/27/92   439 / RESPONSE by plaintiff to defendants' post-trial motion for
                judgment notwithstanding the verdict or alternatively for a
                new trial or, alternatively, for remittitur of the verdict
                [432-1] and in support of plaintiff's post trial motion to
                amend findings [430-1], motion for a new trial [430-2],
                motion to amend judgment [430-3]; notice of filing. (tlm)
              / [Entry date 04/28/92]

4/29/92   440   CORECTED RESPONSE to defendant's post-trial motion and in
                support of plaintiff's post-trial motion by plaintiff;
                notice of filing. (tlm) [Entry date 04/30/92]

4/30/92   441 / EXHIBITS by plaintiff to Corrected Joint Memorandum in
                response to defendants' post-trial motion and in support of
                plaintiff's post-trial motion. (tlm) [Entry date 05/01/92]

5/8/92    442   MINUTE ORDER of 5/8/92  by Hon. George W. Lindberg :
                Plaintiff is given leave to file its response to
                defendant's post-trial motion in excess of 15 pages. No
                notice (tlm) [Entry date 05/11/92]

5/19/92   443 / REPLY MEMORANDUM  by defendants in suppor of defendants'
                post-trial motion and in opposition to plaintiff's
                post-trial motion; notice of filing. (tlm)
                [Entry date 05/20/92]

5/28/92   444   MINUTE ORDER of 5/28/92  by Hon. George W. Lindberg :
              / Status hearing reset for 07/15/92 at 9:30 a.m. Mailed
                notice (tlm) [Entry date 06/01/92]

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al                    TERMED APPEA
                                                                  GUZMA
                                                                  CONV

6/11/92   445    MOTION by plaintiff for leave to file a reply to
                 defendants' reply memorandum in support of defendants'
                 post-trial motion and response memorandum in oposition to
                 plaintiff's post-trial motion ; notice of motion. (tlm)
                 [Entry date 06/12/92]

6/11/92   446    MINUTE ORDER of 6/11/92 by Hon. George W. Lindberg :
                 Plaintiff has to and including 07/11/92 to file a reply to
                 defendants' reply menorandum in support of defendants'
                 post-trial motion and [432-1] response memorandum in
                 opposition to plaintiff's post-trial motion. [430-1]
                 [445-1] Mailed notice (tlm) [Entry date 06/12/92]

6/15/92   447    NOTICE by plaintiff of change of address (tlm)
                 [Entry date 06/16/92]

6/23/92   449    MINUTE ORDER of 6/23/92 by Hon. George W. Lindberg :
                 Plaintiff's is given leave to file her reply memornadum in
                 excess of 15 pages  [448-1] The attached exhibits are
                 stricken and will not be taken into consideration when
                 making ruling on the motion.  Status hearing set for
                 08/16/92 at 9:30 a.m. No notice (tlm)  [Entry date 06/24/92]

6/23/92   450    REPLY by plaintiff to memorandum in response to and in
                 support of respective post-trial motions (Exhibits).
                 [432-1] (tlm) [Entry date 06/24/92]

6/24/92   448    MOTION by Beverly Mann for leave to file her reply
                 memornadum in excess of 15 pages ; notice of motion. (tlm)

6/26/92   451    REPLY by plaintiff to defendants' memorandun in response to
                 and in support of respective post-trial motions (Exhibits).
                 [430-1], [430-2], [430-3] (tlm) [Entry date 06/29/92]

7/7/92    452    RESPONSE by defendants' to plaintiff's motions to strike
                 defendants' post-trisl motion for judgment and portions of
                 post-trial reply memorandum and correction of Court's Order
                 dated 06/23/92 and to consider the entire body of
                 plaintiff's reply memorandum; notice of filing
                 (Attachment). (tlm) [Entry date 07/09/92]

7/9/92    453    MOTION by plaintiff to strike a portion of defendants'
                 post-trial reply memorandum, and for correction of the
                 court's order dated June 23, 1992, and to consider the
                 entire body of plaintiff's reply memorandum (Attachment) ;
                 notice of motion. (is) [Entry date 07/10/92]

7/9/92    454    MOTION by plaintiff to strike defendants' post-trial
                 motion for judgment as a matter of law (Exhibits) ; notice
                 of motion. (is) [Entry date 07/10/92]

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al

TERMED APPEA
GUZMA
CONV

7/9/92    455    MINUTE ORDER of 7/9/92 by Hon. George W. Lindberg :
                 Plaintiff's motion to strike a portion of defendants'
                 post-trial reply memorandum [453-1] and motion to strike
                 defendants' post-trial motion for judgment as a matter of
                 law [454-1] is taken under advisement. Minute order dated
                 June 23, 1992 is amended to reflect that the attached
                 exhibit one only is stricken and will not be taken into
                 consideration when making ruling on the motion [453-2],
                 [453-3]. In all other aspects the order remains the same.
                 Mailed notice (is) [Entry date 07/10/92]

7/9/92    456    MOTION by plaintiff for amendment of service list. (is)
                 [Entry date 07/10/92]

7/9/92    457    MINUTE ORDER of 7/9/92 by Hon. George W. Lindberg : Leave
                 of court is given to plaintiff to amend the service list to
                 strike the names and addresses of all attorneys listed as
                 representing her, and to add her name and address as
                 plaintiff is now pro se [456-1]. No notice (is)
                 [Entry date 07/10/92]

7/28/92   458    MOTION by plaintiff for reconsideration of the court's
                 grant of summary judgment, and to accept plaintiff's
                 post-trial memorandum as her memorandum in support of the
                 present motion (Exhibit). (is) [Entry date 07/31/92]

7/28/92   459    MOTION by plaintiff for leave to file a reply to the
                 defendants' response to plaintiff's motions (Attachment)
                 (Exhibits). (is) [Entry date 07/31/92]

7/28/92   460    MINUTE ORDER of 7/28/92 by Hon. George W. Lindberg :
                 Plaintiff's motions for reconsideration of the court's
                 grant of summary judgment [458-1], and to accept
                 plaintiff's post-trial memorandum as her memorandum in
                 support [458-2] and plaintiff's motion for leave to file a
                 reply [459-1] is taken under advisement. Ruling will be
                 made by mail. No notice (is) [Entry date 07/31/92]

7/29/92   461    REPLY by plaintiff to defendant's response to motions to
                 strike defendants' post-trial motion for judgment as a
                 matter of law and a motion to strike portions of
                 defendants' post-trial reply memorandum and to consider the
                 entire body of plaintiff's reply memorandum [454-1],
                 [453-1] (is) [Entry date 07/31/92]

9/16/92   462    MINUTE ORDER of 9/16/92 by Hon. George W. Lindberg :
                 Status hearing reset for 09/24/92 at 9:30 a.m. Mailed
                 notice (tlm) [Entry date 09/17/92]

9/24/92   463    MINUTE ORDER of 9/24/92 by Hon. George W. Lindberg :
                 Status hearing held; continued to 11/19/92 at 9:30 a.m.
                 No notice (tlm) [Entry date 09/25/92]

Docket as of July 29, 1998 3:52 pm                    Page 21

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                        GUZMAN
                                                                    CONV

10/7/92  464  MINUTE ORDER of 10/7/92  by Hon. George W. Lindberg : Order
              motions document numbers [459-1] [453-1] [437-1] [435-1]
              [391-1] [390-1] [350-1] and [336-2] [400-1] are moot. No
              notice (tlm) [Entry date 10/08/92]

10/15/92 465  MINUTE ORDER of 10/15/92  by Hon. George W. Lindberg :
              Defendants City of Chicago and James Montgomery's motion
              for judgment notwithstanding the verdict or alternatively
              for a new trial or, alternatively, for remittitur of the
              verdict is denied. [432-1] Mailed notice (tlm)
              [Entry date 10/16/92]

10/15/92 466  MINUTE ORDER of 10/15/92  by Hon. George W. Lindberg :
              Plaintiff's motion to amend findings [430-1], for a new
              trial [430-2], and to amend judgment [430-3] is denied.
              Mailed notice (tlm) [Entry date 10/16/92]

10/15/92 467  MINUTE ORDER of 10/15/92  by Hon. George W. Lindberg :
              Plaintiff's motion to strike a portion of defendants'
              post-trial memorandum, to consider the entir body of
              plaintiff's reply memorandum, and to strike defendants'
              post-trial motion for judgment as a matter of law is
              denied. [454-1] Mailed notice (tlm) [Entry date 10/16/92]

10/15/92 468  MINUTE ORDER of 10/15/92  by Hon. George W. Lindberg :
              Plaintiff's motion for reconsideration of the court's grant
              of summary judgment is denied. [458-1] Plaintiff's motion
              and to accept plaintiff's post-trial memorandum as her
              memorandum in support of the present motion is granted.
              [458-2] Mailed notice (tlm) [Entry date 10/16/92]

10/15/92 469  MINUTE ORDER of 10/15/92  by Hon. George W. Lindberg :
              Plaintiff's motion for leave to file a reply to defendants'
              response to plaintiff's motions is granted. Mailed notice
              (tlm) [Entry date 10/16/92]

11/9/92  471  NOTICE OF APPEAL by plaintiff Beverly Mann from motion
              minute order [469-1], from motion minute order [468-1],
              from motion minute order [467-1], from motion minute order
              [466-1], from motion minute order [465-1], from motion
              minute order [428-2] and from judgment [427-1] ($105.00
              paid). (ps) [Entry date 11/16/92]

11/12/92 470  EX PARTE MOTION by plaintiff for authorization of court
              payment for transcript (Attachment) ; notice of motion. (tlm)
              [Entry date 11/13/92]

11/12/92 472  LETTER regarding jurisdicational statement acknowledged by
              plaintiff Beverly Mann. (ps) [Entry date 11/16/92]

Proceedings include all events.                                                    TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                                       GUZMA
                                                                                    CONV

11/16/92 --       TRANSMITTED: Short record on appeal to the 7th Circuit
                  comprising of transmittal letter, copy of notice of appeal,
                  7th Circuit Appeal Information Sheet, copy of orders
                  entered 10/15/92 & 02/10/92 (Item Nos. 428/427, 465, 466,
                  467, 468 & 469) and copy of docket entries. (ps)

11/16/92 --       MAILED: Copies of notice of appeal, Circuit Rule 10 letter
                  to all counsel of record with copy of orders, docket
                  entries and 7th Circuit Transcript Information Sheet to
                  attorney Gregory A. Stayart. (ps)

11/16/92 --       Forwarded 11/16/92: Copy of notice of appeal to Hon. George
                  W. Lindberg. (ps)

11/16/92 474      NOTICE OF APPEAL by defendant James Montgomery, defendant
                  Chgo, Cty of from motion minute order [465-1], from motion
                  minute order [428-2]; notice of filing. ($105.00 paid) (fp)
                  [Entry date 11/19/92]

11/16/92 475      LETTER regarding jurisdicational statement acknowledged by
                  defendant James Montgomery, defendant Chgo, Cty of. (fp)
                  [Entry date 11/19/92]

11/17/92 473      MINUTE ORDER of 11/17/92 by Hon. George W. Lindberg :
                  Plaintiff's ex parte motion for authorization of court
                  payment for transcript is denied. [470-1] No notice (tlm)
                  [Entry date 11/18/92]

11/19/92 --       TRANSMITTED: Short record on appeal to the 7th Circuit
                  comprising of transmittal letter, copy of notice of appeal,
                  7th Circuit Information Sheet, copy of order entered
                  02/10/92, 10/16/92, and copy of docket entries. (fp)

11/19/92 --       MAILED: Copies of notice of appeal, 7th Circuit Rule 10
                  letter to all counsel of record, USCA 7th Circuit
                  transcript information sheet, and docket entries to: Joan
                  Flynn. (fp)

11/19/92 --       Forwarded 11/16/92: Copy of notice of appeal to Hon. George
                  W. Lindberg . (fp)

11/19/92 476      ACKNOWLEDGEMENT of receipt of short record on appeal   USCA
                  92-3761 (Attachment). (tlm) [Entry date 11/20/92]

11/23/92 477      ACKNOWLEDGEMENT of receipt of short record on appeal   USCA
                  92-3797 (Attachments) (gm) [Entry date 11/25/92]
                  [Edit date 12/08/92]

11/24/92 478      SEVENTH circuit transcript information sheet (Attachments).
                  (gm) [Entry date 11/25/92] [Edit date 12/08/92]

11/27/92 479      EXHIBITS (Five volumes:  479-1 through 479-5). (ksl)
                  [Entry date 12/01/92]

Proceedings include all events.                                          TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                            GUZMAN
                                                                        CONV

12/3/92   --   TRANSMITTED 12/02/92 complete record on appeal to USCA for
               the Seventh Circuit consisting of transmittal letter,
               certificate, eleven pleadings and six exhibits (92-3761) (mb)
               [Edit date 12/03/92]

12/3/92   --   MAILED: Copy of certificates and transmittal letter with
               list of documents, regarding appeal [474-1] to counsel of
               record. (mb)

12/17/92  480  TRANSCRIPT of proceedings for the following date(s):
               07/09/92 Before Honorable George W. Lindberg (tlm)
               [Entry date 12/21/92]

1/6/93    481  TRANSCRIPT of proceedings for the following date(s):
               07/23/92 Before Honorable George W. Lindberg. (tlm)
               [Entry date 01/08/93]

1/7/93    --   TRANSMITTED supplement to the record on appeal to the USCA
               7th No. 92-3761 comprising of transmittal letter,
               certificates, and transcript [Item 480]. (tlm)

1/7/93    --   MAILED: Copy of certificates and transmittal letter
               regarding appeal No. 92-3761 [474-1] to counsel of record.
               (tlm)

1/8/93    --   TRANSMITTED supplement to the record on appeal to the USCA
               7th comprising of transmittal letter, certificates,
               transcript of proceedings on 07/23/92 [Item 481-1]. (tlm)

3/15/93   482  LETTER  from Beverly Mann to Judge Moran dated 02/12/93
               (Attachment). (tlm) [Entry date 03/16/93]

5/25/93   483  CERTIFIED copy of Order from the USCA for the 7th Circuit
               Court regarding appeal Nos. 92-3762 & 92-3797:  Motion for
               extension of time to file brief is held in abeyance. The
               court reporter shall file the required documents by
               05/31/93  It is further ordered that counsel file a status
               report on or before 05/31/93. [474-1], [471-1] (tlm)

7/1/93    484  CERTIFIED copy of Order from the USCA for the 7th Circuit
               Court regarding appeal Nos. 92-3761 and 92-3797:  It is
               ordered that the time for filing the court reporter's
               transcript of proceedings is hereby extended to 07/25/93.
               474-1] & [471-1] (tlm) [Entry date 07/02/93]

7/1/93    485  TRANSCRIPT INFORMATION SHEET by the Seventh Circuit dated
               07/01/93. (tlm) [Entry date 07/02/93]

8/3/93    486  COPY of Order from the USCA for the Seventh Circuit Court
               regarding appeal [474-1], regarding appeal [471-1]:  It is
               ordered that the time for filing the court reporter's
               transcript of proceedings is hereby extended until
               08/13/93  (cjg) [Entry date 08/05/93]

Proceedings include all events.                                    TERMED APPEA
1:84cv11020    Mann v. City Of Chicago, et al                      GUZMA
                                                                   CONV

8/25/93  487    CERTIFIED copy of Order from the USCA for the Seventh
                Circuit Court regarding appeal [474-1], regarding appeal
                [471-1]...It is ordered that the time for filing the court
                reporter's transcript of proceedings is hereby extended
                until 09/07/93.  (92-3761, 92-3797) (ksl)
                [Entry date 08/30/93]

9/16/93  488    CERTIFIED copy of Order from the USCA for the 7th Circuit
                Court regarding appeal no. 92-3761 [474-1], regarding
                appeal no. 92-3797 [471-1].  It is ordered that the time
                for filing the court reporter's transcript of proceedings
                is hereby extended until 9/20/93. (eav)
                [Entry date 09/20/93]

9/21/93  489    TRANSCRIPT of proceedings for the following date(s):
                09/17/91, 09/19/91, 09/20/91, 09/23/91, 09/24/91, 09/25/91,
                09/26/91, 09/30/91, 10/01/91, 10/02/91 Before Honorable
                George W. Lindberg (10 Vols.:  489-1 through 489-10) (eav)

9/21/93  --     TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, and ten
                volumes of transcripts, document no. 489.  Mailed copy of
                transmittal letter and certificate to counsel of record.
                (eav)

9/22/93  490    TRANSCRIPT of proceedings for the following date(s):
                September 23, 1991, September 25, 1991, October 3, 1991
                Before Honorable George W. Lindberg (3 Vols.:  490-1,
                490-2, 409-3) (eav) [Entry date 09/23/93]

9/23/93  --     TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, and
                three volumes of transcripts, doc. no. 490, appeal no.
                92-3761.  Mailed copy of transmittal letter and certificate
                to counsel of record. (eav)

9/23/93  491    TRANSCRIPT of proceedings for the following date(s):
                September 26, 1991, September 30, 1991 Before Honorable
                George W. Lindberg (2 Vols.:  491-1 and 491-2) (eav)
                [Entry date 09/24/93]

9/24/93  --     TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, and two
                volumes of transcripts, document no. 491-1 and 491-2, dated
                September 26, 1991 and September 30, 1991, appeal no.
                92-3761.  Mailed copy of transmittal letter and certificate
                to counsel of record. (eav)

9/24/93  492    CERTIFIED copy of Order from the USCA for the 7th Circuit
                Court regarding appeal nos. 92-3761 and 92-3797 [474-1],
                [471-1].  It is ordered that the time for filing the court
                reporter's transcript of proceedings is hereby extended
                until 9/24/93. (eav) [Entry date 09/27/93]

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al

TERMED APPEA
GUZMA
CONV

9/28/93   493   TRANSCRIPT of proceedings for the following date(s):
                October 1, 1991, October 2, 1991, October 7, 1991, October
                9, 1991, March 5, 1992 Before Honorable George W. Lindberg
                (5 Vols.: 493-1, 493-2, 493-3, 493-4, 493-5) (eav)
                [Entry date 09/29/93]

9/29/93   --    TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, and five
                Clerk's file copy of Transcript of Proceedings before Judge
                George W. Lindberg, dated October 1, 1991, October 2, 1991,
                October 7, 1991, October 9, 1991 and March 5, 1992 (5 Vols.:
                493-1, 493-2, 493-3, 493-4, 493-5), Document Number 493,
                appeal no. 92-3761. Mailed copy of transmittal letter and
                certificate to counsel of record. (eav)

9/30/93   494   TRANSCRIPT of proceedings for the following date(s):
                October 4, 1991,  Before Honorable George W. Lindberg (eav)
                [Entry date 10/01/93]

9/30/93   495   MASTER INDEX (eav) [Entry date 10/01/93]

10/1/93   --    TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, and Doc.
                no. 494, Transcript of Proceedings before Judge Lindberg
                dated October 4, 1991 and Doc. no. 495, Master Index appeal
                no. 92-3761.  Mailed copy of transmittal letter and
                certificate to counsel of record. (eav)

10/15/93  496   CERTIFIED copy of Order from the USCA for the 7th Circuit
                Court regarding appeal no. 92-3761 [474-1], regarding
                appeal no. 92-3797 [471-1].  It is ordered that the request
                for a waiver of transcript penalty is denied at this time
                without prejudice to resubmit a request with a more
                detailed statement showing that the transcript was produced
                as expeditiously as possible.  The court reporter shall
                resubmit the request by 10/15/93.  (eav)
                [Entry date 10/18/93]

6/14/94   497   OBJECTIONS by defendants' to motion of plaintiff-appellant
                cross-appellee to supplement the record on appeal; Notice
                of filing. [336-1] (ll) [Entry date 06/16/94]

6/16/94   498   MOTION by plaintiff-appellant cross-appellee  to correct
                the District Court Record (Attachments); Notice of motion
                (ll) [Entry date 06/20/94]

6/16/94   499   MOTION by plaintiff-appellant cross-appellee to supplement
                the record on appeal. [499-1] (Attachments); Notice of
                motion (ll) [Entry date 06/20/94]

6/16/94   500   REPLY by plaintiff to defendants' objections to motion of
                plaintiff-appellant cross-appellee to supplement the record;
                Notice of filing. (ll) [Entry date 06/20/94]

Proceedings include all events.                                    TERMED APPEAL
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMAN
                                                                   CONV

6/16/94   501   MINUTE ORDER of 6/16/94 by Hon. George W. Lindberg :
                Denying plaintiff's motion to supplement the record on
                appeal. [499-1] [499-1], Denying plaintiff's motion to
                correct the District Court Record on appeal is denied for
                the reasons stated in open court.   [498-1] No notice (ll)
                [Entry date 06/20/94]

6/20/94   503   COPY of Order from the USCA for the 7th Circuit Court
                regarding appeal [474-1]  Upon consideration of the "Motion
                to advise court of circuit Rule 50 violation and to hold
                briefing in abeyance pending a decision whether to remand"
                filed 06/06/94, by counsel for the defendant; These appeals
                are hereby Remanded for the limited purpose of permitting
                the district court to enter a statement of reasons for its
                granting of partial summary judgment in favor of defendants
                pursuant to Circuit Rule 50 (92-3761 and 92-3797). (ll)
                [Entry date 06/29/94]

6/24/94   502   TRANSCRIPT of proceedings for the following date(s):
                06/16/94  Before Honorable George W. Lindberg (ll)
                [Entry date 06/27/94]

6/28/94   --    TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of transmittal letter, certificates, one
                volume of pleading  (92-3761).  (ll)

6/28/94   --    MAILED: Copy of certificates and transmittal letter with
                list of documents, regarding appeal [474-1]  to counsel of
                record  (92-3761).  (ll)

7/6/94    504   COPY of Order from the USCA for the 7th Circuit Court
                regarding appeal [474-1]  The court, on its own motion
                extends the time for the district court to file its
                statement of reasons.  The Rule 50 statement of reasons is
                due 07/18/94  (92-3761 and 92-3797). (ll)
                [Entry date 07/07/94]

7/18/94   505   MEMORANDUM OPINION (ll) [Entry date 07/19/94]

7/18/94   506   MINUTE ORDER of 7/18/94 by Hon. George W. Lindberg : Enter
                Memorandum and Opinion on the court's statement of reasons
                for granting defendant's motion for summary judgment.
                Mailed notice (ll) [Entry date 07/19/94]

7/21/94   --    TRANSMITTED supplement to the record on appeal to the USCA
                7th comprising of supplemental transmittal letter,
                supplemental certificates, four volumes of exhibits (Item
                Nos. 212, 297, 298 & 441), one volume of loose pleadings
                (Item No. 296) and twenty-five volumes of transcript of
                proceedings (Item Nos. 145, 187-1, 187-2, 187-3, 193-1,
                193-2, 193-3, 239, 297, 318-1, 318-2, 323, 329, 334, 417-1,
                417-2, 429-1, 429-2 and 429-4 through 429-10) (U.S.C.A.
                NOS. 92-3761 & 92-3797). (ps)

Proceedings include all events.                                            TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                               GUZMA
                                                                           CONV

7/21/94   --   MAILED: Copy of supplemental certificates and supplemental
               transmittal letter regarding appeal [474-1] and appeal
               [471-1] to all counsel of record. (ps)

7/22/94   --   TRANSMITTED supplement to the record on appeal to the USCA
               Seventh comprising of transmittal letter, certificates,
               consisting of one volume of pleadings (Items 424-426,
               451-464, 477, 478). (92-3761; 92-3797) (ksl)
               [Edit date 07/22/94]

7/22/94   --   MAILED: Copy of supplemental certificates and transmittal
               letter regarding appeal [474-1], [471-1] to counsel of
               record. (ksl)

7/28/94   507  MINUTE ORDER of 7/28/94  by Hon. George W. Lindberg : The
               Clerk of the Court is directed to supplement the record on
               appeal by transmitting a copy of this court's orders of
               07/18/94 [docket nos. 505 and 506] to the Seventh Circuit
               Court of Appeals. No notice (ar) [Entry date 07/29/94]

7/29/94   --   TRANSMITTED supplement to the record on appeal to the USCA
               for the 7th Circuit comprising of transmittal letter,
               certificate, list of documents and one volume of pleadings
               (Item Nos. 505, 506 and 507). (USCA Case Nos. 93-3761 and
               93-3797) (ar)

7/29/94   --   MAILED: Copies of 7th Circuit USCA supplemental
               certificate, transmittal letter and list of documents,
               regarding appeals [471-1] and [474-1] to counsel of
               record. (USCA Case Nos. 92-3761 and 92-3797) (ar)

8/26/94   508  MINUTE ORDER of 8/26/94  by Hon. George W. Lindberg :
               Finding the motion to strike affidavit of Clifford Meacham
               is [336-1] moot. No notice (ll) [Entry date 08/30/94]

11/16/94  509  DEPOSITION EXHIBITS in support of defendants' motion for
               summary judgment. (ll) [Entry date 11/17/94]

11/16/94  510  EXHIBITS submitted in support of defendants' motion for
               summary judgment. (ll) [Entry date 11/17/94]

11/23/94  511  MOTION by defendant to supplement the record on appeal
               [0-0] (Attachments); Notice of motion (ll)
               [Entry date 12/02/94]

11/23/94  512  MINUTE ORDER of 11/23/94  by Hon. George W. Lindberg :
               Granting defendants' motion to supplement the record on
               appeal with document numbers 297 and 298.    [0-0] [511-1]
               Mailed notice (ll) [Entry date 12/02/94]

1/13/95   --   TRANSMITTED supplement to the record on appeal to the USCA
               7th comprising of transmittal letter, certificates, and one
               volume of loose pleadings and one side-bound depositions
               exhibits (Items No. 511,512,297,298) (92-3761). (ll)

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al

TERMED APPEAL
GUZMAN
CONV

1/13/95  --      MAILED: Copy of certificates and transmittal letter with
                 list of documents, regarding appeal [474-1]  to counsel of
                 record (92-3761). (11)

1/22/96  513     CERTIFIED COPY of order from the 7th Circuit:  Affirmed in
                 part, vacated in part, and Remanded the Decision of the
                 District Court [Appeal [474-1], Reversing and remanding the
                 Decision of the District Court [Appeal [471-1] . ( 92-3761,
                 92-3797) (11) [Entry date 01/24/96]

1/30/96  514     REASSIGNMENT ORDER of 01/29/96: Case reassigned to Hon.
                 Wayne R. Andersen from Honorable Judge George W. Lindberg
                 pursuant to local General Rule 2.30F. This cause is to be
                 reassigned by lot pursuant to the provisions of General
                 Rule 44. Mailed notice (11) [Entry date 01/31/96]

2/20/96  --      SCHEDULE set on 2/20/96 by Hon. Wayne R. Andersen : Status
                 hearing set to 9:00 3/6/96 in courtroom 1403. Mailed
                 notice (ta)

3/6/96   --      SCHEDULE set on 3/6/96 by Hon. Wayne R. Andersen : Status
                 hearing held & continued to 9:00 4/23/96.  Plaintiff is
                 given leave to file additional appearance  Mailed notice (ta)

3/15/96  515     ATTORNEY APPEARANCE for plaintiff by Gregory Alan Stayart
                 (11) [Entry date 03/18/96]

3/15/96  516     RULE 39 Affidavit of Gregory Alan Stayart (11)
                 [Entry date 03/18/96]

3/20/96  517     CERTIFIED copy of Order from the 7th Circuit. (
                 92-3761-3797) (11) [Entry date 03/25/96]

4/8/96   518     LETTER from the 7th Circuit returning the record on appeal
                 no. 92-3761 & 92-3797 consisting of 13 volmes of pleadings,
                 2 loose pleadings, 50 volumes of transcripts and 8 volumes
                 of exhibits, with 3 volumes of exhibits to be returned at
                 later date. (cmf) [Entry date 04/09/96]

4/8/96   519     CERTIFIED COPY of order from the 7th Circuit: Remanding
                 the matter back to District Court [Appeal [474-1],
                 Remanding the matter back to District Court [Appeal [471-1]
                 . ( 92-3761 & 92-3797) (cmf) [Entry date 04/09/96]

4/8/96   520     CERTIFIED copy of Order from the 7th Circuit. ( 92-3761 &
                 92-3797) (cmf) [Entry date 04/09/96]

4/18/96  --      SCHEDULE set on 4/18/96 by Hon. Wayne R. Andersen : Status
                 hearing reset to 9:30 5/9/96.  Status hearing set for April
                 23, 1996 is stricken. Mailed/Telephoned notice (ta)

4/30/96  521     LETTER from the 7th Circuit returning the record on appeal
                 no. 92-3761 consisting of three volumes exhibits. (11)

Proceedings include a~~~~~ yents.                          TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al               GUZMA
                  [Entry date 05/02/96]                    CONV

5/9/96   --    SCHEDULE set on 5/9/96 by Hon. Wayne R. Andersen : Status
               hearing held & continued to 9:00 7/23/96 . No notice (ta)

5/9/96   522   MINUTE ORDER of 5/9/96 by Hon. Wayne R. Andersen : Nancy
               Van Allen, Jennifer Naber, Tracey Ladner and Susan S. Sher
               are given leave to file their appearance on behalf of
               defendants City of Chicago, James Montgomery, Jayne
               Barnard, and Timothy O'Hara. No notice. (ll)
               [Entry date 05/13/96]

5/9/96   523   ATTORNEY APPEARANCE for Chgo IL, Cty of, James Montgomery,
               Timothy O'Hara and Jayne Barnard by Nancy Van Allen
               Jennifer Anne Naber, Tracey Renee Ladner and Susan S. Sher.
               (ip) [Entry date 05/15/96]

7/22/96  524   MOTION by plaintiff to bar consideration of defendants'
               summary judgment motion ; Notice of filing. (ksl)
               [Entry date 07/23/96]

7/23/96  525   MOTION by Chgo IL, Cty of, James Montgomery, Timothy
               O'Hara, Jayne Barnard for leave to serve discovery
               requests (Exhibits); Notice of motion (ll)
               [Entry date 07/25/96]

7/23/96  526   MINUTE ORDER of 7/23/96 by Hon. Wayne R. Andersen :
               Status hearing held continued to 9:00 a.m. on 11/6/96.
               Granting defendant City of Chicago's motion for leave to
               serve discovery requests. [525-1] Plaintiff is given leave
               to file supplemental discovery. No notice (ll)
               [Entry date 07/25/96]

7/31/96  527   TRANSCRIPT of proceedings for the following date(s):
               07/23/96 Before Honorable Wayne R. Andersen (ll)
               [Entry date 08/01/96]

8/1/96   528   MOTION by plaintiff to sever amount of current judgment
               that is not subject to attorney's lien ; Notice of motion
               (ll) [Entry date 08/09/96]

8/7/96   529   MINUTE ORDER of 8/7/96 by Hon. Wayne R. Andersen : Setting
               hearing on plaintiff's motion to sever amount of current
               judgment that is not subject to attorney's lien is entered
               and continued to [528-1] 9:00 a.m. on 8/14/96. No notice (ll)
               [Entry date 08/09/96]

8/14/96  530   MINUTE ORDER of 8/14/96 by Hon. Wayne R. Andersen :
               Setting hearing on plaintiff's motion to sever amount of
               current judgment that is not subject to attorney's lien
               [528-1] at 9:00 a.m. on 9/27/96. Parties should file any
               briefs by 09/06/96. Status hearing held. No notice (ksl)
               [Entry date 08/15/96]

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al                    TERMED APPEAL
                                                                GUZMAN
                                                                CONV

8/26/96   531    TRANSCRIPT of proceedings for the following date(s):
                 08/07/96 and 08/14/96  Before Honorable Wayne R. Andersen
                 (ll) [Entry date 08/27/96]

9/27/96   532    ORDER (ksl) [Entry date 09/30/96]

9/27/96   533    MINUTE ORDER of 9/27/96 by Hon. Wayne R. Andersen : It is
                 hereby ordered, the judgment entered herein in favor of
                 plaintiff Beverly Mann in the amount of $68,285.00, having
                 been affirmed on appeal, shall forthwith be paid, with
                 legal interest thereon, jointly to "Beverly Mann, Anthony
                 S. Divencenzo, Richard P. Campbell and Ronald S. Adelman",
                 terminating case Mailed notice (ksl) [Entry date 09/30/96]

11/6/96   534    MINUTE ORDER of 11/6/96 by Hon. Wayne R. Andersen : Status
                 hearing held continued to 9:00 a.m. on 1/22/97. Discovery
                 cut-off set for 1/17/97. Mailed notice (ll)
                 [Entry date 11/08/96]

1/22/97   --     SCHEDULE set on 1/22/97 by Hon. Wayne R. Andersen : Status
                 hearing held. Settlement conference set for 8:00 2/11/97.
                 No notice (ta) [Entry date 01/28/97]

2/11/97   --     SCHEDULE set on 2/11/97 by Hon. Wayne R. Andersen :
                 Settlement conference held  Status hearing set to 9:00
                 6/24/97 . Pretrial order to be submitted on 9:00 6/24/97 .
                 No notice (ta) [Entry date 02/12/97]

4/28/97   535    REFERRAL ORDER of 04/23/97: Case referred  to Hon. Ronald
                 A. Guzman from Judge Wayne R. Anderson pursuant to General
                 Rule 2.41(b)  Conduct hearings and enter appropriate
                 orders on the following pretrial motion/matter:  Perform
                 such additional duties as are not inconsistent with the
                 Constitution and laws of the United States; Mediation.
                 (For further detail see order.)    Mailed notice (ll)
                 [Entry date 04/29/97]

4/29/97   --     SCHEDULE set on 4/29/97 by Hon. Ronald A. Guzman : Status
                 hearing before Magistrate Judge Guzman set for 5/19/97 at
                 9:30 a.m. in courtroom 1838  Parties are directed to
                 submit courtesy copies of complaint, answer and any pending
                 matters filed with the court to chambers 1828 on or before
                 5/14/97  Mailed notice (km)

5/19/97   --     SCHEDULE set on 5/19/97 by Hon. Ronald A. Guzman : Status
                 hearing held. Settlement conference with clients present
                 set for 1:00 p.m. 5/27/97. Mailed notice (km)
                 [Entry date 05/20/97]

5/27/97   --     SCHEDULE set on 5/27/97 by Hon. Ronald A. Guzman :
                 Settlement conference held. No notice (th)

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al                    TERMED APPEA
                                                                 GUZMA
                                                                 CONV

6/3/97    536    MINUTE ORDER of 6/3/97 by Hon. Ronald A. Guzman : A
                 settlement conference was held 5/27/97 and the parties were
                 unable to reach settlement. All matters relating to the
                 referral of this action having been resolved, the case is
                 returned to the assigned judge. Terminating case referral
                 to Hon. Ronald A. Guzman. Mailed notice (tj)
                 [Entry date 06/04/97]

6/5/97    --     SCHEDULE set on 6/5/97 by Hon. Wayne R. Andersen : Status
                 hearing set to 9:00 6/18/97 . Mailed notice (ta)

6/5/97    537    MOTION by plaintiff for enlargement of time to file
                 pre-trial order; Notice of motion (rm) [Entry date 06/13/97]

6/11/97   538    MINUTE ORDER of 6/11/97 by Hon. Wayne R. Andersen :
                 Plaintiff's motion for enlargement of time to file
                 pre-trial order [537-1] is entered and continued to
                 September 23, 1997 at 9:00 a.m. Status hearing set for
                 June 18 and June 24, 1997 are stricken. Defendant is given
                 to file a motion to dismiss with supporting memorandum on
                 or before July 3, 1997. Plaintiff to respond on or before
                 August 1, 1997. Defendant to reply on or before August 15,
                 1997. Ruling set for September 23, 1997 at 9:00 a.m. No
                 notice (rm) [Entry date 06/13/97]

7/3/97    539    MOTION by defendants for extension of time to file motion
                 for summary judgment ; Notice of motion (hp)
                 [Entry date 07/11/97]

7/9/97    540    MINUTE ORDER of 7/9/97 by Hon. Wayne R. Andersen :
                 Defendant's motion for an extension of time to file motion
                 for summary judgment is granted to 07/24/97. [539-1]
                 Mailed notice (hp) [Entry date 07/11/97]

7/31/97   541    MOTION by defendants James Montgomery, Timothy O'Hara,
                 Jayne Barnard for leave to file in excess of 15 pagesand
                 motion to file instanter motion and memorandum for summary
                 judgment Notice of motion (rm) [Entry date 08/15/97]

8/13/97   542    MINUTE ORDER of 8/13/97 by Hon. Wayne R. Andersen : Motion
                 for leave to file in excess of 15 page [541-1], and motion
                 to file instanter is granted [541-2]. Briefing on the
                 defendant's motion for summary judgment is as follows:
                 Plaintiff to respond on or before September 1, 1997.
                 Defendant to reply on or before September 22, 1997. Ruling
                 set for November 4, 1997 at 9:00 a.m. Mailed notice (rm)
                 [Entry date 08/15/97]

8/13/97   543    MOTION by defendants James Montgomery, Timothy O'Hara,
                 Jayne Barnard for summary judgment (rm)
                 [Entry date 08/15/97]

8/13/97   544    12(M) Statement of undisputed material facts by defendants
                 (rm) [Entry date 08/15/97]

Docket as of July 29, 1998 3:52 pm                 Page 32

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al

TERMED APPEAL
GUZMAN
CONV

| | | |
|---|---|---|
| 8/13/97 | 545 | MEMORANDUM by defendants James Montgomery, Timothy O'Hara, Jayne Barnard in support of motion for summary judgment [543-1] (rm) [Entry date 08/15/97] |
| 8/13/97 | 546 | APPENDIX of exhibits filed by defendants James Montgomery, Timothy O'Hara, Jayne Barnard supporting motion for summary judgment [543-1] (1 vol) (rm) [Entry date 08/15/97] |
| 11/12/97 | 547 | MOTION by defendants for a ruling on their motion for summary judgment; Notice of motion (rm) [Entry date 11/14/97] |
| 11/12/97 | 548 | MINUTE ORDER of 11/12/97 by Hon. Wayne R. Andersen : Motion for ruling on motion for summary judgment granted [547-1]. Plaintiff to respond to the motion for summary judgment on or before 12/5/97 [543-1]. Defendant to reply on or before 12/19/97. Ruling set for 1/21/98 at 9:00 a.m. on motion for summary judgment [543-1]. No notice (rm) [Entry date 11/14/97] |
| 11/28/97 | 549 | NOTICE by counsel for plaintiff of change of address (ar) [Entry date 12/01/97] |
| 12/1/97 | 550 | TRANSCRIPT of proceedings for the following date(s): 11/12/97  Before Honorable Wayne R. Andersen. (tlm) [Entry date 12/02/97] |
| 12/11/97 | 551 | RESPONSE by plaintiff to the defendants' motioin for entry of judgment as a matter of law (Exhibits); Notice of filing (rm) [Entry date 12/12/97] |
| 12/19/97 | 552 | MOTION by defendant for extension of time to reply to plaintiff's response to defendants' motion for summary judgment ; Notice of motion    (Temporarily unavailable for docketing.) (jmp) [Entry date 01/07/98] |
| 1/6/98 | 553 | MINUTE ORDER of 1/6/98 by Hon. Wayne R. Andersen : Motion for extension of time to reply to plaintiff's response to defendants' motion for [552-1] summary judgment [543-1] granted. Defendant to reply by 01/16/98. Ruling [543-1] set for 9:00 a.m. on 02/17/98. Mailed notice (jmp) [Entry date 01/07/98] |
| 2/3/98 | 554 | MOTION by defendant to file instanter defendants' motion to strike plaintiff's response to defendants' motion for summary judgment (Attachments); Notice of motion (rm) [Entry date 02/05/98] [Edit date 02/05/98] |
| 2/3/98 | 555 | MINUTE ORDER of 2/3/98  by Hon. Wayne R. Andersen : Motion to file instanter defendants' motion to strike plaintiff's response to defendants' motion for summary judgment [554-1] is taken under advisement. No notice (rm) [Entry date 02/05/98] |

Proceedings include all events.                                    TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMA
                                                                   CONV

2/13/98   --   SCHEDULE set on 2/13/98 by Hon. Wayne R. Andersen : Status
               hearing reset to 9:00 3/31/98. Status hearing set for
               2/17/98 is stricken. Mailed notice (ta)

2/17/98   556  MINUTE ORDER of 2/17/98 by Hon. Wayne R. Andersen :
               Plaintif has until 3/4/98 to comply with Local General Rule
               12(N). (See reverse of minute order.) Mailed notice (rm)
               [Entry date 02/19/98]

3/11/98   557  LETTER from plaintiff to Judge Andersen dated 3/10/98 (rm)
               [Entry date 03/12/98]

3/13/98   558  MEMORANDUM, OPINION, AND ORDER (rm) [Entry date 03/16/98]
               [Edit date 03/19/98]

3/13/98   559  MINUTE ORDER of 3/13/98 by Hon. Wayne R. Andersen :
               Defendants' motion for summary judgment is granted [543-1].
               Plaintiff's motion to strike defendants' motion for entry
               of judgment as a matter of law is denied.  Defendants'
               motion to strike plaintiff's response to defendants' motion
               for summary judgment is denied.  Plaintiff's motion for
               reconsideration of this court's order entered on 2/17/98 is
               granted.  Plaintiff's motion for appointment of counsel is
               denied.  Attorney Grey Stayart's motion to withdraw is
               granted. All other pending motions are moot [537-1][554-1].
               This is a final appealable order. Mailed notice (rm)
               [Entry date 03/16/98]

3/17/98   560  ACKNOWLEDGEMENT of receipt of short record on appeal USCA
               98-1628. (vj) [Entry date 03/18/98]

3/18/98   562  MOTION by plaintiff to withdraw Gregory A. Stayart as
               counsel for plaintiff; Notice of motion (rm)
               [Entry date 03/24/98]

3/18/98   563  MINUTE ORDER of 3/18/98 by Hon. Wayne R. Andersen : Motion
               to withdraw Gregory A. Stayart as counsel for plaintiff
               denied as moot [562-1]. Mailed notice (rm)
               [Entry date 03/24/98]

3/20/98   561  CERTIFIED copy of Order from the Seventh Circuit. (98-1628)
               It is ordered that the emergency petition for a writ of
               mandamus is denied. (rm) [Entry date 03/23/98]

3/23/98   564  LETTER from Beverly Mann to Judge Andersen dated 3/23/98 (rm
               [Entry date 03/24/98]

3/26/98   565  MOTION by plaintiff for reconsideration of order entered
               3/13/98, granting the defendants' motion for summary
               judgmentand for reconsideration of the order entered
               8/13/91, partially granting the defendants' motion for
               summary judgment; Notice of motion (rm)
               [Entry date 04/02/98]

Proceedings include all events.                                    TERMED APPEA
1:84cv11020   Mann v. City Of Chicago, et al                       GUZMA
                                                                   CONV

3/26/98   566      EXHIBITS for reconsideration of order entered March 13,
                   1998 granting the defendants' motion for summary judgment
                   and the order entered August 13, 1991, partially granting
                   defendants' motion for summary judgment by plaintiff (1
                   vol) (rm) [Entry date 04/02/98]

3/31/98   --       ORAL MOTION by plaintiff for leave to file in excess of 15
                   pages is taken under advisement (rm) [Entry date 04/02/98]

3/31/98   567      MINUTE ORDER of 3/31/98 by Hon. Wayne R. Andersen : Motion
                   for reconsideration of order entered 3/13/98, granting the
                   defendants' motion for summary judgment [565-1] and the
                   order entered 8/13/91, partially granting the defendants'
                   motion for summary judgment [565-2] is taken under
                   advisement and continued to 9:15 a.m. 4/2/98. Plaintiff's
                   oral motion for leave to file in excess of 15 pages is
                   taken under advisement [0-1]. No notice (rm)
                   [Entry date 04/02/98]

4/1/98    568      MINUTE ORDER of 4/1/98 by Hon. Wayne R. Andersen :
                   Plaintiff's motion for reconsideration of order entered
                   3/13/98, granting the defendants' motion for summary
                   judgment [565-1] and the order entered 8/13/91, partially
                   granting the defendants' motion for summary judgment
                   [565-2] is to be briefed as follows:  Defendants' response
                   is due 4/8/98;  Plaintiff's reply is due on 4/16/98. The
                   decision is set for Thursday, 4/30/98 at 9:30 a.m. on
                   motion [565-1] [565-2]. Mailed notice (rm)
                   [Entry date 04/02/98]

4/6/98    570      NOTICE OF APPEAL by plaintiff Beverly Mann from motion
                   minute order [349-1], from motion minute order [559-1],
                   from order [558-1] ( $105.00 PAID) (ps)
                   [Entry date 04/14/98]

4/8/98    569      RESPONSE by defendant to plaintiff's motion for
                   reconsideration of order entered 3/13/98, granting the
                   defendants' motion for judgment [565-1] and for
                   reconsideration of the order entered 8/13/91, partially
                   granting the defendants' motion for summary judgment
                   [565-2]; Notice of filing (rm) [Entry date 04/09/98]

4/14/98   --       MAILED LETTER regarding docketing statement unacknowledged
                   by plaintiff Beverly Mann . (ps)

4/14/98   --       TRANSMITTED to the 7th Circuit the short record on appeal .
                   Mailed notice to all counsel. (ps)

4/16/98   571      REPLY by plaintiff in support of motion for reconsideration
                   of order entered 3/13/98, granting the defendants' motion
                   for summary judgment [565-1] and the order entered 8/13/91,
                   partially granting the defendants' motion for summary
                   judgment [565-2] (Exhibit) (rm)

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al

TERMED APPEA
GUZMA
CONV

4/21/98  584   ACKNOWLEDGEMENT of receipt of short record on appeal,  USCA
               98-1936 (11) [Entry date 06/10/98]

4/23/98  572   TRANSCRIPT of proceedings for the following date(s):
               3/31/98 before Honorable Wayne R. Andersen (rm)
               [Entry date 04/24/98]

4/28/98  573   CERTIFIED copy of Order from the Seventh Circuit (
               98-1936) It is ordered that appellant shall file, on or
               before May 6, 1998, a brief memorandum stating why this
               appeal should not be stayed pending the entry of the order
               disposing of the motion. A motion for voluntary dismissal
               pursuant to Fed.R.App.P.42(b) will satisfy this
               requirement. Briefing shall be suspended pending further
               court order. (rm) [Entry date 04/29/98]

4/29/98  --    SCHEDULE set on 4/29/98 by Hon. Wayne R. Andersen : Status
               hearing reset to 9:30 5/7/98. Status hearing set for
               4/30/98 is stricken. Mailed notice (ta)

5/5/98   574   MEMORANDUM, OPINION, AND ORDER (rm) [Entry date 05/07/98]

5/5/98   575   MINUTE ORDER of 5/5/98 by Hon. Wayne R. Andersen : Enter
               memorandum, opinion and order: For the foregoing reasons,
               plaintiff's motion to reconsider this court's 3/13/98, and
               8/31/91 orders [565-1] [565-2] is denied. Mailed notice (rm)
               [Entry date 05/07/98]

5/12/98  576   AMENDED NOTICE OF APPEAL by plaintiff from motion minute
               order [559-1], from order [558-1] ( $105.00 Paid) (cmf)
               [Entry date 05/18/98]

5/18/98  --    MAILED LETTER regarding docketing statement unacknowledged
               by plaintiff. (cmf)

5/18/98  --    TRANSMITTED to the 7th Circuit the short record on appeal .
               Mailed notice to all counsel. (emf)

5/28/98  579   SECOND AMENDED NOTICE OF APPEAL by plaintiff from motion
               minute order [559-1], from order [558-1], from motion
               minute order [349-1] ( $105.00 Paid) (cmf)
               [Entry date 06/04/98]

5/28/98  580   LETTER regarding docketing statement acknowledged by
               plaintiff. (cmf) [Entry date 06/04/98]

Proceedings include all events.
1:84cv11020   Mann v. City Of Chicago, et al          TERMED APPEA
                                                        GUZMA
                                                        CONV

5/28/98   581   MOTION by plaintiff pursuant to F.R.C.P. 60(b) to vacate
                the order entered on 7/14/86, dismissing Counts III, IV and
                V of the third amended complaint, and reconsideration of
                the orders entered on 8/29/86, and on 12/15/86, amending
                the 7/14/86 order, and reconsideration of the order
                entered on 8/13/91, granting the defendants' motion for
                summary judgment regarding the remainder of Count III
                (Exhibits); Notice of motion (rm) [Entry date 06/09/98]

~~5/29/98   577   ACKNOWLEDGEMENT of receipt of short record on appeal  USCA
                98-2249  (rm) [Entry date 06/01/98]~~

6/3/98    578   MINUTE ORDER of 6/3/98 by Hon. Wayne R. Andersen :
                Plaintiff's oral motion pursuant to F.R.C.P. 60(b) to vacate
                order entered on 7/14/86 dismissing Counts III, IV and V of
                the third amended complaint in reconsideration of orders
                entered on 8/29/86 and on 12/15/86, amending the 7/14/86,
                order and reconsideration of order entered on 8/13/91,
                granting defendants' motion for summary judgment regarding
                the remainder of Count III is taken under advisement. Mailed
                notice (rm) [Entry date 06/04/98] [Edit date 06/04/98]

~~6/4/98    --    TRANSMITTED to the 7th Circuit the long record on appeal
                no. 98-2249 consisting of one volume of pleadings. Mailed
                notice to all counsel. (ls)~~

~~6/4/98    --    TRANSMITTED to the 7th Circuit the short record on appeal .
                Mailed notice to all counsel. (cmf)~~

~~6/4/98    --    TRANSMITTED to the 7th Circuit the long record on appeal
                no. 98-2249 consisting of one volume of pleadings. Mailed
                notice to all counsel. (ls)~~

6/8/98    582   MINUTE ORDER of 6/8/98  by Hon. Wayne R. Andersen : The
                minute order dated 6/3/98 is amended to reflect that the
                motion was entered as an oral motion because the original
                paper motion was not available. No notice (rm)
                [Entry date 06/09/98]

6/8/98    583   MINUTE ORDER of 6/8/98  by Hon. Wayne R. Andersen :
                Accordingly, plaintiff's "motion pursuant to F.R.C.P. 60(b)
                to vacate order entered on 7/14/86, dismissing Counts III,
                IV and V of the third amended complaint [581-1] and
                reconsiderationof the dated on 8/29/86, and on 12/15/86,
                amending the 7/14/86 order [581-2], and reconsideration of
                the order entered on 8/13/91, granting the defendants'
                motion for summary judgment regarding the remainder of
                Count III" is denied [581-3]. (See reverse of minute
                order.) Mailed notice (rm) [Entry date 06/09/98]

~~6/10/98   585   ACKNOWLEDGEMENT of receipt of short record on appeal  USCA
                98-2413 (Attachment) (rm) [Entry date 06/11/98]~~

Proceedings include a~~~~/ents.
1:84cv11020   Mann v. City Of Chicago, et al

TERMED APPEA
GUZMAI
CONV

6/16/98  (588)  MOTION by plaintiff for reconsideration of denial of plaintiff's motion brought puyrsuant to FRCP 60(b) to vacate certain orders (Exhibits); Notice of motion (rm) [Entry date 07/06/98]

6/18/98  --  TRANSMITTED to the 7th Circuit the long record on appeal no. 98-2413 consisting of one volume of pleadings. Mailed notice to all counsel. (ls)

6/26/98  586  CERTIFIED copy of Order from the 7th Circuit. ( 98-2413) It is ordered that appellant shall file, on or before 7/7/98, a brief memorandum stating why this appeal should not be dismissed as unnecessary. A motion for voluntary dismissal pursuant to Fed.R.App.P.42(b) will satisty this requirement. Briefing shall be suspended pending further court order. (rm) [Entry date 06/29/98]

6/30/98  587  MINUTE ORDER of 6/30/98 by Hon. Wayne R. Andersen : Filed plaintiff's motion to reconsider. Motion taken under advisement. Mailed notice (rm) [Entry date 07/02/98]

7/1/98  (589)  MINUTE ORDER of 7/1/98 by Hon. Wayne R. Andersen: For the reasons stated in this court's order dated 6/8/98, plaintiff's "motion for reconsideration of denial of plaintiff's motion brought puyrsuant to FRCP 60(b) to vacate certain orders" is denied [588-1]. Mailed notice (rm) [Entry date 07/06/98]

7/6/98  590  LETTER from the 7th Circuit: Retaining record on appeal no. 98-2249. (rm) [Entry date 07/07/98]

7/6/98  591  CERTIFIED COPY of order from the 7th Circuit: appeal dismissed [576-1] . ( 98-2249) (Attachment) (rm) [Entry date 07/08/98]

7/14/98  (592)  NOTICE OF APPEAL to the United States Court of Appeals for the Seventh Circuit by Beverly Mann from motion minute order [589-1], from motion minute order [583-1] ($105.00 PAID) (pp) [Entry date 07/16/98]

7/14/98  (593)  DOCKETING STATEMENT for Notice of Appeal by Beverly Mann regarding appeal [592-1] . (pp) [Entry date 07/16/98]

7/15/98  594  CERTIFIED copy of Order from the Circuit. ( 98-1936 and 98-2413). On consideration of the memorandum filed by plaintiff-appellant on 6/30/98 in Appeal No. 98-2413. It is ordered tha appeal No. 98-2413 shall proceed to briefing. The court, on its own motion, further orders that these appeals are consolidated for purposes of briefing and disposition. ... (rm) [Entry date 07/17/98]

7/16/98  --  TRANSMITTED to the 7th Circuit the short record on appeal . Mailed notice to all counsel. (pp)

Proceedings include all events.
1:84cv11020    Mann v. City Of Chicago, et al                                    TERMED APPEAL
                                                                                       GUZMAN
                                                                                       CONV
-7/20/98  595      ACKNOWLEDGEMENT of receipt of short record on appeal  USCA
                    98-2797 (rm) [Entry date 07/21/98]

# EXHIBIT  D

74 F.3d 1242 (Table)
**Unpublished Disposition**

(Cite as: 74 F.3d 1242, 1996 WL 23405 (7th Cir.(Ill.)))
**H**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the publication and citation of unpublished opinions.)

Beverly B. MANN, Plaintiff-Appellant, Cross-Appellee,

v.

CITY OF CHICAGO, et al., Defendants-Appellees,

and

City of Chicago and James Montgomery, Cross-Appellants.

Nos. 92-3761, 92-3797.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1995.

Decided Jan. 19, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied March 19, 1996.

Appeal from the United States District Court, for the Northern District of Illinois, Eastern Division, No. 84 C 11020; George W. Lindberg, Judge.

N.D.Ill., 1994 WL 383905.

AFFIRMED.

Before BAUER, RIPPLE and ROVNER, Circuit Judges.

ORDER

**\*\*1** Beverly B. Mann filed suit against the City of Chicago, James Montgomery (formerly Chicago's Corporation Counsel), and Jayne Barnard and Timothy O'Hara (formerly of the Corporation Counsel's office) after she was terminated from her position as an Assistant Corporation Counsel in 1983. Her Third Amended Complaint asserted claims based on the First and Fourteenth Amendments to the Constitution of the United States, the consent decree entered in Shakman v. Democratic Organization of Cook County, and Illinois law; a supplemental complaint also alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. A number of Mann's claims were dismissed or disposed of on summary judgment. The case proceeded to trial in 1991 on the Shakman claim and Mann's state law claims for defamation, breach of contract, and tortious interference with a prospective economic advantage. The jury found in favor of Mann on the breach of contract claim (awarding damages of $68,285) and on her claim for tortious interference with the prospective economic advantage of continued employment with the City's Law Department (awarding damages of $74,700); but it found against her on her claims of defamation and tortious interference with the prospective economic advantage of alternative employment following her departure from the Law Department. The trial judge entered findings against Mann on the Shakman claim. Mann has appealed from the adverse disposition of a number of her claims; the City and Montgomery, in turn, have cross-appealed from the verdicts entered against them on the breach of contract and tortious interference claims. After considering all of the arguments raised by the parties, we have concluded that only two claims merit our discussion here: the defamation claim and the claim for tortious interference with the prospective economic advantage of Mann's continued employment with the Law Department. Based on our finding that the jury was erroneously instructed as to each of these claims, we vacate the verdicts rendered (against Mann on the defamation claim, for her on the tortious interference claim) and remand for a new trial on those claims alone; the judgment below is affirmed in all other respects.

I. THE DEFAMATION INSTRUCTION

In Count VIII of her Third Amended Complaint, Mann alleged that Barnard and O'Hara had defamed Mann by making false statements about her job performance and competence as an attorney to her superiors within the Law Department; Mann also alleged that Barnard made additional defamatory statements to prospective employers outside the Law Department. The parties agree that because Barnard

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

74 F.3d 1242 (Table)
(Cite as: 74 F.3d 1242, 1996 WL 23405, **1 (7th Cir.(Ill.)))

and O'Hara made any such statements in fulfillment of their duties as employees of the City, they enjoyed a qualified privilege and can only be held liable if Mann proved that the defendants made a defamatory statement or statements with actual malice. See Krasinski v. United Parcel Serv., Inc., 530 N.E.2d 468, 471 (Ill.1988); Anderson v. Vanden Dorpel, 645 N.E.2d 250, 258-59 (Ill.App.1994), appeal allowed, 652 N.E.2d 338 (1995); Davis v. John Crane, Inc., 633 N.E.2d 929, 937-38 (Ill.App.1994); Muthuswamy v. Burke, 646 N.E.2d 616, 620 (Ill.App.1993). At issue here is an instruction concerning the malice element of the defamation claim. With the parties' agreement, the district court advised the jury that a statement is made with actual malice if "the defendant made the statement despite knowing that it was false or despite a high degree of awareness of its probable falsity or entertaining serious doubts as to its truth." R. 406. However, over Mann's objection, the court went on to instruct the jury that "[a] defendant's mere failure to conduct a proper investigation into the truth of a statement before making it to another does not constitute the actual malice required for plaintiff to prevail on her defamation claim." Id. (Defendant's Proposed Instruction 4-B.) Mann argues that the additional instruction conflicted with the court's explanation of actual malice and erroneously suggested to the jury that a defendant might not act with actual malice if he makes a statement without first investigating its veracity, even if he entertains serious doubts on that subject. We agree.

**2 It is, in one sense, correct to say that the failure to investigate the truth of a statement does not, in and of itself, establish a defendant's actual malice in making the statement. St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325 (1968); Troman v. Wood, 340 N.E.2d 292, 295 (Ill.1975); Jones v. Britt Airways, Inc., 622 F.Supp. 389, 393 (N.D.Ill.1985); Fopay v. Noveroske, 334 N.E.2d 79, 88 (Ill.App.1975); Bloomfield v. Retail Credit Co., 302 N.E.2d 88, 96 (Ill.App.1973); see also Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center, 484 N.E.2d 841, 844 (Ill.App.1985). But this is merely another way of emphasizing that when a defamatory statement is qualifiedly privileged, ordinary negligence will not suffice to establish liability; at a minimum, the plaintiff will have to show that the defendant acted with reckless disregard of its truth.

Durso v. Lyle Stuart, Inc., 337 N.E.2d 443, 446 (Ill.App.1975); Bloomfield, 302 N.E.2d at 95.

[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

St. Amant, 390 U.S. at 731, 88 S.Ct. at 1325. Thus, when the cases reiterate that the failure to investigate is not alone enough to establish actual malice, they mean simply that additional proof concerning the defendant's mental state is required. A defendant who repeats information without first checking into its accuracy is not reckless so long as he harbors no serious doubts on that score; on the other hand, a defendant who has serious reservations as to the veracity of the information may well be reckless if he repeats the information without investigating. Fopay, 334 N.E.2d at 88-90. The failure to investigate thus remains "a very important consideration" in assessing the defendant's culpability. Fopay, 334 N.E.2d at 90.

The instruction which the district court gave here is misleading in the sense that it suggests that the element of actual malice requires the defendant to have done, or omitted to do, more than simply failing to look into the truth of the statement he made. In fact, so long as the defendant doubted the veracity of the statement, his failure to investigate may well be enough to establish liability. One who suspects that a statement is inaccurate but decides to make it anyway without attempting to establish its truth evinces an indifference that amounts to actual malice. The instruction was misleading in another, more fundamental sense as well. It focused the jury's attention upon a single circumstance which, albeit highly relevant, is ultimately collateral to the central question in a defamation case--the defendant's regard for the accuracy of the complained of statement. For just this reason, the Illinois Supreme Court in Reed v. Northwestern Pub. Co., 530 N.E.2d 474, 487 (Ill.1988), cert. denied, 489 U.S. 1067, 109 S.Ct. 1344 (1989), upheld the trial court's refusal to give an instruction which advised the jury that it could infer actual malice from a "grossly inadequate" investigation, emphasizing the court's history of disapproving jury

74 F.3d 1242 (Table)
(Cite as: 74 F.3d 1242, 1996 WL 23405, **2 (7th Cir.(Ill.)))

Page 3

instructions which give "undue prominence" to particular facts. The instruction should likewise have been refused here.

**3 The balance of the instructions given upon defamation did nothing to correct the misguided focus that the "mere failure to investigate" instruction gave the jury. We must therefore conclude that the jury deliberated with an incorrect impression of the law and that Mann was prejudiced by the mistaken instruction. See generally DePaepe v. General Motors Corp., 33 F.3d 737, 743-44 (7th Cir.1994). Mann is therefore entitled to a new trial on her defamation claim.

## II. TORTIOUS INTERFERENCE WITH THE PROSPECTIVE ECONOMIC ADVANTAGE OF CONTINUED EMPLOYMENT WITH LAW DEPARTMENT

In Count XI of her Third Amended Complaint, Mann alleged that Montgomery, O'Hara, and Barnard had all wrongfully interfered with her expectation of continued employment with the city's Law Department. The jury found in favor of O'Hara and Barnard on this claim, but against Montgomery. Montgomery contends that the verdict may have been the product of an erroneous jury instruction that advised the jury that the defendants acted with the requisite "actual malice" in interfering with Mann's prospective economic advantage if the jury found that they acted "with the intent and purpose to injure the plaintiff" or they acted "without justification." R. 406. Montgomery argues that "without justification" has a very specific meaning in the context of an at-will employment relationship like the one Mann had with the city; and because the district court failed to apprise the jury of what "without justification" meant, Montgomery reasons, the jury may have been misled as to what proof would be adequate to meet this element of the tortious interference claim. Again, we agree.

As an at-will employee of the city, Mann could be terminated for any reason or for no reason at all. Zimmerman v. Buchheit of Sparta, Inc., 645 N.E.2d 877, 879 (Ill.1994) (plurality); Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill.1992); Fellhauer v. City of Geneva, 568 N.E.2d 870, 875 (Ill.1991). Although an at-will employee thus has no enforceable contractual right to continued employment, the Illinois courts have recognized a cause of action for tortious interference with an at-will employee's legitimate expectation of continued employment. E.g., Fellhauer, 568 N.E.2d at 878-79. Montgomery, O'Hara, and Barnard, of course, were not outsiders intermeddling with the relations between Mann and her employer; they were supervisory employees with a duty to oversee and evaluate the work of Mann and other attorneys. See id. As such, they enjoyed a qualified privilege to exercise their professional judgment and act in good faith on the city's behalf. See id.; Mittelman v. Witous, 552 N.E.2d 973, 987 (Ill.1989). Thus, only if the defendants acted in a fashion Illinois courts describe as "without justification or maliciously" may they be held liable for tortiously interfering with Mann's expectation of continued employment with the city. Id. at 987; Fellhauer, 568 N.E.2d at 878; Swager v. Couri, 395 N.E.2d 921, 927 (Ill.1979); H.F. Philipsborn & Co. v. Suson, 322 N.E.2d 45, 50 (Ill.1974).

**4 Although Illinois courts have never expressly articulated a definition of "without justification" in this context, it is quite clear that they have never employed those words in their ordinary sense--i.e., as the equivalent of "unjustly" or "for no valid reason." Instead, consistent with the nature of a defendant's qualified privilege--that is, to act in good faith for the benefit of his employer--the courts have described tortious conduct to fall principally into two categories: (1) behavior intended solely to harm the plaintiff; and (2) behavior that is undertaken solely for the defendant's interest, and not that of his employer. The first of these categories is, quite obviously, what the courts are referring to when they speak of "malicious" behavior or "actual malice". See, e.g., MGD, Inc. v. Dalen Trading Co., 596 N.E.2d 15, 18 (Ill.App.1992) (" '[a]ctual malice' is a positive desire or intent to injure another"). The second category is what has been described as conduct undertaken "without justification," and it thus becomes apparent that something unique is meant by those words. In case after case, courts have described this realm of conduct not to include behavior that is irrational, unexplained, or unjust, but actions taken solely for the defendant's own gain and contrary to the best interests of the employer. See, e.g., Fellhauer, 568 N.E.2d at 878-79; Mittelman, 552 N.E.2d at 987; Girsberger v. Kresz, 633 N.E.2d 781, 790 (Ill.App.1993); see

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

74 F.3d 1242 (Table)
(Cite as: 74 F.3d 1242, 1996 WL 23405, **4 (7th Cir.(Ill.)))

also George A. Fuller Co. v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1333 (7th Cir.1983); Cromley v. Board of Educ. of Lockport Township High School Dist. 205, 699 F.Supp. 1283, 1299 (N.D.Ill.1988); Vassardakis v. Parish, 36 F.Supp. 1002, 1005 (S.D.N.Y.1941). It would be illogical to define the range of culpable conduct otherwise--at will employment, after all, implies that it is the employer's prerogative to discharge an employee whether a jury might think it fair or not.

Despite the distinct meaning "without justification" has in this context, the district court failed to define the term for the jury. With no other meaning to ascribe to the phrase, the jury could only have interpreted the phrase to mean "unfairly." It thus might have found Montgomery liable for tortiously interfering with Mann's expectation of continued employment with the Law Department if it believed Montgomery acted out of malice or without a reason the jury believed was just. That is plainly a far broader standard than articulated for the tort, and patently inconsistent with Mann's status as an at-will employee. Thus, we are compelled to conclude that the jury was not properly instructed as to the legal standards governing this claim and that Montgomery was prejudiced by the mistake. Montgomery is therefore entitled to a new trial.

III. CONCLUSION

For the reasons we have given, we vacate the verdicts rendered in favor of Barnard and O'Hara and against Mann on Count VIII of the Third Amended Complaint and in favor of Mann and against Montgomery on Count XI of the Third Amended Complaint, and we remand for a new trial on those claims alone. The judgment below is affirmed in all other respects. The parties shall bear their own costs on appeal.

**5 AFFIRMED IN PART, VACATED IN PART, and REMANDED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

182 F.3d 922 (Table)
**Unpublished Disposition**

Page 5

(Cite as: 182 F.3d 922, 1999 WL 510748 (7th Cir.(Ill.)))
**H**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA7 Rule 53 for rules regarding the publication and citation of unpublished opinions.)

Beverly B. MANN, Plaintiff-Appellant,
v.
THE CITY OF CHICAGO, a Municipal Corporation, James D. Montgomery, Timothy D. O'Hara, and Jayne W. Barnard, Defendants-Appellees.

No. 98-1936, 98-2413, 98-2797.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1999.

Decided July 14, 1999.
Rehearing and Suggestion for Rehearing En Banc Denied Sept. 3, 1999. [FN*]

FN* The Honorable Ilana Diamond Rovner took no part in the consideration of the petition.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 84 C 11020. Wayne R. Andersen, Judge.

Before Hon. WILLIAM J. BAUER, Hon. FRANK H. EASTERBROOK, Hon. KENNETH F. RIPPLE, Circuit Judges.

ORDER

**\*1** Beverly B. Mann appeals the district court's grant of summary judgment in favor of the defendants on her defamation claim and her tortious interference with contract and tortious interference with prospective economic advantage claim. Mann argues, inter alia, that the actions taken by the defendants that gave rise to the claims are not covered by Illinois' Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-201 ("Tort Immunity Act" or "the

Act"). We affirm.

I.

As the district court noted in its Memorandum Order and Opinion, the facts of this case have already been discussed in the numerous proceedings before the district court and this Court since the case's inception in 1984. Mann's claims arise from the defendants' conduct when she was fired from her position as an attorney with the City of Chicago's office of Corporation Counsel. In her most recent appeal, Mann raises a laundry list of issues; however, the only one worthy of any discussion is whether the defendants actions are shielded from liability under the Illinois Tort Immunity Act.

II.

The gist of Mann's claims is that the defendants prepared defamatory performance evaluations about her and that Jayne W. Barnard, Deputy Corporation Counsel in charge of personnel administration, made defamatory remarks about Mann's performance while employed at the City of Chicago to a prospective employer. Mann also claims that these statements, as well as the decision to fire her, were made willfully and wantonly. She further asserts that the actions taken by the individual defendants were neither discretionary nor made in determining any policy, and are thereby not covered by the Tort Immunity Act.

The Illinois Tort Immunity Act states, in pertinent part:
Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.
745 ILCS 10/2-201. Until recently, it was unclear exactly which types of activities by government employees were immune from liability under the Act. However, in Harinek v. 161 North Clark St. Ltd. Partnership, 181 Ill.2d 335, 230 Ill.Dec. 11, 692 N.E.2d 1177 (Ill.1998), the Illinois Supreme Court clarified which employees and which actions

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

or omissions are covered. In Harinek, the court held that the language of the statute makes clear that the scope of immunity depends upon both the type of position held by the government employee and the act or omission involved. Id. at 1181. In order for a government employee to be immune under the statute, "[t]he employee's position... may be one which involves either determining policy or exercising discretion, but... the act or omission must be both a determination of policy and an exercise of discretion." Id. Furthermore, acts or omissions which are willful and wanton are also covered by the Act. In re Chicago Flood Litigation, 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265, 273 (Ill.1997). In this case, the type of position held by the defendants is not at issue. It is the individual acts of the defendants that are. Therefore, we must decide whether the acts in question were both discretionary and a determination of policy.

**2 Illinois courts have made a distinction between acts that are discretionary, as opposed to those that are merely ministerial. In Snyder v. Curran Township, 167 Ill.2d 466, 212 Ill.Dec. 643, 657 N.E.2d 988 (Ill.1995), the appellate court held that:

discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act.

Id. at 993. An act is a determination of policy under § 2-201 of the Tort Immunity Act if it requires the balancing of competing interests and making a judgment call as to which solution would best serve each one of those interests. Harinek, 230 Ill.Dec. 11, 692 N.E.2d at 1181 (internal quotations omitted). Thus, if the acts complained of are both discretionary and involve making policy, the defendants are immune from liability under the Tort Immunity Act.

Mann is apparently urging this court to find that the defendants' actions were neither discretionary nor involved in determining policy. In support of her position, Mann relies on Stratman v. Brent, 291 Ill.App.3d 123, 225 Ill.Dec. 448, 683 N.E.2d 951 (Ill.Ct.App.1997). In that case, the Illinois appellate court ruled that a police chief was not exercising his official discretion when he told the plaintiff's prospective employers that the plaintiff, a former

police officer, was unstable, displayed a negative attitude, refused counseling after he was involved in a fatal shooting, was nicknamed "Code Red" as an indication that he acted crazy, and that, as police chief, he would not rehire the plaintiff if he reapplied for a job. Id. at 953-54. The appellate court ruled that the plaintiff's injury arose from the police chief's decision regarding which statements he chose to provide and not the decision whether to provide information because the statements he provided were not contained in the plaintiff's employment file. Id. at 956.

However, Stratman is inapposite because it involves affirmative statements made to a prospective employer not contained in the plaintiff's employment file. Mann does not allege that Barnard made any affirmative statements to a prospective employer that were not contained in her employment file. The statement Mann refers to is one that Barnard made to a prospective employer after he said that he could not talk about Mann pursuant to an agreement the City had with her. Barnard then stated that "sometimes silence speaks a mouthful." Thus, Barnard only decided whether to make comments to a prospective employer, which, as even Stratman states, is discretionary. See Stratman, 225 Ill.Dec. 448, 683 N.E.2d at 956. Furthermore, Illinois appellate courts have held that the hiring and firing of employees is inherently discretionary, within the meaning of § 2-201 of the Tort Immunity Act. See Anderson v. Grayslake School Dist. No. 46, 1997 WL 639032 at *1 (Oct. 3, 1997); Johnson v. Mers, 279 Ill.App.3d 372, 216 Ill.Dec. 31, 664 N.E.2d 668 (Ill.Ct.App.1996). Therefore, it is clear that the City's decision to fire Mann was discretionary.

**3 Nor are Barnard's statements defamatory per se, as alleged by Mann. A statement cannot be defamatory per se if it is reasonably capable of an innocent construction. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 206 (Ill.1992). Here, there is no question that Barnard's statements can have an innocent construction. Furthermore, Mann has already received monetary damages for Barnard's statements under a breach of contract theory, see Mann v. Montgomery, 1998 WL 122779 at *1 (March 16, 1998), and, therefore, any additional recovery would be duplicative.

In addition to being discretionary, the decision to

prepare performance evaluations, and ultimately to discharge Mann was clearly a policy decision. In making his decision to fire Mann, James Montgomery, head of the City's Law Department, had to balance the interests of best serving the city in its legal representation, and most effectively running the office of Corporation Counsel with respect to its personnel decisions and building morale in the office. This balancing of interests squarely fits within the Illinois courts' definition of a policy making position under the language of § 2-201 of the Tort Immunity Act. See Harinek, 230 Ill.Dec. 11, 692 N.E.2d at 1181. Even if these decisions were made willfully and wantonly, the Illinois Tort Immunity Act would still shield the defendants from liability. See In re Chicago Flood Litigation, 223 Ill.Dec. 532, 680 N.E.2d at 273

(provision in Tort Immunity Act does not contain an exception for willful and wanton conduct).

Since the defendants' decisions to objectively evaluate Mann's performance were made by employees whose positions involved either making policy or making discretionary decisions, and the acts or omissions by the defendants were both discretionary and involved in policy making decisions, the Local Governmental and Governmental Employees Tort Immunity Act shields the defendants from liability for defamation and tortious interference with contract and tortious interference with prospective economic advantage. We AFFIRM.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

# EXHIBIT F

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

BEVERLY B. MANN,                    )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        No. 99 L 4034
                                    )
MICHAEL J. LEECH, ET AL.,           )
        Defendants.                 )

## EMERGENCY MOTION FOR LEAVE TO FILE AMENDMENTS TO THE COMPLAINT AT LAW ADDING DEFENDANTS

Now comes the plaintiff, Beverly B. Mann, *pro se*, and moves this court for leave to file amendments to the Complaint at Law adding several defendants. In support, she states the following:

This is a legal malpractice action in which the underlying legal matter was a complex lawsuit that was pending in the federal district and circuit courts in Chicago for fourteenth and one-half years. That lawsuit was only just resolved by the Court of Appeals for the Seventh Circuit on July 14, 1999, in a four-page unpublished Order affirming summary judgments entered upon states grounds that were the direct result of the malpractice that Mann alleges against the defendants in this lawsuit. Mann's Petition for Rehearing with Suggestion for Rehearing *En Banc* was denied on September 3, 1999.

Mann now wishes to expand the nature of this lawsuit beyond her claims against the two law firms that represented her (consecutively) in the underlying lawsuit. She wishes to join as defendants other parties who contributed to her ultimate injury. While the nature of the claims against those additional parties is significantly different than her claims against the current defendants in this lawsuit, the two sets of claims are largely interrelated, thus she wishes to litigate her claims against the additional parties along with her claims against the original parties, rather than in a separate lawsuit. She attaches to this motion a copy of her proposed amendments to the Complaint

The earliest arguable date for the running of the statute of limitations against the additional parties is March 13, 2000.

Respectfully submitted,

Beverly B. Mann
Plaintiff *Pro Se*
7261 North Campbell Avenue
Chicago, Illinois 60645
(773) 465-4587

2

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Beverly B. Mann

**DEFENDANTS**

00C 2150

Michael J. Leech et al

DOCKETED
APR 11 2000

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael Cotfield & Associat
72 W Wacker Suite 4800
Chicago IL 60652

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE KEYS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. This case
☐ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 4-7-00

SIGNATURE OF ATTORNEY OF RECORD
Michael Cotfield

UNITED STATES DISTRICT COURT